| | |
|---|---|
| **CYNTHIA B. AVENS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM OF LAW IN SUPPORT** |
| ) | **OF DEFENDANT PITT COUNTY** |
| **FARIS C. DIXON, JR., DISTRICT** ) | **MEMORIAL HOSPITAL, INC.'S** |
| **ATTORNEY, VIDANT/ECU HEALTH** ) | **MOTION TO DISMISS PLAINTIFF'S** |
| **MEDICAL CENTER, DR. KAREN** ) | **COMPLAINT** |
| **KELLY, MEDICAL EXAMINER,** ) | |
| **JOHN/JANE DOE, JOHN/JANE DOE, and** ) | |
| **JOHN/JANE DOE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Pitt County Memorial Hospital, Inc. ("ECU Health")[1] respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiff Cynthia B. Avens ("Avens").

## I. <u>NATURE OF THE CASE</u>

This case arises out of the unfortunate death of Avens' daughter, Keisha White ("White"), more than a decade ago. At the time of her death, White was a patient of ECU Health and was being treated for various medical conditions, including chronic renal failure. She experienced a medical emergency at Vidant Medical Center on May 10, 2014, and she died of an anoxic brain injury and cardiac arrest that same day. Despite entering into a settlement with ECU Health in 2016 whereby she released all claims related to the medical services that White received, Avens

---

[1] While Avens purports to assert claims against ECU Health Medical Center, which formerly did business as Vidant Medical Center, ECU Health Medical Center's legal name is Pitt County Memorial Hospital, Inc., which is referred to herein as ECU Health for ease of reference.

still seeks to hold ECU Health liable for White's death. Avens filed her Complaint with this Court on March 22, 2024, nearly ten years after White's death. While Avens' Complaint does not identify specific causes of action, affording her *pro se* pleading the most liberal construction possible, Avens purports to assert claims against ECU Health under (1) 42 U.S.C. § 1983 ("Section 1983"); (2) 42 U.S.C. § 1981 ("Section 1981"); (3) 42 U.S.C. § 1985 ("Section 1985"); (4) 42 U.S.C. § 1988; (5) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and (6) 18 U.S.C. § 241.

Avens' Complaint, however, does not plausibly explain how ECU Health is liable for White's death or as a result of any of the events that followed, and her claims against ECU Health should be dismissed. While Avens' general allegations of wrongdoing by ECU Health and others are convoluted, the reasons the Complaint fails to state a claim are simple. Indeed, Avens has failed to state a claim for relief for the following reasons: (1) all of her claims are time-barred by the applicable statutes of limitations; (2) any Section 1983 claim fails because ECU Health is not a state actor and because Avens fails to allege that any policy or custom of ECU Health caused a deprivation of her rights; (3) any Section 1981 claim fails because Avens does not allege that ECU Health interfered with a cognizable contractual relationship, because ECU Health is not a state actor, and because Avens does not allege that ECU Health intentionally discriminated against her on the basis of race; (4) any Section 1985 claim fails because Avens does not allege specific facts necessary to establish a conspiracy or that any actions taken were motivated by a specific class-based, invidiously discriminatory animus; (5) any Title VI claim fails because Avens does not allege that ECU Health engaged in intentional racial discrimination; and (6) 42 U.S.C. § 1988 and 18 U.S.C. § 241 do not provide for a private right of action.

In sum, even when construed in the light most favorable to Avens and giving her the benefit of every conceivable doubt in light of her *pro se* status, the Complaint is untimely, is entirely speculative, and does not allow the Court to infer that Avens is entitled to relief against ECU Health under any theory of liability. As a result, Avens' claims against ECU Health should be dismissed with prejudice for failure to state a claim on which relief may be granted.

## II. STATEMENT OF ALLEGED FACTS[2]

Avens' claims against ECU Health arise out of the medical care that White received in 2014. White was admitted to Vidant Medical Center on April 16, 2014, where she was "placed in the intermediate cardiac monitored care unit with a diagnosis of acute on chronic renal failure – a complication of systemic lupus erythematosus." (Compl. at 3 ¶ 1, Docket Entry 1.)[3] Physicians ordered cardiac monitoring and oxygen therapy, and White was assigned to a unit of the hospital for patients requiring continuous cardiac monitoring. (*Id.* at 4 ¶¶ 5-6.) White's condition worsened during the overnight shift on May 9 and 10, 2014, and she ultimately went into cardiac arrest and was pronounced dead on May 10, 2014. (*Id.* at 11-12 ¶¶ 46, 56.)

Avens primarily complains about the medical care that White received from Linda Brixon, R.N. ("Nurse Brixon") during her admission at Vidant Medical Center. Avens contends, among other things, that Nurse Brixon "neglected to administer the oxygen to Miss White," improperly "withheld crucial information regarding this patient from everyone in her chain of command," installed restraints on White in "violation of hospital and CMS [Center for Medicare and Medicaid

---

[2] ECU Health treats the Complaint's factual allegations as true for purposes of its Motion to Dismiss but does not admit, and reserves the right to contest, such allegations. ECU Health also does not intend to waive any of its affirmative or general defenses by filing this Motion.

[3] Because certain paragraphs in the Complaint contain duplicative numbering, ECU Health also refers to the page number in addition to the paragraph number in referencing the Complaint.

Services] protocol," and "harbored hatred towards [White] due to the color of her skin." (Compl. at 5, 8-9, 15-16 ¶¶ 13, 32, 34, 67, Docket Entry 1.)

ECU Health initiated an investigation following White's death that resulted in Nurse Brixon's termination, and the Complaint includes a litany of allegations concerning the events that allegedly took place following White's death. Avens alleges that, following ECU Health's investigation into White's death, three ECU Health representatives visited Avens' home on June 13, 2014 "for a disclosure meeting." (Compl. at 19 ¶ 8, Docket Entry 1.) Avens alleges that during that meeting, a representative offered to donate "little league uniforms or church pews" in White's name. (*Id.* at 20 ¶ 10(b).) Avens contends that this proposed donation was "racially biased." (*Id.* at 52 ¶ 7(f).) She also contends that at the June 13, 2014 meeting, an ECU Health representative was "[r]acially profiling" her when the representative purportedly "attempted to make [her] believe" that White's "heart stopped beating around 2a.m." on May 10, 2014. (*Id.* at 52 ¶ 7(g).)

Avens also expresses dissatisfaction with the fact that law enforcement did not pursue criminal charges in connection with her daughter's death and attempts to assign blame to ECU Health through a litany of scattershot allegations. She acknowledges, however, that ECU Health notified law enforcement in connection with its investigation into White's death. (Compl. at 17 ¶ 2(d), Docket Entry 1.) Avens further alleges that, during a telephone call with an ECU Health representative the week of June 16, 2014, she was informed that ECU Health had referred the matter to the North Carolina State Bureau of Investigation ("SBI"). (*Id.* at 20-21 ¶ 12.) Avens concludes, without any factual support, that ECU Health's report to the SBI "was made in bad faith, intentionally or negligently obstructing the initiation of a criminal investigation[.]" (*Id.*)

Avens then alleges that, later in June 2014, she visited the Greenville Police Department ("Greenville PD" or "GPD") and was told that "they did not have jurisdiction over the hospital."

(Compl. at 21 ¶ 14, Docket Entry 1.)  She also alleges that, when she went to file a report with ECU Health police, she was told to speak with ECU Health's risk manager.  (*Id.* at 21 ¶ 15.)  Avens concludes, again without any factual support, that that her June 2014 experience in pursuing criminal charges "implies that GPD and [ECU Health] have an agreement (whether written, verbal, common practice, or otherwise) in place for GPD to deny jurisdiction and redirect complainants back to the facility, giving full control of the matter, criminal or not, back to the hospital, thus engaging in a repulsive plan to cover up crimes that happen at that facility."  (*Id.* at 21-22 ¶ 16.)

While Avens accuses ECU Health representatives of falsely reporting that they had referred the matter to law enforcement, her own allegations plainly contradict her assertion in this regard.  (Compl. at 23 ¶¶ 20, 22, Docket Entry 1.)  During a conversation in July 2014, an ECU Health representative provided Avens with the names of the three SBI agents with whom the representative had spoken regarding White's death.  (*Id.* at 23 ¶ 20.)  Avens does not dispute that, as of July 2014, the case had been "reported to the SBI" by ECU Health.  (*Id.*)  She vaguely alleges, however, that the SBI agents "shared information obtained from [Avens] with the hospital, indicating a conspiracy to obstruct justice."  (*Id.* at 23 ¶ 22.)

After August 2014, Avens' attempts to pursue criminal charges relate exclusively to her interactions with law enforcement, with the Pitt County District Attorney's Office, and with the Pitt County Medical Examiner's Office.  (*See, e.g.*, Compl. at 24, 28-29, 33-44, Docket Entry 1.)  She contends that during a telephone call with the Medical Examiner's Office in September 2022, she was told that she "needed to talk to ECU's risk manager."  (*Id.* at 37-38 ¶ 71.)  Avens vaguely concludes that "[t]his action indicates retaliation by [ECU Health] . . . and was an infringement on [her] right to speak freely[.]"  (*Id.*)  She does not, however, allege that she ever spoke to or met with an ECU Health representative after 2014.

5

# III. STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted). While "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," it does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Even though *pro se* complaints are construed liberally, this does not permit the Court to ignore a clear failure to allege facts setting forth a cognizable claim. *Beyan v. CATS*, 2022 WL 304669, at *1 (W.D.N.C. Feb. 1, 2022).

Exhibits to the complaint or documents that are otherwise integral to or referenced in the complaint are to be considered on a motion to dismiss and govern over conflicting allegations in the complaint. *See, e.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Similarly, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F. 3d 726, 730 (4th Cir. 2002).

# IV. LAW AND ARGUMENT

## A. All of Avens' Claims Against ECU Health Are Time-Barred.

Avens' claims against ECU Health arise out of events that took place in 2014 and thus are untimely. A statute of limitations defense properly may be raised under Federal Rule of Civil

Procedure 12(b)(6) if "the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Avens' Section 1983, Section 1985, and Title VI claims are subject to a three-year statute of limitations. *See Manion v. N.C. Med. Bd.*, 693 F. App'x 178, 182 (4th Cir. 2017) (noting that Section 1983 and Section 1985 "borrow the state's general personal injury limitations period," which, in North Carolina, is three years); *Maisha v. Univ. of N.C.*, 641 F. App'x 246, 249 (4th Cir. 2016) ("North Carolina's three-year statute of limitation applies to claims under Title VI and § 1983[.]"); *see also* 42 U.S.C. § 1988(a). Section 1981 claims also typically are subject to a three-year statute of limitations. *Chambers v. North Carolina Dep't of Just.*, 66 F.4th 139, 141 (4th Cir. 2023).[4]

"The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination." *A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Under federal law, a claim accrues "when it is sufficiently ripe that one can maintain suit on it." *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002); *see Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 886 (4th Cir. 2023) ("In federal court, it is 'the standard rule that the [accrual occurs] when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" (citation omitted)). "Put differently, 'a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows

---

[4] In certain circumstances, claims under Section 1981 are subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382-84 (2004) (noting Section 1981 claims are only subject to the four-year statute of limitations period in 28 U.S.C. § 1658 if they arise under the 1991 Amendment to Section 1981). Because there is no basis for concluding that Avens' purported Section 1981 claim was "made possible" by the 1991 Amendment to that section, her Section 1981 claim is governed by a three-year statute of limitations. Regardless, Avens' Section 1981 claim would be barred even if a four-year statute of limitations applied.

or has reason to know of his injury (hence, the standard rule).'" *Epcon Homestead*, 62 F.4th at 886 (citation omitted); *see A Soc'y Without a Name*, 655 F.3d at 348.

Here, the time bar is apparent on the face of the Complaint. Avens filed the Complaint on March 22, 2024, and her claims against ECU Health involve events that took place long before March 22, 2021. Indeed, the Complaint does not include *any concrete* factual allegations regarding acts or omissions by ECU Health within the limitations period. On the face of the Complaint, the last alleged act on the part of ECU Health occurred in "July or August 2014," when Avens met with an ECU Health representative and accused her of "lying for claiming to have spoken to the SBI agents." (Compl. at 23 ¶ 22, Docket Entry 1.) Avens does not allege that she ever communicated with ECU Health after August 2014. Giving Avens the benefit of every conceivable doubt, her claims against ECU Health accrued, and the statute of limitations began to run, in 2014, which is when she undisputedly knew, or had reason to know, of the alleged wrongful acts underlying her claims. Avens' failure to file suit within three years of when she had reason to know of her alleged injury invalidates her claims against ECU Health.

The nature of Avens' claims against ECU Health also make clear that such claims accrued in 2014. For each of Avens' claims that requires a showing of intentional discrimination (*i.e.*, the Section 1981 claim, the Section 1985 claim, and the Title VI claim), the date of the last alleged act of intentional discrimination is key. As alleged in the Complaint, ECU Health's last purportedly discriminatory act occurred on June 13, 2014. Avens alleges that on that date, three ECU Health representatives visited her home and offered to donate "little league uniforms or church pews" in White's name. (Compl. at 20 ¶ 10(b), Docket Entry 1.) Avens then alleges, albeit in conclusory fashion, that the offer to donate church pews was "racially biased due to the history behind the reason that Black people became church-going folk in this country." (*Id.* at 52 ¶ 7(f).)

Additionally, Avens alleges that at the June 13, 2014 meeting, an ECU Health representative was "[r]acially profiling" her when the representative purportedly "attempted to make [Avens] believe" White's "heart stopped beating around 2a.m." (*Id.* at 52 ¶ 7(g).) Avens does not attempt to identify any subsequent act or omission on the part of ECU Health which could amount to intentional discrimination. While the Complaint includes various allegations regarding Avens' efforts to pursue criminal charges within the limitations period, she does not point to any concrete act or omission by ECU Health during this time, much less a discriminatory act. In short, the clock on Avens' claims for intentional discrimination began to run on June 13, 2014, and such claims thus should have been (but were not) filed by no later than June 13, 2017.

Avens attempts to sidestep the clear statute of limitations bar by blanketly invoking the continuing violation doctrine, alleging that ECU Health's "actions from 2014 to 2024 has created a continuing wrong that has severely impacted [her] ability to seek justice in the death" of White. (Compl. at 3 ¶ 2, Docket Entry 1 ("The Continuing Wrong Doctrine: This is invoked because the obstruction of justice and the conspiracy to obstruct justice commenced in 2014 and persist through 2024."); *see also id.* at 53 ¶ 8.) The continuing violation doctrine, however, is inapplicable and does not serve to toll the statute of limitations on Avens' claims against ECU Health in any respect.

"[W]hen a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff, under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). "In general, to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." *A Soc'y Without a Name*, 655 at 348 (quoting *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)). However, "continu[ing] unlawful acts are distinguishable from the continuing ill effects of an

original violation because the latter do not constitute a continuing violation." *A Soc'y Without a Name*, 655 at 348. "Only if the same alleged violation was committed at the time of each act does the limitations period begin anew with each violation." *Maisha,* 641 F. App'x at 249 (brackets and internal quotation marks omitted) (quoting *A Soc'y Without a Name*, 655 at 348).

The continuing violation doctrine requires that at least one act of discrimination occur within the limitations period. *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 281 n.2 (4th Cir. 2000); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 442-43 (4th Cir. 1998). Here, Avens does not plausibly allege any act of discrimination on the part of ECU Health after June 13, 2014, much less after March 22, 2021. Avens thus does not plausibly allege any act of discrimination within the limitations period, which is fatal to her claims. *See Gregory v. Currituck Cty.*, 2022 WL 1598961, at *1 (4th Cir. May 20, 2022) ("Because Plaintiffs have not alleged an act of discrimination by the County Defendants within the limitations period, the district court correctly determined that the continuing violation doctrine did not apply and that Plaintiffs' claims against the County Defendants were barred by the statute of limitations."). Moreover, while Avens does not allege that ECU Health engaged in a pattern or practice of discrimination, even if she did, "[g]eneral allegations of a 'pattern or practice of discrimination' are insufficient to establish a continuing violation." *Maisha,* 641 F. App'x at 249 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 429-30 (4th Cir. 2004)) (affirming dismissal of Section 1983 and Title VI claims as barred by the statute of limitations where "each event related to a discrete act that was not repeated by the individual actor," noting the plaintiff's "general allegations of a pattern or practice of discrimination d[id] not suffice to render these claims timely").

Avens' claims against ECU Health are untimely, and the continuing wrong doctrine cannot operate to save them. *See Hall v. Liles*, 2023 WL 8810773, at *6 (E.D.N.C. Dec. 20, 2023)

("Plaintiff has not alleged discrete acts repeated by the individual defendants which would cause his § 1983 and § 1985 claims to be timely."). Accordingly, all of Avens' claims against ECU Health are time-barred and should be dismissed.[5]

**B.      Avens' Section 1983 Claim Against ECU Health Should Be Dismissed.**

Even if Avens' Section 1983 claim were not time-barred, dismissal still would be warranted. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the defendant (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Avens fails to state a plausible claim against ECU Health under Section 1983, as ECU Health is not a state actor and Avens fails to allege that any policy or custom of ECU Health caused a deprivation of her rights. Her Section 1983 claim should be dismissed as a result.

**1.      ECU Health Did Not Act Under Color of State Law.**

Liability under Section 1983 extends only to persons acting under color of state law, a requirement equivalent to that of state action under the Fourteenth Amendment. *Philips*, 572 F.3d at 180. In determining if a defendant acted under color of state law, the ultimate issue is whether

---

[5] Avens' claims against ECU Health not only are barred by the applicable statutes of limitations, they also are barred because Avens reached a settlement with ECU Health in 2016 where she released all claims against ECU Health as to the medical services White received. While the Settlement Agreement and Release between Avens and ECU Health is outside the pleadings, it undisputedly invalidates any claim Avens purports to assert against ECU Health.

its actions were "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The court must inquire into relevant facts and circumstances to determine "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself." *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351 (1974). Constitutional standards will be invoked "only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 1007, 1004 (1982). "[C]onclusory allegations that [a party] acted under color of state law will not suffice." *Estate of Williams-Moore v. All. One Receivables Mgmt.*, 335 F. Supp. 2d 636, 648 (M.D.N.C. 2004).

As an initial matter, Avens' Complaint includes only cursory allegations that ECU Health acted under color of state law, which are insufficient to sustain her claim. (*See* Compl. at 2 ¶ 3, Docket Entry 1). Regardless, Avens' Section 1983 claim fails as a matter of law because ECU Health is not a state actor. *See Philips*, 572 F.3d at 184 (affirming dismissal of Section 1983 claim against Vidant Medical Center and concluding that this Court "did not err in concluding at the pleading stage that state action was absent"); *May v. Univ. Health Sys. of E. Carolina, Inc.,* 2021 WL 5868135, at *5 (E.D.N.C. Dec. 9, 2021) (granting motion to dismiss Section 1983 claim because ECU Health is not a state actor). As this Court has noted, "[a]lthough Pitt County used to operate [ECU Health] as a public entity, [ECU Health] became a private nonprofit entity in 1998. Pitt County does not employ [ECU] Health's Board of Trustees, and the Pitt County does not control the 'ordinary course of [the Board's] decisionmaking.'" *May,* 2021 WL 5868135, at *5 (quoting *Philips*, 572 F.3d at 178).

While Avens alleges in her Complaint that ECU Health is a "public facility," (Compl. at 2 ¶ 3, Docket Entry 1), a court cannot "accept as true allegations that contradict matters properly

subject to judicial notice or by exhibit." *Veney*, 293 F. 3d at 730 (citations and internal quotations omitted). As reflected in the Restated Articles of Incorporation for Pitt County Memorial Hospital, Inc., attached hereto as **Exhibit A**, ECU Health is a private non-profit corporation.[6] On June 1, 1998, the Pitt County Board of Commissioners executed a Transfer Agreement, attached hereto as **Exhibit B**, which changed the entity's status from a public hospital to a private non-profit hospital pursuant to N.C. Gen. Stat. § 131E-8. *See Philips*, 572 F.3d at 184. Relevant here, the Fourth Circuit and this Court both previously have considered, and rejected, the argument that ECU Health is a state actor for purposes of a Section 1983 claim. *Philips*, 572 F.3d at 183; *May*, 2021 WL 5868135, at *5.

In this case, the conduct about which Avens complains relates solely to the routine operation of ECU Health. The allegations against ECU Health focus on the treatment that White received in 2014 and ECU Health's administrative handling of risk in its daily operations. As in *Philips* and *May*, the actions complained of in Avens' Complaint relate to operations of the hospital, over which the county has no control. As such, no state action exists to state a claim against ECU Health under to Section 1983, and any such claim should be dismissed.

    2.    <u>Avens Fails to Allege that Any Specific Policy or Custom of ECU Health Caused a Deprivation of Her Federal Rights.</u>

Even if Avens properly alleged and could establish state action, her Section 1983 claim still fails because she does not allege a deprivation of rights pursuant to an official policy or custom. Under Section 1983, a private corporation may not be held liable on a *respondeat superior* theory. *Austin v. Paramount Parks, Inc.,* 195 F. 3d 715, 728 (4th Cir. 1999). As such, "a private corporation is liable under § 1983 only when an official policy or custom of a corporation causes

---

[6] The Fourth Circuit has held that, "[i]n reviewing a Rule 12(b)(6) dismissal, we may properly take notice of matters of public record." *Philip*s, 572 F.3d at 180 (citation omitted) (considering the Transfer Agreement of Pitt County Memorial Hospital).

the alleged deprivation of federal rights." *Id.*; *see also Barrett v. Bd. of Educ. of Johnston Cty.*, 13 F. Supp. 3d 502, 509-10 (E.D.N.C. 2014), *aff'd*, 590 F. App'x 208 (4th Cir. 2014) (dismissing Section 1983 claim because the plaintiff only alleged in "conclusory terms" that the defendant employed an actionable policy or custom); *Lagana v. Wexford Health*, 2018 WL 3970472, at *9 (D. Md. Aug. 20, 2018) (dismissing Section 1983 claim where the plaintiff "fail[ed] to identify in his pleadings a . . . policy or procedure that proximately caused a violation of his rights"); *Huntley v. Burris*, 2019 WL 12339733, at *1 (M.D.N.C. Mar. 4, 2019) (dismissing Section 1983 claims because the plaintiff only alleged that the defendants acted pursuant to "local custom, policy or practice" and "have engaged in a pattern as to create a custom of inadequate medical care").

Here, Avens does not even generally allege that a policy or custom of ECU Health caused an alleged deprivation of rights under Section 1983. While Avens accuses Nurse Brixon of violating various hospital protocols while providing White with medical care, she cannot sustain a Section 1983 claim against ECU Health based on Nurse Brixon's alleged conduct absent concrete allegations of a corporate policy or custom of civil rights violations. Avens' failure to identify a specific policy or custom of ECU Health which caused a deprivation of her rights is fatal. Therefore, Avens' Section 1983 claim against ECU Health should be dismissed.

### C.  Avens' Section 1981 Claim Against ECU Health Should Be Dismissed.

Avens also purports to assert a claim against ECU Health under Section 1981, which provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981(a) has been categorized into three clauses: the contracts clause,

the full and equal benefits clause, and the punishments clause. *Mahone v. Waddle*, 564 F.2d 1018, 1027 (3d Cir. 1977). While the contracts clause applies to conduct by private parties, the full and equal benefits clause and the punishments clause apply only to state action. *Id.* at 1029-30 (holding that "while private discrimination may be implicated by the contract clause of § 1981, the concept of state action is implicit in the equal benefits clause" and the punishments clause).

While it is unclear whether Avens' purported Section 1981 claim is based upon the contracts clause, the full and equal benefits clause, and/or the punishments clause, she nevertheless fails to state a claim for relief against ECU Health because (1) she fails to allege that ECU Health interfered with a cognizable contractual relationship, which defeats a claim under the contracts clause; (2) ECU Health is not a state actor, which defeats a claim under the full and equal benefits clause and/or the punishments clause; and (3) she does not plausibly allege that ECU Health intentionally discriminated against her on the basis of race.

### 1. Avens Does Not Allege an Impaired Contractual Interest.

To the extent Avens intends to bring her claim under the contracts clause of Section 1981, she fails to allege that her claim is related to the making and enforcing of contracts. While the state action requirement does not apply to claims under the contracts clause, a plaintiff must plausibly allege "an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Thus, "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Id.* A plaintiff also must plausibly allege "that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). Here, the Complaint is devoid of any reference to a contract or agreement, much less an allegation that ECU Health interfered with

Case 4:24-cv-00051-M-RN    Document 21    Filed 05/28/24    Page 15 of 25

a cognizable contractual relationship.[7]  This omission is fatal to the extent that Avens' Section 1981 claim is based on the contracts clause.  *See May*, 2021 WL 5868135, at *7 (concluding that the plaintiff failed to state a claim under the contracts clause of Section 1981 where no contractual relationship was alleged).

### 2.  ECU Health Is Not a State Actor.

To the extent Avens attempts to bring her claim under the full and equal benefits clause and/or the punishments clause of Section 1981, she has failed to allege state action on the part of ECU Health.  *See Jones v. Poindexter,* 903 F.2d 1006, 1010 (4th Cir. 1990) (noting claims under the "full and equal benefits" clause require "state action denying the plaintiff the full and equal benefit of the law"); *Mahone*, 564 F.2d at 1029-30 (a showing of state action is required to state a claim under the equal benefits clause or punishments clause of Section 1981).  As discussed above in connection with Avens' Section 1983 claim, she has not – and indeed cannot – allege facts which would satisfy the state action requirement.  *See May,* 2021 WL 5868135, at *7 (dismissing Section 1981(a) claim under the "full and equal benefits" clause because plaintiff did "not plausibly allege the requisite state action" and "failed to plausibly allege that the [ECU Health] employees . . . acted pursuant to an official policy or custom").  A conclusory statement of action "under color of law" is not sufficient to survive a motion to dismiss.  Thus, to the extent Avens' Section 1981 claim against ECU Health is based on the full and equal benefits clause or the punishments clause, dismissal is warranted.

### 3.  ECU Health Did Not Engage in Intentional Discrimination.

Even if Avens' Section 1981 claim could be deemed timely and even if ECU Health could

---

[7]  As far as ECU Health is aware, the only contract relevant to Avens' claims is an April 2016 Settlement Agreement and Release pursuant to which Avens released the claims that she now purports to bring against ECU Health.

be considered a state actor or Avens alleged an impaired contractual interest, dismissal still be would proper because the Complaint fails to plausibly allege intentional discrimination on the part of ECU Health.  To state a claim under Section 1981, a plaintiff must allege purposeful or intentional discrimination on the basis of race.  *Sparrow v. Bank of Am., N.A.*, 2014 WL 4388350, at *8 (D. Md. Sep. 4, 2014) (dismissing Section 1981 claim where the plaintiffs "fail[ed] to allege specific facts showing a causal link between the defendants' loan practices and the [plaintiffs'] race"); *Daniels v. Dillard's, Inc.,* 373 F.3d 885, 887-88 (8th Cir. 2004) (customer's prima facie case under Section 1981 failed because she relied only on her own speculation that the defendant store had declined her check and had not given her the same discount that was offered to white customers); *see also Brummell v. Talbot Cty. Bd. of Educ.*, 2023 WL 2537438, at *10 (D. Md. Mar. 16, 2023) (dismissing Section 1981 claim where the plaintiffs "alleged membership in a racial minority group and intentional discrimination generally" but "failed to provide a clear statement alleging discrimination related to a right protected by § 1981 specifically").

Here, aside from allegations relating to the alleged motives underlying Nurse Brixon's treatment of White in 2014, Avens does not allege any intentional racial discrimination.  Avens' speculative and conclusory assertions that she and White were "discriminated against by [ECU Health] by their protection of the White nurse," misses the mark.  For starters, the Complaint does allege any facts tending to show a causal link between Avens' race and the alleged actions taken by ECU Health back in 2014 following White's death.  On top of that, as Avens alleges, ECU Health terminated Nurse Brixon, reported the matter to law enforcement, and submitted a complaint to the appropriate regulatory body more than nine years before this action was filed.  Thus, Avens' Section 1981 claim against ECU Health cannot stand and should be dismissed.

D.     **Avens' Section 1985 Claim Against ECU Health Should be Dismissed.**

Avens also appears to bring a claim against ECU Health under Section 1985. To state a claim for conspiracy to deny equal protection of the laws under Section 1985, a plaintiff must plausibly allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (internal citations omitted). Avens' Section 1985 claim should be dismissed because (1) she fails to allege specific facts necessary to establish a Section 1985 conspiracy; and (2) she fails to allege that any actions taken by ECU Health were motivated by a specific class-based, invidiously discriminatory animus.

1.     Avens Fails to Allege a Civil Rights Conspiracy.

To state a claim under Section 1985, a plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Strickland v. United States*, 32 F.4th 311, 361 (4th Cir. 2022). In order to carry this "weighty burden," *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996), a Section 1985 plaintiff:

> must show 'that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences. **This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy**. Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.

*Strickland*, 32 F.4th at 360-62 (citations and quotation marks omitted) (emphasis added) (affirming dismissal of Section 1985 claim where plaintiff failed to allege specific facts showing defendants acted with an "affirmative adherence to a single plan of discriminatory animus based on her protected-class status"); *see A Soc'y Without A Name*, 655 F.3d at 346 ("We have specifically

rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."). This Court has rejected Section 1985 claims pled without the requisite specificity. *See, e.g., Nwanko v. Walmart Stores, Inc.*, 2023 WL 3437815, at *5 (E.D.N.C. May 12, 2023) (dismissing Section 1985 claim because the plaintiff had "not alleged facts supporting the conclusion that . . . defendants were motivated by discriminatory animus" and, separately, because plaintiff had "not plausibly alleged 'concrete supporting facts' suggesting a meeting of the minds"); *Campbell v. Garlington*, 2021 WL 2270675, at *7 (E.D.N.C. June 3, 2021); *Revak v. Miller*, 2020 WL 3036548, at *13 (E.D.N.C. June 5, 2020); *Evans v. Capps*, 2018 WL 5291864, at *16 (E.D.N.C. Aug. 3, 2018); *Manion v. N.C. Med. Bd.*, 2016 WL 4523902, at *8 (E.D.N.C. Aug. 22, 2016).

Here, Avens' allegations regarding the existence of a civil rights conspiracy are vague and are not accompanied by supporting facts. As an initial matter, Avens does not even identify the parties to the purported conspiracy. At one point, Avens suggests that ECU Health was a party to a conspiracy with unidentified SBI agents who are not parties to this action. (Compl. at 23 ¶ 22, Docket Entry 1.) At another point, Avens appears to allege that ECU Health was part of a conspiracy involving the Greenville PD, which is not a party to this action. (*Id.* at 21-22 ¶ 16.) Avens also suggests that ECU Health was a party to a conspiracy with the local Medical Examiner, Dr. Karen Kelly. (*Id.* at 42-43 ¶ 87(e).) She further suggests that Dr. Kelly and the District Attorney, Faris Dixon, Jr., were parties to a conspiracy. (*Id.* at 42 ¶ 87(b).) She also generally alleges that the "defendants" in this case were parties to a "conspiracy to obstruct justice." (*Id.* at 3 ¶ 1.)

In each instance, Avens fails to allege any concrete supporting facts suggesting a meeting of the minds among the purported co-conspirators. The generally alleged conspiracy involving

unidentified SBI agents exclusively is based on Avens' allegation that SBI agents informed an ECU Health representative in July 2014 that Avens had indicated that she was going to speak with the District Attorney's Office, which, according to Avens, "indicat[es] a conspiracy to obstruct justice." (Compl. at 23 ¶ 22, Docket Entry 1.) The generally alleged conspiracy involving the Greenville PD is one that Avens has "*implie[d]*" based on her experience in June 2014. (*Id.* at 21 ¶ 16 (emphasis added).) The generally alleged conspiracy involving the Medical Examiner exclusively is based upon Avens' unsupported allegation that "Dr. Karen Kelly was not 'allowed' to work on this case without, ***presumably***, obtaining permission from" ECU Health. (*Id.* at 42-43 ¶ 87(e) (emphasis added).) Finally, Avens does not allege ***any*** concrete facts to support the generally alleged conspiracy among all defendants. None of these allegations contain the specificity required to support an inference that ECU Health engaged in a civil rights conspiracy.

In short, while the Complaint repeatedly uses the word "conspiracy," Avens does not allege any concrete facts to support such a claim. Conclusory allegations of an agreement at some unidentified point cannot serve as a basis of a Section 1985 claim. *See A Soc'y Without A Name*, 655 F.3d at 346 (holding allegations did not support a meeting of the minds where plaintiff "failed to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"). Avens' Section 1985 claim against ECU Health should be dismissed.

2.  Avens Fails to Allege that ECU Health Was Motivated by a Specific Class-Based, Invidiously Discriminatory Animus.

Avens' claim under Section 1985 also fails because she does not allege facts supporting the conclusion that the alleged conspiracy was motivated by discriminatory animus. Avens does not allege, even generally, that the unidentified members of a purported conspiracy were "motivated by a specific class-based, invidiously discriminatory animus," which is an essential

element of a Section 1985 claim.  *Simmons*, 47 F.3d at 1376.  In fact, Avens alleges that the purported co-conspirators engaged in a "conspiracy to obstruct justice," (Compl. at 3 ¶ 2, Docket Entry 1), not a conspiracy to discriminate against Avens on the basis of race.  This too is fatal to Avens' Section 1985 claim.

  **E.** <u>Avens' Title VI Claim Against ECU Health Should be Dismissed.</u>

  Avens also appears to bring a claim against ECU Health for violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Section 601 of Title VI of the Civil Rights Act of 1964 provides as follows:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  "A private cause of action for damages under Title VI is authorized only for intentional discrimination based on race, color, or national origin." *M.D. v. Sch. Bd.*, 560 F. App'x 199, 203 (4th Cir. 2014); *see Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003).  Thus, "[t]o state a claim of race discrimination under Title VI, the plaintiff must plausibly allege that the defendant received federal financial assistance and engaged in intentional racial discrimination." *Lucas v. VHC Health*, 2023 WL 5615970, at *3 (E.D. Va. Aug. 30, 2023).

  Although Avens generally alleges that ECU Health received "federal funds," (Compl. at 2 ¶ 3, Docket Entry 1), her Title VI claim fails because she does not plausibly allege that ECU Health engaged in intentional racial discrimination.  In assessing whether a plaintiff properly has alleged intentional racial discrimination under Title VI, "the Court is bound to examine only the 'factual content' in Plaintiff's Complaint 'that allows [it] to draw the reasonable inference' that Defendants are liable for discriminating against Plaintiff on the basis of race." *Lucas*, 2023 WL 5615970, at *4 (holding plaintiff failed to "plausibly allege that Defendants engaged in intentional racial

discrimination" after disregarding "conclusory and speculative" allegations which relied upon "'unwarranted inferences' that the Court need not accept as true for purposes of a Rule 12(b)(6) motion"); *see Jackson v. Cent. Midlands Reg'l Transit Auth.*, 2023 WL 5757643, at \*3 (D.S.C. June 9, 2023) (concluding allegations in complaint did not support an inference that defendant intentionally discriminated against plaintiff); *Evans v. 7520 Surratts Rd. Operations, LLC*, 2021 WL 5326463, at \*4 (D. Md. Nov. 16, 2021) ("[Plaintiff] must do more than simply allege his unfavorable treatment was on account of 'discriminatory animus.' He must give some facts to support that the Defendants' alleged misconduct was motivated by race."); *see also Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 577 (4th Cir. 2017) (affirming dismissal of Title VI discrimination claim where the plaintiff's allegations were limited to one instance in which a "Wells Fargo employee reacted negatively upon learning [plaintiff's] race").

Here, the allegations in the Complaint concerning racial discrimination by ECU Health *against Avens* is limited to her speculative and conclusory characterizations of an alleged meeting at her home on June 13, 2014. Avens, however, has failed to allege any concrete fact to support her assertion that ECU Health representatives engaged in intentional discrimination during the alleged June 13, 2014, meeting. Avens simply contends that at that meeting, an ECU Health representative offered to donate "little league uniforms or church pews" in White's name. (Compl. at 20 ¶ 10(b), Docket Entry 1.) Without any factual support, Avens then makes the conclusory and speculative assertion that the offer to donate church pews in White's name was "racially biased due to the history behind the reason that Black people became church-going folk in this country." (*Id.* at 52 ¶ 7(f).) This does not amount to a plausible allegation that ECU Health engaged in intentional discrimination on the basis of race, and therefore it cannot sustain a Title VI claim.

Avens also asserts without any factual support that the ECU Health representative was

"[r]acially profiling" her during the meeting on June 13, 2014, and purportedly "attempted to make [Avens] believe" that White's "heart stopped beating around 2a.m. even though the ERT detected a heartbeat at 6a.m." (Compl. at 52 ¶ 7(g), Docket Entry 1.) Avens also draws the unwarranted and unsupported inference that the ECU Health representative "looked at [Avens'] Black skin, [her] moderate clothing, and the Black neighborhood [she] lived in when [the representative] came to [Avens'] house and assumed that [Avens] was uneducated and underserved, therefore [Avens] would accept [the representative's] statements as true due to [the representative's] perceived authority as an educated White woman." (*Id*.) Notably absent from the Complaint, however, are any concrete facts to support these conclusory assertions of discrimination. Avens thus fails to state a claim against ECU Health under Title VI, and any such claim should be dismissed.

### F. Neither 42 U.S.C. § 1988 Nor 18 U.S.C. § 241 Creates an Independent Cause of Action.

Avens also references 42 U.S.C. § 1988 and 18 U.S.C. § 241, but these statutes do not create a private right of action and cannot save her other claims. To the extent Avens seeks to assert a claim against ECU Health under 42 U.S.C. § 1988, that statute does not create a federal cause of action for deprivation of constitutional rights, as it merely instructs federal courts as to what law to apply in causes of action arising under the federal civil rights act and allows for a plaintiff to seek attorney's fees in connection with a claim under Section 1981, Section 1983, or Section 1985. *See Harding v. American Stock Exchange, Inc.*, 527 F.2d 1366, 1370 (5th Cir. 1976); *Kitchen v. Riley*, 2015 WL 5009128, at *7 (D.S.C. Aug. 19, 2015) ("The Plaintiff's only remaining claim is under 42 U.S.C. § 1988. This section does not create an independent cause of action[.]"). Likewise, to the extent Avens seeks to asserts a claim against ECU Health under 18 U.S.C. § 241, that is a criminal statute and does not give rise to civil liability or authorize a private right of action. *See Strasburg v. Stafford Cty. Sheriff's Dep't*, 2024 WL 1832992, at *2 (E.D. Va.

Mar. 5, 2024) ("Plaintiff also fails to state any claim for civil relief under the various criminal statutes listed including, 18 U.S.C. §§ 241 . . ., as there is no private right of action."); *Kitchen*, 2015 WL 5009128, at *6 (concluding that 18 U.S.C. § 241 does not "allow for a civil cause of action"). Avens' references to those statutes thus do not allow her to state a claim for relief.[8]

## V. <u>CONCLUSION</u>

For these reasons, ECU Health respectfully requests that the Court grant its Motion and dismiss Avens' claims against ECU Health with prejudice.

---

[8] While Avens does not purport to assert any state law claims and indeed only seeks to invoke federal question jurisdiction, (Compl. at 3, Docket Entry 1), the Court should decline to exercise supplemental jurisdiction over any state law claims that Avens seeks to pursue. All of Avens' federal claims should be dismissed for the reasons outlined above. Once the federal claims are dismissed, any state law claim would be dependent on the exercise of supplemental jurisdiction by this Court. *See* 28 U.S.C. § 1367 ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form party of the same case or controversy[.]"). The Court may decline to exercise supplemental jurisdiction upon dismissal of all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). In the event that Avens seeks to assert claims against ECU Health under North Carolina law, the Court should decline to exercise jurisdiction over such claims.

Respectfully submitted,

/s/ Terrence M. McKelvey
Daniel D. McClurg (NC Bar #53768)
daniel.mcclurg@klgates.com
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
(704) 331-7400
(704) 353-3114

Terrence M. McKelvey (NC Bar #47940)
terrence.mckelvey@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

*Counsel for Defendant Pitt County
Memorial Hospital, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served upon all counsel of record via the Clerk of Court's ECF system and upon Plaintiff Cynthia B. Avens via U.S. Mail, postage prepaid, at the address listed below, this May 28, 2024:

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, North Carolina 27870

Chris D. Agosto Carreiro
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602

*Counsel for Defendant Faris C. Dixon, Jr.*

Jeremy D. Linsley
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602

*Counsel for Defendant Karen Kelly, MD*

/s/ Terrence M. McKelvey

25