# Exhibit B

Prepared by Danny D. McNally
Gaylord, McNally, Strickland & Snyder, L.L.P.

The Attorney preparing this instrument has made no record search or title examination as to the property herein described and has not been requested to search or certify title to same.

## NORTH CAROLINA BILL OF CONVEYANCE
## AND GENERAL WARRANTY DEED

THIS BILL OF CONVEYANCE AND GENERAL WARRANTY DEED (this "Deed") is made this _16th_ day of September, 1998, by and between the COUNTY OF PITT, NORTH CAROLINA, a political subdivision of the State of North Carolina (the "Grantor"), acting by and through its Board of County Commissioners, and PITT COUNTY MEMORIAL HOSPITAL, INCORPORATED., a North Carolina nonprofit corporation, acting by and through its Board of Directors (the "Grantee"), whose mailing address is 2100 Stantonsburg Road, Greenville, North Carolina 27835.

### W I T N E S S E T H:

WHEREAS, Grantor is a municipality as defined in N.C. General Statutes Section 131E-6(5) and is the owner of all of that property known as Pitt County Memorial Hospital, Incorporated as described in Exhibit "B" attached hereto, together with the County owned personal property, fixtures, equipment and other assets, tangible or intangible, associated with the hospital (collectively, the "Hospital");

WHEREAS, the Hospital is operated for Grantor by Grantee pursuant to that certain Lease dated as of December 1, 1989 as supplemented by the First Supplemental Lease Agreement dated January 27, 1992, the Second Supplemental Lease Agreement dated February 1, 1994 and the Third Supplemental Lease Agreement dated September 1, 1995; and,

WHEREAS, in accordance with that certain Agreement to Change Status of Pitt County Memorial Hospital (the "Transfer Agreement) by and between Grantor and Grantee dated as of June 1, 1998, a copy of which is attached hereto as Exhibit A, Grantor has agreed to transfer to Grantee the Hospital in accordance with the provisions of N.C. General Statutes Section 131E-8, subject to the terms and conditions of this Deed and the Transfer Agreement;

NOW, THEREFORE, for and in consideration of $10.00 cash in hand paid by Grantee to Grantor, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor has and by these presents does grant, bargain, sell and convey unto Grantee, its successors and assigns, those certain tracts or parcels of land located in Pitt County, North Carolina, and more particularly described on Exhibit B, attached hereto and made a part hereof (the "Land");

TOGETHER WITH all buildings, structures and other improvements located thereon, and all County owned personal property, appurtenances, fixtures, equipment and other assets, tangible or intangible, associated with the Hospital (together with the Land, the "Property").

THIS CONVEYANCE is made pursuant to the provisions of N.C. General Statutes Section 131E-8, and upon the express condition that Grantee shall comply with the terms and conditions set forth in the Transfer Agreement, subject to the right of reversion and transfer to Grantor as follows:

1.     <u>Fee Simple Determinable Interest</u>. This conveyance of the Property to Grantee, its successors and assigns, conveys a fee simple determinable interest. Should Grantee fail to comply with the terms and conditions of the Transfer Agreement as described in Section 14 thereof, all the Property, together with all improvements, additions and replacements thereto as described in Section 14 of the Transfer Agreement, shall automatically revert and transfer to Grantor, or its successors and assigns, and the estate held by Grantee shall automatically terminate.

2.     <u>Fee Simple Subject to a Condition Subsequent</u>. This conveyance of the Property to Grantee, its successors and assigns is further made on the condition that Grantee comply with the other terms and conditions of the Transfer Agreement. It is the intention of the Grantor to create a fee which is subject to a condition subsequent, with the right of re-entry of the Grantor upon the Property, together with all improvements, additions and replacements thereto as authorized in Section 19 of the Transfer Agreement, in the event of a breach of the terms and conditions of the Transfer Agreement as described in Section 19 thereof.

TO HAVE AND TO HOLD the Property belonging to Grantee and its successors and assigns, in fee simple determinable and fee simple subject to a condition subsequent, as the case may be, subject to the right of reversion and transfer to Grantor upon failure of the conditions set forth above.

Grantor covenants with Grantee that Grantor is seized of said Land and Property in fee simple, that Grantor has the right to convey the same, that title thereto is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend said title against the lawful claims of all persons whomsoever, except for:

(i)     the right of reversion and transfer in Grantor set forth above; and

(ii)     all easements, rights of ways, ad valorem taxes subsequent to the date of this conveyance, and other restrictions and covenants of record.

Grantee by its acceptance of this Deed and by execution below hereby agrees and is legally bound by the terms and conditions hereof. The Transfer Agreement is hereby incorporated by reference as if fully set forth herein. Grantor hereby agrees to execute, when requested by Grantee, a release or subordination of its right of reversion and transfer in any

2

Property from the terms and conditions hereof and of the Transfer Agreement if such Property is to be transferred in accordance with Section 11 of the Transfer Agreement or subjected to indebtedness in accordance with Section 10 of the Transfer Agreement. Grantor further agrees that upon the delivery of this deed, the Agreement of Lease between Grantor and Grantee dated as of December 1, 1989 and all Supplemental Lease Agreements thereto shall terminate and become null and void.

      IN WITNESS WHEREOF, Grantor has caused this Deed to be executed in its name by its Chairman of the Board of County Commissioners and its corporate seal to be hereto affixed and attested by its Clerk of the Board of County Commissioners, all by authority of the Board of Commissioners of Grantor duly given.

COUNTY OF PITT, NORTH CAROLINA

BY: _Kennel K. Deers_
      Chairman, Board of County Commissioners

ATTEST:

_Susan G Banks_
Clerk





PITT COUNTY MEMORIAL HOSPITAL, INCORPORATED

BY: _Dave C. McRae_
      President

ATTEST:

_Walte Mourhed_
Secretary

[SEAL]

3

STATE OF NORTH CAROLINA
COUNTY OF PITT

I, the undersigned Notary Public for the aforesaid county and state, certify that
_Susan J. Banks_ personally came before me this day and acknowledged that
he/she is Clerk of the Board of County Commissioners of the County of Pitt, North Carolina; a
political subdivision of the State of North Carolina, and that by authority duly given and as the
act of said County, the foregoing North Carolina Deed of Conveyance and General Warranty
Deed was signed in its name by the Chairman of the Board of County Commissioners, sealed
with its seal, and attested by her/him as the Clerk of the Board of County Commissioners.

Witness my hand and official seal, this the 16th day of _September_, 1998.

_Katherine Marks_
Notary Public

My commission expires: My Commission Expires 6-17-2002

STATE OF NORTH CAROLINA
COUNTY OF PITT

I, the undersigned Notary Public for the aforesaid county and state, certify that
_Walter Morehead_ personally came before me this day and acknowledged that
he/she is Secretary of Pitt County Memorial Hospital, Incorporated, a North Carolina nonprofit
corporation, and that by authority duly given and as the act of the corporation, the foregoing
North Carolina Deed of Conveyance and General Warranty Deed was signed in its name by its
President, sealed with its corporate seal, and attested by her/him as its Secretary.

Witness my hand and official seal, this the 16th day of _September_, 1998.

_Katherine Marks_
Notary Public

My commission expires: My Commission Expires 6-17-2002

4

NORTH CAROLINA: Pitt County
The foregoing certificate(s) of _Katherine Marks_

Notary(ies) Public is (are) certified to be correct. Filed for registration at 11:52 o'clock _P_ M. this _17_
day of _September_ 19 _98_.

ANNIE G. HOLDER, Register of Deeds

By _Annie G. Holder_
Assistant/Deputy Register of Deeds

Attached to and made a part of the North Carolina Bill of Conveyance and General Warranty Deed dated September _16_ , 1998 by and between County of Pitt as Grantor and Pitt County Memorial Hospital, Inc. as Grantee.

## AGREEMENT TO CHANGE STATUS OF PITT COUNTY MEMORIAL HOSPITAL

THIS binding Agreement to change the status of Pitt County Memorial Hospital from a Public Hospital to a Private Not For Profit Hospital under the provisions of N.C.G.S. 131E-8 is made this _1st_ day of _June_ , 1998, by and between PITT COUNTY, a political subdivision of the State of North Carolina, hereinafter referred to as the "County" acting by and through its duly elected Board of County Commissioners, and PITT COUNTY MEMORIAL HOSPITAL, INC.a nonprofit corporation organized and existing under the provisions of Chapter 55A of the General Statutes of North Carolina, located in Greenville, North Carolina, hereinafter referred to as the "Corporation", is based upon the following objectives:

To maintain the viability of Pitt County Memorial Hospital to provide the highest quality healthcare to the Citizens of Pitt County and the Region.

To maintain Pitt County Memorial Hospital as an open facility to provide care to all patients regardless of ability to pay.

To maintain Pitt County Memorial Hospital as the academic medical teaching hospital for the East Carolina University School of Medicine pursuant to the terms of the Affiliation Agreement.

To maintain local control.

To strive to maintain financial integrity of Pitt County Memorial Hospital at the highest bond rating achievable for similarly situated hospitals.

To provide appropriate compensation to the County for transfer of Pitt County Memorial Hospital.

### WITNESSETH

1)     **STATUS OF THE PARTIES** That the County is the Owner and Lessor of various parcels of land, buildings, and all physical property known as Pitt County Memorial Hospital, hereinafter referred to as "Hospital" which is under long term lease to the Corporation, to operate a public general hospital.

2)     **PUBLIC NOTICE GIVEN** The County having received a request from the Corporation to change the status of the Hospital to provide it with the flexibility necessary to compete effectively in the changing healthcare market in the fulfillment of its mission to provide quality medical services to the citizens of a 29 county service region, and the County having thoroughly considered said request, has published public notice of the County Board's intention to complete a conveyance of the Hospital to the Corporation pursuant to NCGS 131E-8, now

specifies the terms and conditions to be resolved for such a conveyance to proceed as follows:

3)    **COMMUNITY GENERAL HOSPITAL** That both parties agree that it is in the best interest of both the County and the Corporation to reorganize the Hospital under the provisions of N.C.G.S. 131E-8, and thereby change its status from a public not for profit Hospital to a private not for profit Hospital. The Corporation will own, maintain and operate the Hospital as a community general hospital serving all of the citizens of Pitt County, open to the general public, free of discrimination based upon race, creed, color, sex or national origin. As set forth in Sections 9 and 14 herein, this reorganization will be accomplished through the conveyance of all hospital-related property to the Corporation pursuant to a restricted deed.

4)    **ANNUAL PAYMENT IN LIEU OF TAXES**    That the Corporation will agree to make annual payments in lieu of taxes to Pitt county. The first such payment will be in the amount of $1.2 Million payable on January 5, 1999. The Corporation will also make payments equivalent to the then current tax liability on real and its related personal property in Pitt County acquired after the date of this Agreement which had been previously taxed. Thereafter these payments will annually increase according to the inflation factor established by the Consumer Price Index, Bureau of Labor & Statistics, not to exceed 3.0 percent per year.

5)    **CONSIDERATION** The Corporation will pay to the County cash compensation in the amount of and in the manner specified as follows:

a)    $15 Million at the time of conveyance;

b)    $7.5 Million on the date of the first anniversary of the execution of this agreement; and

c)    $7.5 Million on the date of the second anniversary of the execution of this agreement.

6)    **INDIGENT CARE** That the Corporation will provide community general hospital services to the citizens of Pitt County without regard to their ability to pay for those services, consistent with its historical practice and expenditures with regard to indigent care services. The Corporation's historical and current practice is to provide care to all Pitt County residents, regardless of their race, color, creed, social status, national origin or ability to pay. The parties further acknowledge that circumstances in health care which are beyond the Corporation's control may occur which may reduce the actual dollar amount that has heretofore previously been expended towards indigent care without any resulting reduction in the nature or scope of services provided. In the event such a change in circumstances occurs, but the Corporation has in no way discriminatorily limited the level of services to indigent patients, then the Corporation shall have fulfilled the requirements of this Section.

**7) MEDICAID REIMBURSEMENT** That the Corporation will continue to contribute $452,000 toward reimbursing the County for Medicaid payments made by the County for services provided to County residents at the Hospital. Beginning with the first anniversary of the execution of this agreement, the Corporation's contribution to the County shall be increased annually by the inflation factor established by the Consumer Price Index, Bureau of Labor & Statistics, not to exceed 3.0 percent per year.

**8) NURSING PROGRAM** That the Corporation continue to maintain and fund at the current level the school nurse program, as presently constituted, for the Pitt County Board of Education as part of their mission to the community.

**9) CONVEYANCE OF HOSPITAL PROPERTY** That the County, in consideration of the covenants and obligations of the Corporation as set out herein, will convey by Deed unto the Corporation and its successors, subject to this Agreement, and the restrictions and conditions set forth herein, all of that property known as Pitt County Memorial Hospital, described in Exhibit "A" attached hereto and incorporated herein by reference, together with the County owned personal property, fixtures, equipment and other assets, tangible or intangible, associated with the Hospital (collectively referred to herein as "Hospital"). Upon the conveyance, the agreement of lease between the County and the Corporation will terminate.

**10) COVENANT ON INDEBTEDNESS** The Corporation covenants and agrees that it will not create or cause to be created any mortgage, deed of trust or similar encumbrance on the Hospital real property or any part thereof without the prior written approval of the Pitt County Board of Commissioners. The Corporation may incur other indebtedness which does not create a mortgage, deed of trust or other similar encumbrance on the existing Hospital complex real property so long as such indebtedness constitutes Permitted Indebtedness as defined in Exhibit B and incorporated herein by reference.

**11) DISPOSITION OF ASSETS** (a) The Corporation agrees that it will not sell, lease or otherwise dispose of real property constituting the Hospital without the prior written consent of the County; provided, however, that the Corporation may lease space in ancilliary buildings which do not constitute a part of the central hospital facilities to third parties on a short term basis or to the ECU School of Medicine. The Corporation will not allow all or a substantial portion of the Hospital system to be managed (whether by contract or otherwise) by an entity not controlled by the Corporation. The Hospital may not be sold or merged without the written consent of the County. If such approval is given, all net proceeds from any sale or merger shall go to the County.

(b) Except as otherwise limited above and by Section 13 below, the Corporation may dispose of assets consistent with standard hospital financing practices and as permitted by standards established by the Local Governement Commission and North Carolina Medical Care Commission to enable the Hospital to have operating flexibility; provided however, that the

Corporation shall not dispose of assets which would impair the functional utility of the Hospital or materially reduce the scope of services or mission of the Hospital within Pitt County. The standard measure of value of Assets which may be disposed of in any year shall not exceed 10% of the Corporation's unrestricted fund balance as shown on the Corporation's audited financial statements for its most recent fiscal year; provided, however, that the Corporation shall be entitled to transfer assets for fair market value, transfer assets to any controlled affiliate and otherwise dispose of assets in the ordinary course of business and obsolete equipment, without limitation. Disposition of assets exceeding these limitations will require written County Board approval.

(c) In any sale of assets located inside and outside of Pitt County, all proceeds shall accrue to the benefit of the Corporation, its corporate parent, if any, or any controlled affiliate.

**12)   MAINTENANCE OF TAX EXEMPT STATUS**  The Corporation shall maintain its status as a nonprofit, tax-exempt, charitable organization under the provisions of Section 501(c) (3) of the Internal Revenue Code.  The Corporation shall not be a private foundation under the provisions of Section 509(a) of the Internal Revenue Code

**13)   MAINTENANCE OF FINANCIAL STRENGTH**       The Corporation shall strive to maintain its current bond ratings or the highest bond ratings achievable for similarly situated hospitals and to maintain the financial viability and integrity of the Hospital. As a means to measure its compliance with this section, the Corporation agrees that it will maintain: 1) an annual long term debt service coverage ratio of 1.5 (calculated by dividing its income available for debt service for its most recent fiscal year by its actual long term debt service requirement for the same fiscal year) and 2) an annual cash cushion ratio of 1.4 (calculated by dividing its unrestricted cash and investments for its most recent fiscal year by its actual long term debt service requirement for the same fiscal year).    Should the Corporation fail to maintain these ratios, the County shall be immediately notified.  In addition a consultant shall immediately be hired by the Corporation to determine what steps are necessary to correct the financial condition which created the failure to meet these ratios and all necessary steps shall be taken by the Corporation to improve its financial performance in order to meet or exceed the required ratios. Failure to follow the consultant's recommendations shall create the right of the County to a discretionary reversion of the Hospital.

**14)   REVERSION OF HOSPITAL**     Any failure by the Corporation to make payments to the County as specified in this Agreement, to maintain the historic level of indigent care consistent with historical practice and expenditures as described in Section 6, or if the Corporation should cease to operate the Hospital as a community general hospital open to the general public, or not be accredited or fail to have its accreditation reinstated within a period specified by the Joint Commission on Accreditation of Healthcare Organizations, or an equivalent accrediting organization or Agency, or should the Corporation dissolve without a successor nonprofit corporation approved by the Board of County Commissioners of Pitt County to carry out the terms and conditions of this conveyance, all ownership rights in the Hospital,

including the buildings and land, together with the personal property and equipment associated with the Hospital, including replacements thereof, shall automatically revert to the County by power of termination for covenants, restrictions, and conditions broken.

**15)    PAYMENT OF OUTSTANDING BONDS**    Prior to or simultaneously with the conveyance of the Hospital, the County shall receive certification from the North Carolina Local Government Commission that all outstanding county revenue bond issues for the construction, renovations or support of Pitt County Memorial Hospital, have been duly redeemed or defeased as required by the provisions of G.S. 131E-8. The Corporation shall be solely responsible for all costs associated with the defeasance and the payment of the outstanding bond indebtedness.

**16)    AFFILIATION WITH MEDICAL SCHOOL**    The Corporation shall maintain its affiliation with the East Carolina University School of Medicine, according to the Affiliation Agreement between the Medical School, the County and Corporation. The Hospital shall continue to serve as the primary academic teaching Hospital of the University.

**17)    COMPLIANCE REPORTS**    The Corporation shall provide an annual audit to the County confirming its compliance with all of the terms and conditions of this Agreement, within one hundred fifty (150) days of the end of its fiscal year.

**18)    GOVERNANCE**    (a) The Corporation's affairs will be governed by a 20-member board of trustees. The County will appoint 11 or 55% of the governing body of the Corporation (at least one of whom shall be a Pitt County physician).  The UNC Board of Governors will appoint the remaining 9 seats or 45% of the governing body of the Corporation. Of these 9, one member will be appointed from a slate of four persons nominated by a nominating committee composed only of trustees appointed by UNC Board of Governors. Any current Trustee who is eligible for the reappointment shall remain eligible for reappointment. Neither the County nor UNC Board of Governors shall remove any of their appointed Trustees except for cause.  Except in connection with the creation of a controlling parent corporation as described in Section 18(b) below, no further amendment to the Corporation's Articles of Incorporation or bylaws relating to appointment and composition of its Board of Directors shall be made without the prior written consent of the County; provided however that the Trustees shall serve staggered 5 year terms, not to exceed two consecutive terms.  A supermajority of 85% of the Trustees is required to approve certain extraordinary actions such as: 1) sale or dissolution of the Corporation; 2) sale or transfer of assets in cash or in kind, including services to or for the benefit of the County except as otherwise required by this agreement; 3) the amendment of the Corporation's Articles of Incorporation or bylaws relating to appointment and composition of its Board of Directors with County consent; 4) the creation of a controlling parent corporation;  and 5) the appointment or removal of corporate officers, including those currently serving, without cause.  Any executive committee with the power to act in place of the Board of Trustees and the Boards of all affiliates of the Hospital shall reflect the same proportional representation as the Hospital Board. Prior to a Trustee's appointment or nomination to the Board, he or she shall be

required to accept in writing the obligation of independent fiduciary service in protecting and promoting the best interests of the Corporation notwithstanding any prior, current or future affiliation. No Trustee shall receive any monies for their service to the Hospital or to any of the affiliates while a member of the Board of Trustees of the Hospital

(b) The Corporation shall be permitted to create a controlling parent corporation. Upon any reorganization of the Corporation to provide for a controlling parent corporation, the governing board of that parent corporation shall be appointed utilizing to the extent mathematically possible the same percentages for board appointments or nominations by the various institutions as set forth above, regardless of whether this board is larger or smaller in actual size; provided however that the pool of individuals which may be appointed or nominated for appointment may only include existing members or former members of the Corporation's board of trustees in order to ensure the service of experienced individuals.

19) **DISCRETIONARY REVERSION** Violation of the governance provision set forth in Section 18 or breaches of business and financial covenants contained in Sections 8,10,11,12 and 13 that have not been cured within a reasonable time frame will not result in an automatic reversion of the Hospital, but will result in the County's right to cause a reversion of the Hospital at its discretion.

20) **OPEN MEETINGS** The Corporation shall continue to operate under the Open Meetings Act, with Board meeting open to the general public. The Board of Commissioners shall receive notice of all meetings of the Corporation and shall have access to all closed sessions upon their individual execution of a confidentiality agreement.

21) **FEES AND EXPENSES** The Corporation will pay the County's expenses, including attorneys' fees, consultant fees and accounting fees, related to this Agreement and the negotiations preceding this Agreement.

22) **INDEMNIFICATION** The Corporation shall indemnify and hold the County harmless from any damages, expenses or losses resulting from all liabilities and obligations of any nature, which are attributable to the ownership or operation of the Hospital.

23) **NOTICES** Any notices or other communication required to be given pursuant to this Agreement shall be in writing and shall be sent certified mail, return receipt requested to the parties as follows:

THE COUNTY            Pitt County Board of Commissioners
                                   Chairman and County Manager
                                   1717 W. 5th Street
                                   Greenville, NC 27834

THE CORPORATION     Pitt County Memorial Hospital, Inc.
Chairman and Hospital President
2100 Stantonsburg Road
Greenville, NC 27834

**24) ENTIRE AGREEMENT**    This Agreement represents the entire agreement and understanding of the parties hereto and supersedes all prior or concurrent agreements, whether written or oral, in regard to the subject matter hereof.

**25) BINDING AGREEMENT**    This Agreement shall be binding upon the successors or assigns of the parties hereto upon execution; provided that, other than as may be required in connection with the creation of a controlling parent corporation in connection with Section 18(b), no assignment hereof by either party is permitted without the written consent of both parties.

**26) RELATIONSHIP TO THE PARTIES**    The relationship between the County and the Corporation is that of independent contractors, and neither shall be considered an agent or representative of the other for any purpose.

**27) COMPLIANCE WITH TERMS**    Failure to insist upon strict compliance with any part of the terms herein (by way of waiver or breach) by either party hereto shall not be deemed to be a continuous waiver in the event of any future breach or waiver of any condition hereunder.

**28) FURTHER AGREEMENTS**    The Corporation and the County agree to take such further action and to execute all documents, assignments and amendments to documents, including the deed to convey the Hospital, the Affiliation Agreement, the Corporation's Articles of Incorporation and Bylaws, as well as documents related to the defeasance of the outstanding county revenue bonds, necessary to effectuate the terms of this Agreement. The conveyance contemplated in this agreement and the obligations of the parties herein are subject to N.C.G.S. 131E -8.

IN TESTIMONY WHEREOF, the County has caused this Agreement to be executed on its behalf by the Chairman of the Board of Commissioners for Pitt County, attested by its Clerk, with its corporate seal hereto affixed, all on the day and year first above written and by authority duly given. The Corporation has caused this Agreement to be executed on its behalf by the Chairman of the Board of Trustees of Pitt County Memorial Hospital, attested by its Corporate Secretary, with its corporate seal hereto affixed for purposes of consenting to the terms, restrictions, covenants and conditions set forth herein.

(SEAL)                                          PITT COUNTY

_Kenneth K. Dews_ (signature)

Kenneth K. Dews, Chairman
Board of Commissioners

ATTEST:

_Susan J. Banks_ (signature)

Susan J. Banks
Clerk to the Board


(CORPORATE SEAL)                    PITT COUNTY MEMORIAL HOSPITAL, INC.

_(signature)_

Chairman, Board of Trustees

ATTEST:

_Walter E. Morehead_ (signature)

Corporate Secretary

EXHIBIT A

REAL PROPERTY DESCRIPTION

All of that property currently held by Pitt County as the recorded owner, constituting the existing Pitt County Memorial Hospital Complex located at 2100 Stantonsburg Road, Greenville, Pitt County, North Carolina, more particularly described as follows:

1. Approximately 56.5 acres of land, with improvements, of the 97.25 acres conveyed to Pitt County, North Carolina, a body corporate and politic, by Novella Moye Williams, Jesse Rountree Moye, Emily Moye Hadley, and Joseph S. Moye and wife, Elizabeth T. Moye by deed dated August 18, 1971 and recorded in Deed Book I-40, Page 101 in the Pitt County Registry, and as attached to the 1989 Lease Agreement between Pitt County and Pitt County Memorial Hospital and as attached to the First Supplemental Lease Agreement thereafter;

2. The real property underlying the Data Center of Pitt County Memorial Hospital located on Beasley Drive and Emergency Drive in Greenville, North Carolina, said property being Parcel 1: Lots 1, 2, 3, & 4, Block H, Section III Professional Center and Parcel 2: 17 feet former right of way of Medical Drive as described in Deed Book 269, Page 116, as shown on a map of record in Map Book 28, Page 253 of the Pitt County Registry;

3. The real property, with improvements, constituting the Pitt County Warehouse as shown on a survey of record prepared by Rivers and Associates dated March 16, 1993, and recorded in Map Book 42, Page 167 of the Pitt County Registry, and as attached to the Second Supplemental Lease Agreement between Pitt County and Pitt County Memorial Hospital, Inc.;

4. The real property constituting the Pitt County Memorial Hospital O'Hagan Parking Lot containing approximately 2.9 acres as described in Deed Book 336, Page 80 and shown on a map of record in Map Book 40, Page 86 of the Pitt County Registry, and as attached to the Second Supplemental Lease Agreement between Pitt County and Pitt County Memorial Hospital, Inc.; and

5. All of the land currently held in the name of Pitt County which constitutes the Hospital Parking Lot(s) including, but not limited to, all land which is described, in part, in Deed Book Q-33, Page 40 and Deed Book V-40, Page 674 of the Pitt County Registry.

# EXHIBIT B

"Permitted Indebtedness" means:

(a)   Long-Term Indebtedness if, prior to the incurrence of such Long-Term Indebtedness there is delivered to the County:

(1)   An officer's certificate to the effect that (A) immediately after the incurrence of the proposed Long-Term Indebtedness, the aggregate principal amount of all Long-Term Indebtedness does not exceed 65% of Total Capitalization, and, based on the most recent period of 12 full consecutive months for which audited financial statements are available, the incurrence of the proposed Long-Term Indebtedness shall not reduce the Long-Term Debt Service Coverage Ratio to less than 1.10; or (B) the Long-Term Debt Service Coverage Ratio for the most recent period of 12 full consecutive calendar months preceding the date of delivery of such evidence for which financial statements are available, taking all outstanding Long-Term Indebtedness and the proposed Long-Term Indebtedness into account, is not less than 1.20; or

(2)   (A) evidence demonstrating that the Long-Term Debt Service Coverage Ratio for the period mentioned in paragraph (a)(1)(B), excluding the proposed Long-term Indebtedness, is at least 1.10 and (B) an officer's certificate of the Corporation demonstrating that the forecasted Long-Term Debt Service Coverage Ratio for each of the two full Fiscal Years succeeding the date of completion of the facilities being financed with the proceeds of such proposed Long-Term Indebtedness (or, in the case of Long-Term Indebtedness not financing capital improvements, for each of the two full Fiscal Years succeeding the date of incurrence of such Long-Term Indebtedness), taking all outstanding Long-Term Indebtedness and the proposed Long-Term Indebtedness into account, is not less than 1.20, as shown by forecasted financial statements for each such period, accompanied by a statement of the relevant assumptions upon which such forecasted financial statements are based; provided, however, that if an officer's certificate states that Governmental Restrictions have been imposed which make it impossible for the coverage requirements of this subsection to be met, then such coverage requirements shall be reduced to the maximum coverage permitted by such Governmental Restrictions but in no event less than 1.00; or

(3)   Without compliance with either of the tests mentioned in (1) and (2) above, additional Long-Term Indebtedness in an amount not to exceed 20% of Total Operating Revenues for the most recent Fiscal Year for which audited financial statements are available. The total amount of Long-Term Indebtedness incurred under this clause (3) and outstanding without compliance with one of the tests mentioned in (1) and (2) above may not in the aggregate exceed at any time 20% of Total Operating Revenues for the most recent Fiscal Year for which audited financial statements are available.

NONE

(b)  Indebtedness to complete a project already begun for which Indebtedness was approved or permitted hereby without limitation provided there is an architect's estimate of the completion costs and a certificate of the Corporation (1) stating that such Indebtedness will be sufficient to complete the construction or acquisition and (2) explaining why such Indebtedness is being incurred.

(c)  Long-Term Indebtedness to refund any outstanding Long-Term Indebtedness if the Corporation shall have adopted a resolution finding that such refunding is in the best interest of the System.

(d)  Short-Term Indebtedness if immediately after the incurrence of such Indebtedness, the unpaid principal balance of all such Short-Term Indebtedness to be incurred together with the unpaid principal balance of all Short-Term Indebtedness outstanding does not exceed 25% of the Total Operating Revenues for the most recent period of 12 full consecutive months for which financial statements are available.

(e)  Indebtedness having a term of 60 months or less issued in anticipation of financing of capital improvements by the issuance of Long-Term Indebtedness, provided that, at the time such Indebtedness is incurred:

(1)  Evidence (which shall be accompanied by and based on an opinion of a banking or investment banking institution knowledgeable in health care finance) is present that the anticipated financing is reasonably expected to be completed within the next 60 months; and

(2)  The conditions described in (a)(1)(A) or (B) or (a)(2) are met with respect to such Indebtedness as if it were being repaid in substantially level annual debt service over a term of 20 years and bearing interest at an interest rate at which it would reasonably expect to borrow the same amount by issuing an obligation with the same term.

(f)  Balloon Long-Term Indebtedness with a term in excess of 60 months (if such Indebtedness has a term of 60 months or less, the provisions of paragraph (e) hereof shall apply) provided at the time such Indebtedness is incurred any of the incurrence tests set forth in paragraph (a) can be met.

(g)  Variable Rate Indebtedness provided at the time such variable Rate Indebtedness is incurred any of the incurrence tests set forth in paragraph (a) can be met.

(h)  Put Indebtedness provided at the time such Indebtedness is incurred (1) any of the incurrence tests described in paragraph (a) can be met and (2) either (A) a binding commitment from a bank or other financial institution exists to provide financing sufficient to pay the purchase price or principal of such Put Indebtedness on any date on which the owner of such Put Indebtedness may demand payment thereof pursuant to the terms of such Put Indebtedness or (B) the Corporation has agreed to provide such financing itself and such Put Indebtedness has received the highest short-term rating from either Moody's or Standard & Poor's.

(i)   Interest Liability Swaps without limitation.

(j)   Non-Recourse Indebtedness without limitation provided the Liens therefor are Permitted Liens.

(k)   Liability under a line of credit, letter of credit, standby bond purchase agreement or similar credit enhancement or liquidity facility established in connection with any other Permitted Indebtedness.

(l)   Indebtedness secured by a lien on Accounts if immediately after the incurrence of such Indebtedness, the amount of such Accounts pledged to secure Indebtedness issued under this paragraph (l) and then outstanding will not exceed the difference between (1) the Account Lien Amount and (2) 110% of the Book Value of Accounts sold in the current Fiscal Year; provided, however, (A) the determination of whether a disposition of Accounts is a sale or loan shall be made in accordance with generally accepted accounting principles and (B) any Indebtedness issued under this paragraph (l) shall also be considered Short-Term Indebtedness subject to the incurrence test set forth in paragraph (d).

All capitalized terms utilized in this Exhibit B shall have the meanings generally assigned thereto in a representative master trust indenture used in financings effected through The North Carolina Medical Care Commission.

**EXHIBIT B**

Attached to and made a part of the North Carolina Bill of Conveyance and General Warranty Deed dated September __16__, 1998 by and between County of Pitt as Grantor and Pitt County Memorial Hospital, Inc. as Grantee.

**TRACT NO. ONE**
**Hospital Property**

That certain tract or parcel of land lying and being situate in Greenville Township, County of Pitt, State of North Carolina, and more particularly described as follows:

BEGINNING at an iron stake where the common dividing line between the Pitt County property and the Professional Center (Doctor's Park) intersects the former northern right-of-way line of N.C.S.R. 1200, Stantonsburg Road (now U.S. Highway No. 264) as shown in a map prepared by Rivers and Associates, Inc., dated August, 1971, it being Drawing No. 2428, and running thence along said common dividing line N 32-00 E 1,374.87 feet to an iron stake, and continuing N 32-00 E 157.83 feet to a point, a corner, it being the southwest corner of the property deeded to the State of North Carolina (for E.C.U. School of Medicine) as described in Book K-44, page 75, of the Pitt County Registry; thence along the southern property line of the State of North Carolina property, the following courses and distances: N 87-27-20 E 839.55 feet to a stake, a corner; S 02-32-40 E 100 feet to a stake, a corner; N 87-27-20 E 165.85 feet to a stake, a corner; S 02-35-20 E 18 feet to a stake, a corner; N 87-27-20 E 279.0 feet to a stake, a corner; N 02-32-40 W 18 feet to a stake, a corner; thence N 87-27-20 E 284.73 feet to a stake in the old western right-of-way line of N.C.S.R. 1267 as shown on a map in Map Book V-51, Page 672 of the Pitt County Registry, a corner; thence along the old western right-of-way line on N.C.S.R. 1267 (Moye Blvd.) the following courses and distances; S 06-10 W 89.54 feet to a stake; S 03-34 W 101.28 feet to a stake; S 01-16 W 101.26 feet; S 01-15 E 101.2 feet; S 02-35 E 680.30 feet; S 42-25 W 127.3 feet to a stake in the former right-of-way line of N.C.S.R. 1200, as shown on Drawing No. 2428 hereinabove referred to, a corner; thence along the aforesaid former right-of-way line of N.C.S.R. 1200, S 87-26 W 2,316.08 feet to the point of BEGINNING, containing 56.45 acres, more or less, and being the property on which Pitt County Memorial Hospital is located.

Excepted from the above description are the present rights-of-way to the N.C. Department of Transportation in N.C.S.R. 1267, N.C.S.R. 1200 (U.S. Highway No. 264) and such right-of-way on the Emergency Road which extends along the western line of the above described property.

The foregoing property is subject to easement and permits which are of public record of Pitt County and subject to recorded and unrecorded leases.

The foregoing property was acquired by the County of Pitt on the 18th day of August, 1971, by a Deed from the Moye Heirs in Book I-40 at Page 101, and subsequent thereto portions of the property described in said Deed were conveyed to the State of North Carolina in Book L-44, Page 75, dated the 15th day of January, 1976, being 40.71 acres, and a Deed to the State of North Carolina in Book V-51, Page 667, dated the 19th day of May, 1983, conveying 1.12 acres, which leaves approximately 56.45 acres including the property formerly occupied by the Pitt County Department of Mental Health.

### TRACT NO. TWO
#### Data Center

Those certain lots or parcels of land lying and being situate in the City of Greenville, Pitt County, North Carolina and being more particularly described as follows:

**PARCEL 1.** Being all of Lots 1, 2, 3 and 4 of Block "H", Section III, of Professional Center as shown on map recorded in Map Book 28 at Page 253, of the Pitt County Registry and which map is incorporated herein by reference for a more complete and accurate description.

**PARCEL 2.** BEGINNING at a point, said point being located at the southwest corner of Lot No. 1, Block "H" as shown on map of Professional Center, Section III, recorded in Map Book 28, Page 253, of the Pitt County Registry, and running thence with the western line of Lot No. 1 N 32-00 E 200 feet to a point; running thence N 58-00 W 17 feet to a point; running thence S 32-00 W 200 feet to a point; running thence S 58-00 E 17 feet to the point of BEGINNING, and being the eastern 17 feet of the former right of way of Medical Drive, now withdrawn from dedication.

This conveyance is made subject to those certain Restrictive Covenants of record in Book Q-54, Page 543, of the Pitt County Registry.

Reference is hereby made to a map in Map Book 32, at page 290 of the Pitt County Registry, which combines all of Lot No. 1, Block "H" with the additional 17 feet described in Parcel 2, described above, for a more complete and accurate description.

**TRACT NO. THREE**
Pitt County Warehouse

Lying and being situate in the City of Greenville, Pitt County, North Carolina and beginning at an iron pipe set located on the eastern right-of-way line of a 60-foot access easement described in Deed Book 336, Page 75, Pitt County Registry, said point being located S 25-48-25 W 92.06 feet from the northeast corner of the 60-foot access easement referred above at its northern terminus; thence from the POINT OF BEGINNING, S 65-00-00 E 212.09 feet to an iron pipe set located in western property line of the Pitt County Memorial Hospital property described in Deed Book 294, Page 74, Pitt County Registry, the northeast corner of the tract described herein; thence along the western property line of the Hospital property S 25-15-22 W 128.75 feet to an existing iron pipe; thence continuing S 25-21-15 W 251.22 feet to an existing iron pipe, a corner in the eastern terminus of a 60-foot access easement hereinafter described; thence along the northern line of said 60-foot access easement N 65-00-00 W 215.31 feet to a point in the eastern line of the 60-foot access easement described in Deed Book 336, Page 75, Pitt County Registry said point being marked by an 'X' mark on a telephone pedestal; thence along the eastern line of the 60-foot access easement described in Deed Book 336, Page 75, N 25-48-25 E 380.00 feet to the POINT OF BEGINNING, containing 1.8647 acres, more or less, as shown on "Survey For Pitt County Memorial Hospital, Inc., Warehouse Lot", prepared by Rivers and Associates, Inc. drawing number P-395-X dated March 16, 1993 attached to the Second Supplemental Lease Agreement between Grantor and Grantee dated as of February 1, 1994. See also map of record in Map Book 42, Page 167, Pitt County Registry, which map by reference is made a part hereof for a more particular description.

TOGETHER WITH a nonexclusive appurtenant easement of ingress and egress over and across that certain parcel of land, more particularly described as follows:

BEGINNING at a point in the eastern line of a 60-foot access easement described in Deed Book 336, Page 75, Pitt County Registry said point being the southwest corner of the property described above marked by an 'X' mark, on a telephone pedestal; thence along the southern line of property described above S 65-00-00 E 215.31 feet to an existing iron pipe, a corner in the eastern terminus of the 60-foot access easement described herein and a point in the western line of the Pitt County Memorial Hospital property described in Deed Book 294, Page 74, Pitt County Registry; thence along the western line of the Hospital property S 25-00-00 W 60.00 feet to an iron pipe set, the southeast corner of the 60-foot access easement described herein at its eastern terminus, said point also being the northeast corner of the Pitt County Property described in Deed Book Q33, Page 40, Pitt County Registry, thence along the northern line of the Pitt County Property described in Deed Book Q33, Page 40, Pitt County Registry N 65-00-00 W 216.16 feet to an existing "P.K." nail, a corner in the 60-foot access easement described in Deed Book 336, Page 75, thence with the 60 foot access easement described in Deed Book 336, Page 75, N 25-48-25 E 60.00 feet to the point of BEGINNING, being a right of ingress and egress 60 feet in width, as shown on "Survey For Pitt County Memorial Hospital, Inc., Warehouse Lot", prepared by Rivers and Associates, Inc. Drawing Number P-395-X, dated March 16, 1993 attached to the Second Supplemental Lease Agreement between Grantor and Grantee dated as of February 1, 1994. See also map of record in Map Book 42, Page 167, Pitt County Registry, which map by reference is made a part hereof for a more particular description.

### TRACT NO. FOUR
O'Hagan Parking Lot

BEGINNING at a P.K. nail set at the point of intersection of the southwestern right-of-way line of O'Hagan Place and the northwestern right-of-way line of a private street known as Venture Tower Drive at the northwestern terminus of Venture Tower Drive (Venture Tower Drive being shown on the map hereinafter referred to as a 30-foot ingress/egress and utility easement), said beginning point also being 255.06 feet from right-of-way of Memorial Drive, all as shown on map hereinafter referred to; thence along the southwestern right-of-way line of O'Hagan Place, N. 67- 21- 34 W. 579.29 feet to an existing iron pipe, cornering in the line of Pitt County Property; thence along the southeastern line of Pitt County Property, S. 24-34-22 W. 109.92 feet to an iron stake set, and continuing along the southeastern line of Pitt County Property, S. 25- 15- 22 W. 105.87 feet to an iron stake set, a new corner for Pitt County Memorial Hospital, Inc., cornering; thence along a new line of Pitt County Memorial Hospital, Inc., S. 67- 21-34 E. 593.09 feet to an iron stake set in the northwestern right-of-way line of Venture Tower Drive; thence along the northwestern right-of-way line of Venture Tower Drive, N. 21-14-32 E. 215.68 feet to a P.K. nail set in the southwestern right of way of O'Hagan Place, the point of BEGINNING containing 2.9 acres, more or less, as shown on "Final Plat for Pitt County Memorial Hospital," prepared by Rivers and Associates, Inc. dated November 13, 1991, recorded in Map Book 40, page 86, Pitt County Registry, to which map reference is made for a more particular description, and being part of that parcel conveyed by Trent Land Company to Pitt County Memorial Hospital, Inc., by deed dated March 15, 1990, recorded in Book 259, page 681, Pitt County Registry. See also deed in Book 336, page 80 of the Pitt County Registry.

TOGETHER WITH A nonexclusive appurtenant easement of ingress and egress over and across a 30-foot private right-of-way known as Venture Tower Drive, a portion of which runs along the easternmost property line of the above-described tract of land.

## TRACT NO. FIVE
### Hospital Parking Lots

That certain tract lying and being in the City of Greenville, Pitt County, North Carolina, which is part of the parking lot of Pitt County Memorial Hospital and which is more particularly described as follows:

BEGINNING at an existing P.K. Nail in the southern right-of-way line of an ingress-egress easement across from the Pitt County Memorial Hospital Child Care Center, which nail measures S 65-00 E 776.61 feet from an existing iron pipe in the eastern right-of-way line of Moye Boulevard (NCSR 1267), and which existing iron pipe measures S 07-03 W 63.04 feet from the existing iron pipe, which is the southwest corner of the property presently owned by the State of North Carolina; and running thence from said point of beginning, S. 65-00 E 216.16 feet to an iron pipe set, a corner; thence S 25-00 W 433.9 feet to a concrete monument; thence S 25-03 W 137 feet to a stake, a corner; thence N 65-00 W 760.37 feet to an iron stake, a corner in the eastern right-of-way line of Moye Boulevard (NCSR 1267); thence along said right-of-way line N 02-48 W 88.94 feet; and N 02-20 W 65.60 feet to a concrete monument in the eastern right-of-way line of Moye Boulevard, a corner, it being the southwest corner of the property of the Greenville Nursing and Convalescent Home; thence S 65-00 E 391.29 feet to an iron stake, the southwest corner of Tract No. 2, as shown on a map in Map Book 11, at page 94 ( as amended in Map Book 18, page 28) of the Pitt County Registry, a corner; thence along the western property line of Tract No. 2, N 25-00-E 433.9 feet to a stake in the southern right-of-way line of the ingress-egress easement, aforesaid, a corner; thence S 65-00 E. 224.82 feet to the point of BEGINNING, containing approximately 7 acres, more or less, and being the major portion of Tract No. 2 described in a deed in Book Q33, at page 40 of the Pitt County Registry, and further being all of that tract described in a deed in Book V-40, at page 674, of the Pitt County Registry to which deeds reference is hereby made for a more complete and accurate description. Further reference is hereby made to Map Book 11, at page 94, as amended in Map Book 18, page 28, of the Pitt County Registry.