IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISON
Civil Action No. 4:24-cv-00051-M-RN

| | | |
|---|---|---|
| CYNTHIA B. AVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF LAW IN |
| FARIS C. DIXON, JR., District Attorney; | ) | SUPPORT OF DEFENDANT |
| VIDENT/ECU HEALTH MEDICAL | ) | DIXON'S MOTION TO DISMISS |
| CENTER DR. KAREN KELLY, Medical | ) | |
| Examiner; JOHN/JANE DOE; JOHN/JANE | ) | |
| DOE; JOHN/JANE DOE, | ) | |
| | ) | |
| Defendants. | ) | |

NOW COMES Defendant Faris C. Dixon, Jr., and hereby submits this memorandum of law in support of his motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

Plaintiff Cynthia Avens ("Plaintiff" or "Ms. Avens") filed this action on March 22, 2024, under 42 U.S.C. §§ 1981, 1983, 1985, 1988, and 2000d and 18 U.S.C. § 241, seeking redress for violations of constitutional rights. (DE 1 p. 1)[1] There are three named defendants: 1) Faris C. Dixon, District Attorney for the 3rd Prosecutorial District of the State of North Carolina; 2) VIDENT/ECU Health Medical Center ("ECU Health"); and 3) Karen Kelly, medical examiner ("ME") at the Regional Autopsy Center in Greenville, North Carolina. (DE 1 pp. 1-2)

Plaintiff does not set out any claims in her Complaint. Based on a liberal

---

[1] Citations to Plaintiff's Complaint will refer to the docket entry number (DE 1), page number and paragraph number, if applicable.

reading of the Complaint, it appears Plaintiff alleges the following legal claims as to

DA Dixon:

- Mr. Dixon engaged in conduct that goes beyond the scope of his official duties by obstructing justice and conspiring to obstruct justice, thus violating and conspiring to violate Plaintiff's First and Fourteenth Amendment rights. (DE 1 p. 50 ¶ 1)
- Mr. Dixon used his prosecutorial discretion as a tool to enable his abuse of power and authority, undermining justice and manipulating the legal process. (DE 1 p. 50 ¶ 2)
- Mr. Dixon engaged in selective prosecution when he did not bring criminal charges against anyone for the death of Ms. White, (DE 1 p. 50 ¶ 106)

Ms. Avens alleges injury of financial losses and pain and suffering. Ms. Avens

requests monetary compensation for equipment expenses, legal costs, medical

expenses, employment impact, website maintenance, and pain and suffering totaling

$156, 654, 559.04. (DE 1 p. 58 ¶ 5) She also asks this Court to order a criminal

investigation into the death of Ms. White, appoint a special prosecutor to oversee the

investigation and conduct an investigation into the actions of the named defendants,

and requests the federal court launch its own investigation. (DE 1 p. 57 ¶¶ 1-3). She

also requests a "public symbol honoring Keisha Marie White." (DE 1 p. 57 ¶ 4).

## STATEMENT OF FACTS RELEVANT TO THE CLAIMS AGAINST DA DIXON

Plaintiff Cynthia Avens' claims concern the death and related investigation

into the death of her daughter, Keisha Marie White ("Ms. White") while she was an

inpatient at Vidant/ECU Health Medical Center ("ECU Health Medical Center").

(DE 1 pp. 3-4 ¶¶ 1-4; pp. 50-53 ¶¶ 1-8)  Ms. White was admitted on April 16, 2014,

and died on May 10, 2014. (DE 1 p.3 ¶¶ 1-2) During her admission, Ms. Avens alleges

that the nurse on duty ("Brixon") failed to perform her nursing duties while assigned

to care for Ms. White. (DE 1 pp. 5-16 ¶¶ 13 -67) Ms. Avens believes that Brixon's lack of concern and disregard for her daughter's life is what caused her death, including the fact that Brixon did not properly record Ms. White's cardiac issues. Id. Ms. Avens also alleges that Brixon's actions support the basis for criminal charges for "every degree of homicide from involuntary manslaughter to first-degree murder, including NCGS 14-32.2 whereby patient abuse and neglect is the proximate cause of death it shall be punished as a Class C felony." (DE 1 p. 14 ¶ 64)

Subsequent to her daughter's passing, ECU Health took the following actions: terminated Brixon's employment, submitted a formal complaint on June 2, 2014 to the North Carolina Board of Nursing ("NCBON"), and notified law enforcement. (DE 1 pp. 17-18 ¶¶2- 3). Ms. Avens also reported the incident to NCBON and requested that ECU Health risk management, the North Carolina State Bureau of Investigation ("SBI") and Greenville Police Department initiate a criminal investigation into the death of Ms. White. (DE 1 pp. 18-21 ¶¶ 3-13) An SBI agent suggested that Ms. Avens contact the district attorney's office which she did in the summer 2014. (DE 1 pp. 21-22 ¶¶ 13-14, 17)

Ms. Avens spoke with Assistant District Attorney Futrell ("ADA Futrell") who initially seemed concerned and interested in helping her. (DE 1 p. 22 ¶ 17) A few days later, Ms. Avens called ADA Futrell again to provide additional information, but his demeanor had changed. (DE 1 p.22 ¶ 19) After speaking to his boss, District Attorney Kimberly Robb ("DA Robb"), both ADA Futrell and DA Robb agreed that a crime had not been committed against Ms. White. Id. Between 2014 and 2018, Ms. Avens made

multiple attempts to convince GPD or DA Robb to pursue a criminal case in relation to her daughter's death. (DE 1 pp. 26-28 ¶¶ 36-44) She met with Internal Affairs officer, Sgt. Tim McInerney to discuss the concerns she had about the investigation into Ms. White's death. (DE 1 pp. 27 ¶ 39-40) She was told by multiple agencies, including the DA's office, that no crime had occurred. Id. Even after DA Robb left office in 2018, Ms. Avens continued her efforts to convince the DA's office to investigate her daughter's death under the newly elected DA, Faris Dixon. (DE 1 pp. 28-29 ¶ 44-45)

On October 24, 2019, DA Dixon had a meeting with Ms. Avens in which he informed her that no crime had occurred. (DE 1 p. 29 ¶ 46) In July 2021, DA Dixon "provid[ed] insights into the conclusions of the prior administration" in response to Ms. Avens' inquiries about the investigation. (DE 1 p. 29 ¶ 48) After eighteen months of no additional response from DA Dixon, Ms. Avens created a Facebook post in February of 2022 and tagged DA Dixon. (DE 1 p. 30 ¶ 50) In March 2022, Ms. Avens received a letter from DA Dixon which detailed the evidence he had reviewed leading to his determination that no crime had occurred in relation to Ms. White's death. (DE 1 p. 30 ¶¶ 50-52) The letter listed the following:

     a. The death certificate that stated the manner of death was natural.
     b. The absence of a performed autopsy.
     c. The opinion of natural death by the former chief medical examiner, Dr. Radisch, MD. MPH.
     d. The conclusion of NC SBI Special Agent Matherly's investigative findings.
     e. The conclusion of the GPD's investigative findings.
     f. Various medical records from 2014.
     g. The 2014 report of findings from the NCDHHS

investigation.

Id. Ms. Avens believes that DA Dixon's initial investigation and review of the above was incomplete, so she asked him to review additional evidence including Sgt. McInerney's internal affairs files and the 194-page NCBON report. (DE 1 pp. 30-35 ¶¶ 53-58, 64)

In July 2022, after reviewing the additional evidence, DA Dixon still believed that no crime had occurred and that a new report from the Pitt County ME did not support bringing criminal charges. (DE 1 pp. 34-35 ¶¶ 63-64). DA Dixon would not provide a copy of the ME's report to Ms. Avens, did not allow her to inspect the report in person, and did not disclose who signed the report. Id. Ms. Avens requested that an independent medical examiner ("IME") be retained to investigate. (DE 1 p. 36 ¶ 65). DA Dixon said he would not use an IME because it would raise questions for the jury about the fact that an outside medical examiner was used instead of the usual, local ME. Id. Ms. Avens contacted the Pitt County ME's office and asked about the report DA Dixon mentioned. (DE 1 p. 36 ¶¶ 66-67) Neither the Pitt County ME's office nor the DA's office could locate a copy of the report. Id. Ms. Avens believes that DA Dixon lied to her during the July 2022 telephone conversation. (DE 1 p. 37 ¶ 68)

A few days after that phone call, DA Dixon called Ms. Avens saying that he would submit the evidence to the ME's office. Id. Ms. Avens felt that DA Dixon was verbally abusive towards her during the conversation. Id. She felt "disrespected and diminished" by DA Dixon during this second call in July 2022. Id. Between September 2022 and February 2023, Ms. Avens attempted to follow-up with the ME's office and

the DA's office to confirm the ME's office had received the evidence from the DA's office. (DE 1 pp. 37-39 ¶¶71-79) Each time she called the Pitt County ME's office she was told to contact the ECU Health risk manager. Id. On April 10, 2023, during a recorded phone conversation, Ms. Lowery at the ME's office told Ms. Avens they had not received anything from the DA's office. (DE 1 p. 40 ¶ 80) During this conversation, Ms. Lowery explained that she had called the DA's office and was informed that the DA's office had not sent anything to her. (DE 1 p. 41 ¶ 83)

On April 13, 2023, Ms. Avens recorded a telephone conversation with DA Dixon. (DE 1 p. 41 ¶ 85) DA Dixon confirmed that he had submitted the evidence to the ME's office by emailing it directly to the ME, Dr. Karen Kelly. Id. Although Ms. Lowery had identified herself as the "contact person" for Ms. Avens, she was not aware that DA Dixon had sent the evidence to Dr. Kelly directly in August 2022. (DE 1 pp. 41-43 ¶ 87) On October 5, 2023 Ms. Avens was told by the ME's office that Dr. Kelly had forgotten to review the evidence sent by the DA's office. (DE 1 p. 44 ¶ 90) Ms. Avens believes that DA Dixon did not follow-up, facilitate and insist that Dr. Kelly review the evidence he sent her. (DE 1 p. 44 ¶ 93) Ms. Avens "published the recorded phone conversations on social media, filed a complaint with the NC Bar and attempted to have [DA Dixon] removed from office using NCGS 7A-66." (DE 1 p. 45 ¶ 94)

On December 19, 2023, Ms. Avens contacted Dr. Donald Jason, an experienced ME based in Winston-Salem. (DE 1 pp. 45-46 ¶ 95-98) Dr. Jason evaluated the case of Ms. White's death and concluded within reasonable medical probability that Ms.

White's death was caused by "the failure to properly maintain medically ordered cardiopulmonary monitoring." (DE 1 p. 46 ¶¶ 99-100) Dr. Jason concluded that the Brixon's "failure to provide proper care constituted criminal negligence" and that the "appropriate classification for the manner of death on the death certificate is homicide." (DE 1 p. 46 ¶¶ 100-103) A copy of this report was emailed to the GPD and DA Dixon on January 24, 2024. (DE 1 p. 46 ¶ 104)

In a March 6, 2024 letter DA Dixon acknowledge receiving Dr. Jason's report and reiterated his conclusion that after reviewing the evidence in the matter "that filing criminal charges is 'inappropriate' due to 'insufficient evidence'". Id. Ms. Avens disagrees with DA Dixon's conclusions regarding the death of her daughter. Id.

## LAW AND ARGUMENT

### I.   STANDARDS OF REVIEW

This Court must dismiss all or part of a complaint over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This threshold question must be addressed by the court before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647–50 (4th Cir. 1999). In conducting its review of whether jurisdiction is proper, "the facts alleged are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

A complaint may be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement does not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387 (4th Cir. 1990).

To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Twombly., 550 U.S. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 556 U.S.

at 679 (citations omitted). A plaintiff must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

## II.   PLAINTIFF LACKS A JUDICIALLY COGNIZABLE INTEREST TO INVOKE THE JURISDICTION OF THIS COURT

Article III of the United States Constitution grants federal district courts limited jurisdiction over actual cases and controversies. For a plaintiff to have a justiciable claim in federal court, the plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Planned Parenthood of S.C. Inc. v. Rose, 361 F.3d 786, 789 (4th Cir. 2004) (quoting Simon v. E. Kentucky Welfare Rts. Org., 426 U.S. 26, 38 (1976)). It is well established that standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); see also Linda R.S. v. Richard D., 410 U.S. 614, 616 (1973) ("Before we can consider the merits of appellant's claim or the propriety of the relief requested, however, appellant must first demonstrate that [he] is entitled to invoke the judicial process."). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (quotations omitted).

It is well-established that private citizens lack a judicially cognizable right to compel prosecution or to institute criminal prosecution. Linda R.S., 410 U.S. at 619 ("a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another"); <u>Lopez v. Robinson</u>, 914 F.2d 486, 494 (4th Cir. 1990) ("[n]o citizen has an enforceable right to institute a criminal prosecution."). All of Plaintiff's claims against DA Dixon relate to her assertion that the district attorney's office failed to investigate and prosecute alleged crimes and individuals related to the death of her daughter. (DE 1 pp. 29-47 ¶¶ 46-104) However, a citizen lacks standing to contest the policies of the prosecuting authority when she herself is neither prosecuted nor threatened with prosecution. <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619 (1973). Accordingly, Plaintiff lacks standing as to all her claims against DA Dixon, and they must be dismissed.

## III.    ABSOLUTE PROSECUTORIAL IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST DA DIXON

North Carolina's constitution and statutes have vested the decision of whether to prosecute a criminal action in the State's District Attorneys. N.C. Const. art. IV, § 18; <u>see also</u> <u>State v. Camacho</u>, 329 N.C. 589, 593 (1991).  It is well-settled that absolute prosecutorial immunity shields prosecutors from liability for decisions and actions "intimately associated with the judicial phase of the criminal process." <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976).  Such activities include determining whether and when to initiate criminal proceedings and prosecuting the case. <u>Id.</u> at 430–31 (reasoning that the work of the prosecutor would be impeded were prosecutors not absolutely immune for activities "intimately associated with the judicial phase of the criminal process.").  The Fourth Circuit and Supreme Court have found that such conduct includes professional evaluation of evidence presented by law enforcement, decisions to seek an arrest warrant, deciding whether to initiate a prosecution,

preparing and filing charging documents, and presenting evidence at trial. See Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993); Nero v. Mosby, 890 F.3d 106, 118 (4th Cir. 2018); Savage v. Maryland, 896 F.3d 260, 270 (4th Cir. 2018) (citing Burns v. Reed, 500 U.S. 478, 486 (1991)); Goldstein v. Moatz, 364 F.3d 205, 215 (4th Cir. 2004); Springmen v. Williams, 122 F.3d 211, 212–13 (4th Cir. 1997) ("The doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution."). "Absolute immunity prevents vexatious litigation from deflecting prosecutors' energies and shading their judgment" including "whether and when to prosecute." Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996).

The Complaint identifies the following conduct by DA Dixon: 1) determining no crime occurred related to the death of Ms. White; 2) deciding not to initiate criminal charges regarding the death of Ms. White; 3) failing to conduct a "proper and fair investigation" into the death of Ms. White; and 4) responding to Ms. Avens in an untimely manner and allegedly lying to Ms. Avens. (DE 1 pp. 29-47 ¶¶ 46-104) In sum, Ms. Avens does not agree with DA Dixon's evaluation of the circumstances regarding her daughter's death and his decision not to initiate any charges. This is precisely the conduct and decisions absolute prosecutorial immunity protects, and Ms. Avens' claims related to the evaluation and determination of whether to prosecute anyone in connection with her daughter's death are barred by prosecutorial immunity.

## IV. THE ELEVENTH AMENDMENT BARS MS. AVENS' CLAIMS

Plaintiff does not specify whether she sues DA Dixon in his official or individual capacity. To the extent she sues DA Dixon in his official capacity, her

claims are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution prohibits "any suit in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). This immunity attached to not only states, but also to state officials sued in their official capacity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself."); Republic of Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998) (explaining that under the Eleventh Amendment federal courts cannot "entertain claims seeking . . . either compensatory or other, for completed, not presently ongoing violations of federally-protected rights.").

At all times relevant to this lawsuit, DA Dixon was the District Attorney for North Carolina's 3rd Prosecutorial District. In North Carolina, a district attorney is a state judicial official. N.C. Gen. Stat. § 7A-60-63; N.C. Const. art. IV, Sec. § 18 (NC constitutional provision for district attorneys). Therefore, Ms. Avens' official capacity claims seeking monetary damages against DA Dixon are barred by the Eleventh Amendment.

Ms. Avens' official capacity claims for non-monetary relief are likewise barred. Exceptions to Eleventh Amendment sovereign immunity are narrow. A lawsuit

against a State, or State official, may only proceed when one of the following three exceptions applies: (1) where Congress, while acting pursuant to its powers under the Fourteenth Amendment, has properly abrogated a state's immunity, <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 452–56 (1976); (2) where a state has waived its immunity to suit in federal court, <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal law, <u>Ex parte Young</u>, 209 U.S. 123, 155–56 (1908). The Complaint does not implicate the first two exceptions. The third exception, the <u>Ex Parte Young</u> exception, is not implicated either.

The non-monetary relief Plaintiff seeks – initiation of an investigation into her daughter's death, appointment of a special prosecutor, a federal court investigation into the claims in the lawsuit, and erection of a public symbol honoring her daughter – cannot be granted by this Court. A federal court does not have authority to direct prosecutors to prosecute a crime or to investigate possible criminal charges. <u>See</u> <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978); <u>see also</u> <u>United States v. Derrick</u>, 163 F.3d 799, 825 (4th Cir. 1998). There is no legal basis for this Court to appoint a special prosecutor to investigate her daughter's death, nor to erect a monument. Accordingly, Plaintiff fails to invoke the <u>Ex parte Young</u> exception to the Eleventh Amendment and her claims are barred.

**V.** **PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE CLAIMS AGAINST DA DIXON, UNDER 42 U.S.C. Sections 1983, 1985, 1988 or 2000d or 18 U.S.C. § 241.**

The requirement for liberal construction of *pro se* pleadings means that if the court can reasonably interpret a valid claim on which the plaintiff might succeed, it should do so. However, this does not obligate the court to construct Plaintiff's legal argument for her. <u>Weller</u>, 901 F.2d at 390–91 (the special judicial solicitude with which a court should view such pro se complaints does not transform the court into an advocate). Plaintiff's precise legal claims against DA Dixon are difficult to decipher. Plaintiff contends she brings this action under 42 U.S.C. §§ 1981, 1983, 1985, 1988, and 2000d and 18 U.S.C. § 241, but she does not set out any specific counts or claims in the body of her complaint.

Plaintiff includes in her Complaint a section entitled "Legal Doctrines and Concepts" and references negligence per se and the continuing wrong doctrine, in referencing "the crimes of obstruction of justice and the conspiracy to obstruct justice by the defendants." (DE 1, p. 3, ¶¶ 1-2) In her section entitled "Conclusions," Plaintiff alleges that DA Dixon "engaged in conduct that goes beyond the scope of official duties by obstructing justice and conspiring to obstruct justice, thus violating and conspiring to violate my 1st and 14th amendments." (DE 1, p. 50, ¶ 1) Plaintiff further alleges that DA Dixon "used his prosecutorial discretion as a tool to enable his abuse of power and authority. As a result, he has undermined justice and manipulated the legal process." (DE 1, p. 50, ¶ 2)

### A. Plaintiff fails to state a 42 U.S.C. § 1981 claim.

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." <u>Runyon v. McCrary</u>, 427 U.S. 160, 168 (1976). Plaintiff makes no allegations about a private contract, and thus fails to state a 42 U.S.C. § 1981 claim.

### B. Plaintiff's fails to state a 42 U.S.C. § 1983 claim

A Section 1983 claim has two elements: "(1) a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." <u>Crosby v. City of Gastonia</u>, 635 F.3d 634, 639 (4th Cir. 2011). Plaintiff's 42 U.S.C. § 1983 claim fails because she does not allege the violation of a constitutionally protected right. A private citizen simply has "no judicially cognizable right to the prosecution of third parties." <u>Leeke v. Timmerman</u>, 454 U.S. 83, 87 (1981); <u>see also</u> <u>Sattler v. Johnson</u>, 857 F.2d 224, 227 (4th Cir. 1988) (victims have no constitutional right to have defendants criminally prosecuted); <u>Graves v. Haywood</u>, No. 5:19-CT-3043-FL, 2022 WL 945598 (E.D.N.C. Mar. 29, 2022) (holding plaintiff did not have standing to challenge prosecutorial decisions or criminal investigations of third parties and did not have a constitutional right to a thorough or complete investigation of her allegations.) The facts and allegations put forth by Ms. Avens that her constitutional rights were violated by DA Dixon because he did not conduct a thorough investigation and did not initiate any criminal prosecution against anyone (DE 1 pp. 29-30, 35, 46-47 ¶¶ 47, 53, 58, 64, 104, 106), fail to state a claim.

Plaintiff's First Amendment claims against DA Dixon also fail. In her Complaint, Plaintiff alleges that DA Dixon's failure to respond to her phone call constituted First Amendment retaliation. (DE 1, p. 43, ¶ 88) Plaintiff also alleges she engaged in First Amendment protected activity by publishing phone conversations on social media, filing a bar complaint, and filing removal actions against DA Dixon. (DE 1, p. 45, ¶ 94) These allegations are insufficient to state a First Amendment violation by DA Dixon.

In order to state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017). "For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Washington v. Cnty. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)).

DA Dixon's failure to return Plaintiff's phone calls or initiate a criminal prosecution is insufficient to chill a person of ordinary firmness from engaging in protected speech, and in any event, Plaintiff has continued to speak out, as evidenced by this lawsuit. And even if it did, as explained above, all of DA Dixon's actions related to his declination to initiate criminal charges are protected by absolute prosecutorial

immunity. <u>Savage</u>, 896 F.3d 260,

### C. Plaintiff's claim under 42 U.S.C. § 1985 fails.

Plaintiff's Section 1985 fails for similar reasons. Based on a liberal reading of Plaintiff's complaint, it appears she is asserting a claim pursuant to 42 U.S.C. § 1985(2). Section 1985 prohibits conspiracies to obstruct justice with the intent to deny any citizen the equal protection of the laws. To allege a conspiracy under 42 U.S.C. § 1985, "a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." <u>Simmons v. Poe</u>, 47 F.3d 1370, 1377 (4th Cir. 1995). Because, as explained above, there is no judicially recognized right to the prosecution of a third party, the conspiracy claim does not attach. Therefore, Ms. Avens' claims against DA Dixon alleging that he engaged in conspiratorial acts predicated upon a violation of 42 U.S.C. § 1983, should also be dismissed. (DE 1 p. 41 ¶ 87; p. 50 ¶ 1)

### D. Section 1988 does not create a separate cause of action.

To the extent Ms. Avens purports to bring a claim under 42 U.S.C. § 1988, that claim must be dismissed. Section 1988 instructs the federal courts as to which laws apply in a federal civil rights case but does not create an independent cause of action. 42 U.S.C. § 1988(a). "Section 1988 was enacted for a specific purpose: to restore the former equitable practice of awarding attorney's fees to the prevailing party in certain civil rights cases." <u>Farrar v. Hobby</u>, 506 U.S. 103, 118 (1992) Unless a party prevails in a separate civil rights action, attorney's fees under § 1988 is not available or applicable. <u>Id.</u> at 119; <u>Lefemine v. Wideman</u>, 758 F.3d 551, 557 (4th Cir. 2014) ("the

purpose of Section 1988 is to provide attorney's fees for claimants who "bring civil rights cases and wins them."). Because Ms. Avens has not established any viable claims under Sections 1983 or 1985, she is not entitled to monetary relief under Section 1988.

### E. Plaintiff's claim under 42 U.S.C. § 2000d fails to state a claim.

Plaintiff's reference to 42 U.S.C. § 2000d is particularly unclear. Section 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

To the extent any of Ms. Avens' claims against DA Dixon are premised upon 42 U.S.C. § 2000d, those claims must be dismissed because she fails to state a claim. Plaintiff fails to allege any facts as to DA Dixon to satisfy any of the elements of a 42 U.S.C. § 2000d claim. While Ms. Avens states generalized, bare legal conclusions that she and her daughter were discriminated against, there are no plausible facts alleged against DA Dixon that support a 42 U.S.C. § 2000d claim.

### F. Plaintiff cannot bring a civil claim pursuant to 18 U.S.C. § 241.

Ms. Avens asserts that her claims are brought pursuant to 18 U.S.C. § 241, which is a criminal statute prohibiting "two or more persons to agree to injure, threaten, or intimidate a person in the United States in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States or because of his or her having exercised such a right." Private citizens cannot bring a

direct criminal action against another person or petition federal courts to compel the criminal prosecution of another person – that power is reserved for the state. <u>Maine v. Taylor</u>, 477 U.S. 131, 137 (1986). That power is delegated to the United States Attorney General's Office. 28 U.S.C. § 547(1).

## VI. PLAINTIFF'S ASSERTION OF NEGLIGENCE PER SE AND CONTINUING WRONG DOCTRINE DOT NOT GIVE RISE TO ANY RECOGNIZED CLAIM AGAINST DA DIXON.

In Section V of her Complaint, Ms. Avens "invokes" the liability theory of negligence *per se* and the continuing wrong doctrine in support of a criminal charge and civil claim against DA Dixon for conspiracy to obstruct justice. These two paragraphs fail to state a claim for several reasons. First, "federal criminal statutes relating to obstruction of justice do not authorize a private cause of action for money damages." <u>Feldman v. L. Enf't Assocs. Corp.</u>, 779 F. Supp. 2d 472, 498 (E.D.N.C. 2011). Second, negligence per se and the continuing wrong doctrine relate to tort claims, none of which Plaintiff appears to bring in this suit. Finally, to the extent this Court construes Plaintiff to plead a North Carolina common law obstruction of justice tort, while North Carolina does recognize a common-law obstruction of justice civil claim, "North Carolina does not recognize a claim for obstruction of justice for actions relating to a criminal proceeding against prosecutors . . . ." <u>Bartko v. Wheeler</u>, No. 5:14-CT-3043-D, 2014 WL 3563359 (E.D.N.C. July 18, 2014), <u>aff'd,</u> 589 F. App'x 181 (4th Cir. 2015).

## CONCLUSION

For all the reasons argued above, the claims alleged by Ms. Avens should be dismissed because and she lacks standing to bring these specific civil claims and

criminal charges, the claims are barred by absolute prosecutorial immunity and the Eleventh Amendment, and she does not state a claim for which relief may be granted.

Respectfully submitted, this the 29th day of May, 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Chris D. Agosto Carreiro
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
ccarreiro@ncdoj.gov
State Bar No. 45356
*Attorney for Defendant Dixon*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DIXON'S MOTION TO DISMISS** using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system and addressed to the following individuals:

*Cynthia B. Avens*
*303 Riverside Trl.*
*Roanoke Rapids, NC 27870*

This the 29th day of May, 2024.

/s/ Chris D. Agosto Carreiro
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice