# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION
### Civil Action No: 4:24-cv-00051-M-RN

CYNTHIA B. AVENS,

        Plaintiff,

   v.

FARIS C. DIXON, JR., DISTRICT ATTORNEY; VIDANT/ECU HEALTH MEDICAL CENTER; DR. KAREN KELLY, MEDICAL EXAMINER, JOHN/JANE DOE, JOHN/JANE DOE, and JOHN/JANE DOE,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DR. KAREN KELLY'S MOTION TO DISMISS**

Pursuant to the Federal Rules of Civil Procedure, Defendant Karen Kelly, M.D., (Dr. Kelly) submits this Memorandum of Law supporting her Motion to Dismiss Plaintiff's Complaint.

## INTRODUCTION

This matter involves the unfortunate death of Plaintiff's daughter during a hospitalization in 2014. Plaintiff, filing *pro se*, brings the action under 42 U.S.C. §§ 1981, 1983, 1985, 1988, 2000d (Title VI), and 18 U.S.C. § 241 alleging that Defendants violated her constitutional rights, obstructed justice, and have and are engaged in a conspiracy to obstruct justice by failing to provide her with information on which she could base a civil action and by preventing the

1

criminal prosecution of the person Plaintiff believes caused her daughter's death while a patient at Vidant/ECU Health Medical Center ("ECU Health").[1]

However, Plaintiff's claims against Dr. Kelly fail due to a lack of subject matter jurisdiction and failure to state claims upon which relief can be granted. Moreover, Plaintiff's claims against are barred by the Eleventh Amendment, sovereign immunity and qualified immunity.

## NATURE OF THE CASE

Plaintiff, appearing *pro se*, filed her Complaint on March 22, 2024, alleging violations of her civil rights under 28 U.S.C. §§ 1981, 1983, 1985, 1988[2], 2000d (Title VI), and 18 U.S.C. § 241[3] stemming from alleged actions by

---

[1] During the time-period relevant to the Complaint, the hospital was a private non-profit entity and operated as Vidant Medical Center. Since that time, Vidant Health and East Carolina University's clinical practices have integrated and now operate under the name "ECU Health". However, ECU Health and East Carolina University remain separate legal entities. Dr. Kelly is a state employee of East Carolina University and serves as a Medical Examiner for Pitt County under a contract between the North Carolina Office of the State Medical Examiner ("NCOCME") and East Carolina University.

[2] Section 1988 defines procedures to pursue remedies in civil rights actions but does not create an independent cause of action. *See Schroder v. Volcker,* 864 F.2d 97, 99 (10th Cir. 1988). Thus, a discussion and analysis of this Section is omitted.

[3] Section 241 is a criminal statute making it a crime to conspire to violate civil rights, but it does not confer a private cause of action. *See Stevens v. Town of Snow Hill, N.C.,* No. 4:19-cv-156-D, 2020 WL 6144282, at *3 (E.D.N.C. Sep. 17, 2020), M&R adopted, 2020 WL 6140453 (E.D.N.C. Oct. 19, 2020). Thus, a discussion and analysis of this Section is omitted.

2

Defendants to block the criminal prosecution of a former ECU Health registered nurse for causing her daughter's death and prevent a wrongful death action against ECU Health. D.E. 1 Plaintiff seeks injunctive and declaratory relief, and compensatory damages. *Id.* at 57-58.

On April 17, 2024, Dr. Kelly filed a Consent Motion for an extension of time to respond to the Complaint through May 29, 2024. D.E. 9. On April 17, 2024, the Court entered an Order granting the Motion. D.E. 11. Dr. Kelly has now filed a Motion to Dismiss the Complaint in its entirety. D.E. 26.

## STATEMENT OF ALLEGED FACTS[4]

Plaintiff's daughter, Keisha Marie White ("Ms. White"), was admitted to ECU Health Medical Center on April 16, 2014, diagnosed with "acute on chronic renal failure" and placed in the intermediate cardiac monitored care unit. D.E. 1, at 3 ¶ 1. On April 17, 2014, doctors ordered continuous cardiac and pulse oximeter monitoring. *Id.* at 4 ¶ 5. Sometime later, Ms. White's doctor ordered continued oxygen therapy when Ms. White developed pulmonary edema and had difficulty breathing. *Id.* at 4 ¶ 7.

On May 9, 2014, Registered Nurse Linda Brixon (Brixon) was on duty from 7:00 p.m. to 7:00 a.m. *Id.* at 4 ¶ 9. During this time, Ms. White

---

[4] For her Motion to Dismiss, Dr. Kelly assumes the facts alleged in the Complaint are true, but she does not admit and otherwise disputes such allegations and reserves the right to assert all applicable defenses.

3

complained of difficulty breathing and exhibited behaviors indicative of hypoxia. *Id*. at 5 ¶ 12. However, Brixon failed to administer oxygen to Ms. White and instead placed Ms. White in restraints. *Id*. at 5 ¶¶ 13-15. Brixon failed to reapply the cardiac leads removed while putting Ms. White in the restraints. *Id*. at 5-6 ¶¶17.

At 2:00 a.m., Ms. White's oxygen levels were critically low, but Brixon did not provide the prescribed oxygen and did not record any subsequent oxygen levels or vital signs after 2:13 a.m. *Id*. at 6-7 ¶¶ 19, 22, 25. Between midnight and 6:00 a.m., the cardiac monitor technician told Brixon several times that Ms. White was not on the monitor or that the cardiac leads were off, but Brixon failed to reapply the leads. *Id*. at 6-7 ¶¶ 17, 26. Brixon also canceled arterial blood gas tests that would show the level of carbon dioxide in Ms. White's blood. *Id*. at 9 ¶ 37.

At 5:51 a.m., while she was still in restraints, staff found Ms. White in cardiac arrest and without a pulse. *Id*. at 11 ¶ 46. After cutting off the restraints, an emergency response team administered CPR and regained Ms. White's heartbeat. *Id*. at 12 ¶ 53. A subsequent CT scan showed Ms. White suffered a global hypoxic-ischemic injury; she had no brain activity and was not reactive to stimuli. *Id*. at 12 ¶ 55. Ms. White died at 1:02 p.m. on May 10, 2014. *Id*. at 12 ¶ 56. Ms. White's death certificate indicates that she died of "natural" causes. *Id*. at 17 ¶ 1.

4

During the ensuing weeks, Plaintiff alleges that UCU Health representatives misrepresented or concealed Brixon's conduct to the North Carolina Board of Nursing (NCBON). *Id.* at 17-19 ¶¶ 3-7.

ECU Health representatives, including Vikki Haddock (Haddock), visited Plaintiff at her home on June 13, 2014, but revealed little about the events surrounding Ms. White's death. *Id.* at 19-20 ¶¶ 8-11. In a follow-up telephone conversation, Haddock allegedly told Plaintiff that the hospital must report the matter to the SBI. *Id.* at 21-21 ¶ 12. Plaintiff called the SBI and alleges she was told they knew nothing about her daughter's case and that no one had spoken to Haddock. *Id.* at 21 ¶ 13.

In June 2014, Plaintiff visited the Greenville Police Department and the District Attorney's office to file reports. No one at the DA's office was available to speak with her, and she alleges the police department told her the matter was outside of its jurisdiction because the hospital had its own police. *Id.* at 21 ¶ 14. Plaintiff also contacted the Pitt County Sheriff's Office and alleges that it also told her it did not have jurisdiction but that the Greenville Police Department did. *Id.* at 24 ¶ 24. Plaintiff went to ECU Health's Police Department, which allegedly told her to speak to the hospital's risk manager first. *Id.* at 21 ¶ 15. She left before speaking to the risk manager. *Id.*

Plaintiff next spoke to an Assistant District Attorney who told her he would look into the matter. *Id.* at 22 ¶ 17. In a follow-up conversation, the

5

Assistant DA informed her that no crime had been committed and that his boss, then-District Attorney Kimberly Robb (DA Robb), agreed. *Id.* ¶ 19.

In July 2014, Plaintiff again spoke to Haddock, who reiterated that she had spoken to SBI agents. *Id.* at 23 ¶ 20. However, when Plaintiff called the SBI to confirm, the SBI again allegedly to her they had no information about the case and had not spoken to anyone from ECU Health. *Id.* at 23 ¶ 21.

Following the NCBON's investigation, it issued a Consent Order that allegedly identified various failings by Brixon and UCU Health regarding Ms. White's case. *Id.* at 25-26 ¶¶ 31-33. The North Carolina Department of Health and Human Services (NCDHHS) also allegedly issued a report identifying various violations. *Id.* at 26 ¶ 34.

In November 2014, Plaintiff gave the NCDHHS report to the Greenville Police Department, and it assigned a detective to investigate the case. *Id.* at 26 ¶ 36. The detective sent Ms. White's records to the then-North Carolina Chief Medical Examiner, Dr. Deborah Radisch. *Id.* at 26 ¶ 37. Dr. Radisch allegedly released a report five months later concluding Ms. White died from natural causes. *Id.* at 26 ¶ 38.

In December 2015, Plaintiff met with a former Greenville Police Department Sergeant who advised that she sue the hospital for malpractice. *Id.* at 27-28 ¶¶ 39-40, 42. Plaintiff also left messages for DA Robb but did not receive a return call before DA Robb left office in 2018. *Id.* at 28 ¶ 44.

6

On October 24, 2019, Plaintiff met with the newly elected Pitt County District Attorney, Farris J. Dixon, Jr. (DA Dixon), who told her he had reviewed the matter and concluded that no crime had been committed and that the case was not a criminal matter. *Id.* at 29 ¶ 46.

Plaintiff contacted DA Dixon in July 2021 and asked him to provide a detailed list of the evidence he reviewed before making his decision in 2019. *Id.* at 29 ¶ 48. Mr. Dixon spoke to Plaintiff but did not provide the requested evidence list. *Id.* Thereafter, Plaintiff made multiple attempts, but DA Dixon did not provide the list. *Id.* at 29 ¶ 49.

On February 9, 2022, DA Dixon responded to a Facebook post Plaintiff made tagging him and detailing the contents of a letter she sent to his office. *Id.* at 30 ¶ 50. In a February 14, 2022 letter, DA Dixon said he would send Plaintiff the evidence list. *Id.* at 30 ¶ 31. DA Dixon provided the list in a March 14, 2022 letter. *Id.* at 30 ¶ 52. Plaintiff identified several things wrong with the list, including the absence of the NCBON consent order and the 194-page report. *Id.* at 30-31 ¶¶ 53, 55.

Plaintiff contacted DA Dixon in March 2022 to discuss the evidence list, and DA Dixon assured her that someone would review the additional documents. *Id.* at 33 ¶ 58. In a June 2022 phone conversation, DA Dixon told Plaintiff he had not completed his review of the new evidence and would submit

7

the evidence to the Pitt County Medical Examiner's Office ("ME's Office"). *Id.*
at 34 ¶ 63.

In July 2022, DA Dixon claimed to have finished his review and
maintained his earlier position that the matter was not criminal. *Id.* at 35 ¶
64. Immediately after this conversation, Plaintiff contacted the ME's Office
but was informed that it had no information in its system about the matter.
*Id.* at 36 ¶ 66. Plaintiff contacted the ME's Office two days later and was told
the DA's Office was trying to find the report. *Id.* at 36-37. A few days later,
DA Dixon called Plaintiff and again said he was submitting the evidence to the
ME's Office. *Id.* at 37 ¶ 68. Plaintiff received and returned a medical release
form to DA Dixon's office. *Id.* at 37 ¶¶ 69-71.

Plaintiff contacted the ME's Office in September 2022 but was again told
it had not received anything from the DA's office and that she would need to
speak to ECU's risk manager. *Id.* at 37-38 ¶71. She received the same
response from the ME's Office in October 2022. *Id.* at 37 ¶ 72.

In January or February 2023, DA Dixon told Plaintiff that Pitt County
ME, Dr. Kelly, was on FMLA and expected to return to the office in February.
*Id.* at 38 ¶ 74. She received the same information from the ME's Office. *Id.* at
38 ¶ 75.

Plaintiff called the ME's office in March 2023 and was told Dr. Kelly was
working from home but that the office had nothing in their system about Ms.

White. *Id.* at 39 ¶ 76. DA Dixon confirmed sending the records to the ME during phone calls on March 28 and April 10, 2023. *Id.* at 39 ¶¶ 78-79. However, immediately following the April 10, 2023 call, the ME's Office again told Plaintiff it had nothing in its system. *Id.* at 40 ¶ 80.

In April 2023, DA Dixon spoke to Plaintiff and told her he sent the records to the ME on August 11, 2022, and copied them to Dr. Kelly's email address. *Id.* at 41 ¶ 85. A few days later, the ME's Office confirmed receipt of the records.

Calls from Plaintiff to DA Dixon in September and October 2023 to inquire about the ME's decision went unanswered. *Id.* at 43 ¶ 88. Plaintiff called the ME's Office on October 4, 2023, and was told she would need to talk to Dr. Kelly, who was unavailable at the time. *Id.* at 43 ¶ 89.

On October 5, 2023, a representative of the ME's Office told Plaintiff that she had spoken to Dr. Kelly, who allegedly said she had forgotten to look at the evidence but would do so over the weekend. *Id.* at 44 ¶ 90.

On December 19, 2023, Plaintiff retained Dr. Donald Jason, MD, JD, to independently evaluate the case. *Id.* at 45 ¶ 95. In a January 15, 2024 report, Dr. Jason concluded that Ms. White's manner of death was homicide. *Id.* at 46 ¶¶ 99, 101.

Plaintiff sent Dr. Jason's report to the Greenville Police Department and DA Dixon on January 24, 2024. *Id.* at 46-47 ¶ 104. DA Dixon responded in a

9

March 6, 2024, letter informing Plaintiff that filing criminal charges would be inappropriate due to insufficient evidence.  *Id.* at 47 ¶ 104b.

<h2 style="text-align:center"><u>DISMISSAL STANDARD</u></h2>

Plaintiff's claims should be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure based on lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must prove jurisdiction to survive dismissal. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  "[T]he jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citations omitted).

To survive a Rule 12(b)(6) motion, a complaint must rise above the "speculative level" and satisfy the court that the claims asserted are plausible on their face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  The complaint must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.  "Threadbare recitals of the

10

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citations omitted). Courts need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp.*, 213 F.3d 175, 180 (4th Cir. 2000)

## ARGUMENT

## I. PLAINTIFF'S SECTION 1983 CLAIM FAILS.

Plaintiff does not specify whether she is suing Dr. Kelly in Dr. Kelly's official capacity, individual capacity, or both. Regardless, Plaintiff's Section 1983 claim fails because it is barred by the Eleventh Amendment, the sovereign immunity doctrine, and the qualified immunity doctrine. Even if the claim is not so barred, the Complaint fails to state a Section 1983 claim upon which relief can be granted,

### A. Eleventh Amendment immunity and sovereign immunity bar the claim against Dr. Kelly in her official capacity.

Section 1983 permits damages claims against a "person" who deprives another of their constitutional rights while acting under color of state law. 42 U.S.C. § 1983. However, in her official capacity, Dr. Kelly is not a "person." Rather, as a medical examiner, she is a public officer and entitled to immunity if sued in her official capacity. *Epps v. Duke Univ.*, 116 N.C. App. 305, 309, 447 S.E.2d 444, 447 (1994).

11

"[T]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. v. Garrett,* 531 U.S. 356, 363 (2001); *see also Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). Thus, absent waiver or congressional abrogation, states enjoy immunity from suits for damages in federal court. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012).

Moreover, North Carolina has not waived its sovereign immunity from § 1983 claims, and Congress has not abrogated that immunity. *Quinn v. N.C. HHS,* No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)). This immunity extends to "state agents and state instrumentalities." *See Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997).

Additionally, Plaintiff can only pursue a claim for injunctive relief against an individual in her official capacity if that individual has the authority to provide the requested relief. *Davis v. Scarborough*, No. 3:21-cv-132-MR, 2022 U.S. Dist. LEXIS 48974, at *4-5 (W.D.N.C. Mar. 18, 2022) ("The Plaintiff's claims for injunctive relief will be dismissed because the Plaintiff has failed to plausibly allege that Defendant Scarborough, as a probation officer, has any authority to authorize his release to ELC.") Plaintiff has not alleged that Dr. Kelly has the authority to initiate a criminal investigation into Ms. White's death, appoint a special prosecutor or independent counsel to

12

oversee such an investigation, or erect a public symbol honoring Ms. White. *See* D.E. 1 at 57-58.

**B.     Dr. Kelly is entitled to qualified immunity.**

In her personal capacity, Dr. Kelly is entitled to qualified immunity from Plaintiff's Section 1983 claims. To determine whether qualified immunity applies, a court must determine whether the facts alleged identify a violation of a constitutional right and, if so, whether the right was clearly established at the time of the alleged misconduct. *Johnson v. Allen*, 416 F.Supp.3d 550, 558-59 (E.D.N.C. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). If the answer to either question is "no," a defendant is entitled to dismissal. *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 559 (quoting *Kislea v. Hughes*, 584 U.S. 100, 104 (2018)).

As explained in Section II below, Plaintiff does not plausibly allege Dr. Kelly violated Plaintiff's rights.  Assuming *arguendo*, however, that Plaintiff has sufficiently alleged a violation of her rights, which is denied, Plaintiff has not alleged facts tending to establish that the violation would have been obvious to a reasonable person in Dr. Kelly's position.  Plaintiff has not alleged–and cannot establish–that any of Dr. Kelly's alleged conduct violated

13

a clearly established right under Federal law, and Dr. Kelly is entitled to qualified immunity.

**C.    The Complaint fails to plead sufficient facts to state a claim under 42 U.S.C. § 1983.[5]**

Even if Plaintiff's claims are not barred by Eleventh Amendment, sovereign, or qualified immunity, Plaintiff's claims under Section 1983 still fail because she does to plausibly allege Dr. Kelly violated her rights under the Constitution or United States law.

In a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law violated plaintiff's rights secured by the Constitution and laws of the United States. *Melvin v. SSA.*, 126 F.Supp.3d 584, 607 (E.D.N.C. 2015) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).   Though Plaintiff alleges that Dr. Kelly is a "government employee" and "did act under color of law" (*see* D.E. 1 at 2 ¶ 2), the Complaint fails to identify a cognizable violation of her rights.

_____

[5] There is no direct cause of action under 42 U.S.C. § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (holding that 42 U.S.C. § 1983 is the exclusive federal remedy against the State for violating rights guaranteed by § 1981); *see also Dennis v. Cnty. of Fairfax,* 55 F.3d 151 (4th Cir. 1995).  To the extent that a claim exists under § 1981 for racial discrimination in the context of the right to contract (*see Melvin v. SSA,* 126 F.Supp.3d 584, 609 (E.D.N.C. 2015)), the Complaint makes no allegation that Dr. Kelly interfered with Plaintiff's right to enforce or make contracts or that such interference was racially motivated.

14

Plaintiff appears to allege that Dr. Kelly violated her civil rights "due to the crimes of obstruction of justice and the conspiracy to obstruct justice." D.E. 1, at 3 ¶ 1. More specifically, Plaintiff alleges that Dr. Kelly "obstructed justice by failing to review the evidence in this case and by failing to give an opinion regarding the death of Ms. White." *Id.* at 50 ¶ 4. Plaintiff further alleges that "Dr. Kelly, through her complicity in the obstruction of justice, has violated both the 14th Amendment and the 1st Amendment rights of myself and my daughter." *Id.* at 51 ¶ 5. However, the Complaint fails to identify a violation of any cognizable rights under the First and Fourteenth Amendments or under any other law.

### 1. Plaintiff has no constitutional right to the criminal prosecution of another.

In her Demand for Relief, Plaintiff states she seeks the "initiation of a comprehensive criminal investigation into the circumstances surrounding [her daughter's] death" and the appointment of a "special prosecutor" to oversee the investigation." D.E. 1 at 57 ¶¶ 1-2. However, initiating a criminal investigation and appointing a special prosecutor are not rights guaranteed to Plaintiff under the Constitution or laws of the United States.

"[T]he U.S. Supreme Court has held that 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" *Wattley v. City of Charlotte*, 3:20-cv-426-MOC-DSC, 2021 U.S. Dist. LEXIS

61580 at * 9-10 (W.D.N.C., Mar. 31, 2021), (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). The Fourth Circuit Court of Appeals also found that private citizens have no right to a criminal investigation or criminal prosecution of another nor have standing to request the prosecution of another. *Id.*, (quoting *Smith v. McCarthy*, 349 F. App'x. 851, 859 n.12 (4th Cir. 2009) (unpublished)).

In *Sattler v. Johnson,* 857 F.2d 224 (4th Cir. 1988), the Court affirmed the dismissal of a claim similar to Plaintiff's. In *Sattler,* the plaintiff, under 42 U.S.C. 1983, sued law enforcement officers and others, alleging that the officers engaged in a conspiracy to burn down his tavern, that other defendants failed to prosecute those responsible for the arson, and a continuing conspiracy to cover up the arson preventing him from obtaining justice. *Id.* at 225-26. The plaintiff further alleged that county commissioners conspired to obstruct justice by covering up the arson, thereby depriving him of his constitutional rights. *Id.* at 226. The plaintiff argued that the defendants violated his constitutional rights under the equal protection clause of the Fourteenth Amendment by withholding information from him on which he could base a civil action and by preventing those responsible for burning down his tavern from being criminally prosecuted. *Id.* The Court rejected this argument, holding that no such constitutional right existed and that the only conspiracy

16

upon which grounds existed to proceed under § 1983 was the conspiracy to burn the tavern. *Id.*

In this case, unlike the conspiracy to burn the tavern in *Sattler* (the only actionable claim in that case), Plaintiff does not allege a conspiracy to cause her daughter's death. However, Plaintiff's claims do closely mirror those the Court rejected in *Sattler*.

Here, Plaintiff appears to allege that the violation of her rights resulted from (1) Defendants' failure to prosecute (or facilitate the prosecution of) the person she believes was responsible for her daughter's death; and (2) Defendants conspiring to cover up the circumstances of her daughter's death to prevent Plaintiff from obtaining information upon which she can base a suit against the Medical Center for medical malpractice or wrongful death. D.E. 1, at 20, ¶ 11; 50-52, ¶¶ 1-8. These claims are indistinguishable from those the Court rejected in *Sattler*: an alleged equal protection violation under the Fourteenth Amendment by withholding information to prevent a criminal prosecution and a civil action. *Sattler,* 857 F.2d at 226.

## 2. Plaintiff has not identified any First Amendment violations.

The right to free speech under the First Amendment includes the right to speak and to be free from retaliation by public authorities for the exercise of that right. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411

F.3d 474, 499 (4th Cir. 2005). Here, Plaintiff does not plausibly allege that Dr. Kelly violated Plaintiff's right to free speech in any way.

In the sole allegation relating to a right to free speech, Plaintiff speculates that the Medical Center retaliated against her and infringed upon her right to "speak freely" when during a September 2022 phone call, the ME's Office told her she "needed to talk to ECU's risk manager." D.E. 1 at 37-38 ¶ 71. Regarding Dr. Kelly, the Complaint is devoid of any allegation that she prevented or prohibited Plaintiff from exercising a right to free speech or that Dr. Kelly took any action in retaliation against Plaintiff for exercising that or any right.

## II. THE COMPLAINT DOES NOT PLEAD SUFFICIENT FACTS TO STATE A CLAIM AGAINST DR. KELLY UNDER 42 U.S.C. § 1985.

Plaintiff also alleges violation of her rights under 42 U.S.C. § 1985. D.E. 1, at 57-58. However, the Complaint fails to plausibly allege plausible facts to sustain a claim against Dr. Kelly under Section 1985.

To state a Section 1985 conspiracy claim, a plaintiff must show:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the Plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

18

*Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995)). "Allegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed." *Id.* (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011)(quoting *Twombly*, 550 U.S. at 556)).

To show a conspiracy, "'a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights.'" *Melvin v. SSA.*, 126 F.Supp.3d 584, 610 (E.D.N.C. 2015) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)) (citations omitted). Although an express agreement is unnecessary, a plaintiff must show "that there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id.* (citing *Simmons,* 47 F.3d at 1378). This "relatively stringent standard" requires sufficient evidence that the alleged conspirators participated in a joint plan. *Id.* (quoting *Simmons,* 47 F.3d at 1377).

A.     **The Complaint fails to plead plausible facts to sustain allegations of a conspiracy.**

The Complaint does not state plausible allegations that a conspiracy to deny her civil rights existed let alone Dr. Kelly's participation in such a conspiracy. The Complaint fails to allege Dr. Kelly overtly agreed with any other person to take any action with the intent to deprive Plaintiff of her civil

19

rights. The Complaint also fails to allege facts suggestive of an implied "meeting of the minds" between or among any Defendant. Rather, Plaintiff's conspiracy allegations are, at best, conclusory and based on assumption, speculation, and innuendo.

For example, without any supporting factual allegations, Plaintiff alleges that SBI Agents allegedly sharing information Plaintiff provided to them with the Medical Center "*indicat[ed]* a conspiracy to obstruct justice." D.E. 1 at 23 ¶ 22 (emphasis added). However, Plaintiff offers no concrete allegations plausibly suggesting a "meeting of the minds" to obstruct justice.

Regarding Dr. Kelly, Plaintiff alleges that "[b]ecause Dr. Kelly was not 'allowed' to work on [Ms. White's] case without, *presumably*, obtaining permission from 'risk' and the 'attorneys,' to determine what she would be 'allowed' to do, another instance of obstruction of justice and conspiracy to obstruct justice has occurred involving Dr. Kelly and [the Medical Center] …" *Id.* at 42 ¶ 87e. Here again, Plaintiff's allegations are purely speculative. She offers no specific facts about communications between Dr. Kelly and other Defendants whereby they arrived at an agreement of any kind regarding Plaintiff, Ms. White's case generally, or otherwise. These unsubstantial claims do not support a Section 1985 conspiracy claim. *See A Soc'y Without a Name,* 655 F.3d at 347 (granting a motion to dismiss where Plaintiff "fail[ed] to allege with any specificity the persons who agreed to the alleged conspiracy, the

specific communications amongst the conspirators, or the manner in which any such communications were made.")

Plaintiff further alleges that on October 5, 2023, a representative of the ME's Office told her Dr. Kelly had "forgotten to look at the evidence in this case, but she would do so over the coming weekend." *Id.* at 43 ¶ 90. Plaintiff admits that "[i]f Dr. Kelly indeed 'forgot' to address this case, it constitutes negligence." *Id.* at 44 ¶ 92. Nonetheless, Plaintiff speculates that "[i]f [Dr. Kelly] refrained [from addressing this case] due to being prohibited by Vidant/ECU . . . it amounts to withholding crucial information in an official investigation led by the district attorney, as well as actions furthering impeding the judicial process." *Id.* Such speculation does not sufficiently support a reasonable inference of intentional action or to conspire with others to withhold information from Plaintiff or anyone else.

**B.    The Complaint fails to plausibly allege invidious animus toward a protected class.**

In her Complaint, Plaintiff identifies herself and Ms. White as "black." D.E. 1 at 16, ¶ 68, 28 ¶ 42, 51 ¶ 7c, 52 ¶¶ 7f and 7g. But, in a Section 1985 claim, a plaintiff must do more than declare herself a member of a protected class and allege a defendant's conduct was racially motivated. Instead, she must "'plead specific facts in a nonconclusory fashion to survive a motion to

21

dismiss.'" *Melvin*, 126 F. Supp. 3d at 610 (quoting *Gooden v. Howard Cty.*, 954 F.2d 960, 970 (4th Cir. 1992)).

The Complaint contains no specific facts tending to show that Dr. Kelly's alleged actions were racially motivated in any way. Plaintiff does not allege that Dr. Kelly referred to Plaintiff in a racially derogatory manner or that she held any ill will or animosity toward Plaintiff or Ms. White because of their race. Thus, the Complaint fails to meet the second element of a valid Section 1985 discrimination claim.

## C. The Complaint fails to plausibly allege Dr. Kelly denied Plaintiff the equal enjoyment of rights or that Plaintiff suffered any resulting injury.

As explained in Section I above, Plaintiff's Complaint does not identify a cognizable violation of her rights under the First or Fourteenth Amendments or under any federal law. Consequently, the complaint fails to allege any resulting injury. Thus, the Complaint fails to satisfy the third and fourth prongs of a Section 1985 claim.

## D. The Complaint fails to plausibly allege an overt act in connection with the alleged conspiracy.

Plaintiff fails to allege sufficient facts to plausibly show Dr. Kelly made any overt act in furtherance of a conspiracy to deprive Plaintiff of her rights.

The Complaint alleges that a representative of the ME's Office told Plaintiff that Dr. Kelly said that she had "forgotten to look at the evidence in

22

the case, but that she would do so over the weekend." D.E. 1 at 43 ¶ 90. Here, Plaintiff admits that "[i]f Dr. Kelly indeed 'forgot' to address this case, it constitutes negligence" rather than an intentional act meant to obstruct justice. *Id. at* 44 ¶ 92. Nonetheless, Plaintiff speculates that "*[i]f* [Dr. Kelly] refrained [from addressing this case] due to being prohibited by Vidant/ECU…it amounts to withholding crucial information in an official investigation led by the district attorney, as well as actions furthering impeding the judicial process." *Id.* (emphasis added). Likewise, Plaintiff's allegation that "*[i]f* [Ms. White's records] were indeed sent to Dr. Kelly via secured email on August 11, 2022, it *suggests* collusion between Mr. Dixon and Dr. Kelly to obstruct justice" is purely speculative. *Id.* at 41 ¶ 87b (emphasis added). Such speculation does not sufficiently support a reasonable inference of an overt act meant to deprive Plaintiff of her rights.

Finally, Plaintiff alleges that Dr. Kelly had not reviewed Ms. White's records by the time Plaintiff filed this suit and that this "indicates [Dr. Kelly's] willingness to continue on her path of obstructing justice in this case. *Id.* at 44 ¶ 91. If true, even in combination with other allegations involving Dr. Kelly, this conclusory allegation does not plausibly suggest Dr. Kelly's inaction constitutes an overt act toward a conspiratorial goal. Thus, the Complaint's allegations do not satisfy the fifth prong of a valid Section 1985 claim.

The Complaint's allegations do not plausibly support an inference that Dr. Kelly engaged in a discriminatory conspiracy to obstruct justice and, therefore, do not sustain a claim under Section 1985.

## III. THE COMPLAINT DOES NOT STATE A VALID CLAIM UNDER TITLE VI.

Plaintiff's allegations are insufficient to sustain a claim for racial discrimination under Title VI (42 U.S.C. § 2000d) and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Section 2000d provides that [n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Section provides a cause of action only for intentional discrimination. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70 (1992). To prevail, Plaintiff must show that Dr. Kelly engaged in intentional discrimination with direct evidence of discriminatory animus or by establishing a *prima facie* discrimination case. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). As shown in the immediately preceding section of this Memorandum, the Complaint does not contain direct allegations of discrimination. It also fails to adequately allege a *prima facie* case.

24

Courts apply Title VII's disparate-treatment framework to Title VI claims. *Middlebrooks v. Univ. of Md.*, No 97-2473, 1999 WL 7860, at \*4 (4th Cir. Jan. 11, 1999) (unpublished). Under the *McDonnell Douglas* test, Plaintiff must show that she is: (1) a member of a protected class; (2) was entitled to participate in a program or activity receiving federal financial assistance; (3) suffered an adverse action; and (4) was treated differently from similarly situated persons who are not members of the protected class.

Plaintiff's Title VI claim fails to satisfy all but one element of a *prima facie* case. First, Plaintiff has not alleged that Dr. Kelly was entitled to participate in a program or activity receiving federal financial assistance. Second, Plaintiff has not plausibly alleged she suffered an adverse action. Finally, Plaintiff has not plausibly alleged that she was treated differently than a person not a member of a protected class. Thus, this claim must be dismissed.

## IV. THE COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO SUSTAIN ALLEGATIONS THAT DR. KELLY ENGAGED IN A CONSPIRACY TO WILLINGLY OBSTRUCT JUSTICE IN VIOLATION OF STATE LAW.

Plaintiff's Complaint references only violations of Federal law. However, if the Court construes the Complaint to assert claims under state law for obstruction of justice or conspiracy to obstruct justice, Plaintiff's allegations against Dr. Kelly fail for the same reasons it fails to state a claim under 42

U.S.C. § 1985: failure to sufficiently identify an overt act intended to obstruct justice or to engage in a conspiracy to obstruct justice.

North Carolina recognizes the common law offense of obstruction of justice. *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014). A person commits the offense by "'acts which obstruct, impede or hinder public or legal justice…'" *Id.*, (quoting *Blackburn v. Carbone*, 208 N.C. App. 519, 526, 703 S.E.2d 788, 794 (2010)). "The offense requires proof that the defendant acted 'willfully and with an intent to defraud.'" *Id.*, (quoting *State v. Eastman*, 113 N.C. App. 347, 353, 438 S.E.2d 460, 464 (1994)). The law "requires that the defendant acted with the specific intent to obstruct justice, not just the general intent to do the act which resulted in the obstruction. *Id.*, (referencing *Blackburn*, 208 N.C. App. at 526, 703 S.E.2d at 795 & n.6 ("'[A]ny action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy will suffice to support a claim for common law obstruction of justice….'")).

North Carolina does not recognize an independent civil action for conspiracy. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Instead, a conspiracy claim must allege that one or more parties to the conspiracy committed a wrongful act that injured the plaintiff. *Id.* (citing *Norman v. Nash Johnson & Son's Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000)(citation omitted)).

26

The existence of a conspiracy requires proof of an agreement between two or more persons, and while a conspiracy may be shown by circumstantial evidence, evidence of an agreement must be sufficient to create more than a suspicion or conjecture. *Id.* at 690-91, 537 S.E.2d at 801 (citing *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 339 S.E.2d 142, 145 (1991)) (citations omitted)).

The Complaint's allegations do not support a reasonable conclusion that Dr. Kelly obstructed justice or intentionally took any action to obstruct justice alone or in combination with anyone else. First, as discussed elsewhere, Dr. Kelly did not violate Plaintiff's rights. Second, the Complaint does not allege facts of an overt or implied agreement between Dr. Kelly and another person having anything to do with her daughter's case or with Plaintiff's efforts. What little circumstantial evidence the Complaint offers amounts to speculation and conjecture and is insufficient.

Plaintiff's allegations relating to Dr. Kelly are insubstantial, speculative, and do not satisfy the standard identified in *Iqbal* that allegations must be more than merely conclusory statements, that factual content must be such that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged, and that the complaint must allow the court to infer more than the mere possibility of misconduct. *Iqbal*, 556 U.S. 662, 678-79. Therefore, the Court should dismiss these claims under Fed. R. Civ. P. 12(b)(6).

27

## CONCLUSION

For the reasons stated herein, Dr. Kelly respectfully requests that the Complaint be dismissed with prejudice.

This 29 day of May, 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov
North Carolina Department of Justice
PO Box 629
Raleigh, NC  27602
Tel: 919-716-6920
Fax: 919-716-6764
*Attorney for Dr. Karen Kelly*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Memorandum of Law in Support of Defendant Dr. Karen Kelly's Motion to Dismiss with the Clerk of Court using the CM/ECF system and was served electronically upon the following:

Cynthia B. Avens
303 Riverside Trl
Roanoke Rapids, NC 27870
avens1@charter.net (with consent)
*Plaintiff (Pro Se)*

Terrence M. McKelvey
Terrence.mckelvey@klgates.com
Daniel D. McClurg
Daniel.mcclurg@klgates.com
*Attorneys for Defendant Pitt*
*County Memorial Hospital, Inc.*

Chris D. Agosto Carreiro
Special Deputy Attorney General
North Carolina Department of Justice
ccarreiro@ncdoj.gov
*Attorney for Defendant Faris C. Dixon, Jr.*

This 29th day of May, 2024.

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General

29