# EXHIBIT 10

# Report from Dr. Donald Jason, MD., JD.

# Donald Jason, MD, JD

**Practice Limited to Forensic Medicine & Pathology**



825 Ellington Drive
Winston-Salem, NC 27104

[cell] (336) 414-8226
[fax] (336) 285-0311



EXHIBIT
10
Report from
Dr. Donald Jason
MD, JD

January 15, 2024

Mrs. Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870

Re:    State v. Linda Leathers Brixon, RN
       Estate of Keisha White

Dear Mrs. Avens:

At your request, I have reviewed the following material pertaining to the death of Keisha White (Keisha):

1. Published consent order re Linda Leathers Brixon, RN
2. Death Certificate for Keisha
3. Vidant Medical Center records for Keisha, medical record #741644
4. Nurse Flow Sheets Pages 1-405

## History

According to the Vidant Medical Center records, Keisha, a 26-year-old African-American woman, was transferred from Halifax Regional Medical Center and admitted to Vidant Medical Center on April 16, 2014, with complaint of systemic lupus erythematosus flare, anemia, acute-on-chronic kidney injury and principal diagnosis of anoxic brain injury secondary to pulseless electrical activity cardiac arrest. Keisha began to develop pulmonary edema on May 2, 2014, likely secondary to fluid overload in setting of acute kidney injury on chronic kidney deficiency. Nephrology was consulted for oliguria and likely lupus nephritis and Keisha was started on Cellcept℠ and was also started on hydralazine for afterload reduction.

According to the Published consent order re Linda Leathers Brixon, RN (Licensee), on or about May 9, 2014, while employed at Vidant Medical Center in Greenville, North Carolina, Licensee was assigned as the primary nurse on the 7:00 p.m. to seven 7:00 a.m. shift for Keisha, a twenty-six-year old patient who began experiencing a change in condition. On May 9, 2014, at 10:41 p.m., Licensee documented Keisha was polling off her cardiac leads. There was an order for continuous cardiac monitoring, but there is no documentation that the Nurse Practitioner was notified Keisha was pulling off the cardiac leads until May 10, 2014 at 12:11 a.m. On May 10, 2014, at midnight, Licensee documented Keisha was agitated, anxious, confused, and restless, pulling at equipment and attempting to get out of bed. On May 10, 2014, at 12:11 a.m. Licensee documented Keisha crawling out of bed between the rails, stating she was hot and wanted to sleep on the floor. Licensee contacted the Nurse Practitioner by telephone with concerns about patient safety and obtained a verbal order for vest and bilateral wrist restraints. The cardiac monitoring technician documented contacting Licensee multiple times between May 9, 2014, at 7:20 p.m. and May 10, 2014, at 5:37 a.m. to make her aware Keisha was not on the cardiac monitor. The last cardiac monitor strip was recorded on May 9, 2014, at 11:32 p.m. The Nurse Practitioner stated he observed sinus rhythm on the monitor when he was examining Keisha around 12:30 a.m. on May 10, 2014. Licensee did not maintain the placement of the telemetry monitor leads: even after Keisha was placed in vest and bilateral wrist restraints on May 10, 2014, at 12:11 a.m. When interviewed, Licensee reported when the cardiac leads were reapplied or adjusted, Keisha would either pull off the leads or wiggle and loosen the leads. However, Licensee failed to notify the Nurse Practitioner or document that these events had occurred. On May 10, 2014, at 1:51 a.m., Licensee obtained a verbal order for oxygen two liters. There is no documentation the oxygen was placed on Keisha. On May 10, 2014, at 2:00 a.m., Licensee documented an oxygen

● Page 1 of 2

saturation of 62%, but did not document the patient's respiratory rate or temperature. Licensee acknowledged she did not call the Nurse Practitioner or notify the charge nurse of this oxygen saturation. Licensee stated after observing Keisha she thought the reading was not accurate. Licensee did not provide adequate reassessment of Keisha's hemodynamic status given the various sedating medications Keisha was administered during the shift including two doses of intravenous Lorazepam and two doses of intravenous Hydromorphone. No further vital signs were obtained after May 10, 2014, at 2:00 a.m. On May 10, 2014, at 5:51 a.m., Keisha was found in cardiac arrest by a certified nursing assistant (CNA) care partner. Code Blue was called and Keisha was found to be in pulseless electrical activity cardiac arrest. She received cardiopulmonary resuscitation, epinephrine three times and was intubated with return of spontaneous circulation after 15 minutes. She was transferred to the medical intensive care unit (MICU) for further management. On presentation to the MICU, Keisha was started on multiple pressers. Keisha's pupils were fixed and dilated, no respiratory effort and pH of 6.9. Computed tomography (CT) of her head was obtained which showed changes consistent with global hypoxic ischemic injury. After several conversations with the family, they decided to make Keisha do not resuscitate (DNR), discontinue life saving devices and transition to comfort care measures only. Licensee stipulated that such allegations, if proven, are legally sufficient to support findings of fact and conclusions of law that Licensee has violated N.C. Gen. Stat. 90-171.37 and the Board of Nursing Regulations.

## Cause of Death

It is my opinion, within reasonable medical probability, that the cause of death of Keisha was failure to properly maintain medically ordered cardiopulmonary monitoring; but for that failure to render to Keisha the care owed to her by a nurse, Keisha would not have died when she did.

It is therefore my opinion, within reasonable medical probability, that the Keisha's death certification should have been as follows:

Part 1
Failure to properly maintain medically ordered cardiopulmonary monitoring

Part 2
Acute-on-chronic kidney injury
due to Systemic lupus erythematosus

Manner of Death: Homicide

## Basis for Opinion on Cause of Death

Had Licensee properly maintained the ordered cardiopulmonary monitoring, Keisha's cardiac arrest, which apparently occurred between 2:00 a.m. and 5:51 a.m. would have been detected in time to initiate CPR immediately, saving Keisha's life. The manner of death is best certified as Homicide because the lack of proper care by Licensee was criminally negligent.

I reserve the right to amend or supplement this report upon receipt of additional information.
Sincerely,

_Donald Jason, M. d_

Donald Jason, MD, JD
Diplomate in Anatomic and Forensic Pathology

# EXHIBIT 11

# ECU Health Finances Over Safety

- ECU Health Medical Center Safety Grades
  - ECU Health North Safety Grades
  - Nash Hospital, Inc. Safety Grades
- System of Care Page from PCMH 2018 Vendor Policy Handbook
  - System of Care Pages from ECU Health's Website as of 2023