FILED

JUN 18 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

### EASTERN DIVISION

### Civil Action Number 4:24-CV-00051-M-RN

| | | |
|---|---|---|
| Cynthia B. Avens | ) | |
| | ) | |
| (Plaintiff) | ) | PLAINTIFF'S RESPONSE IN |
| | ) | OPPOSITION TO |
| | ) | KAREN KELLY'S |
| | ) | MOTION TO DISMISS AND |
| Faris C. Dixon, Jr., District Attorney | ) | MEMORANDUM OF LAW |
| Pitt County Memorial Hospital, Inc. | ) | SUPPORTING THE MOTION |
| Dr. Karen Kelly, Medical Examiner | ) | TO DISMISS |
| John/Jane Doe | ) | |
| John/Jane Doe | ) | |
| John/Jane Doe | ) | |
| (Defendants) | ) | |

## INTRODUCTION

Plaintiff Cynthia B. Avens, filing pro se, respectfully submits this response in opposition to Dr. Karen Kelly's ("Kelly" or "Defendant") motion to dismiss and the supporting memorandum. The Plaintiff argues that the complaint adequately alleges facts that, if proven, would entitle her to relief against Kelly in both her official and personal capacities for violations of statutory and constitutional rights. This response will address the errors in the Defendant's memorandum, clarify the

actual basis of the Plaintiff's claims, and argue why the Defendant's motion to dismiss should be denied. The Plaintiff will demonstrate that Kelly's actions fall outside the bounds of lawful conduct and that the claims against her are well-founded and warrant judicial consideration.

## CORRECTION AND CLARIFICATION TO DEFENDANT'S ASSERTION

a.) Defendant's memorandum inaccurately claims that the Plaintiff's complaint is partially based on the Defendants' failure to provide information on which she could base a civil action (D.E. 26 at 1 ¶ 2). This is incorrect. Except for filing an affidavit in October 2023 to try to have the district attorney removed from office under North Carolina General Statute (NCGS) 7A-66, the Plaintiff has not sought a civil action, attempted to seek a civil action, nor sought to obtain information for the purpose of any civil action since the wrongful death settlement in 2016 until the filing of her complaint on March 22, 2024.[1]

b.) This Defendant has also erroneously assumed that the Plaintiff alleged that the Defendants "prevent[ed] a wrongful death action against ECU Health." (D.E. 26 at 3 ¶ 1). The Plaintiff has not alleged any such thing in her

---

[1] The Plaintiff will elaborate on the 2016 Wrongful Death settlement in her amended complaint. However, any amendment in this regard has nothing to do with Kelly or Dixon and will be discussed for the purpose of showing ECU Health's conduct.

Complaint. The Plaintiff's motives have been very clear: seeking criminal justice for the death of her daughter, Keisha Marie White (White).

However, the legal system does not allow the Plaintiff to force criminal justice on her own. Homicide cases must be properly investigated by those with the authority to do so, including Kelly.

The issue in this case is that District Attorney Faris C. Dixon Jr. (Dixon) has failed to conduct a thorough investigation. Kelly has failed to review the evidence and provide her expert opinion, and ECU Health appears to have influenced their decisions and those of others not party to this suit. Due to these failures and influences, the Plaintiff's constitutional civil rights have been violated, which is the basis for this lawsuit.

c.) (D.E. 26 at 6 ¶ 5). The Defendant incorrectly concluded that the former Greenville Police Department (GPD) Sergeant, Tim McInerney (McInerney), referenced is the same GPD officer who advised the Plaintiff to sue the hospital. (D.E. 1 at 28 ¶ 42). The Plaintiff did not identify which GPD officer advised her to sue the hospital, but it was not McInerney.[2]

---

[2] Former District Attorney, Kimberly Robb, also suggested the Plaintiff sue the hospital during the first and only verbal conversation between her and the Plaintiff in October or November 2014. The Plaintiff did not think it was necessary to elaborate on this discussion in her complaint.

d.) When reiterating the timeline of events in the Plaintiff's complaint (D.E. 26 at 7-8 ¶ 4), the Defendant failed to complete the event described. Counsel for the Defendant, Attorney Jeremy Lindsley (Lindsley or Counsel), did acknowledge the phone conversation between the Plaintiff and Dixon in June 2022, where Dixon stated he had not completed his review of evidence. Lindsley also pointed out that Dixon said he would submit the evidence to the ME. However, he omitted the terms that accompanied the submission. (D.E. 1 at 34 ¶ 63). The Plaintiff's complaint clearly stated that Dixon told her that if "he found anything in the documents to change his perspective," then he would submit the evidence to the ME.

e.) Further, in the next paragraph (D.E. 26 at 8 ¶ 2), counsel for the defendant acknowledged the communication between the Plaintiff and Dixon regarding Dixon's completion of his review of evidence in July 2022. He also acknowledged that the Plaintiff immediately contacted the ME's office. However, he omitted an important part of the conversation between Dixon and the Plaintiff. There is no mention in the Defendant's memorandum acknowledging that Dixon claimed to already have a report from Kelly before the Plaintiff contacted the medical examiner's (ME) office to confirm. (D.E. 1 at 35, 36 ¶ 64 a, b, c, d) This detail, explicitly pointed out in the Plaintiff's description of facts, seems purposely omitted from the Defendant's recount of events.

Dixon's dishonesty in claiming to already have a report from Kelly is integral to the Plaintiff's complaint. If it were not for this lie, there would have been no need for the Plaintiff to immediately call the ME's office, nor would there have been a need for future calls to the ME's office to be redirected. Dixon's lie is the "but/for" in this situation because it set everything else that followed into motion, up to and including the filing of this complaint. Before his lie, the Plaintiff lacked interest in filing a civil complaint of this nature. Before his lie, Kelly had not been a party to the events in this case. Before his lie, the Plaintiff had no evidence that could be used against ECU Health that was not already time-barred. The recounting of events by the counsel for this Defendant appears to selectively omit critical details, which could potentially discredit the Plaintiff's assertions if left uncorrected.

f.) Also, in the same paragraph (D.E. 26 at 8 ¶ 2), Counsel stated, purportedly according to the Plaintiff's complaint, "Dixon called Plaintiff and again said he was submitting the evidence to the ME's Office." This is a false interpretation of the Plaintiff's statements (D.E. 1 at 35-37 ¶ 64-68), as the Plaintiff's account has been misconstrued. Dixon initially stated he would submit the evidence to the ME only if he found anything to change his perception, which Lindsley acknowledged did not happen. The condition of Dixon seeing something in the evidence to change his perception had to be met before he would agree to

submit the evidence to Kelly. Because this condition was not met, the Plaintiff

had no reason to believe the evidence had been sent to Kelly at any time

before the July conversation between the Plaintiff and Dixon.

g.) The Defendant's memorandum inaccurately states, "Plaintiff contacted the

ME's office in September 2022 but was again told it had not received anything

from the DA's office and that she would need to speak with ECU's risk

manager." (D.E. 26 at 8 ¶ 3). This is incorrect. The Plaintiff explained in her

complaint (D.E. 1 at 37-38 ¶ 71-72) that her call was redirected to the risk

manager, and the ME office worker would not reveal any information except

the message she was instructed to deliver if the Plaintiff called. While the

Plaintiff did receive the same message in October 2022, it was not the same

message alleged in the memorandum; it was the same message the Plaintiff

alleged in her complaint.

h.) The Defendant's memorandum inaccurately states, "In April 2023, DA Dixon

spoke to Plaintiff and told her he sent the records to the ME on August 11,

2022, and copied them to Kelly's email address" (D.E. 26 at 9 ¶ 2). This is

inaccurate. According to the Plaintiff's complaint, in April 2023, Dixon

mentioned that he had sent multiple emails directly to Kelly on August 11,

2022. However, it was in April 2023 that he sent the emails to Danene Lowery

and copied them to Kelly. This distinction is crucial for accurate representation of the events.

i.) The Defendant's heading midway of the page (D.E. 26 at 15), "Plaintiff has no constitutional right to the criminal prosecution of another," misinterprets the Plaintiff's claims and efforts. Plaintiff has not claimed any right to the prosecution of another. The Plaintiff asserts her rights to freedom of speech, to seek redress, to due process, and to equal protection, which have been violated by one or more defendants named in her complaint (D.E. 1 at 1). Additionally, the U.S. Constitution, along with the First and the Fourteenth Amendment gives the Plaintiff the right to seek justice and accountability for her daughter's death. The Constitution explicitly states, "We hold these truths to be self-evident, that all men are created equal, that they are endowed, by their Creator, with certain unalienable rights, that among these are life, liberty, and the pursuit of happiness." The Plaintiff has an "unalienable right" to seek justice for the death of her daughter. The First Amendment guarantees her freedom of speech to give and receive information. And the Fourteenth Amendment guarantees her right to live freely as she chooses within the bounds of the law and to lawfully use her faculties as she sees fit.

j.) Defendant also misconstrued the Plaintiff's request for the initiation of an investigation into her daughter's death and the appointment of a special prosecutor as claiming a right to these actions. However, these requests are

clearly listed under the "X. I SEEK THE FOLLOWING RELIEF" section of the Plaintiff's complaint. If these requests were actual rights that had been denied, they would be part of the cause of action. Every civil action requires a plaintiff to have a desired remedy; without a desired remedy, filing a civil action would be pointless.

k.) Again, the counsel for the Defendant misinterprets the Plaintiff's intents by stating, "Plaintiff appears to allege that the violation of her rights resulted from (1) Defendants' failure to prosecute (or facilitate the prosecution of) the person she believes was responsible for her daughter's death; and (2) Defendants conspiring to cover up the circumstances of her daughter's death to prevent Plaintiff from obtaining information upon which she can base a suit against the Medical Center for medical malpractice or wrongful death. D.E. 1, at 20, ¶ 11; 50-52, ¶¶ 1-8." (D.E. 26 at 17 ¶ 3). To clarify for the Court:

    a. The Plaintiff's civil rights, including freedom of speech, due process, and equal protection, were violated as a result of the defendants' conduct, which is exclusive and distinct from any failure to prosecute. Does the Plaintiff believe that the person responsible for her daughter's, Keisha Marie White's (White), death should be prosecuted? Absolutely. Due to the evidence that supports a prosecution, that is the desired goal of the Plaintiff's efforts over the past decade. However, this goal should not be confused with the actions of the defendants.

b.  While the actions of the defendants do indicate a conspiracy to cover up White's death, the Plaintiff has not alleged that the alleged conspiracy was in any way to hinder a wrongful death action against ECU Health. The wrongful death suit against the "Medical Center" was settled in 2016, and though the agreement to settle was based on fraud and coercion, the Plaintiff has not sought further civil remedy regarding a wrongful death action.

c.  Since 2014, the Plaintiff has sought criminal justice and accountability. It is a reasonable expectation for any parent to seek justice for the death of their child, particularly when there is compelling evidence, as in the case of White. Therefore,

Additionally, the Plaintiff disagrees with Counsel that this case is indistinguishable from the case of *Sattler v. Johnson,* 857 F.2d 224, 227 (4th Cir. 1988). The plaintiff in *Sattler* sought to hold law enforcement and others accountable for burning down his tavern and claimed a conspiracy to cover up the arson. In contrast, the Plaintiff in this case is not seeking a remedy against those responsible for her daughter's death. Instead, she seeks remedy for the corrupt handling of the investigation into her daughter's death. Though the Plaintiff is unclear about the evidence used in *Sattler*, the Plaintiff has evidence to support her claims in this case. Furthermore, Kelly and Dixon are state officials who are held to a higher standard than local law enforcement agencies and, thus, are given more

power in that they both have the authority to demand information from law enforcement if it is necessary to do so. Kelly, in particularly, is also expected to act independent of other agencies in order to provide an opinion free from influence of other agencies. It is unfair to compare this case to *Sattler*, while drawing the conclusion that the two cases are "indistinguishable," because the dynamics in each are clearly different from one another.

## LEGAL BASIS FOR SUBJECT MATTER JURISDICTION

The Plaintiff brings this action under federal statutes that confer subject matter jurisdiction upon this Court. Specifically, the Plaintiff's claims are brought under:

**42 U.S.C. § 1983:** This statute provides a remedy for the deprivation of rights, privileges, or immunities secured by the Constitution and laws by any person acting under color of state law. The Plaintiff alleges that Kelly, acting under color of state law, violated her constitutional rights to due process and equal protection.

**42 U.S.C. § 1988:** This statute allows for the recovery of attorney's fees in civil rights cases. Although the Plaintiff is currently proceeding pro se, she reserves the right to seek attorney's fees should she retain counsel.

The Plaintiff's claims under these federal statutes firmly establish the Court's subject matter jurisdiction over this case. By demonstrating how Kelly's actions under color of state law violated constitutional rights, the Plaintiff provides a clear legal basis for her claims.

## SPECIFIC ALLEGATIONS AND FEDERAL QUESTIONS

The Plaintiff's complaint raises substantial federal questions which are appropriate for federal court jurisdiction. The allegations against Kelly include:

- **Failure to conduct a thorough and impartial review**: Kelly did not perform a comprehensive examination of critical evidence in the investigation of White's death.
- **Deliberate withholding of information**: Kelly intentionally withheld vital information pertinent to the investigation.
- **Participation in a conspiracy**: Kelly engaged in a conspiracy to obstruct justice, violating the Plaintiff's constitutional rights.

These allegations clearly fall within the ambit of federal civil rights statutes and involve questions of federal law.

# ARGUMENT AGAINST DISMISSAL OF SECTION 1983 CLAIMS

## Official and Personal Capacity

Kelly is sued in both her official and individual capacities. While Eleventh Amendment immunity may shield her in her official capacity as a state official, it does not extend to her personal capacity where she is being sued for actions taken outside the bounds of her official duties.

## Official Capacity

Kelly, in her official capacity as Medical Examiner (ME) and based on specific assertions made by the District Attorney (DA), Faris Dixon (Dixon), was expected to actively engage in the investigation of the Plaintiff's daughter, White. Despite this expectation, it is alleged that a phone call with ME office manager Danene Lowery (Lowery) revealed Kelly was prevented from working on White's case. According to Lowery, Kelly would need to consult with the risk manager and attorneys to determine what she was "allowed" to do, as that office was not handling the case.

The obstruction of Kelly's ability to perform her duties fully and independently directly affected the thoroughness and impartiality of the investigation into White's death. However, Kelly chose to comply with such orders, relinquishing her state authority to ECU Health. The Plaintiff argues that since Kelly

relinquished her state powers, doing so strips her of state immunities and those immunities should not apply.

The Plaintiff, under the *Ex Parte Young* exception, seeks injunctive relief. Although Kelly may not have the power to implement or cause an investigation into White's death, she can participate in and cooperate with any such investigation. Additionally, the Plaintiff seeks to have White's death certificate amended if the results of an investigation so indicate or if Kelly agrees with Independent ME (IME), Dr. Donald Jason, MD, JD's (Jason) findings.

**Personal Capacity**

In her personal capacity, Kelly made decisions that deviated from the responsibilities of her state-sanctioned role, unequivocally placing her actions within the scope of state action required under Section 1983. Her conduct included failing to review critical evidence, ignoring procedural duties mandated by law, and allowing external influences to affect her professional judgment, all of which contributed to violating the Plaintiff's constitutional rights to due process and equal protection under the law.

**Sovereign Immunity**

State sovereign immunity does not extend to cases where a plaintiff alleges the state's action is in violation of the federal or state constitutions. In *Department of*

*Revenue v. Kuhnlein*, "Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will. Moreover, neither the common law nor a state statute can supersede a provision of the federal or state constitutions." *Department of Revenue v. Kuhnlein*, 646 So.2d 717, 721 (Florida Supreme Court 1994).

Kelly's failure to perform her statutory and constitutional duties in investigating White's death, influenced by external entities, violated the Plaintiff's constitutional rights to due process and equal protection. These violations fall under the federal constitution's purview, making sovereign immunity inapplicable in this case. Therefore, her actions should be scrutinized under federal law rather than being shielded by sovereign immunity.

**Qualified Immunity**

Quoting *Kisela v. Hughes*, "Qualified Immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kisela v. Hughes*, 584 U.S. ___ (2018). Given Kelly's education and twenty plus years of experience as a medical examiner, she knew, or she should have known that failure to adhere to the prosecutor's instructions and/or expectations to review evidence submitted to her, would violate the Plaintiff's constitutional rights.

Additionally, Kelly's readiness to yield to external pressures, compromising her authority and independence, highlights her indifference to the Plaintiff's harm. Specifically, during the investigation, Kelly followed ECU Health's directives instead of fulfilling her independent duties as a medical examiner. This conduct shows that Kelly placed her loyalty to ECU Health above her professional and ethical responsibilities.

As a medical examiner, Kelly is required by North Carolina General Statutes (NCGS) § 130A-383 to investigate deaths under circumstances such as violence, accidents, suicide, or any suspicious or unnatural situations. This role is a fundamental duty, not discretionary, intended to accurately certify the cause and manner of death. Her alleged failure to fulfill these responsibilities, particularly under the influence of ECU Health Medical Center, represents a severe neglect of duty. Such actions should not be protected by any form of immunity, qualified or sovereign, as they directly hinder the judicial process and violate the plaintiff's Fourteenth Amendment rights to due process and equal protection.

According to the Defendant's memorandum (D.E. 26 at 13 ¶ 1), "a court must determine whether the facts alleged identify a violation of a constitutional right and, if so, whether the right was clearly established at the time of the alleged misconduct. (*Johnson v. Allen*, 416 F.Supp.3d 550, 558-59 (E.D.N.C. 2018))."

According to the Plaintiff's complaint, Dixon submitted evidence to Kelly for review on August 11, 2022, and April 13, 2023. (D.E. 1 at 38-39 ¶¶ 76, 79; at 41 ¶¶ 84-86). The Plaintiff did explain that Kelly failed to review the evidence submitted to her and failed to provide her expert opinion. (D.E. 1 at 40 ¶ 80). The violation of the Plaintiff's First Amendment rights was established at the time the conduct occurred due to Kelly's failure to provide her expert opinion based on the evidence she received in the investigation of the Plaintiff's daughter. In *Martin v. U.S. E.P.A*, the court decided "[b]ecause the right to receive information is derivative of the First Amendment rights of the speaker, a cause of action exists under the First Amendment which allows a recipient to allege that government conduct has chilled the speech of a willing speaker. *Martin v. U.S. E.P.A.,* 271 F. Supp. 2d 38 (D.D.C. 2002). Kelly, through the nature of her job function, is ordinarily a willing speaker. However, her failure to perform her governmental or state-mandated duties, demonstrated her subservience to ECU Health by allowing the facility to dictate which case(s) she was to work on without first requiring their approval, thereby chilling the speech of an otherwise willing speaker.

According to the Defendant's memorandum (D.E. 26 at 13, 14 ¶ 4), "Plaintiff has not alleged facts tending to establish that the violation would have been obvious to a reasonable person in Kelly's position. Plaintiff has not alleged – and cannot

establish – that any of Kelly's conduct violated a clearly established right under Federal law, and Kelly is entitled to qualified immunity."

The Plaintiff asserts that Kelly's deliberate disregard for her responsibilities, given her education and position, should make the violation obvious to a reasonable person in her position. Kelly is a well-educated professional, appointed to her position due to her demonstrated competence. Therefore, her failure to perform her duties cannot be excused by ignorance or misunderstanding.

Moreover, the Plaintiff has alleged specific facts indicating that Kelly's conduct violated her rights (D.E. 1 at 39 ¶ 79, at 40 ¶ 80 a-h, at 41-45 ¶ 84-93, at 50-51 ¶ 4-6). These include instances where Kelly failed to act on submitted evidence, did not provide necessary reports, and deferred her responsibilities to external influences. The doctrine of res ipsa loquitur is applicable here: Kelly was given evidence to examine, she was expected to provide a report based on that evidence, and she failed to do so despite her qualifications and experience. The facts speak for themselves.

While the Plaintiff may not have a judicially cognizable interest in the prosecution or non-prosecution of another, this point is secondary to the central issue: the defendants failed to act in good faith within the scope of their legal and official duties, thereby violating the Plaintiff's civil rights.

In Kelly's case, she violated the Plaintiff's rights to freedom of speech, due process, and equal protection by consulting with ECU Health's risk manager and/or attorneys about her actions, instead of performing her state-mandated function. The Medical Examiner (ME) is essential in providing an independent voice for the deceased. When there are unanswered questions regarding a death, the ME's role is critical in providing answers. This importance underscores why their opinions heavily influence prosecutorial decisions.

Kelly's failure to review and report on White's death, while doing so for other cases, constitutes unequal treatment, violating the principle of equal protection. Her communications with those instructing her not to act on this case and her deference to ECU Health's risk management and attorneys suggest a conspiracy to obstruct justice. These actions or inactions caused the Plaintiff significant harm: emotional distress (constant focus on her daughter's death), psychological harm (nightmares and distrust of authorities), financial burden (cost of hiring an independent medical examiner), and physical harm (limited exercise affecting diabetes due to the ongoing fight for justice).

## DELIBERATE INDIFFERENCE

### Awareness of Risk

Kelly, entrusted with examining medical evidence related to potential crimes, should have been cognizant of the implications of failing to act on evidence pertaining to White's death. This inaction suggests a disregard for the serious harm such negligence could pose to the rights of the deceased's family.

### Reckless or Callous Indifference

By failing to conduct a necessary examination of evidence or provide essential expert opinions, Kelly's inaction demonstrates reckless indifference to the potential violation of constitutional rights, specifically the right to a thorough and impartial investigation.

## THE PLAINTIFF DID PLEAD SUFFICIENT FACTS TO STATE A CLAIM UNDER SECTION 1983

### State Action and Authority:

Kelly, in her official capacity as Medical Examiner and through specific directives made by the District Attorney, was expected to actively engage in the investigation of Keisha Marie White's case. Despite these expectations, external influences from ECU Health Medical Center obstructed her ability to perform

these duties fully, directly affecting the thoroughness and impartiality of the investigation into Keisha Marie White's death. In her personal capacity, Kelly made decisions that deviated from her state-sanctioned role, unequivocally placing her actions within the scope of state action required under Section 1983.

**Legal Precedent:**

In accordance with established precedents, such as noted in *Kentucky v. Graham*, 473 U.S. 159 (1985), to establish personal liability of Kelly under Section 1983, it is sufficient to show that she, acting under color of state law, was responsible for causing the deprivation of federal rights. This establishes her personal accountability. Conversely, in her official capacity, liability extends to the governmental entity she represents, necessitating proof that the entity itself acted as the 'moving force' behind the rights deprivation, as outlined under 42 U.S.C.A. § 1983.

*Evans v. Chalmers*, 703 F.3d 636, 657 (4th Cir. 2012): Plaintiffs may avoid dismissal of claims on official immunity grounds by pleading that an official's tortious actions were "malicious, corrupt or outside the scope of [his] official duties."

*Moore v. Evans*, 476 S.E.2d 421 (N.C. 1996): Similar to *Evans v. Chalmers*, this case states that officials can be sued personally if their actions are alleged to be malicious, corrupt, or outside the scope of their official duties.

**Personal Liability:**

Consistent with the precedent set in *Hafer v. Melo*, 502 U.S. 21 (1991), it is well-established that state officers may be held personally liable for damages under § 1983 for actions undertaken in their official capacities. This ruling affirms that Kelly can be held personally accountable for her role in the alleged deprivation of federal rights, irrespective of her official capacity as Medical Examiner. The Supreme Court has explicitly stated that such liability extends to actions within the scope of official duties and is not precluded by the Eleventh Amendment. Therefore, Kelly's actions, which are central to the claims presented, should not be shielded from scrutiny or consequence under § 1983.

**Violation of Constitutional Rights:**

Fourteenth Amendment: The actions and/or inactions of Kelly, specifically her failure to conduct a thorough and unbiased post-mortem examination and her participation in concealing key medical findings, directly infringed upon the Plaintiff's right to access crucial information regarding her daughter's death. This obstruction violates the Plaintiff's rights under the Fourteenth Amendment to due

process and equal protection of the law and the Plaintiff's First Amendment right to freedom of speech and its reciprocal, the right to receive information.

Moreover, the Fourteenth Amendment guarantees the right to use one's faculties in any lawful way they choose. The Plaintiff has been forced to devote a significant portion of her life over the past ten years to seeking justice for her daughter, effectively putting her life on hold. This prolonged struggle has prevented the Plaintiff from fully enjoying her married life and pursuing other personal and professional interests. Each defendant's actions have collectively contributed to this ongoing denial of the Plaintiff's right to use her faculties freely and fully, as guaranteed by the Fourteenth Amendment. This has resulted in significant emotional distress, strain on personal relationships, and a diminished quality of life for the Plaintiff.

First Amendment Violation: The Plaintiff's First Amendment right was violated due to Kelly's failure to provide her expert opinion based on the evidence she received in the investigation of Plaintiff's daughter. In *Martin v. U.S. E.P.A.*, the court held that "[b]ecause the right to receive information is derivative of the First Amendment rights of the speaker, a cause of action exists under the First Amendment which allows a recipient to allege that government conduct has chilled the speech of a willing speaker." *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38 (D.D.C. 2002).

Kelly, through the nature of her job function, is ordinarily a willing speaker.

However, her failure to perform her governmental or state-mandated duties

demonstrated her subservience to ECU Health by allowing the facility to dictate

which cases she would work on without first requiring their approval. This

conduct effectively chilled the speech of an otherwise willing speaker, thereby

violating the Plaintiff's First Amendment right to receive information.

**Direct Causation:**

The harm suffered by the Plaintiff, including expenses to hire an independent

medical examiner, emotional distress, and the continued pursuit of justice amid

obstructions, is a direct result of Kelly's failure to fulfill her legal and ethical

obligations. Her actions not only impeded the investigation into White's death but

also proactively contributed to the denial of the Plaintiff's ability to seek and find

justice.

## ADDRESSING DEFENDANT'S REMAINING ARGUMENTS:

**Section 1985**: Though the Plaintiff does allege a claim against ECU Health for

violations under Section 1985 involving a conspiracy between them and Kelly,

the Plaintiff does not allege the same against Kelly. The difference is that the

Plaintiff believes there was an invidious discriminatory animus on the part of ECU Health that guided their conduct. It is unclear at this time why Kelly complied.

**Title VI, Section 1981**: Any references to Title VI and/or Section 1981 claims are not applicable to this Defendant.

## CONCLUSION

Given the comprehensive evidence and legal arguments presented, the Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss and allow this case to proceed to trial. The actions of Kelly, as outlined in the Plaintiff's complaint, clearly demonstrate violations of statutory and constitutional rights, and these issues deserve full judicial examination. The Plaintiff seeks appropriate remedies, including compensatory and punitive damages, for the violations suffered and requests any further relief the Court deems just and proper.

Respectfully submitted,

/s/ Cynthia B. Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2024, the Plaintiff's Response in Opposition to
Dr. Karen Kelly's Motion to Dismiss and Memorandum of Law Supporting the
Motion to Dismiss to the Clerk of the U.S. District Court, was hand delivered to
the U.S. District Court in Greenville, NC. Upon docketing, the CM/ECF system
will send electronic notification of such filing to the defendants' counsel:

Respectfully submitted,
/s/ Cynthia B. Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

| | |
|---|---|
| Chris D. Agosto Carreiro | Jeremy D. Lindsley |
| Special Deputy Attorney General | Assistant Attorney General |
| N.C. Department of Justice | N.C. Department of Justice |
| P.O. Box 629 | P.O. Box 629 |
| Raleigh, NC 27602 | Raleigh, NC 27602 |
| ccarreiro@ncdoj.gov | jlindsley@ncdoj.gov |
| Telephone: (919) 716-6874 | Tel: 919-716-6920 |
| Facsimile: (919) 716-6755 | Fax: 919-716-6764 |
| State Bar No. 45356 | NC State Bar No. 26235 |
| *Counsel for DA Dixon* | *Counsel for Dr. Karen Kelly* |

Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
*Counsel for Defendant Pitt County*
*Memorial Hospital, Inc.*

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
*Counsel for Defendant Pitt County*
*Memorial Hospital, Inc.*