IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISON
Civil Action No. 4:24-cv-00051-M-RN

| | | |
|---|---|---|
| CYNTHIA B. AVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OF LAW IN |
| | ) | SUPPORT OF DEFENDANT |
| FARIS C. DIXON, JR., District | ) | DIXON'S MOTION TO DISMISS |
| Attorney; VIDENT/ECU HEALTH | ) | PLAINTIFF'S AMENDED |
| MEDICAL CENTER DR. KAREN | ) | COMPLAINT |
| KELLY, Medical Examiner; | ) | |
| JOHN/JANE DOE; JOHN/JANE DOE; | ) | |
| JOHN/JANE DOE, | ) | |
| | ) | |
| Defendants. | | |

NOW COMES Defendant Faris C. Dixon, Jr., District Attorney for North Carolina's Third Prosecutorial District, in his official and individual capacity, and hereby submits this memorandum of law in support of his motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

Plaintiff Cynthia Avens ("Plaintiff" or "Ms. Avens") filed this action on March 22, 2024, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1988, and 2000d and 18 U.S.C. § 241, seeking redress for violations of constitutional rights. (DE 1 p. 1)[1] There are three named defendants: 1) District Attorney Faris C. Dixon

---

[1] Citations to Plaintiff's Complaint will refer to the docket entry number (DE 33), page number and paragraph number, if applicable.

("DA Dixon"); 2) VIDENT/ECU Health Medical Center ("ECU Health"); and 3) Karen Kelly, medical examiner ("ME") at the Regional Autopsy Center in Greenville, North Carolina. (DE 1 pp. 1–2)

On June 18, 2024, Plaintiff filed an amended pleading alleging that DA Dixon violated 42 U.S.C. § 1983 by "[f]ailing to conduct a thorough and impartial investigation; obstructing justice and conspiring to conceal information; violating [her] First Amendment rights; and [v]iolating her Fourteenth Amendment rights." (DE 33 pp. 1, 65) These claims are brought against DA Dixon in his official and personal capacities. (DE 33 p. 2)

Ms. Avens alleges injury of financial losses and pain and suffering. (DE 33 pp. 78–82) Ms. Avens requests monetary compensation for equipment expenses, legal costs, medical expenses, employment impact, website maintenance, and pain and suffering totaling $156,654,559.04. (DE 33 p. 83) She also asks this Court to order a criminal investigation into the death of Ms. White, appoint a special prosecutor to oversee the investigation including the actions of the named defendants, and requests the federal court launch its own investigation. (DE 33 pp. 82–83). She also requests a "public symbol honoring Keisha Marie White." (DE 33 p. 83).

## STATEMENT OF FACTS RELEVANT TO CLAIMS AGAINST DA DIXON

Plaintiff Cynthia Avens' claims concern the death and related investigation into the death of her daughter, Keisha Marie White ("Ms. White")

while she was a patient at ECU Health. (DE 33 pp. 5–6) Ms. White was admitted to ECU Health on April 16, 2014, and died on May 10, 2014. (DE 33 pp. 5–6) During her daughter's hospitalization, Ms. Avens alleges that the nurse on duty, Linda Leathers Brixon[2] ("Brixon"), failed to perform her nursing duties while assigned to care for Ms. White. (DE 1 pp. 6–14 ¶¶ 14–66) Ms. Avens believes that Brixon's lack of concern and disregard for her daughter's life caused her death, contending that Brixon did not properly record Ms. White's cardiac issues. (Id.) Ms. Avens also alleges that Brixon's actions "entail a deliberate and premeditated choice, constituting criminal intent." (DE 33 p. 14 ¶ 65)

Subsequent to her daughter's passing, ECU Health took the following actions: terminated Brixon's employment, submitted a formal complaint on June 2, 2014 to the North Carolina Board of Nursing ("NCBON"), and notified law enforcement. (DE 33 pp. 15–16 ¶ 69) Ms. Avens also reported the incident to NCBON and requested that ECU Health risk management, the North Carolina State Bureau of Investigation ("SBI") and Greenville Police Department ("GPD") initiate a criminal investigation into the death of Ms. White. (DE 33 pp. 16–19 ¶¶ 71–78) An SBI agent suggested that Ms. Avens contact the district attorney's office which she did in the summer of 2014. (DE

---

[2] Brixon is not a defendant in this lawsuit.

33 p. 19 ¶¶ 78–79, 81)

In June of 2014, Ms. Avens traveled to Greenville, North Carolina to file reports with both the district attorney's office and GPD, but no one was available to speak with Ms. Avens at the DA's office and GPD informed Ms. Avens they did not have jurisdiction. (DE 33, p. 19, ¶ 79). Shortly thereafter, Ms. Avens called the DA's office and spoke with Assistant District Attorney Futrell ("ADA Futrell") who she alleges initially seemed concerned and interested in helping her. (DE 33 p. 19 ¶ 81) A few days later, Ms. Avens called ADA Futrell again to provide additional information, but his demeanor had changed. (DE 33 pp. 19–20 ¶ 82) After speaking to his boss, District Attorney Kimberly Robb ("DA Robb"), both ADA Futrell and DA Robb agreed that a crime had not been committed against Ms. White. (Id.) Between 2014 and 2018, Ms. Avens made multiple attempts to convince GPD and DA Robb to pursue a criminal case in relation to her daughter's death. (DE 33 pp. 23–25 ¶¶ 96–104) She met with Internal Affairs officer Sgt. Tim McInerney to discuss the concerns she had about the investigation into Ms. White's death. (DE 33 pp. 24–25 ¶ 101) She was told by multiple agencies, including the DA's office, that no crime had occurred. (Id.) Even after DA Robb left office in 2018, Ms. Avens continued her efforts to convince the DA's office to investigate her daughter's death under the newly elected DA, Faris Dixon. (DE 33 p. 25 ¶ 105)

On October 24, 2019, DA Dixon met with Ms. Avens and informed her

that no crime had occurred. (DE 33 p. 25–26 ¶ 106) In July 2021, DA Dixon
"provid[ed] insights into the conclusions of the prior administration" in
response to Ms. Avens' inquiries about the investigation. (DE 33 p. 26 ¶ 108)
After eighteen months of no additional response from DA Dixon, Ms. Avens
created a Facebook post in February of 2022 and tagged DA Dixon. (Id.) In
March 2022, Ms. Avens received a letter from DA Dixon which detailed the
evidence he had reviewed leading to his determination that no crime had
occurred in relation to Ms. White's death. (DE 33 p. 26–27 ¶ 109) The letter
listed the following:

    a. The death certificate that stated the manner of death
       was natural.

    b. The absence of a performed autopsy.

    c. The opinion of natural death by the former chief medical
       examiner, Dr. Radisch, MD. MPH.

    d. The conclusion of NC SBI Special Agent Matherly's
       investigative findings.

    e. The conclusion of the GPD's investigative findings.

    f. Various medical records from 2014.

    g. The 2014 report of findings from the NCDHHS
       investigation.

(Id.) Ms. Avens believes that DA Dixon's initial investigation and review of the
above was incomplete, so she asked him to review additional evidence
including Sgt. McInerney's internal affairs files and the 194-page NCBON
report. (DE 33 pp. 27–31 ¶¶ 110–14, 118)

In July 2022, after reviewing the additional evidence, DA Dixon still believed that no crime had occurred and that a new report from the Pitt County ME did not support bringing criminal charges. (DE 33 pp. 31–32 ¶ 118). DA Dixon would not provide a copy of the ME's report to Ms. Avens, did not allow her to inspect the report in person, and did not disclose who signed the report. (Id.) Ms. Avens requested that an independent medical examiner ("IME") be retained to investigate. (DE 33 pp. 32–33 ¶ 119). DA Dixon said he would not use an IME because it would raise questions for the jury about the fact that an outside medical examiner was used instead of the usual, local ME. (Id.) Ms. Avens contacted the Pitt County ME's office and asked about the report DA Dixon mentioned. (DE 33 p. 33 ¶¶ 121–22) Neither the Pitt County ME's office nor the DA's office could locate a copy of the report. (Id.) Ms. Avens believes that DA Dixon lied to her during the July 2022 telephone conversation. (DE 33 pp. 33–34 ¶ 122)

A few days after that phone call, DA Dixon called Ms. Avens saying that he would submit the evidence to the ME's office. (Id.) Ms. Avens felt that DA Dixon was verbally abusive towards her during the conversation and felt "disrespected and diminished" by DA Dixon during this second call in July 2022. (Id.) Between September 2022 and March 2023, Ms. Avens attempted to follow-up with the ME's office and the DA's office to confirm the ME's office had received the evidence from the DA's office. (DE 33 pp. 34–35 ¶¶ 124–30)

Each time she called the Pitt County ME's office she was told to contact the ECU Health risk manager. (Id.) On April 10, 2023, during a recorded phone conversation, Ms. Lowery at the ME's office told Ms. Avens they had not received anything from the DA's office. (DE 33 pp. 37–38 ¶ 136) During this conversation, Ms. Lowery explained that she had called the DA's office and was informed that the DA's office had not sent anything to her. (DE 33 p. 38 ¶ 137)

On April 13, 2023, Ms. Avens recorded a telephone conversation with DA Dixon. (DE 33 p. 38 ¶ 138) DA Dixon confirmed that he had submitted the evidence to the ME's office by emailing it directly to the ME, Dr. Karen Kelly. (Id.) Although Ms. Lowery identified herself as the "contact person" for Ms. Avens, she was not aware that DA Dixon had sent the evidence directly to Dr. Kelly in August 2022. (DE 33 pp. 39–40 ¶ 140) On September 26 and October 4, 2023, Plaintiff attempted to, without success, contact DA Dixon to inquire about updates on the decision from the ME. (DE 33 p. 40 ¶ 141). Plaintiff believes DA Dixon's lack of response was retaliatory. (Id.) On October 5, 2023 Ms. Avens was told by the ME's office that Dr. Kelly had forgotten to review the evidence sent by the DA's office. (DE 33 p. 40 ¶ 143) Ms. Avens believes that DA Dixon did not follow-up, facilitate and insist that Dr. Kelly review the evidence he sent her. (DE 33 p. 41 ¶¶ 144–45)

On December 19, 2023, Ms. Avens contacted Dr. Donald Jason, an experienced ME based in Winston-Salem. (DE 33 p. 41 ¶ 146) Dr. Jason

evaluated the case of Ms. White's death and concluded within reasonable medical probability that Ms. White's death was caused by "the failure to properly maintain medically ordered cardiopulmonary monitoring." (DE 33 p. 41 ¶ 147) Dr. Jason concluded that the Brixon's "failure to provide proper care constituted criminal negligence" and that the "appropriate classification for the manner of death on the death certificate is homicide." (DE 33 pp. 41–42 ¶¶ 147–48) A copy of this report was emailed to the GPD and DA Dixon on January 24, 2024. (DE 33 p. 42 ¶ 149)

In a March 6, 2024 letter DA Dixon acknowledged receiving Dr. Jason's report and reiterated his conclusion that after reviewing the evidence in the matter "that filing criminal charges is 'inappropriate' due to 'insufficient evidence'". (DE 33 pp. 42–43 ¶ 150). Ms. Avens contends DA Dixon "engaged in selective prosecution" by failing to file charges related to her daughter's death. (DE 33 p. 43 ¶ 151).

## LAW AND ARGUMENT

### I.    STANDARDS OF REVIEW

This Court must dismiss all or part of a complaint over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This threshold question must be addressed by the court before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving

jurisdiction to survive the motion. Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647–50 (4th Cir. 1999). In conducting its review of whether jurisdiction is proper, "the facts alleged are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

A complaint may be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil

rights issues."). However, the liberal construction requirement does not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. <u>Weller v. Dep't of Soc. Servs. for City of Baltimore</u>, 901 F.2d 387 (4th Cir. 1990).

## II. PLAINTIFF LACKS A JUDICIALLY COGNIZABLE INTEREST TO INVOKE THE JURISDICTION OF THIS COURT

Article III of the United States Constitution grants federal district courts limited jurisdiction over actual cases and controversies. For a plaintiff to have a justiciable claim in federal court, the plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." <u>Planned Parenthood Of S.C. Inc. v. Rose</u>, 361 F.3d 786, 789 (4th Cir. 2004) (quoting <u>Simon v. E. Kentucky Welfare Rts. Org.</u>, 426 U.S. 26, 38 (1976)). Standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." <u>See Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998); <u>see also Linda R.S. v. Richard D.</u>, 410 U.S. 614, 616 (1973) ("Before we can consider the merits of appellant's claim or the propriety of the relief requested, however, appellant must first demonstrate that [she] is entitled to invoke the judicial process."). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." <u>Clapper v. Amnesty</u>

Int'l USA, 568 U.S. 398, 408 (2013) (quotations omitted).

It is well-established that private citizens lack a judicially cognizable right to compel prosecution or to institute criminal prosecution. Linda R.S., 410 U.S. at 619 ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990) ("[n]o citizen has an enforceable right to institute a criminal prosecution."). All of Plaintiff's claims against DA Dixon relate to her assertion that the district attorney's office failed to investigate and prosecute alleged crimes and individuals related to the death of her daughter. (DE 33 pp. 64–71) However, Ms. Avens lacks standing to contest the decision of DA Dixson when she herself is neither prosecuted nor threatened with prosecution. Linda R.S., 410 U.S. at 619. Accordingly, Plaintiff lacks standing as to all her claims against DA Dixon, and they must be dismissed.

## III.  PLAINTIFF'S CLAIMS ARE BARRED BY MULTIPLE IMMUNITIES.

### A. The Eleventh Amendment Bars Plaintiff's Official Capacity Claims.

Plaintiff's claims against DA Dixon in his official capacity are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution prohibits "any suit in equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment

"an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." <u>Edelman v. Jordan</u>, 415 U.S. 651, 662–63 (1974). This immunity attaches to not only states, but also to state officials sued in their official capacity. See <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself."); <u>Republic of Paraguay v. Allen</u>, 134 F.3d 622, 627 (4th Cir. 1998) (explaining that under the Eleventh Amendment federal courts cannot "entertain claims seeking . . . either compensatory or other, for completed, not presently ongoing violations of federally-protected rights.").

At all times relevant to this lawsuit, DA Dixon was the District Attorney for North Carolina's 3rd Prosecutorial District. In North Carolina, a district attorney is a state judicial official. N.C. Gen. Stat. § 7A-60-63; N.C. Const. art. IV, Sec. § 18 (NC constitutional provision for district attorneys). Therefore, Ms. Avens' official capacity claims seeking monetary damages against DA Dixon are barred by the Eleventh Amendment.

Ms. Avens' official capacity claims for non-monetary relief are likewise barred. Exceptions to Eleventh Amendment sovereign immunity are narrow. A lawsuit against a State, or State official, may only proceed when one of the following three exceptions applies: (1) where Congress, while acting pursuant

to its powers under the Fourteenth Amendment, has properly abrogated a state's immunity, <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 452–56 (1976); (2) where a state has waived its immunity to suit in federal court, <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal law, <u>Ex parte Young</u>, 209 U.S. 123, 155–56 (1908). The Complaint does not implicate the first two exceptions. The third exception, the <u>Ex Parte Young</u> exception, is not implicated either.

The non-monetary relief Plaintiff seeks – initiation of an investigation into her daughter's death, appointment of a special prosecutor, a federal court investigation into the claims in the lawsuit, and erection of a public symbol honoring her daughter – cannot be granted by this Court. A federal court does not have authority to direct prosecutors to prosecute a crime or to investigate possible criminal charges. <u>See</u> <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978); <u>see also</u> <u>United States v. Derrick</u>, 163 F.3d 799, 825 (4th Cir. 1998). There is no legal basis for this Court to appoint a special prosecutor to investigate her daughter's death, nor to erect a monument. Accordingly, Plaintiff fails to invoke the <u>Ex parte Young</u> exception to the Eleventh Amendment and her claims are barred.

## B. Absolute Prosecutorial Immunity Bars Plaintiff's Claims Brought Against DA Dixon.

In North Carolina, the decision whether to prosecute a criminal action in vested solely in the State's district attorneys. N.C. Const. art. IV, § 18; see also State v. Camacho, 329 N.C. 589, 593 (1991). It is well-settled that absolute prosecutorial immunity shields prosecutors from liability for decisions and actions "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). The protection afforded by absolute prosecutorial immunity is available to prosecutors in both their official and individual capacities. Nivens v. Gilchrist, 444 F.3d 237, 250 (4th Cir. 2006). Activities protected by prosecutorial immunity include determining whether and when to initiate criminal proceedings and prosecuting the case. Imbler, 424 U.S. at 430-31 (reasoning that the work of the prosecutor would be impeded were prosecutors not absolutely immune for activities "intimately associated with the judicial phase of the criminal process.").

The Supreme Court and Fourth Circuit have found that prosecutorial immunity applies to professional evaluation of evidence presented by law enforcement, deciding whether to seek an arrest warrant, deciding whether to initiate a prosecution, preparing and filing charging documents, and presenting evidence at trial. See Buckley, 509 U.S. at 272–273; Nero v. Mosby, 890 F.3d 106, 118 (4th Cir. 2018); Savage v. Maryland, 896 F.3d 260, 270 (4th

Cir. 2018) (citing <u>Burns v. Reed</u>, 500 U.S. 478, 486 (1991)); <u>Goldstein v. Moatz</u>, 364 F.3d 205, 215 (4th Cir. 2004); <u>Springmen v. Williams</u>, 122 F.3d 211, 212–13 (4th Cir. 1997) ("The doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution."). "Absolute immunity prevents vexatious litigation from deflecting prosecutors' energies and shading their judgment" including "whether and when to prosecute." <u>Lyles v. Sparks</u>, 79 F.3d 372, 377 (4th Cir. 1996).

However, "a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." <u>Buckley</u>, 509 U.S. at 273; <u>Nivens</u>, 444 F.3d at 250. In <u>Buckley</u>, the Supreme Court took up the question of whether a prosecutor's actions were investigatory such that absolute immunity would not apply. The Court held

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

<u>Buckley</u>, 509 U.S. at 274-275 (cleaned up). But the Court also distinguished investigatory functions usually performed by law enforcement and "professional evaluation of the evidence assembled by the police." <u>Id.</u> at 273.

Qualified immunity applies to the former, while absolute prosecutorial immunity applies in the latter. Id. at 273–275.

The Complaint identifies the following conduct by DA Dixon: 1) determining no crime occurred related to the death of Ms. White; 2) deciding not to initiate criminal charges regarding the death of Ms. White; 3) failing to conduct a "proper and fair investigation" into the death of Ms. White; and 4) responding to Ms. Avens in an untimely manner and allegedly lying to Ms. Avens. (DE 1 pp. 19–43 ¶¶ 79–151) In sum, Ms. Avens does not agree with DA Dixon's evaluation of the circumstances regarding her daughter's death and his decision not to initiate any charges. This is precisely the conduct absolute prosecutorial immunity protects, and Ms. Avens' claims related to the evaluation and determination of whether to prosecute anyone in connection with her daughter's death are barred by prosecutorial immunity.

### C. In the Alternative, Qualified Immunity Bars Plaintiff's Individual Capacity Claims.

Even if this Court were to determine that absolute immunity does not apply, then qualified immunity still bars the individual capacity claims brought against DA Dixon. Qualified immunity prevents government officials from being sued individually over conduct that did not violate clearly established federal law about which a reasonable person would have known. At the pleading stage, qualified immunity bars a claim unless (1) the complaint plausibly alleges a violation of federal law, and (2) the legal principle at issue

was clearly established. <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735, 741 (2011). To be clearly established, the legal principle that a defendant is accused of violating had to be clear such "that every 'reasonable official would have understood that what he is doing violates'" that principle. <u>Id.</u> at 741 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). In other words, "qualified immunity affords protection to a government officer who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." <u>Rogers v. Pendleton</u>, 249 F.3d 279, 286 (4th Cir. 2001)

Here, DA Dixon reviewed evidence provided to him by Ms. Avens, the SBI and GPD and determined that no crime had occurred resulting in her daughter's death. (DE 33 pp. 25-26 ¶¶ 106-109) DA Dixon reviewed and took into consideration the following evidence:

    a. The death certificate that stated the manner of death was natural.

    b. The absence of a performed autopsy.

    c. The opinion of natural death by the former chief medical examiner, Dr. Radisch, MD. MPH.

    d. The conclusion of NC SBI Special Agent Matherly's investigative findings.

    e. The conclusion of the GPD's investigative findings.

    f. Various medical records from 2014.

    g. The 2014 report of findings from the NCDHHS investigation.

(DE 33 p. 26 ¶ 109).

As argued above, the complaint does not plausibly allege a violation of federal law because Ms. Avens has no judicially cognizable interest in the prosecution of another. And even if she did, declining to prosecute a case violates no clearly established legal principle. Whether to initiate a prosecution is at the core of a prosecutor's duties. See Buckley, 509 U.S. at 272–273; Nero, 890 F.3d at 118; Savage, 896 F.3d at 270; Burns, 500 U.S. at 486; Nivens, 444 F.3d at 250; Springmen, 122 F.3d at 212–13. Even if these actions are "investigative" in nature, qualified immunity protects DA Dixon from individual capacity lawsuits. See Allen v. Cooper, 895 F.3d 337, 357 (4th Cir. 2018), aff'd, 589 U.S. 248 (2020) (finding that qualified immunity applies when "reasonable officials in the position of the North Carolina officials would not have understood beyond debate" that they violated constitutional rights).

Plaintiff fails to establish that DA Dixon either violated the federal law or did so understanding that his actions violated clearly established legal principles. Qualified immunity shields DA Dixon in his individual capacity from Plaintiff's individual capacity claim brought under section 1983.

## IV. PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE CLAIMS AGAINST DA DIXON UNDER 42 U.S.C. § 1983

The requirement for liberal construction of *pro se* pleadings means that if the court can reasonably interpret a valid claim on which the plaintiff might succeed, it should do so. However, this does not obligate the court to construct

Plaintiff's legal argument for her. Weller, 901 F.2d at 390–91 (the special judicial solicitude with which a court should view such pro se complaints does not transform the court into an advocate). Plaintiff raises a claim against DA Dixon under 42 U.S.C. § 1983 for "[f]ailing to conduct a thorough and impartial investigation; Obstructing justice and conspiring to conceal information; Violating [her] First Amendment rights; [A]nd [v]iolating her Fourteenth Amendment rights." (DE 33 pp. 1, 65)

### A. Plaintiff fails to state a 42 U.S.C. § 1983 claim

A Section 1983 claim has two elements: "(1) a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law." Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). Plaintiff's 42 U.S.C. § 1983 claim fails because she does not allege the violation of a constitutionally protected right. A private citizen simply has "no judicially cognizable right to the prosecution of third parties." Leeke v. Timmerman, 454 U.S. 83, 87 (1981); see also Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (victims have no constitutional right to have defendants criminally prosecuted); Graves v. Haywood, No. 5:19-CT-3043-FL, 2022 WL 945598 (E.D.N.C. Mar. 29, 2022) (holding plaintiff did not have standing to challenge prosecutorial decisions or criminal investigations of third parties and did not have a constitutional right to a thorough or complete

investigation of her allegations.)  The facts and allegations put forth by Ms. Avens that her constitutional rights were violated by DA Dixon because he did not conduct a thorough investigation and did not initiate any criminal prosecution against anyone, (DE 33 pp. 26–32, 42–43 ¶¶ 107, 110, 114, 118, 150–51), fail to state a claim.[3]

Plaintiff's First Amendment claims against DA Dixon also fail. In order to state a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity, (2) the defendant took an action that adversely affected that protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017). "For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Washington v. Cnty. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)).

---

[3] Plaintiff also asserts that DA Dixon engaged in selective prosecution "by failing to file charges . . ." (DE 33, p. 43 ¶ 151) However, selective prosecution is a claim relating to a prosecutor *bringing charges* for reasons forbidden by the Constitution, and is inapplicable to a decision not to prosecute. See United States v. Armstrong, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is . . . an . . . assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.")

In her Complaint, Plaintiff alleges that DA Dixon's failure to respond to her phone call constituted First Amendment retaliation. (DE 33, p. 33–34, ¶ 122) She further alleges that DA Dixon violated her "First Amendment right to information by providing misleading and deceptive information to the Plaintiff regarding his investigation." (DE 33 pp. 67-68) These allegations fall well short of stating a First Amendment claim. DA Dixon's failure to return Plaintiff's phone calls or initiate a criminal prosecution is insufficient to chill a person of ordinary firmness from engaging in protected speech, and in any event, Plaintiff has continued to speak out, as evidenced by this lawsuit. And even if it did, as explained above, all of DA Dixon's actions related to his declination to initiate criminal charges are protected by absolute prosecutorial immunity. <u>Savage</u>, 896 F.3d at 270.

## V. PLAINTIFF'S ASSERTION OF NEGLIGENCE PER SE AND CONTINUING WRONG DOCTRINE DOT NOT GIVE RISE TO ANY RECOGNIZED CLAIM AGAINST DA DIXON.

In her Complaint, Ms. Avens raises the liability theory of negligence *per se* and the continuing wrong doctrine as a basis for her claims against DA Dixon. (DE 33 pp. 69-70) These two paragraphs fail to state a claim for several reasons. First, "federal criminal statutes relating to obstruction of justice do not authorize a private cause of action for money damages." <u>Feldman v. L. Enf't Assocs. Corp.</u>, 779 F. Supp. 2d 472, 498 (E.D.N.C. 2011). Second, negligence per se and the continuing wrong doctrine relate to tort claims, none of which

Plaintiff appears to bring in this suit. Finally, to the extent this Court construes Plaintiff to plead a North Carolina common law obstruction of justice tort, while North Carolina does recognize a common-law obstruction of justice civil claim, "North Carolina does not recognize a claim for obstruction of justice for actions relating to a criminal proceeding against prosecutors . . . ." <u>Bartko v. Wheeler</u>, No. 5:14-CT-3043-D, 2014 WL 3563359 (E.D.N.C. July 18, 2014), <u>aff'd,</u> 589 F. App'x 181 (4th Cir. 2015).

## <u>CONCLUSION</u>

For all the reasons argued above, the claims alleged by Ms. Avens should be dismissed because and she lacks standing to bring these specific civil claims and criminal charges, the claims are barred by absolute prosecutorial immunity and the Eleventh Amendment, and she does not state a claim for which relief may be granted.

*Signature pages and certifications follow.*

Respectfully submitted, this the 2nd day of July, 2024.

**JOSHUA H. STEIN**
**Attorney General**

<u>/s/ Chris D. Agosto Carreiro</u>
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
ccarreiro@ncdoj.gov
State Bar No. 45356
*Attorney for Defendant Dixon*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has this day electronically filed the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DIXON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system and addressed to the following individual:

> Cynthia B. Avens
> 303 Riverside Trl.
> Roanoke Rapids, NC 27870
> *Pro se Plaintiff*

This the 2nd day of July, 2024.

<u>/s/ Chris D. Agosto Carreiro</u>
Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

The undersigned hereby certifies that the foregoing document complies with the applicable word limitation in Local Rule 7.2(f)(3). It contains 5,255 words, as counted by word-processing software, excluding the case caption, signature block, required certificates, tables of contents or authorities, attachments, exhibits, affidavits, or other addenda.

This the 2nd day of July, 2024.

/s/ Chris D. Agosto Carreiro
Chris D. Agosto Carreiro
Special Deputy Attorney General