| | |
|---|---|
| CYNTHIA B. AVENS,<br><br>      Plaintiff,<br><br>   v.<br><br>FARIS C. DIXON, JR., DISTRICT ATTORNEY, PITT COUNTY MEMORIAL HOSPITAL, INC., DR. KAREN KELLY, MEDICAL EXAMINER, JOHN/JANE DOE, JOHN/JANE DOE,<br><br>      Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DR. KAREN KELLY'S MOTION TO DISMISS THE AMENDED COMPLAINT** |

Defendant Karen Kelly, M.D. ("Dr. Kelly") submits this Memorandum of Law in support of her Motion to Dismiss Plaintiff's Amended Complaint. (DE 33)

## INTRODUCTION

Plaintiff, appearing *pro se*, alleges that Defendants violated her constitutional rights, obstructed justice, and conspired to obstruct justice following the death of her daughter in April 2014. Plaintiff also alleges that Dr. Kelly's alleged actions, or alleged inactions, constitute negligence *per se* under state law.

1

However, Plaintiff's claims against Dr. Kelly fail for several reasons. First, the Court lacks subject matter jurisdiction. Second, Plaintiff fails to sufficiently state claims against Dr. Kelly upon which relief can be granted. Third, even if Plaintiff adequately alleges claims against Dr. Kelly, they are barred by sovereign immunity or by qualified immunity.

## STATEMENT OF THE CASE

Plaintiff filed her original Complaint on March 22, 2024, alleging Defendants violated her rights under 28 U.S.C. §§ 1981, 1983, 1985, 1988[1], 2000d, and 18 U.S.C. § 241 following the death of her daughter in April 2014. (DE 1). On 18 June 2024, after each Defendant filed a Motion to Dismiss (DE 22, 24 & 26), Plaintiff filed an Amended Complaint. (DE 33)

The Amended Complaint alleges that Dr. Kelly violated Plaintiff's rights under 42 U.S.C. § 1983 and under the First and Fourteenth Amendments by failing to perform her duties as a Medical Examiner and by collaborating with ECU Health in obstructing the investigation into her daughter's death." (DE 33 pp 71-73) The Amended Complaint also asserts Dr. Kelly's alleged conduct

---

[1] Section 1988 "defines procedures under which remedies may be sought in civil rights actions" but does not create an independent cause of action. *See Schroder v. Volcker,* 864 F.2d 97, 99 (10th Cir. 1988). The statute also authorizes courts to award attorney's fees to prevailing parties in civil rights cases. 42 U.S.C. § 1988.

amounts to obstruction of justice and conspiracy to obstruct justice and constitutes negligence *per se* under North Carolina State law. (DE 33 pp 73-74)

In addition to compensatory and punitive damages totaling $156,654,559.04, Plaintiff "demands the initiation of a comprehensive and impartial criminal investigation" into her daughter's death and the appointment of a special prosecutor or independent counsel to oversee the investigation. (DE 33 pp 82-83) Plaintiff also seeks "a declaration that Defendants' actions violated her constitutional rights under the First and Fourteenth Amendments" and the creation of a "public memorial" to her daughter's memory. (DE 33 p 83)

On June 28, 2024, Dr. Kelly filed a Consent Motion for an extension of time to respond to the Amended Complaint through July 16, 2024 (DE 41), and the Court granted the Motion. (DE 42) Dr. Kelly filed a Motion to Dismiss the Amended Complaint on July 16, 2024. (DE 47)

## **STATEMENT OF THE FACTS**[2]

Plaintiff's daughter, Keisha Marie White ("Keisha"), died on May 10, 2014, while a patient at ECU Health. (DE 33 ¶¶ 13-14) Plaintiff alleges that

---

[2] For her Motion to Dismiss the Amended Complaint, Dr. Kelly assumes that the facts alleged are true but otherwise disputes the truth of Plaintiff's allegations.

3

Keisha's death resulted from the failure of the registered nurse on duty, Linda Brixon ("Brixon"), to properly care for Keisha and monitor her condition. (DE 33 ¶¶ 14-66) Plaintiff alleges that Keisha's certificate incorrectly indicates the manner of death as "natural." (DE 33 ¶ 68, DE 33-2)

ECU Health's investigation of the matter resulted in Brixon's termination. (DE 33 ¶ 69) ECU Health and Plaintiff filed complaints with the North Carolina Board of Nursing ("NCBON") concerning Brixon's conduct, prompting the NCBON to investigate. (DE 33 ¶ 71) The NCBON culminated in a non-disciplinary action against Brixon and an unpublished consent order. (DE 33 ¶ 75, DE 33-4)

Plaintiff also filed complaints with the Centers for Medicare and Medicaid Services ("CMS"), the Department of Health and Human Services ("DHHS"), and the Joint Commission ("JC"). (DE 33 ¶ 90).

Plaintiff alleges that during the week of June 16, 2014, ECU Health's Risk Manager, Vicki Haddock (Haddock), told Plaintiff that the hospital must report the matter to the State Bureau of Investigation ("SBI"). (DE 33 ¶ 77) Plaintiff called the SBI and was told they knew nothing about her daughter's case and that no one had spoken to the ECU Health representative. (DE 33 ¶ 78)

In June 2014, Plaintiff visited the Greenville Police Department and the District Attorney's office to file reports. The police department informed her

the matter was outside of its jurisdiction because the hospital had its own police. (DE 33 ¶ 79) Plaintiff went to ECU Health's Police Department but was told to speak to the risk manager first. (DE 33 ¶ 80)

Plaintiff next spoke to Pitt County Assistant District Attorney Anthony Futrell ("ADA Futrell"), who told her he would consider the matter. (DE 33 ¶ 81) In a follow-up conversation, ADA Futrell informed her that no crime had been committed and that his boss, the Pitt County District Attorney Kimberly Robb (DA Robb), agreed. (DE 33 ¶ 83)

In July 2014, Plaintiff again spoke to Haddock, who reiterated that she contacted SBI agents. (DE 33 ¶ 83) Plaintiff called the SBI to confirm the contact but was told the agency had no information about the case and had not spoken to Haddock. (DE 33 ¶ 84)

On September 13, 2014, the Greenville Police Department's Chief Hassan Aden ("Chief Aden") informed Plaintiff that ADA Futrell and the SBI completed investigations at DA Robb's direction. (DE 33 ¶ 89) In November 2014, Plaintiff gave the NCDHHS report to the Greenville Police, and Chief Aden assigned Detective Alvaro Elias ("Det. Elias") to investigate. (DE 33 ¶ 96). In December 2014, Det. Elias informed Plaintiff that he would send records to the then-North Carolina Chief Medical Examiner, Dr. Deborah Radisch ("Dr. Radisch"). (DE 33 ¶ 99) Dr. Radisch released a report five months later concluding Keisha died from natural causes. (DE 33 ¶ 100)

5

On October 24, 2019, Plaintiff met with the newly elected Pitt County District Attorney, Farris J. Dixon, Jr. (DA Dixon), who told her he had reviewed the matter and concluded that no crime had been committed. (DE 33 ¶ 106)

Plaintiff contacted DA Dixon again in July 2021 and asked him to provide a detailed list of the evidence he reviewed before making his decision in 2019. (DE 33 ¶ 108) DA Dixon provided the list in a March 14, 2022 letter. (DE 33 ¶ 109)

Plaintiff again contacted DA Dixon in March 2022 to discuss documents missing from the evidence list, and DA Dixon assured her that someone would review the additional documents. (DE 33 ¶¶ 114-15) In a June 2022 phone conversation, DA Dixon told Plaintiff he had not completed his review of the new evidence and would submit the evidence to the Pitt County Medical Examiner's Office if he found anything in the documents that changed his opinion that no crime had occurred. (DE 33 ¶ 117)

In July 2022, during a conversation that escalated into an argument, DA Dixon told Plaintiff he had finished his review and maintained his earlier position that the matter was not criminal in nature. (DE 33 ¶ 118) DA Dixon told Plaintiff he had received a report from the Medical Examiner that did not support criminal charges. (*Id.*)

6

Immediately after this conversation, Plaintiff contacted the Pitt County Medical Examiner's Office ("ME") but was informed that there was no information about the matter. (DE 33 ¶ 120) Plaintiff contacted the ME's office two days later and was told the DA's Office was trying to find the report. (DE 33 ¶ 121) A few days later, DA Dixon called Plaintiff and told her he was submitting the evidence to the ME. (DE 33 ¶ 122)

Plaintiff contacted the ME's office in September 2022 but was again told it had not received anything from the DA's office and that she would need to speak to ECU Health's risk manager. (DE 33 ¶ 124) She received the same response from the ME's office in October 2022. (DE 33 ¶ 126)

In January or February 2023, DA Dixon told Plaintiff that Dr. Karen Kelly was on FMLA and expected to return to the office in February. (DE 33 ¶ 128) Plaintiff received the same information from the ME's Office. (DE 33 ¶ 129)

Plaintiff called the ME's office again in March 2023 and was told Dr. Kelly was working from home but that the office had no information about Keisha. (DE 33 ¶ 130) During phone calls on March 28 and April 10, 2023, DA Dixon confirmed sending the records to the ME in August 2022. (DE 33 ¶¶ 134-35) However, immediately following the April 10, 2023 call, the ME's Office told Plaintiff it had no information about the matter. (DE 33 ¶ 136) Plaintiff alleges that the ME's Office Manager told her Dr. Kelly "would need

7

to wait and talk to risk because they are not supposed to be doing anything with the case" and that "Kelly would need to talk to the attorneys and see what she would be 'allowed' to do." (DE 33 ¶ 136g-h)

In April 2023, DA Dixon told Plaintiff he sent the records to the ME on August 11, 2022, and during the conversation, sent them to the ME's Office again with a copy directed to Dr. Kelly's email address. (DE 33 ¶ 138) A few days later, the ME's office confirmed it received the records. (DE 33 ¶ 139)

Plaintiff called the ME's Office on October 4, 2023, and was told she would need to talk to Dr. Kelly, who was unavailable. (DE 33 ¶ 142) On October 5, 2023, the ME's Office Manager told Plaintiff that Dr. Kelly said she had forgotten to look at the evidence but would do so over the weekend. (DE 33 ¶ 143)

On December 19, 2023, Plaintiff retained Dr. Donald Jason, MD, JD, to independently evaluate the case. (DE 33 ¶ 146) In a January 15, 2024 report, Dr. Jason concluded that Ms. White's manner of death was homicide. (DE 33 ¶¶ 147-48, DE 33-10)

Plaintiff sent Dr. Jason's report to the Greenville Police Department and DA Dixon on January 24, 2024. (DE 33 ¶ 149) DA Dixon responded in a March 6, 2024, letter informing Plaintiff that filing criminal charges would be inappropriate due to insufficient evidence. (DE 33 ¶ 150)

## DISMISSAL STANDARD

Plaintiff's claims should be dismissed under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure based on lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted.

When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff must prove jurisdiction to survive dismissal. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The same standard applies to jurisdictional challenges under Rule 12(b)(2). "[T]he jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citations omitted).

To survive a Rule 12(b)(6) motion, a complaint must rise above the "speculative level" and satisfy the court that the claims asserted are plausible on their face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The complaint must "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the

9

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citations omitted). A court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship.*, 213 F.3d 175, 180 (4th Cir. 2000)

## <u>ARGUMENT</u>

**I. PLAINTIFF'S AMENDED COMPLAINT FAILS TO PLEAD SUFFICIENT FACTS TO STATE A CLAIM UNDER 42 U.S.C. § 1983.[3]**

Plaintiff sues Dr. Kelly under 42 U.S.C. § 1983 in Dr. Kelly's official and individual capacities. (DE 33 p 71, ¶ P) Either way, Plaintiff's claims against Dr. Kelly fail. First, Plaintiff has not plausibly pleaded that Dr. Kelly violated any recognized constitutional right. Second, a claim against Dr. Kelly in her official capacity is barred by the Eleventh Amendment and the sovereign immunity doctrine. Third, qualified immunity bars a claim against Dr. Kelly in her personal capacity.

---

[3] There is no direct cause of action under 42 U.S.C. § 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) (holding that 42 U.S.C. § 1983 is the exclusive federal remedy against the State for violating rights guaranteed by § 1981); *see also Dennis v. Cnty. of Fairfax,* 55 F.3d 151 (4th Cir. 1995). To the extent that a claim exists under § 1981 for racial discrimination in the context of the right to contract (*see Melvin v. SSA,* 126 F. Supp. 3d 584, 609 (E.D.N.C. 2015)), the Complaint makes no allegation that Dr. Kelly interfered with Plaintiff's right to enforce or make contracts or that such interference was racially motivated.

**A. Plaintiff has not pleaded a violation of any recognized constitutional right**.

To establish a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law violated plaintiff's rights secured by the Constitution and laws of the United States. *Melvin v. SSA*, 126 F. Supp. 3d 584, 607 (E.D.N.C. 2015) (citing *West v. Atkins*, 47 U.S. 42, 48 (1988).

Here, Plaintiff alleges that Dr. Kelly "deprived [her] of her constitutional rights" under the First and Fourteenth Amendments by "fail[ing] to perform her duties as a Medical Examiner and her collaboration with ECU Health in obstructing the investigation into Keisha White's death." (DE 33 p 72) More specifically, Plaintiff alleges that Dr. Kelly violated her rights to due process and equal protection under the Fourteenth Amendment by "fail[ing] to conduct a thorough and unbiased post-mortem examination and by allowing external influences to dictate her actions" thereby "obstruct[ing] the Plaintiff's access to crucial information regarding her daughter's death." (*Id.*) Plaintiff further alleges that her right to equal protection was violated because "she was not treated with the same impartiality and diligence that other similarly situated individuals would receive." (*Id.*) Finally, Plaintiff alleges that Dr. Kelly's "failure to provide her expert opinion based on the evidence she received in the

11

investigation of the Plaintiff's daughter" violated her rights under the First Amendment. (*Id.*)

### 1. Plaintiff has no constitutional right to the criminal prosecution of another.

By her Amended Complaint, Plaintiff seeks the "initiation of a comprehensive and impartial criminal investigation into the circumstances surrounding" her daughter's death and the appointment of a "special prosecutor or independent counsel to oversee the [] investigation.'" (DE 33 p 82) However, Plaintiff has no right to a criminal investigation or prosecution.[4]

"[T]he U.S. Supreme Court has held that 'a private citizen has no 'judicially cognizable interest in the prosecution or nonprosecution of another.'" *Wattley v. City of Charlotte*, No. 3:20-cv-426-MOC-DSC, 2021 U.S. Dist. LEXIS 61580, at *10 (W.D.N.C. Mar. 30, 2021) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). The Fourth Circuit Court of Appeals also found that private citizens have no right to a criminal investigation or criminal prosecution of another nor have standing to request the prosecution of another. *Id.* (quoting *Smith v. McCarthy*, 349 F. App'x 851, 859 n.12 (4th Cir. 2009))

---

[4] Likewise, the Amended Complaint fails to allege facts tending to show entitlement to any remedy or class of damages referenced therein including directing Defendants to cooperate in the sought-after investigation, directing Dr. Kelly to change the manner of death indicated in Keisha's death certificate, creation of a public memorial, or compensatory or punitive damages. See DE 33 pp 82-84.

12

(unpublished). Thus, initiating a criminal investigation and appointing a special prosecutor are not rights guaranteed to Plaintiff under the Constitution or laws of the United States and Plaintiff lacks standing to seek such relief.[5]

### 2. Plaintiff fails to identify any due process or equal protection violations.

Plaintiff alleges that Dr. Kelly violated her rights to due process and equal protection under the Fourteenth Amendment by "fail[ing] to conduct a thorough and unbiased post-mortem examination and by allowing external influences to dictate her actions" thereby "obstruct[ing] the Plaintiff's access to crucial information regarding her daughter's death." (DE 33 p 73 ¶ S) However, the Amended Complaint fails to adequately allege a violation of Plaintiff's rights.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish an equal protection claim, a plaintiff must show that 'he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" *Soto v. Town of*

---

[5] Defendant Kelly incorporates Section II of Defendant Dixon's Memorandum supporting his Motion to Dismiss the Amended Complaint asserting that Plaintiff lacks standing to bring a claim seeking to compel the criminal prosecution of another. *See* DE 44 pp 10-11.

13

*Rolesville*, No. 5:23-cv-466-D, 2024 WL 1546918, at *6 (E.D.N.C. Apr. 9, 2024) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (citation omitted)). The allegations of the Amended Complaint fail to satisfy either requirement.

Plaintiff asserts that in not receiving information about her daughter's death from Dr. Kelly, Dr. Kelly treated Plaintiff differently from other individuals who have sought similar information. However, in support of this assertion, Plaintiff offers only speculation and conjecture. Likewise, the Amended Complaint contains only conclusory and speculative allegations of racial discrimination. Such threadbare allegations are insufficient under *Iqbal*, 556 U.S. at 678. *See, e.g., Williams v. Pitt Cty. Bd. of Educ.*, No. 4:18-cv-32-BR, 2018 WL 6981219, at *7 (E.D.N.C. December 5, 2018) (holding that general allegations fail to satisfy the pleading standard set forth in *Iqbal*) *and see Brown v. Wake Cty. Gov't*, No. 5:16-cv-806-D, 2017 WL 2982971, at *6 (E.D.N.C. July 12, 2017) (finding that threadbare allegations of being "treated differently" than another group of people is too vague to state a claim under Title VII.)

### 3. Plaintiff has not identified any First Amendment violations.

The right to free speech under the First Amendment includes the right to speak and to be free from retaliation by public authorities for the exercise of

14

that right. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Though Plaintiff alleges a violation of her First Amendment rights, the Amended Complaint does not allege facts tending to show that Dr. Kelly prevented or prohibited Plaintiff from exercising her right to free speech. Likewise, the Amended Complaint contains no facts that plausibly support an allegation that Dr. Kelly took any action to retaliate against Plaintiff for exercising that right.

Plaintiff cites *Martin v. U.S. EPA*, 271 F. Supp. 2d 38 (D.D.C. 2002) for the proposition that the First Amendment also protects the right to receive information from a willing speaker. (DE 33 p 73) However, Plaintiff's reliance on *Martin* is misplaced. Even if the proposition described in *Martin* applies to Plaintiff's First Amendment rights, the Amended Complaint fails to plausibly allege facts to support a claim against Dr. Kelly, and this claim should be dismissed.

**B.    The Eleventh Amendment and the Sovereign Immunity Doctrine bar a § 1983 claim against Dr. Kelly in her official capacity.**

Section 1983 permits damages claims against a "person" who deprives another of their constitutional rights while acting under color of state law. 42 U.S.C. § 1983. However, in her official capacity, Dr. Kelly is not a "person." Rather, as a medical examiner, she is a public officer and entitled to immunity

if sued in her official capacity. *Epps v. Duke Univ.*, 116 N.C. App. 305, 309, 447 S.E.2d 444, 447 (1994).

"[T]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs.. v. Garrett,* 531 U.S. 356, 363 (2001); *see also Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). Thus, absent waiver or congressional abrogation, states enjoy immunity from suits for damages in federal court. *See Coleman v. Court of Appeals*, 566 U.S. 30, 35 (2012).

Moreover, North Carolina has not waived its sovereign immunity from § 1983 claims, and Congress has not abrogated that immunity. *Quinn v. N.C. Dep't of Health & Hum. Servs.,* No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)). This immunity extends to "state agents and state instrumentalities." *See Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997).

Under § 1983, Plaintiff can pursue a claim against Dr. Kelly in her official capacity only for injunctive relief and only if Dr. Kelly has the authority to provide the requested relief. *Davis v. Scarborough*, No. 3:21-cv-00132-MR, 2022 U.S. Dist. LEXIS 48974, at *4-5 (W.D.N.C. Mar. 18, 2022) ("The Plaintiff's claims for injunctive relief will be dismissed because the Plaintiff has failed to

16

plausibly allege that Defendant Scarborough, as a probation officer, has any authority to authorize his release to ELC.")

Plaintiff has not alleged that Dr. Kelly has the authority to initiate a criminal investigation into Keisha's death, appoint a special prosecutor or independent counsel to oversee an investigation, or erect a public symbol honoring Ms. White. This claim should be dismissed against Dr. Kelly in her official capacity.

### C. Qualified Immunity bars a § 1983 claim against Dr. Kelly in her individual capacity.

To determine whether qualified immunity applies, a court must determine whether the facts alleged identify a violation of a constitutional right and, if so, whether the right was clearly established at the time of the alleged misconduct. *Johnson v. Allen*, 416 F. Supp. 3d 550, 558-59 (E.D.N.C. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). If the answer to either question is "no," a defendant is entitled to dismissal. *Id.* (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 559 (quoting *Kislea v. Hughes*, 584 U.S. 100, 104 (2018)).

Plaintiff alleges due process and First Amendment violations. As shown above, the Amended Complaint does not plausibly allege Dr. Kelly violated

17

Plaintiff's rights under 42 U.S.C. § 1983, the First Amendment, or the Fourteenth Amendment. Furthermore, as shown in Section II below, the Amended Complaint fails to state a valid claim for violation of Plaintiff's rights under 42 U.S.C. § 1985. Accordingly, the Court should dismiss this claim.

## II. THE AMENDED COMPLAINT DOES NOT PLEAD SUFFICIENT FACTS TO STATE A CLAIM AGAINST DR. KELLY FOR DISCRIMINATION UNDER 42 U.S.C. § 1985.

The Amended Complaint does not explicitly allege that Dr. Kelly violated Plaintiff's rights under 42 U.S.C. § 1985. Assuming *arguendo* that the Amended Complaint seeks to make such a claim, which is denied, it fails to plead sufficient facts to do so.

Section 1985(3) permits claims against individuals who conspire to impede, hinder, obstruct, or defeat the due course of justice while intending to deny any person the equal protection of the law. 42 U.S.C. § 1985(3). Plaintiff's claim against Dr. Kelly under § 1985(3) fails because the Amended Complaint does not allege facts that rise above the speculative level or plausibly allow the Court to draw a reasonable inference that Dr. Kelly intentionally engaged in a conspiracy to deprive Plaintiff of her rights. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009).

In a § 1985(3) conspiracy claim, "'a plaintiff must show: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal

18

enjoyment of rights secured by the law to all, (4) and which results in injury to the Plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.'" *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). "Allegations of 'parallel conduct and a bare assertion of a conspiracy' are not enough for a claim to proceed." *Id.* (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556))).

To show the existence of a conspiracy, "'a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights.'" *Melvin v. SSA*, 126 F. Supp. 3d 584, 610 (E.D.N.C. 2015) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (citations omitted)). Although an express agreement is unnecessary, a plaintiff must show "that there was a single plan, the essential nature of which was known to each person who is to be held responsible for its consequences." *Id.* (citing *Simmons,* 47 F.3d at 1378). This "relatively stringent standard" requires sufficient evidence that the alleged conspirators participated in a joint plan. *Id.* (quoting *Simmons,* 47 F.3d at 1377). The Amended Complaint does not state plausible allegations that Dr. Kelly overtly or impliedly came to a "meeting of the minds" with any person to violate Plaintiff's rights and, therefore, fails to fulfill even this first element of a Section 1985 claim.

19

The Amended Complaint also fails to fulfill the second element. A plaintiff must do more than declare herself a member of a protected class and allege a defendant's conduct was racially motivated. Instead, she must "'plead specific facts in a nonconclusory fashion to survive a motion to dismiss.'" *Melvin*, 126 F. Supp. 3d at 610 (quoting *Gooden v. Howard Cty.*, 954 F.2d 960, 970 (4th Cir. 1992). The Amended Complaint contains no specific facts showing that Dr. Kelly's alleged actions, or her failure to act, were racially motivated. Plaintiff does not allege that Dr. Kelly referred to Plaintiff in a racially derogatory manner or that she held any ill will or hatred toward Plaintiff or Ms. White because of their race. The Amended Complaint's allegations are conclusory and are insufficient to maintain an action under § 1985(3).

The Amended Complaint also fails to plausibly plead facts to satisfy the remaining elements of a Section 1985 claim. As shown in Section I above, Plaintiff fails to plausibly allege a violation of any rights. Consequently, Plaintiff fails to show any injury resulting from Dr. Kelly's alleged actions or alleged failures to act. Thus, the Amended Complaint fails to make a claim against Dr. Kelly under Section 1985.

## III. THE AMENDED COMPLAINT DOES NOT STATE A VALID CLAIM UNDER TITLE VI.

The Amended Complaint does not explicitly allege that Dr. Kelly discriminated against her due to her race, color, national origin, or other protected class. However, even if Plaintiff asserts such a claim, the allegations of the Amended Complaint are insufficient to sustain a claim for racial discrimination under Title VI (42 U.S.C. § 2000d).

Section 2000d provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Section provides a cause of action only for intentional discrimination. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70 (1992). To prevail, Plaintiff must show that Dr. Kelly engaged in intentional discrimination with direct evidence of discriminatory animus or by establishing a *prima facie* discrimination case. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Amended Complaint is devoid of any allegation of direct evidence of discrimination. It also fails to allege a prima facie case plausibly.

Courts apply Title VII's disparate-treatment framework to Title VI claims. *Middlebrooks v. Univ. of Md.*, No. 97-2473, 1999 WL 7860, at *4 (4th

21

Cir. Jan. 11, 1999) (unpublished).  Under the *McDonnell Douglas* test, Plaintiff must show that she is (1) a member of a protected class; (2) was entitled to participate in a program or activity receiving federal financial assistance; (3) suffered an adverse action; and (4) was treated differently from similarly situated persons who are not members of the protected class.

Plaintiff's Title VI claim fails to satisfy all but one element of a *prima facie* case.  First, Plaintiff has not alleged that Dr. Kelly was engaged in any program or activity receiving Federal financial assistance.  Second, Plaintiff has not plausibly alleged she was denied access to or participation in any qualifying program or activity.  Finally, assuming *arguendo* that Plaintiff was seeking access to or participation in a qualifying program or activity, which is denied, she has not plausibly alleged that she was treated differently than a person not a member of the protected class.  Thus, this claim must be dismissed.

## IV. THE AMENDED COMPLAINT FAILS TO ESTABLISH VIABLE CLAIMS AGAINST DR. KELLY FOR COMMON LAW CONSPIRACY TO OBSTRUCT JUSTICE, OBSTRUCTION OF JUSTICE, OR NEGLIGENCE *PER SE* UNDER STATE LAW.

The Amended Complaint fails to allege plausible facts to support Plaintiff's claims against Dr. Kelly for common law obstruction of justice, conspiracy to obstruct justice, and negligence *per se* under North Carolina law.

22

## A. Obstruction of Justice and Conspiracy to Obstruct Justice

North Carolina recognizes the common law offense of obstruction of justice. *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014). A person commits the offense by "'acts which obstruct, impede or hinder public or legal justice…'" *Id.* (quoting *Blackburn v. Carbone*, 208 N.C. App. 519, 526, 703 S.E.2d 788, 795 (2010)). "The offense requires proof that the defendant acted 'willfully and with an intent to defraud.'" *Id.* (quoting *State v. Eastman*, 113 N.C. App. 347, 353, 438 S.E.2d 460, 464 (1994)). The law "requires that the defendant acted with the specific intent to obstruct justice, not just the general intent to do the act which resulted in the obstruction. *Id.* (referencing *Blackburn*, 208 N.C. App. at 527, 703 S.E.2d at 795 & n.6 ("'[A]ny action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to seek and obtain a legal remedy will suffice to support a claim for common law obstruction of justice….'")).

North Carolina does not recognize an independent civil action for conspiracy. *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Instead, a conspiracy claim must allege that one or more parties to the conspiracy committed a wrongful act that injured the plaintiff. *Id.* (citing *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000) (citation omitted)).

The existence of a conspiracy requires proof of an agreement between two or more persons, and while a conspiracy may be shown by circumstantial evidence, evidence of an agreement must be sufficient to create more than a suspicion or conjecture. *Dove* at 690-691, 608 S.E.2d at 801 (citing *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 339 S.E.2d 142, 145 (1991) (citations omitted)).

Plaintiff alleges that DA Dixon told her he sent records about Plaintiff's daughter "directly to Dr. Kelly" by email on August 11, 2022. DE 1 p 41 ¶ 85. However, Plaintiff also alleges that the ME's office denied having any records when she contacted it in September and October 2022. *Id.* pp 37-38, ¶¶ 71-72.

Plaintiff also alleges that in January or February of 2023, DA Dixon told her Dr. Kelly was on FMLA and expected to return sometime in February. *Id.* p 38 ¶ 74. As of March 2023, Plaintiff alleges the ME's Office told her there was nothing in its system about her daughter. *Id.* p 39 ¶ 76. But, Plaintiff alleges that the ME's office confirmed receipt of the records in April 2023. *Id.* p 41 ¶¶ 85-86.

Plaintiff next alleges that "[i]f the emails [containing Ms. White's records] were indeed sent to Dr. Kelly via secured email on August 11, 2022, it suggests collusion between Mr. Dixon and Dr. Kelly to obstruct justice." *Id.* p 41 ¶ 87b. This allegation is pure speculation.

24

The preceding allegations do not support a reasonable conclusion that Dr. Kelly obstructed justice or intentionally took any action to obstruct justice alone or in combination with anyone else. First, as discussed elsewhere, Dr. Kelly did not violate Plaintiff's rights. Second, the Complaint does not allege that Dr. Kelly knew anything about Plaintiff's daughter's case before April 2023. Third, the Amended Complaint does not allege an overt agreement between Dr. Kelly and another person having anything to do with her daughter's case or with Plaintiff's efforts to pursue "justice." What little circumstantial evidence the Amended Complaint offers amounts to speculation and conjecture and is insufficient.

Plaintiff's allegations relating to Dr. Kelly do not satisfy the standards identified in *Iqbal*–allegations must be more than merely conclusory statements, factual content must allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct, and the complaint must allow the court to infer more than the mere possibility of misconduct. *Iqbal*, 556 U.S. at 678-79. Therefore, the Court should dismiss these claims under Fed. R. Civ. P. 12(b)(6).

## B. Negligence *Per Se*

A claim of negligence *per se* fails for at least two reasons. First, negligence claims against the State may be brought only under the North Carolina Tort Claims Act and are heard by the North Carolina Industrial

Commission. N.C. Gen. Stat. §§ 143-291 through 143-300.1A. Second, the Amended Complaint fails to plausibly allege facts to establish a claim of negligence *per se*.

To state a claim for negligence *per se*, a plaintiff must allege facts showing:

(1)    A duty created by statute;

(2)    The statute was enacted to protect a class of persons which includes the plaintiff;

(3)    A breach of the statutory duty;

(4)    The injury sustained was suffered by an interest which the statute protected;

(5)    The injury was of the nature contemplated in the statute; and

(6)    The violation of the statute proximately caused the injury.

*Timothy L. Hardin v. York Mem'l. Park*, 221 N.C. App. 317, 326, 730 S.E.2d 768, 776 (2012) (quoting *Rudd v. Electrolux Corp.,* 982 F. Supp. 355, 365 (1997) (citing *Baldwin v. GTE South, Inc.*, 335 N.C. 544, 439 S.E.2d 108 (1994)). Negligence *per se* applies only to violations of public safety statutes. *Id.* (referencing *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 326, 626 S.E.2d 263, 266 (2006)).

In her Amended Complaint, Plaintiff cites only one North Carolina statute relating to medical examiners. Plaintiff cites N.C. Gen. Stat. § 130A-

383, which establishes the circumstances under which a death must be reported to a medical examiner. (DE 33 ¶ 67) However, Plaintiff does not allege that Dr. Kelly breached this statute. Nor could she because the statute does not create any duty to protect Plaintiff or any other individual or group. Even if Dr. Kelly breached a duty imposed by the statute, which is denied, the breach cannot serve as the basis for a negligence claim.

## CONCLUSION

For these reasons, Dr. Kelly respectfully requests the Court dismiss the Amended Complaint with prejudice.

This 16th day of July, 2024.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General
NC State Bar No. 26235
jlindsley@ncdoj.gov
North Carolina Department of
Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
*Attorney for Dr. Karen Kelley*

27

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Memorandum in Support of Dr. Kelly's Motion to Dismiss the Amended Complaint with the Clerk of Court using the CM/ECF system, which electronically sends notice of the filing to registered parties identified below, and that I served the paper upon Plaintiff by email and by depositing a copy with the U.S. Postal Service in a plain, postage-paid envelope addressed to Plaintiff as follows:

Cynthia B. Avens
303 Riverside Trl
Roanoke Rapids, NC 27870
avens1@charter.net
*Plaintiff (Pro Se)*

Terrence M. McKelvey
Terrence.mckelvey@klgates.com
Daniel D. McClurg
Daniel.mcclurg@klgates.com
*Attorneys for Defendant Pitt*
*County Memorial Hospital, Inc.*

Chris D. Agosto Carreiro
Special Deputy Attorney General
North Carolina Department of Justice
ccarreiro@ncdoj.gov
*Attorney for Defendant Faris C. Dixon, Jr*

This 16th day of July, 2024.

/s/ Jeremy D. Lindsley
Jeremy D. Lindsley
Assistant Attorney General

28