| | | |
|---|---|---|
| **CYNTHIA B. AVENS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF DEFENDANT PITT COUNTY** |
| **FARIS C. DIXON, JR., DISTRICT** | ) | **MEMORIAL HOSPITAL, INC.'S** |
| **ATTORNEY, PITT COUNTY** | ) | **MOTION TO DISMISS PLAINTIFF'S** |
| **MEMORIAL HOSPITAL, INC., DR.** | ) | **AMENDED COMPLAINT** |
| **KAREN KELLY, MEDICAL EXAMINER,** | ) | |
| **JOHN/JANE DOE, and JOHN/JANE DOE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Pitt County Memorial Hospital, Inc. d/b/a ECU Health Medical Center ("ECU Health")[1] respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Amended Pleading (hereinafter "Amended Complaint") filed by Plaintiff Cynthia B. Avens ("Avens").

## I. NATURE OF THE CASE

The deficiencies underlying Avens' claims cannot be cured through an amendment. They still are untimely. ECU Health is still not a state actor. And, Avens still cannot plausibly allege a single concrete fact which would suggest ECU Health engaged in intentional racial discrimination or any other wrongdoing.

This case arises out of the unfortunate death of Avens' daughter, Keisha White ("White"), more than a decade ago. At the time of her death, White was a patient of ECU Health and was

---

[1] While Pitt County Memorial Hospital, Inc. currently does business as ECU Health Medical Center and is referred to herein as ECU Health, during the period relevant to Avens' claims (from 2014 through 2016), the entity did business as Vidant Medical Center.

being treated for various medical conditions, including chronic renal failure. She experienced a medical emergency at Vidant Medical Center on May 10, 2014, and she died of an anoxic brain injury and cardiac arrest that same day. Despite entering into a settlement with ECU Health in 2016 whereby she released all claims related to the medical services that White received, Avens still seeks to hold ECU Health liable for White's death. Avens filed her original Complaint with this Court on March 22, 2024, nearly ten years after White's death. Through her Amended Complaint, filed on June 18, 2024, Avens purports to assert claims against ECU Health under (1) 42 U.S.C. § 1983 ("Section 1983"); (2) 42 U.S.C. § 1981 ("Section 1981"); (3) 42 U.S.C. § 1985 ("Section 1985"); and (4) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. Though not entirely clear, Avens may also intend to assert a claim under North Carolina law for negligence *per se*. (*See* Am. Compl. pp. 61-62, D.E. 33.) [2]

Avens' Amended Complaint does not plausibly explain how ECU Health is liable for White's death or as a result of any of the events that followed, and her claims against ECU Health should be dismissed. While Avens' general allegations of wrongdoing by ECU Health and others are convoluted, the reasons the Amended Complaint fails to state a claim are simple: (1) all of her claims are time-barred by the applicable statutes of limitations; (2) any Section 1983 claim fails because ECU Health is not a state actor and because Avens fails to allege that any policy or custom of ECU Health caused a deprivation of her rights; (3) any Section 1981 claim fails because Avens does not allege that ECU Health intentionally discriminated against her on the basis of race, because Avens does not allege that ECU Health interfered with a cognizable contractual relationship, and because ECU Health is not a state actor; (4) any Section 1985 claim fails because

---

[2] Citations to the Amended Complaint will refer to the paragraph number, if any. Allegations appearing in unnumbered paragraphs will be cited by page number.

Avens does not allege specific facts necessary to establish a conspiracy or that any actions taken were motivated by a specific class-based, invidiously discriminatory animus; (5) any Title VI claim fails because Avens does not allege that ECU Health engaged in intentional racial discrimination; and (6) any claim for negligence *per se* fails because Avens fails to allege *any* of the elements required to support such claim. Even when construed in the light most favorable to Avens and giving her the benefit of every conceivable doubt, her claims are untimely, and the allegations in the Amended Complaint are entirely speculative and do not allow the Court to infer that Avens is entitled to relief against ECU Health under any theory. As a result, Avens' claims against ECU Health should be dismissed with prejudice for failure to state a claim on which relief may be granted.

## II. STATEMENT OF ALLEGED FACTS[3]

Avens' claims against ECU Health arise out of the medical care that White received in 2014. White was admitted to Vidant Medical Center on April 16, 2014, where she was "placed in the intermediate cardiac monitored care unit with a diagnosis of acute on chronic renal failure – a complication of systemic lupus erythematosus []." (Am. Compl. ¶ 13, D.E. 33.) Physicians ordered cardiac monitoring and oxygen therapy, and White was assigned to a unit of the hospital for patients requiring continuous cardiac monitoring. (*Id.* ¶¶ 17-18.) White's condition worsened during the overnight shift on May 9 and 10, 2014, and she ultimately went into cardiac arrest and was pronounced dead on May 10, 2014. (*Id.* ¶¶ 48, 58.)

Avens primarily complains about the medical care that White received from Linda Brixon, R.N. ("Nurse Brixon") during her admission at Vidant Medical Center. Avens contends, among

---

[3] ECU Health treats the Amended Complaint's factual allegations as true for purposes of its Motion to Dismiss but does not admit, and reserves the right to contest, such allegations. ECU Health also does not intend to waive any of its affirmative or general defenses by filing this Motion.

other things, that Nurse Brixon improperly "neglected to administer the oxygen to White," "failed to follow the physician's orders," "withheld crucial information regarding this patient from everyone in her chain of command," and installed restraints on White in "violation of hospital and CMS (Center for Medicare and Medicaid Services) protocol." (Am. Compl. ¶¶ 23, 27-28, 32, 37, 38, 40, D.E. 33.) Avens does not allege, even in conclusory fashion, that Nurse Brixon's actions were the product of racial discrimination.

ECU Health initiated an investigation following White's death that resulted in Nurse Brixon's termination, and the Amended Complaint includes a litany of allegations concerning the events that allegedly took place following White's death. Avens alleges that, following ECU Health's investigation into White's death, ECU Health representatives visited Avens' home on June 13, 2014 for a "disclosure meeting," at which a representative acknowledged that the "hospital did not do everything within their capacity for White." (Am. Compl. ¶ 76, D.E. 33.) Avens alleges that during that meeting, a representative offered to donate "little league uniforms or church pews" in White's name. (*Id.*)

Avens also expresses dissatisfaction with the fact that law enforcement did not pursue criminal charges in connection with White's death and attempts to assign blame to ECU Health through a litany of scattershot allegations. She acknowledges, however, that ECU Health "notified law enforcement" in connection with its investigation into White's death. (Am. Compl. ¶ 69(d), D.E. 33.) Avens further alleges that, during a telephone call with an ECU Health representative the week of June 16, 2014, she was informed that ECU Health had referred the matter to the North Carolina State Bureau of Investigation ("SBI"). (*Id.* ¶ 77.) Avens concludes, without any factual support, that ECU Health's criminal referral of White's death to the SBI "was made in bad faith,

4

intentionally or negligently obstructing the initiation of a criminal investigation[.]"  (*Id.*)[4]

Avens then alleges that, later in June 2014, she visited the Greenville Police Department ("Greenville PD" or "GPD") and was told that "they did not have jurisdiction over the hospital[.]" (Am. Compl. ¶ 79, D.E. 33.)  She also alleges that, when she went to file a report with ECU Health police, she was told to speak with ECU Health's risk manager.  (*Id.* ¶ 80.)

After August 2014, Avens' attempts to pursue criminal charges relate exclusively to her interactions with law enforcement, with the Pitt County District Attorney's Office, and with the Pitt County Medical Examiner's Office.  (*See, e.g.*, Am. Compl. ¶¶ 87-151, D.E. 33.)  She contends that during telephone calls with the Medical Examiner's Office in September and October 2022, she was told that she "needed to talk to ECU's risk manager."  (*Id.* ¶¶ 124, 126.)  She does not, however, allege that she ever spoke to, met with, or otherwise had any contact with an ECU Health representative after 2016.

Avens also alleges that, on March 1, 2016, she and her "representing counsel" attended a mediation with ECU Health concerning a "wrongful death case."  (Am. Compl. pp. 48-49, 58, D.E. 33.)  While Avens concedes that she signed a "settlement agreement" as a result of the mediation, she suggests that the April 2016 Settlement Agreement and Release between Avens and ECU Health "does not constitute a binding contract" because it was "fraudulent, coerced, and based on [an] incomplete disclosure[.]"  (*Id.* p. 49.)[5]

---

[4] Though Avens' allegations are not entirely clear, she appears to erroneously suggest that the SBI did not have the legal authority or jurisdiction to investigate White's death after ECU Health involved law enforcement.

[5] Avens presumably only seeks to disavow the parts of the Settlement Agreement and Release that she views as unfavorable, rather than the entire agreement.  The Amended Complaint is silent regarding the status of the consideration Avens received in exchange for the release contained within that purportedly void agreement.

## III. <u>STANDARD OF REVIEW</u>

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted). While "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," it does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Even though *pro se* complaints are construed liberally, this does not permit the Court to ignore a clear failure to allege facts setting forth a cognizable claim. *Beyan v. CATS*, 2022 WL 304669, at *1 (W.D.N.C. Feb. 1, 2022). Exhibits to the complaint or documents that are otherwise integral to or referenced in the complaint are to be considered on a motion to dismiss and govern over conflicting allegations in the complaint. *See, e.g.*, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

## IV. <u>LAW AND ARGUMENT</u>

### A. <u>All of Avens' Claims Against ECU Health Are Time-Barred.</u>

Avens' claims against ECU Health arise out of events that took place in 2014 and thus are untimely. A statute of limitations defense properly may be raised under Federal Rule of Civil Procedure 12(b)(6) if "the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Avens' Section 1983, Section 1985, and Title VI

6

claims are subject to a three-year statute of limitations. *See Manion v. N.C. Med. Bd.*, 693 F. App'x 178, 182 (4th Cir. 2017) (noting that Section 1983 and Section 1985 "borrow the state's general personal injury limitations period," which, in North Carolina, is three years); *Maisha v. Univ. of N.C.,* 641 F. App'x 246, 249 (4th Cir. 2016) ("North Carolina's three-year statute of limitation applies to claims under Title VI and § 1983[.]"); *see also* 42 U.S.C. § 1988(a). Section 1981 claims also typically are subject to a three-year statute of limitations.[6] *Chambers v. N.C. Dep't of Just.*, 66 F.4th 139, 141 (4th Cir. 2023).[7]

"The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination." *A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Under federal law, a claim accrues "when it is sufficiently ripe that one can maintain suit on it." *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002); *see Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 886 (4th Cir. 2023) ("In federal court, it is 'the standard rule that the [accrual occurs] when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" (citation omitted)). "Put differently, 'a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury (hence, the standard rule).'" *Epcon Homestead*, 62 F.4th at

---

[6] In certain circumstances, claims under Section 1981 are subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. *See Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382-84 (2004) (noting Section 1981 claims are only subject to the four-year statute of limitations period in 28 U.S.C. § 1658 if they arise under the 1991 Amendment to Section 1981). Because there is no basis for concluding that Avens' purported Section 1981 claim was "made possible" by the 1991 Amendment to that section, her Section 1981 claim is governed by a three-year statute of limitations. Regardless, Avens' Section 1981 claim would be barred even if a four-year statute of limitations applied.

[7] To the extent the Amended Complaint is construed as asserting a claim for negligence *per se*, a three-year statute of limitations also applies. *See* N.C. Gen. Stat. § 1-52.

7

886 (citation omitted); *see A Soc'y Without a Name*, 655 F.3d at 348.

Here, the time bar is apparent on the face of the Amended Complaint. Even assuming that the Amended Complaint relates back to when Avens filed the original Complaint on March 22, 2024, her claims against ECU Health involve events that took place long before March 22, 2021. Indeed, the Amended Complaint does not include *any concrete* factual allegations regarding acts or omissions by ECU Health within the limitations period. On the face of the Amended Complaint, the last alleged act on the part of ECU Health occurred on March 1, 2016 when Avens, her attorney, an ECU Health representative, and counsel for ECU Health attended a mediation in a "former wrongful death case" between Avens and ECU Health. (Am. Compl. pp. 48-49, 58, D.E. 33.) None of Plaintiff's affirmative claims arise out of the March 2016 mediation or the resulting Settlement Agreement and Release between Avens and ECU Health, however. Avens does not allege that she ever communicated with ECU Health, directly or indirectly, after March 2016.

With respect to the concrete factual allegations upon which Avens' claims against ECU Health are based, the last act or omission on the part of ECU Health occurred in "July or August 2014," when Avens met with an ECU Health representative and accused her of "lying for claiming to have spoken to the SBI agents." (Am. Compl. ¶ 85, D.E. 33.) During that meeting, the ECU Health representative confirmed that she was not, in fact, lying, and explained that ECU Health was continuing to cooperate with the SBI in its investigation.[8] (*Id.*)

Giving Avens the benefit of every conceivable doubt, her claims against ECU Health accrued, and the statute of limitations began to run, in 2014, which is when she undisputedly knew, or had reason to know, of the alleged wrongful acts underlying her claims. Avens' failure to file

---

[8] Without any support, Avens concludes that ECU Health's cooperation and communication with the SBI during its investigation was somehow improper and part of a conspiracy to obstruct justice. (Am. Compl. ¶ 85, D.E. 33.)

suit within three years of when she had reason to know of her alleged injury invalidates her claims against ECU Health.

The nature of Avens' claims against ECU Health also makes clear that such claims accrued in 2014. For each of Avens' claims that requires a showing of intentional discrimination (*i.e.*, the Section 1981 claim, the Section 1985 claim, and the Title VI claim), the date of the last alleged act of intentional discrimination is key. As alleged in the Amended Complaint, after making an unadorned conclusion of intentional discrimination, Avens points to the following non-discriminatory acts and omissions by ECU Health, all of which took place in 2014: failing to "refer White's death to a medical examiner," failing to "report White's death to local law enforcement, instead reporting to the SBI," "with[holding] information and provided deceptive information," and "interfere[ing] with the official investigation" into White's death.[9] (Am. Compl. pp. 44-45, D.E. 33.) The Amended Complaint also includes allegations relating to ECU Health's business operations within the limitations period, but such allegations are irrelevant to the claims she asserts. (*Id.* at pp. 46-47 (alleging irrelevant facts related to ECU Health's "growth over the past five to six years" and its Leapfrog ratings from 2021 through the present). And while the Amended Complaint includes various allegations regarding Avens' efforts to pursue criminal charges within the limitations period, she does not point to any concrete act or omission by ECU Health during this time, much less a discriminatory act. In short, the clock on Avens' claims for intentional discrimination began to run in 2014, and such claims thus should have been (but were not) filed by no later than 2017.

Avens attempts to sidestep the clear statute of limitations bar by blanketly invoking the

---

[9] To be clear, and as discussed below, none of these alleged acts and omissions were remotely discriminatory; however, Avens relies upon these allegations to support her conclusion of intentional discrimination.

continuing violation doctrine, alleging a "pattern of misconduct [which] began with the initial handling of the Plaintiff's daughter's death in 2014 and has persisted through at least 2023 via various forms of obstruction, misrepresentation, and failure to comply with legal and ethical standards." (Am. Compl. p. 61, D.E. 33.) The continuing violation doctrine, however, is inapplicable and does not serve to toll the statute of limitations on Avens' claims in any respect.

"[W]hen a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff, under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018). "In general, to establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." *A Soc'y Without a Name*, 655 at 348 (quoting *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)). However, "continu[ing] unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation." *Id.* "Only if the same alleged violation was committed at the time of each act does the limitations period begin anew with each violation." *Maisha,* 641 F. App'x at 249 (brackets and internal quotation marks omitted) (quoting *A Soc'y Without a Name*, 655 at 348).

The continuing violation doctrine requires that at least one act of discrimination occur within the limitations period. *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 281 n.2 (4th Cir. 2000); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 442-43 (4th Cir. 1998). Here, Avens does not plausibly allege *any* act of discrimination on the part of ECU Health, much less an act occurring after March 22, 2021. Avens thus does not plausibly allege any act of discrimination within the limitations period, which is fatal to her claims. *See Gregory v. Currituck Cty.*, 2022 WL 1598961, at *1 (4th Cir. May 20, 2022) ("Because Plaintiffs have not alleged an act of discrimination by the

County Defendants within the limitations period, the district court correctly determined that the continuing violation doctrine did not apply and that Plaintiffs' claims against the County Defendants were barred by the statute of limitations."). Moreover, while Avens does not allege that ECU Health engaged in a pattern or practice of discrimination, (*see* Section IV.C.1. *infra*), even if she did, "[g]eneral allegations of a 'pattern or practice of discrimination' are insufficient to establish a continuing violation." *Maisha,* 641 F. App'x at 249 (quoting *Williams v. Giant Food Inc.,* 370 F.3d 423, 429-30 (4th Cir. 2004)) (affirming dismissal of Section 1983 and Title VI claims as barred by the statute of limitations where "each event related to a discrete act that was not repeated by the individual actor," noting the plaintiff's "general allegations of a pattern or practice of discrimination d[id] not suffice to render these claims timely").

Avens' claims against ECU Health are untimely, and the continuing wrong doctrine cannot operate to save them. *See Hall v. Liles*, 2023 WL 8810773, at *6 (E.D.N.C. Dec. 20, 2023) ("Plaintiff has not alleged discrete acts repeated by the individual defendants which would cause his § 1983 and § 1985 claims to be timely."). Accordingly, all of Avens' claims against ECU Health are time-barred and should be dismissed.[10]

### B.    Avens' Section 1983 Claim Against ECU Health Should Be Dismissed.

Even if Avens' Section 1983 claim were not time-barred, dismissal still would be warranted. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

---

[10]    All of Avens' claims against ECU Health not only are barred by the applicable statutes of limitations, they also are barred by the terms of the 2016 Settlement Agreement and Release. In light of the numerous bases for dismissal addressed herein, at this juncture, the Court need not reach that issue to dismiss all of Avens' claims against ECU Health.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege that the defendant (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Avens fails to state a plausible claim against ECU Health under Section 1983, as ECU Health is not a state actor, and Avens fails to allege that any policy or custom of ECU Health caused a deprivation of her rights. Her Section 1983 claim should be dismissed as a result.

    1. <u>ECU Health Did Not Act Under Color of State Law.</u>

  Liability under Section 1983 extends only to persons acting under color of state law, a requirement equivalent to that of state action under the Fourteenth Amendment. *Philips*, 572 F.3d at 180. In determining if a defendant acted under color of state law, the ultimate issue is whether its actions were "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The court must inquire into relevant facts and circumstances to determine "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself." *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351 (1974). Constitutional standards will be invoked "only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 1007, 1004 (1982). "[C]onclusory allegations that [a party] acted under color of state law will not suffice." *Estate of Williams-Moore v. All. One Receivables Mgmt.*, 335 F. Supp. 2d 636, 648 (M.D.N.C. 2004).

  Private hospitals generally, and ECU Health specifically, consistently have been held to be "private actors" in the Section 1983 context. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (affirming dismissal of Section 1983 claim against Vidant Medical Center and

concluding that this Court "did not err in concluding at the pleading stage that state action was absent"); *May v. Univ. Health Sys. of E. Carolina, Inc.*, 2021 WL 5868135, at *5 (E.D.N.C. Dec. 9, 2021) (granting motion to dismiss Section 1983 claim because ECU Health is not a state actor). Avens admits in her Amended Complaint that ECU Health is a "private entity." (Am. Compl. ¶ 8, D.E. 33.) This is consistent with how this Court has assessed ECU Health's status, as it has noted that "[a]lthough Pitt County used to operate [ECU Health] as a public entity, [ECU Health] became a private nonprofit entity in 1998. Pitt County does not employ [ECU] Health's Board of Trustees, and the Pitt County does not control the 'ordinary course of [the Board's] decisionmaking.'" *May*, 2021 WL 5868135, at *5 (quoting *Philips*, 572 F.3d at 178); *see also Thomas v. Beth Israel Hosp. Inc.*, 710 F. Supp. 935, 940 (S.D.N.Y. 1989) ("As a general rule, private hospitals do not act under color of state law for § 1983 purposes."). Relevant here, the Fourth Circuit and this Court both previously considered, and rejected, the argument that ECU Health is a state actor for purposes of a Section 1983 claim. *Philips*, 572 F.3d at 183; *May*, 2021 WL 5868135, at *5. Avens' cursory allegations that ECU Health acted under color of state law are insufficient to sustain her claim.

In this case, the conduct about which Avens complains relates solely to the routine operation of ECU Health. The allegations against ECU Health focus on the treatment that White received in 2014 and ECU Health's administrative handling of risk in its daily operations. As in *Philips* and *May*, the actions complained of in Avens' Amended Complaint relate to operations of the hospital, over which the county has no control. As such, no state action exists to state a claim against ECU Health under to Section 1983, and any such claim should be dismissed.

In an effort to overcome the insurmountable state action requirement, Avens attempts to invoke the "exclusive public function" exception and the "joint action" exception to the state action requirement. (Am. Compl. pp. 49-50, D.E. 33.) The Fourth Circuit has identified three scenarios

13

in which a private party may be considered a state actor:

> (1) when there is either a sufficiently close nexus, or joint action between the state and the private party; (2) when the state has, through extensive regulation, exercised coercive power over, or provided significant encouragement to, the private actor; or (3) when the function performed by the private party has traditionally been an exclusive public function.

*S.P. v. City of Takoma Park*, 134 F.3d 260, 269 (4th Cir. 1998).

First, in an apparent attempt to invoke the "public function" exception, Avens suggests that an unidentified physician in ECU Health's ICU acted under color of state law on May 10, 2014, because that individual "acted as a medical examiner in their failure to refer White to the county medical examiner." (Am. Compl. ¶ 67, pp. 49-50, D.E. 33.)  For purposes of the "public function" exception, "a private entity 'acts in an exclusively state capacity when it exercises powers traditionally exclusively reserved to the state.'"  *Philips v. Pitt Cnty. Mem'l Hosp., Inc.,* 503 F. Supp. 2d 776, 782 (E.D.N.C. 2007).  This Court, however, has held that the public function exception typically does not apply in the context of private healthcare.  *Id.* ("This test has not been met here, as it is well settled that 'health care . . . does not involve the exercise by a private entity of powers traditionally exclusively reserved to the State.").  While Avens suggests that, by allegedly "fail[ing] to refer White to the county medical examiner upon death," ECU Health's actions were "akin to an official medical examiner deciding whether an autopsy will be performed" which thereby placed ECU Health "in the position of state authority[,]" (Am. Compl. pp. 49-50), there is no basis for Avens' contention in that regard.  Simply put, ECU Health's alleged failure to refer White's death to a public medical examiner did not somehow make ECU Health a public medical examiner.  *Cf. Preston v. New York*, 223 F. Supp. 2d 452 (S.D.N.Y. 2002) (private hospital was not a "state actor" under § 1983, for allegedly failing to report to police that examining physician found no reason to investigate rape, though police sent minor to hospital for

14

examination, hospital was obligated by state law to make reports in suspected child abuse cases, and city ambulance dispatch center was located on hospital's premises); *see also S.P. v. City of Takoma Park, Md.*, 134 F.3d 260 (4th Cir. 1998) (private hospital was not state actor for purposes of Section 1983 claim based on its involuntary detention of claimant pursuant to state involuntary commitment statute).

Second, Avens apparently invokes the "joint action" exception but fails to allege facts which would permit the inference that it applies here. In doing so, she suggests that ECU Health was a state actor in 2014 when it reported White's death to law enforcement, because ECU Health reported the case to the SBI rather than local law enforcement and because ECU Health communicated with the SBI agents during the course of the SBI investigation. (Am. Compl. p. 50, D.E. 33.) ECU Health, however, did not become a state actor by virtue of its report to, and subsequent cooperation with, the SBI. *See Rogers v. Provident Hosp.,* 241 F. Supp. 633, 637 (N.D. Ill. 1965) (no state action on part of private hospital which requested that police officers remove the plaintiff from the premises and declining to "attribute to the Hospital any alleged subsequent wrongdoing on the part of public officials"); *Kahermanes v. Marchese*, 361 F. Supp. 168, 171 (E.D. Pa. 1973) ("The deliberate giving of false information by an individual to a police officer to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts."); *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § [ ] 1983 . . . ."); *Estes El v. Long Island Jewish Med. Ctr.,* 1995 WL 217545, at *1 (S.D.N.Y. Apr. 12, 1995) ("The allegedly close relationship between the police and [the defendant hospital]'s security guards and State regulation of [defendant], a private hospital, are not a sufficient basis upon which to conclude [defendant]'s officers acted under color of State

law.").  The Amended Complaint is devoid of any concrete factual allegations which would tend to suggest that ECU Health conspired or jointly acted with North Carolina's SBI to suppress the investigation into White's death after ECU Health itself made the report which prompted the investigation.  And there certainly are no facts which would give rise to an inference that ECU Health somehow controls decisions made by the SBI.  The joint action exception does not apply as a result.

2.  Avens Fails to Allege that Any Specific Policy or Custom of ECU Health Caused a Deprivation of Her Federal Rights.

Even if Avens properly alleged and could establish state action, her Section 1983 claim still fails because she does not allege a deprivation of rights pursuant to an official policy or custom.  Under Section 1983, a private corporation may not be held liable on a *respondeat superior* theory.  *Austin v. Paramount Parks, Inc.,* 195 F. 3d 715, 728 (4th Cir. 1999).  As such, "a private corporation is liable under § 1983 only when an official policy or custom of a corporation causes the alleged deprivation of federal rights."  *Id.*; *see also Barrett v. Bd. of Educ. of Johnston Cnty.*, 13 F. Supp. 3d 502, 509-10 (E.D.N.C. 2014), *aff'd,* 590 F. App'x 208 (4th Cir. 2014) (dismissing Section 1983 claim because the plaintiff only alleged in "conclusory terms" that the defendant employed an actionable policy or custom); *Huntley v. Burris*, 2019 WL 12339733, at *1 (M.D.N.C. Mar. 4, 2019) (dismissing Section 1983 claims because the plaintiff only alleged that the defendants acted pursuant to "local custom, policy or practice" and "have engaged in a pattern as to create a custom of inadequate medical care").

Here, Avens appears to generally allege that a policy or custom of ECU Health caused an alleged deprivation of rights under Section 1983.  In doing so, Avens simply concludes that ECU Health has adopted "Discrimination as Policy."  (Am. Compl. p. 48, D.E. 33.)  Once again, however, she fails to allege a single supporting factual allegation.  Instead, Avens refers to and

16

incorporates the allegations from the "Economic Motivations" section of the Amended Complaint, (*id.* pp. 45-47), which, in turn, does not contain a single allegation – even a conclusory one – regarding discrimination, race, or anything of the sort.

Moreover, even accepting as true Avens' baseless and conclusory assertion that ECU Health's alleged "actions demonstrate a policy of placing financial interests over patient safety," Avens does not allege she was a patient of ECU Health. Thus, the alleged policy upon which she relies could not have proximately caused a violation of her rights. *Lagana v. Wexford Health*, 2018 WL 3970472, at *9 (D. Md. Aug. 20, 2018) (dismissing Section 1983 claim where the plaintiff "fail[ed] to identify in his pleadings a . . . policy or procedure that proximately caused a violation of his rights"). Avens' failure to identify a specific policy or custom of ECU Health which caused a deprivation of her rights is fatal. Therefore, Avens' Section 1983 claim against ECU Health should be dismissed.

C.      **Avens' Section 1981 Claim Against ECU Health Should Be Dismissed.**

Avens also purports to assert a claim against ECU Health under Section 1981, which provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981(a) has been categorized into three clauses: the contracts clause, the full and equal benefits clause, and the punishments clause. *Mahone v. Waddle*, 564 F.2d 1018, 1027 (3d Cir. 1977). While the contracts clause applies to conduct by private parties, the full and equal benefits clause and the punishments clause apply only to state action. *Id.* at 1029-30 (holding that "while private discrimination may be implicated by the contract clause of § 1981, the concept

17

of state action is implicit in the equal benefits clause" and the punishments clause).

While Avens' purported Section 1981 claim appears to be exclusively based upon the contracts clause, to the extent she also seeks to rely upon the full and equal benefits clause and/or the punishments clause, she fails to state a claim for relief against ECU Health because (1) she does not plausibly allege that ECU Health intentionally discriminated against her on the basis of race; (2) she fails to allege that ECU Health interfered with a cognizable contractual relationship, which defeats a claim under the contracts clause; and (3) ECU Health is not a state actor, which defeats a claim under the full and equal benefits clause and/or the punishments clause.

### 1. ECU Health Did Not Engage in Intentional Discrimination.

Dismissal of Avens' Section 1981 claim is proper because the Amended Complaint fails to plausibly allege intentional discrimination on the part of ECU Health. To state a claim under Section 1981, a plaintiff must allege purposeful or intentional discrimination on the basis of race. *Sparrow v. Bank of Am., N.A.*, 2014 WL 4388350, at *8 (D. Md. Sep. 4, 2014) (dismissing Section 1981 claim where the plaintiffs "fail[ed] to allege specific facts showing a causal link between the defendants' loan practices and the [plaintiffs'] race"); *Daniels v. Dillard's, Inc.,* 373 F.3d 885, 887-88 (8th Cir. 2004) (customer's prima facie case under Section 1981 failed because she relied only on her own speculation that the defendant store had declined her check and had not given her the same discount that was offered to white customers).

Avens does not allege intentional racial discrimination. The *only* concrete factual allegations in the Amended Complaint concerning race appear on page 44 and include, in their entirety, the following:

**Intentional Discrimination**: ECU Health intentionally discriminated against the Plaintiff, a Black woman, by taking measures to ensure she could not effectively pursue justice for the death of her Black daughter, Keisha Marie White, who died in their predominantly white facility under the care of a white nurse, Linda Leathers

Brixon.

(Am. Compl. p. 44, D.E. 33.)  In other words, her entire theory of intentional discrimination is premised upon the allegation that ECU Health is "predominantly white."  This allegation, which stands alone, falls far short of the required showing to permit an inference of intentional discrimination.

The Amended Complaint also does allege any facts tending to show a causal link between Avens' race and the alleged actions taken by ECU Health back in 2014 following White's death. In fact, the section of the Amended Complaint titled "Acts of Discrimination," does not even mention discrimination or race generally.  (Am. Compl. pp. 44-45, D.E. 33.)  Within that section, Avens alleges various acts and omissions on the part of ECU Health (in 2014) under the sub-headings "Failure to Refer to Medical Examiner," "Inaccurate Death Certificate," "Failure to Report to Appropriate Law Enforcement," "Withholding Information," and "Interference with Investigation."  (*Id.*)  Avens does not allege, even in conclusory terms, that there is any nexus between those alleged acts and omissions and her race, much less any concrete fact which could support the conclusion that the acts and omissions were the result of intentional discrimination.

Avens' Section 1981 claim against ECU Health thus cannot stand and should be dismissed. *See Brummell v. Talbot Cty. Bd. of Educ.*, 2023 WL 2537438, at *10 (D. Md. Mar. 16, 2023) (dismissing Section 1981 claim where the plaintiffs "alleged membership in a racial minority group and intentional discrimination generally" but "failed to provide a clear statement alleging discrimination related to a right protected by § 1981 specifically").

2.      Avens Does Not Allege an Impaired Contractual Interest.

Even if Avens' Section 1981 claim could be deemed timely and even if she had alleged a single concrete fact which could permit an inference of intentional discrimination, to the extent Avens' claim is based upon the contracts clause, she fails to plausibly allege that her claim is

19

related to the making and enforcing of contracts. While the state action requirement does not apply to claims under the contracts clause, a plaintiff must plausibly allege "an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Thus, "a plaintiff cannot state a claim under § 1981 unless [she] has (or would have) rights under the existing (or proposed) contract that [she] wishes 'to make and enforce.'" *Id*. A plaintiff also must plausibly allege "that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020).

In an apparent attempt to salvage her claim under Section 1981, the Amended Complaint adds new, seemingly contradictory allegations. On the one hand, Avens concludes, without any elaboration, that ECU Health's alleged conduct "prevented the Plaintiff from entering agreements, contractual in nature, with the GPD, the district attorney, and the medical examiner." (Am. Compl. p. 48, D.E. 33.) On the other hand, Avens concludes, again without offering any supporting allegations, that she "believed she had entered into these agreements with the understanding that these actors would investigate White's death using the same or similar practices typically involved in other homicide investigations." (*Id.*)

In both instances, however, she fails to provide any factual allegations which would permit an inference that she had a contractual relationship with the "GPD, the district attorney, and the medical examiner."[11] (Am. Compl. p. 48, D.E. 33.) The absence of any plausible allegation of an impaired 'contractual relationship' is fatal to the extent that Avens' Section 1981 claim is based on the contracts clause. *See May*, 2021 WL 5868135, at *7 (concluding that the plaintiff failed to state a claim under the contracts clause of Section 1981 where no contractual relationship was

---

[11] To be sure, the services provided by these public servants are not contractual in nature.

alleged).

3.    ECU Health Is Not a State Actor.

Even if Avens' Section 1981 claim could be deemed timely and even if Avens had alleged a single concrete fact which could permit an inference of intentional discrimination, to the extent Avens attempts to bring her claim under the full and equal benefits clause and/or the punishments clause, she has failed to allege state action on the part of ECU Health.  *See Jones v. Poindexter,* 903 F.2d 1006, 1010 (4th Cir. 1990) (noting claims under the "full and equal benefits" clause require "state action denying the plaintiff the full and equal benefit of the law"); *Mahone*, 564 F.2d at 1029-30 (a showing of state action is required to state a claim under the equal benefits clause or punishments clause of Section 1981).  As discussed above in connection with Avens' Section 1983 claim, she has not – and indeed cannot – allege facts which would satisfy the state action requirement.  *See May,* 2021 WL 5868135, at *7 (dismissing Section 1981(a) claim under the "full and equal benefits" clause because plaintiff did "not plausibly allege the requisite state action" and "failed to plausibly allege that the [ECU Health] employees . . . acted pursuant to an official policy or custom").  A conclusory statement of action "under color of law" is not sufficient to survive a motion to dismiss.  Thus, to the extent Avens' Section 1981 claim against ECU Health is based on the full and equal benefits clause or the punishments clause, dismissal is warranted.

D.    **Avens' Section 1985 Claim Against ECU Health Should Be Dismissed.**

Avens also brings a claim against ECU Health under Section 1985.  To state a claim for conspiracy to deny equal protection of the laws under Section 1985, she must plausibly allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995) (internal citations omitted).  Avens' untimely

21

Section 1985 claim should be dismissed because (1) she fails to allege specific facts necessary to establish a Section 1985 conspiracy; and (2) she fails to allege that any actions taken by ECU Health were motivated by a specific class-based, invidiously discriminatory animus.

        1.        <u>Avens Fails to Allege a Civil Rights Conspiracy.</u>

To state a claim under Section 1985, a plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Strickland v. United States*, 32 F.4th 311, 361 (4th Cir. 2022). In order to carry this "weighty burden," *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996), a Section 1985 plaintiff:

> must show 'that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences. ***This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy***. Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.

*Strickland*, 32 F.4th at 360-62 (citations and quotation marks omitted) (emphasis added) (affirming dismissal of Section 1985 claim where plaintiff failed to allege specific facts showing defendants acted with an "affirmative adherence to a single plan of discriminatory animus based on her protected-class status"); *see A Soc'y Without a Name*, 655 F.3d at 346 ("We have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."). This Court has rejected Section 1985 claims pled without the requisite specificity. *See, e.g., Nwanko v. Walmart Stores, Inc.*, 2023 WL 3437815, at *5 (E.D.N.C. May 12, 2023) (dismissing Section 1985 claim because the plaintiff had "not alleged facts supporting the conclusion that . . . defendants were motivated by discriminatory animus" and, separately, because plaintiff had "not plausibly alleged 'concrete supporting facts' suggesting a meeting of the minds"); *Campbell v. Garlington*, 2021 WL 2270675, at *7 (E.D.N.C. June 3, 2021); *Revak v. Miller*, 2020 WL 3036548, at *13 (E.D.N.C. June 5, 2020); *Evans v. Capps*,

2018 WL 5291864, at *16 (E.D.N.C. Aug. 3, 2018); *Manion v. N.C. Med. Bd.*, 2016 WL 4523902, at *8 (E.D.N.C. Aug. 22, 2016).

Here, Avens' allegations regarding the existence of a civil rights conspiracy are vague and are not accompanied by supporting facts. As an initial matter, Avens does not even concretely identify the parties to the purported conspiracy. At one point, Avens suggests that ECU Health was a party to a conspiracy with unidentified SBI agents who are not parties to this action. (Am. Compl. ¶ 85, p. 55, D.E. 33.) At another point, Avens appears to allege that ECU Health was part of a conspiracy involving the Greenville PD, which is not a party to this action. (*Id.* p. 56.) Avens also suggests that ECU Health was a party to a conspiracy with the local Medical Examiner, Dr. Karen Kelly. (*Id.* ¶ 140(e).) She further suggests that Dr. Kelly and the District Attorney, Faris Dixon, Jr., were parties to a conspiracy. (*Id.* ¶ 140(b).) She also generally alleges that the "defendants" in this case were parties to a "conspiracy to obstruct justice." (*Id.* p. 63.)

In each instance, Avens fails to allege any concrete supporting facts suggesting a meeting of the minds among the purported co-conspirators. The generally alleged conspiracy involving unidentified SBI agents exclusively is based on Avens' allegation that SBI agents informed an ECU Health representative in July 2014 that Avens had indicated that she was going to speak with the District Attorney's Office, which, according to Avens, "indicat[es] a conspiracy to obstruct justice." (Am. Compl. ¶ 85, D.E. 33.) The generally alleged conspiracy involving the Greenville PD is one that Avens has implied based on "res ipsa loquitur." (*Id.* p. 56.) The generally alleged conspiracy involving the Medical Examiner exclusively is based upon Avens' unsupported allegation that "Dr. Karen Kelly was not 'allowed' to work on this case without, ***presumably***, obtaining permission from" ECU Health. (*Id.* ¶ 140(e) (emphasis added).) Finally, Avens does not allege ***any*** concrete facts to support the generally alleged conspiracy among all defendants.

None of these allegations contain the specificity required to support an inference that ECU Health engaged in a civil rights conspiracy.

In short, while the Complaint repeatedly uses the word "conspiracy," Avens does not allege any concrete facts to support such a claim. Conclusory allegations of an agreement at some unidentified point cannot serve as a basis of a Section 1985 claim. *See A Soc'y Without a Name*, 655 F.3d at 346 (holding allegations did not support a meeting of the minds where plaintiff "failed to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"). Avens' Section 1985 claim against ECU Health should be dismissed.

2. Avens Fails to Allege that ECU Health Was Motivated by a Specific Class-Based, Invidiously Discriminatory Animus.

As with her other claims, Avens' claim under Section 1985 fails because she does not allege a single fact which would support the conclusion that the alleged conspiracy was motivated by discriminatory animus. Aside from an unadorned, conclusory statement that the purported "conspiracy was motivated by discriminatory animus against Plaintiff, a Black woman," (Am. Compl. p. 54, D.E. 33), Avens alleges no facts which would permit an inference of an invidiously discriminatory animus on the part of *any* of the purported co-conspirators. Again, Avens fails to allege a single fact tending to show that the unidentified members of a purported conspiracy were "motivated by a specific class-based, invidiously discriminatory animus," which is an essential element of a Section 1985 claim. *Simmons*, 47 F.3d at 1376.

In fact, the Amended Complaint not only fails to allege a single fact to support the conclusion that the purported co-conspirators were motivated by a specific class-based, invidiously discriminatory animus, it also includes allegations which undermine the conclusion of discriminatory motives. Indeed, Avens only alleges that the purported co-conspirators engaged in

24

a "conspiracy to obstruct justice," and that the purported "conspiracy was aimed at preventing [her] from seeking justice and ensuring that the circumstances of White's death remained concealed." (Am. Compl. p. 54, D.E. 33.)

As for ECU Health's alleged role in the purported conspiracy, Avens explicitly alleges a non-discriminatory motive. According to Avens, "ECU Health's conduct was motivated by their financial interests by seeking to protect their reputation." (Am. Compl. p. 54, D.E. 33.) "Section 1985 does not reach economic or commercially-motivated conspiracies." *Rayborn v. Miss. State Bd. of Dental Exam'rs*, 776 F.2d 530, 532 (5th Cir. 1985); *see United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 838 (1983). Because there are no facts alleged in the Amended Complaint which would permit an inference that ECU Health (or, for that matter, any of the Defendants) acted with an invidiously discriminatory animus, dismissal is warranted.

### E. Avens' Title VI Claim Against ECU Health Should Be Dismissed.

Avens also appears to bring a claim against ECU Health for violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Section 601 of Title VI of the Civil Rights Act of 1964 provides as follows:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d. "A private cause of action for damages under Title VI is authorized only for intentional discrimination based on race, color, or national origin." *M.D. v. Sch. Bd.*, 560 F. App'x 199, 203 (4th Cir. 2014); *see Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003). Thus, "[t]o state a claim of race discrimination under Title VI, the plaintiff must plausibly allege that the defendant received federal financial assistance and engaged in intentional racial discrimination." *Lucas v.*

*VHC Health*, 2023 WL 5615970, at *3 (E.D. Va. Aug. 30, 2023).

Although Avens generally alleges that ECU Health received "federal funds," (Am. Compl. ¶ 8, D.E. 33), her Title VI claim fails because she does not plausibly allege that ECU Health engaged in intentional racial discrimination. In assessing whether a plaintiff properly has alleged intentional racial discrimination under Title VI, "the Court is bound to examine only the 'factual content' in Plaintiff's Complaint 'that allows [it] to draw the reasonable inference' that Defendants are liable for discriminating against Plaintiff on the basis of race." *Lucas*, 2023 WL 5615970, at *4 (holding plaintiff failed to "plausibly allege that Defendants engaged in intentional racial discrimination" after disregarding "conclusory and speculative" allegations which relied upon "'unwarranted inferences' that the Court need not accept as true for purposes of a Rule 12(b)(6) motion"); *see Jackson v. Cent. Midlands Reg'l Transit Auth.*, 2023 WL 5757643, at *3 (D.S.C. June 9, 2023) (concluding allegations in complaint did not support an inference that defendant intentionally discriminated against plaintiff); *Evans v. 7520 Surratts Rd. Operations, LLC*, 2021 WL 5326463, at *4 (D. Md. Nov. 16, 2021) ("[Plaintiff] must do more than simply allege his unfavorable treatment was on account of 'discriminatory animus.' He must give some facts to support that the Defendants' alleged misconduct was motivated by race."); *see also Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 577 (4th Cir. 2017) (affirming dismissal of Title VI discrimination claim where the plaintiff's allegations were limited to one instance in which a "Wells Fargo employee reacted negatively upon learning [plaintiff's] race").

As noted, Avens' conclusory statement that ECU Health engaged in intentional discrimination is premised upon only three concrete factual allegations: (1) Avens and her daughter, White, are Black; (2) Nurse Brixon is White; and (3) ECU Health is a "predominantly white facility." (Am. Compl. p. 44, D.E. 33.) She does not allege, even in conclusory terms, that

26

there is any nexus between ECU Health's alleged acts and omissions and her race, much less any concrete fact which could support the conclusion that the acts and omissions were the result of intentional discrimination. Thus, even if Avens had brought a Title VI claim before the statute of limitations expired in 2017, dismissal would still be warranted.

### F. **Avens Fails to State Any Other Claim.**

#### 1. 42 U.S.C. § 1988 Does Not Create an Independent Cause of Action.

While Avens' Amended Complaint references 42 U.S.C. § 1988, (Am. Compl. p. 2, D.E. 33), this statute does not create an independent cause of action but instead merely instructs federal courts as to what law to apply in causes of action arising under the federal civil rights act and allows a plaintiff to seek attorney's fees in connection with claims under Section 1981, Section 1983, or Section 1985. *See* 42 U.S.C. § 1988; *see also Harding v. Am. Stock Exch., Inc.*, 527 F.2d 1366, 1370 (5th Cir. 1976).

#### 2. Avens Fails to State a Claim for Negligence *Per Se.*

While Avens possibly attempts to assert a claim for negligence *per se* under North Carolina law, (Am. Compl. pp. 61-62, D.E. 33), the Amended Complaint only seeks to invoke federal question jurisdiction. (*Id.* p. 2.) Once Avens' federal claims are dismissed for the reasons outlined above, any state law claim would be dependent on the Court's exercise of supplemental jurisdiction. *See* 28 U.S.C. § 1367 ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form party of the same case or controversy[.]"). The Court may decline to exercise supplemental jurisdiction upon dismissal of all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). It should do so with respect to any state law claims Avens purports to assert, as she fails to state a federal claim as outlined above.

Even if the Amended Complaint is construed to assert a claim for negligence *per se* and

the Court is inclined to exercise supplemental jurisdiction over the claim, dismissal still would be proper. For starters, the claim is barred by the applicable three-year statute of limitations, *see* N.C. Gen. Stat. § 1-52, as it is premised exclusively upon alleged acts and omissions which occurred in 2014, (Am. Compl. p. 62, D.E. 33 (alleging ECU Health is liable for negligence *per se* for "not referring the death to a medical examiner, inaccurately completing the death certificate, and failing to report the death to local law enforcement constitutes a breach of their legal obligations")).

Additionally, Avens fails to plausibly allege *any* of the essential elements for a negligence *per se* claim under North Carolina law. *See Hardin v. York Mem'l Park*, 221 N.C. App. 317, 326, 730 S.E.2d 768, 776 (2012) (confirming that a viable negligence *per se* claim requires a showing of "(1) a duty created by a statute or ordinance; (2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff; (3) a breach of the statutory duty; (4) that the injury sustained was suffered by an interest which the statute protected; (5) that the injury was of the nature contemplated in the statute; and, (6) that the violation of the statute proximately caused the injury."). Avens does not point to any specific public safety statute or ordinance, instead referring generally to "legal and regulatory standards intended to protect individuals." (Am. Compl. p. 61, D.E. 33.) While she alleges that "the relevant standards and laws include" North Carolina common law obstruction of justice and civil conspiracy,[12] (*id.* pp. 61-62), those doctrines are not public safety statutes. Moreover, to the extent the Amended Complaint vaguely references unidentified "North Carolina General Statutes and federal healthcare regulations,"

---

[12] To the extent that Avens is somehow deemed to have asserted a standalone claim for civil conspiracy, "there is not a separate civil action for civil conspiracy in North Carolina." *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 73 (2008) (quoting *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007)). Likewise, if the Court finds a standalone common law claim for obstruction of justice in the Amended Complaint, the pleading is devoid of supporting allegations.

Avens' own description of the unnamed statutes confirms that they "impose duties on healthcare providers to *ensure patient safety.*" (*Id.* p. 62 (emphasis added).) In other words, the unidentified statute(s) were enacted to protect patients. While White may have belonged to the class of persons protected as a patient of ECU Health, the same cannot be said for Avens. *See Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006) (concluding plaintiffs failed to state negligence *per se* claim where "[n]othing in plaintiffs' amended complaint suggests plaintiffs belong to the relevant protected class"). Along the same lines, Avens does not, and indeed cannot, allege that *her* alleged injury was of the nature contemplated in the unidentified statute(s) or that the purported statutory violation(s) proximately caused *her* alleged injury.

## V. <u>CONCLUSION</u>

For these reasons, ECU Health respectfully requests that the Court grant its Motion and dismiss Avens' claims against ECU Health with prejudice.

Respectfully submitted,

/s/ Daniel D. McClurg
Daniel D. McClurg (NC Bar #53768)
daniel.mcclurg@klgates.com
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
(704) 331-7444
(704) 353-3114

Terrence M. McKelvey (NC Bar #47940)
terrence.mckelvey@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

*Counsel for Defendant Pitt County Memorial Hospital, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a copy of the foregoing document was served upon all counsel of record via the Clerk of Court's ECF system and upon Plaintiff Cynthia B. Avens via U.S. Mail, postage prepaid, at the address listed below, this July 16, 2024:

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, North Carolina 27870

Jeremy D. Linsley
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602

Chris D. Agosto Carreiro
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602

*Counsel for Defendant Karen Kelly, MD*

*Counsel for Defendant Faris C. Dixon, Jr.*

/s/ Daniel D. McClurg