# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

### EASTERN DIVISION

Civil Action Number 4:24-CV-00051-M-RN

FILED
AUG - 5 2024
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ JAA ___ DEP CLK

| | | |
|---|---|---|
| Cynthia B. Avens | ) | |
| | ) | |
| (Plaintiff) | ) | PLAINTIFF'S RESPONSE IN |
| | ) | OPPOSITION TO |
| | ) | DR. KAREN KELLY |
| Faris C. Dixon, Jr., District Attorney | ) | MOTION TO DISMISS FOR |
| Pitt County Memorial Hospital, Inc. | ) | FAILURE TO STATE A CLAIM, |
| Dr. Karen Kelly, Medical Examiner | ) | LACK OF JURISDICTION, AND |
| John/Jane Doe | ) | LACK OF PROSECUTION |
| John/Jane Doe | ) | DE 47 & 48 |
| John/Jane Doe | ) | |
| (Defendants) | ) | |

## I. INTRODUCTION

Plaintiff, Cynthia B. Avens (Avens or Plaintiff), Pro Se Litigant, submits this

memorandum in opposition to Defendant Dr. Karen Kelly's (Defendant or Kelly) motion

to dismiss.

1

## II.    CORRECTIONS

Counsel for the Defendant incorrectly stated:

- The Plaintiff's daughter, Keisha Marie White (White), died in April 2014 (DE 48  p. 1 ¶ 2 and p. 2 ¶ 2). White died on May 10, 2014.

- Counsel acknowledged that both, ECU Health and the Plaintiff filed complaints with the North Carolina Board of Nursing (BON) regarding the conduct of Linda Brixon (Brixon), the registered nurse (RN) assigned to White's care (DE 48 p. 4 ¶ 2). The memorandum acknowledges the non-disciplinary action and unpublished consent order of the BON following ECU Health's complaint to the BON. However, the subsequent disciplinary actions, a published consent order and license suspension, resulting from the Plaintiff's complaint with the BON were omitted (DE 33 p. 23 ¶ 93).

- Counsel stated that when the Plaintiff contacted the Pitt County Medical Examiner's (ME) Office in September 2022, the office told her that they had not received anything from the DA's office and that she (the Plaintiff) would need to talk to ECU Health's risk manager. Counsel also stated that Avens was told the same thing in October 2022 (DE 48 p. 7 ¶ 2). Counsel repeated this information at DE 48 p. 24 ¶ 2. These references are incorrect. The ME office worker never told the Plaintiff that they had not received anything from Dixon during the mentioned phone calls. The Plaintiff clearly stated that the ME office worker told her that she needed to talk to ECU's risk manager. (DE 33 p. 34 ¶¶ 124, 126).

2

This was the only information relayed to Avens during these two phone conversations. Counsel is adding words to the Plaintiff's statements.

## III.    STANDARD OF REVIEW

Subject Matter Jurisdiction Federal Rules of Civil Procedure (FRCP) 12(b)(1):

"When a facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the complaint are taken as true, 'and the motion must be denied if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.' *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)." *Burke v. N.C. Bd. of Law Exam'rs*, No. 5:18-CV-407-BO (E.D. N.C. Oct 15, 2018).

Personal Jurisdiction - FRCP 12(b)(2):

When a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. However, when the court decides a pretrial motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie case showing that jurisdiction exists. See *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Failure to State a Claim - FRCP 12(b)(6):

- In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), "[I]n order to survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, Plaintiffs' complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, U.S., 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). Jones v. First Franklin Loan Servs., CIVIL NO. 3:10-CV-00360-FDW-DCK (W.D. N.C. Dec 13, 2010). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Barnett v. Marquis, 16 F.Supp.3d 1218 (D. Or. 2014).

- "In reviewing a Motion to Dismiss under Rule 12(b)(6), we are to treat the well-pleaded allegations as true and in the light most favorable to the pleader. *Donovan v. Fiumara*, 114 N.C.App. 524, 526, 442 S.E.2d 572, 574 (1994). A complaint "must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cnty. of Person*, 141 N.C.App. 273, 277-78, 540 S.E.2d 415, 419 (2000)." *Carpenter v. N.C. Dep't of Health & Human Servs. - Office of the Chief Med. Exam'r*, COA22-170 (N.C. App. Feb 07, 2023).

- The Supreme Court in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957): "In appraising the sufficiency of the complaint we follow ... the accepted

4

rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983).

Sovereign Immunity:

State sovereign immunity does not extend to cases where a plaintiff alleges the state's action is in violation of the federal or state constitutions. In *Department of Revenue v. Kuhnlein*, "Sovereign immunity does not exempt the State from a challenge based on violation of the federal or state constitutions, because any other rule self-evidently would make constitutional law subservient to the State's will. Moreover, neither the common law nor a state statute can supersede a provision of the federal or state constitutions." *Department of Revenue v. Kuhnlein*, 646 So.2d 717, 721 (Florida Supreme Court 1994).

Qualified Immunity:

"Qualified Immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kisela v. Hughes*, 584 U.S. ___ (2018).

Obstruction of Justice:

In *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983), our Supreme Court confirmed that "[o]bstruction of justice is a common law offense in North Carolina" that was not abrogated by Article 30 of Chapter 14 of the General Statutes, which sets out

5

statutory "obstruction of justice" offenses. The Court then adopted the following definition of the common law offense: " 'At common law it is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice.' (*State v. Wright*, No. COA09-674, N.C. Ct. App. 2010).

Negligence Per Se:

"Under traditional principles of tort law, '[t]he unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself,' or in more common usage, negligence per se." *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156 (3rd Cir. 1992).

## IV.    SUBJECT MATTER AND PERSONAL JURISDICTION

Subject Matter Jurisdiction:

The Defendant's assertion that this Court lacks subject matter jurisdiction is unfounded. Federal courts have subject matter jurisdiction over cases involving federal questions pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The Plaintiff's claims are brought under 42 U.S.C. §§ 1983, a federal statute, alleging violations of constitutional rights under the First and Fourteenth Amendments. This clearly establishes a federal question, thus providing this Court with subject matter jurisdiction.

Personal Jurisdiction:

Though the Plaintiff is unable to confirm Kelly's residential address prior to discovery, Kelly is a medical examiner in Greenville, NC. She also works as a professor at the Brody School of Medicine (BSOM) at East Carolina University. These positions clearly establish her presence and professional activities within the state, specifically in Pitt County. The actions complained of in this case, including the alleged obstruction of the investigation into White's death, occurred in Greenville, NC.

Even if Kelly resides outside of the state, the "North Carolina long-arm statute allows state courts to assume jurisdiction over a person engaged in substantial activity within North Carolina. N.C.Gen.Stat. § 1-75.4(1)d (1981 Cumm.Supp.)..." *Southern Case, Inc. v. Mgmt. Recruiters Intern.*, 544 F.Supp. 403 (E.D. N.C. 1982).

Furthermore, the U.S. District Court for the Eastern District of North Carolina covers 44 counties in the state's easternmost region, from Raleigh to the Atlantic coast. The Eastern Division of the court includes Pitt County, where Greenville is located. This establishes that the court has jurisdiction over matters arising in this area. The Defendant's challenge to personal jurisdiction is weak and baseless, and thus, is a waste of time to have to address.

V.    PLAINTIFF'S AMENDED COMPLAINT ADEQUATELY PLEADS SUFFICIENT
FACTS TO STATE A CLAIM UNDER 42 U.S.C. § 1983.

Plaintiff sues Kelly under 42 U.S.C. § 1983 in her official and individual capacities (DE

33 p 71, ¶ P). Contrary to the Defendant's assertions, Plaintiff's claims against Kelly are

well-founded. First, Plaintiff has plausibly pleaded that Kelly violated her constitutional

rights. Second, the claim against Kelly in her official capacity is not barred by the

Eleventh Amendment due to the Ex parte Young doctrine. Third, Dr. Kelly is not entitled

to qualified immunity for her actions in her personal capacity.


Plaintiff Has Pleaded a Violation of Recognized Constitutional Rights:

To establish a claim for violation of civil rights under 42 U.S.C. § 1983, a plaintiff must

allege that a person acting under color of state law violated plaintiff's rights secured by

the Constitution and laws of the United States. *Melvin v. SSA*, 126 F. Supp. 3d 584, 607

(E.D.N.C. 2015) (citing *West v. Atkins*, 47 U.S. 42, 48 (1988)).


FIRST AMENDMENT: In her amended pleading, the Plaintiff did allege that Kelly

received evidence from the district attorney, purportedly for the purpose of evaluation to

determine the manner of Keisha White's (White) death. The amended pleading also

alleged that Kelly failed to review the evidence submitted to her and failed to provide her

expert opinion. (DE 33 pp. 38-41 ¶¶ 138-145). Kelly's failure violated the Plaintiff's rights

under the First Amendment. Because the First Amendment protects the right of access

to the courts, when a state actor's conduct obstructs an individual's ability to seek

redress through the courts, it constitutes a violation of this right. In *Bounds v. Smith*, 430

8

U.S. 817 (1977), the Supreme Court recognized that meaningful access to the courts is a fundamental right protected by the First Amendment.

The violation of the Plaintiff's First Amendment rights was established at the time the conduct occurred due to Kelly's failure to provide her expert opinion based on the evidence she received in the investigation of the Plaintiff's daughter, White.

In *Martin v. U.S. E.P.A*, the court decided "[b]ecause the right to receive information is derivative of the First Amendment rights of the speaker, a cause of action exists under the First Amendment which allows a recipient to allege that government conduct has chilled the speech of a willing speaker. *Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38 (D.D.C. 2002). Kelly, through the nature of her job function, is ordinarily a willing speaker. However, her failure to perform her governmental or state-mandated duties, demonstrated her subservience to ECU Health by allowing the facility to dictate which case(s) she was to work on without first requiring their approval, thereby chilling the speech of an otherwise willing speaker.

FOURTEENTH AMENDMENT: Plaintiff has sufficiently alleged that Kelly, acting under color of state law, violated her due process and equal protection rights under the Fourteenth Amendment. Specifically, Plaintiff contends that Kelly failed to perform her duties as a Medical Examiner, collaborated with ECU Health in obstructing the investigation into White's death, and allowed external influences to dictate her actions. This failure obstructed Plaintiff's access to crucial information regarding her daughter's

death, constituting a deprivation of due process, as well as expenses the Plaintiff incurred to retain an independent medical examiner (IME).

Furthermore, Plaintiff alleges that she was not treated with the same impartiality and diligence that other similarly situated individuals would receive, thus violating her right to equal protection. The unequal treatment was due to the external influences and the collaboration between Dr. Kelly and ECU Health, which directly impacted the thoroughness and objectivity of the investigation into White's death while, also, creating a horrific conflict of interest between the two entities.

## VI.    IMMUNITY

Eleventh Amendment and Sovereign Immunity:

Kelly, in her official capacity as Medical Examiner (ME) and based on specific assertions made by the District Attorney Faris Dixon (Dixon), was expected to actively engage in the investigation of White. Despite this expectation, it is alleged that a phone call with ME office manager Danene Lowery (Lowery) revealed Kelly was prevented from working on White's case. According to Lowery, Kelly would need to consult with the risk manager and attorneys to determine what she was "allowed" to do, as that office was not handling the case (Exhibit 9 pp 13-15). Kelly chose to comply with such orders, relinquishing her state authority to ECU Health. The Plaintiff argues that since Kelly relinquished her state powers, doing so strips her of state immunities and those immunities should not apply.

However, if the Court deems that sovereign immunity does apply to Kelly in her official capacity, the Plaintiff, under the Ex Parte Young exception, seeks injunctive relief. Although Kelly may not have the power to implement or cause an investigation into White's death, she can participate in and cooperate with any such investigation. Additionally, the Plaintiff seeks to have White's death certificate amended if the results of an investigation so indicate or if Kelly agrees with IME, Dr. Donald Jason, MD, JD's (Jason) findings that White's manner of death is homicide. These remedies are requested in the Plaintiff's amended complaint, DE 33 p. 83 ¶¶ 1-2 and p. 84 ¶ 3.

Qualified Immunity:

Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The Plaintiff has demonstrated that Kelly's conduct violated clearly established constitutional rights. The right to due process and equal protection under the Fourteenth Amendment, as well as the right to receive information and access the courts under the First Amendment, are well-established. Kelly's actions were objectively unreasonable in light of these clearly established rights, thereby disqualifying her from qualified immunity protection.

Kelly's failure to conduct a thorough and unbiased investigation, coupled with her collaboration with external influences, directly impeded Plaintiff's ability to seek justice and redress through the courts. This conduct goes beyond mere negligence and enters the realm of deliberate obstruction, making qualified immunity inapplicable.

## VII.    CRIMINAL PROSECUTION OF ANOTHER

Counsel for the Defendant argues that the Plaintiff has no constitutional right to the criminal prosecution of another. This argument misses the point of the Plaintiff's claims. The case at hand is a civil rights case against defendants whose explicit conduct in covering up the circumstances of White's death led to violations of the Plaintiff's civil rights. This case is filed in the U.S. District Court to address these civil rights violations, and the Plaintiff has a right to seek necessary remedies to correct the wrongs committed against her. This right is grounded in the Fourteenth Amendment's guarantee of access to the courts and the First Amendment's right to petition the government for redress of grievances.

While the court itself may not have the authority to compel prosecution or an investigation, the Plaintiff's request for these remedies is part of a broader effort to address the systemic failures and deliberate obstructions that have violated her rights. These remedies can be addressed in the negotiation process, as the Defendants, particularly Dixon, do have the authority to initiate further investigation and prosecution.

By seeking these remedies, the Plaintiff is not only addressing past harms but also preventing future violations of her rights by ensuring a proper and thorough investigation is conducted. This aligns with the Plaintiff's right to a fair process and access to the courts, as guaranteed by the Constitution.

Counsel for the Defendant asserted that the Plaintiff failed to adequately allege a violation of her rights. This claim is unfounded as the Plaintiff abundantly asserted violations of her rights in her amended pleading. Counsel has failed to consider that unequal protection of the law transcends the requirement of intentional discrimination of a protected group, but also includes purposeful discrimination of a class of one.

Typically, a plaintiff must establish an equal protection violation by showing that a governmental decision-maker intentionally discriminated against someone because that person is part of a particular class of people. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). But under the "class of one" doctrine, a plaintiff can establish an equal protection violation by showing that a government actor discriminated against a specific individual. *Id.* at 688. The paradigmatic class of one case "is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (citation, brackets, and internal quotation marks omitted). *Kandt v. Garden City,* 23-2043-DDC-TJJ (D. Kan. Mar 25, 2024).

To succeed on a "class of one" selective enforcement equal protection claim, the plaintiff generally needs to show three prongs:

- Intentional Disparate Treatment.

- No Rational Basis.

- Improper Motive. The enforcement was motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right. *Mary v. Brister*, CIVIL ACTION NO: 17-4977 SECTION: "H"(1) (E.D. La. May 30, 2019).

Intentional Disparate Treatment: Kelly treated the Plaintiff differently from other decedent family members seeking information regarding the death of a loved one by failing to review medical evidence and providing her expert opinion regarding the decedent's death. Kelly's failure to evaluate the evidence and provide a report to aid a criminal investigation also indicated disparate treatment in terms of how she would normally participate in a criminal investigation conducted by the district attorney. The Plaintiff's conclusion that the treatment was disparate is not unsubstantiated, but rather, based on the assumption that for Kelly's failures to not be considered disparate, then her conduct is "normal," which goes against the purpose of her job functions as a medical examiner.


No Rational Basis: According to Kelly's office manager, Lowery, that medical examiner's office was not doing anything with White's case, because Kelly would need permission from ECU Health's risk management and attorneys before she could perform her expected job duties in the pending case. Kelly's decision to cooperate with such restrictions was completely irrational as she is expected to perform her role independently. Through the independence granted to her by the state, Kelly had the

authority to override ECU Health's restrictions even if it meant subpoenaing more information from ECU Health.

Improper Motive: Kelly improperly allowed herself to be influenced by ECU Health. ECU Health's intention was to prevent a proper investigation into White's death and was based on discrimination, reputation protection, and financial gain. Kelly's complicit involvement aligned her personal desire to cooperate with ECU Health over her professional desire to fulfill her duties as a medical examiner.

Therefore, while the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws, Kelly's failure to perform her job duties in the investigation of White's death, was due to an improper motive – external influences requiring Kelly to obtain permission before carrying out her lawful public duty.

## IX.    FIRST AMENDMENT VIOLATIONS

Counsel for the Defendant asserts that the Plaintiff failed to identify any First Amendment violations and any reliance on *Martin* is misplaced (DE 48 pp. 15-16). However, while Counsel referenced DE 33 p. 73, he failed to consider the testimony given in the amended pleading regarding Kelly's failure to uphold her official job duties (DE 33 pp. 37-41 ¶¶ 136-145 and Exhibit 9 pp. 13-15). Statements given by the Plaintiff regarding Kelly's failures are far from "conclusory." As in res ipsa loquitur, the facts

15

speak for themselves. Kelly was given evidence to review with the purported

expectation that she would compile a report of her evaluation of the evidence. Kelly did

not review the evidence, nor did she compile a report summarizing her review and

conclusion(s) of the evidence. It does not get any simpler than that. As stated above in

this response, Kelly's failure violated the Plaintiff's constitutional civil rights under the

First and Fourteenth Amendments.


## X.    QUALIFIED IMMUNITY IN § 1983 CLAIM


To determine whether qualified immunity applies, a court must determine whether the

facts alleged identify (1) a violation of a constitutional right and, if so, (2) whether the

right was clearly established at the time of the alleged misconduct. *Johnson v. Allen*,

416 F. Supp. 3d 550, 558-59 (E.D.N.C. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223,

231-32 (2009)).


Violation of a Constitutional Right:

Violation of the Plaintiff's rights have been expressed multiple times in this response. As

such, it is unnecessary to repeat them again here.


Whether the Right Was Clearly Established at the Time of the Alleged Misconduct:

In the Defendant's line of work, undoubtedly she has run across a considerable number

of occasions where the perpetrator of a homicide has attempted to conceal their

misdeed. It is through her examination of the decedent, the crime scene, witness

statements, etc. that she is able to discern an actual homicide from an accidental death or suicide, as well as if the homicide involved evidence of self-defense. Therefore, Kelly was fully aware, or should have been fully aware, that her decision to honor directives of outside influences and her refusal to cooperate with an official investigation would amount to obstruction of justice. The courts have defined obstruction of justice as any "act which prevents, obstructs, impedes or hinders public or legal justice." *State v. Wright*, 696 S.E.2d 832 (N.C. App. 2010).

Kelly's conduct exemplifies the definition of "obstruction of justice." Her acts and/or failures were criminal in nature, and her experience and education indicate that she was aware her conduct was criminal. She cannot now claim that she was unaware her conduct violated the Plaintiff's civil rights. The truth is, Kelly made her choices and disregarded the Plaintiff's rights. Had she been concerned about these rights, she would have performed her job duties to the best of her ability instead of succumbing to external pressures. Qualified immunity does not apply when a state actor violates the law while acting under the color of law..

XI.     42 U.S.C. § 1985 and 2000d

The Plaintiff did not allege any claims against Kelly in regards to 42 U.S.C. § 1985 and 2000d in her amended complaint. As such, no further discussion is necessary for these issues.

XII.    ETHICAL GUIDELINES

Based on the International Association of Coroners and Medical Examiners (IACME) Code of Ethics, several ethical breaches are evident in Dr. Kelly's conduct:

Integrity and Public Confidence:
**"The Member shall not conduct themselves in any manner which may bring their profession into disrepute or affect public confidence."**
By failing to review evidence and obstructing the investigation, Kelly's actions brought her profession into disrepute and affected public confidence.

Impartiality:
**"The Member shall perform their duties without, prejudice or partiality towards any person or institution."**
Her decision to comply with ECU Health's directives and not perform her duties without prejudice or partiality towards any person or institution indicates a lack of impartiality.

Public Duty:
**"The Member shall be ever mindful they are performing a public duty and their actions and decisions affect the public interest as well as the interest of private individuals, and shall proceed in the public interest to carry out diligently and as rapidly as possible the duties and responsibilities as required by law."**
Dr. Kelly's failure to perform her duties diligently and her decision to align with ECU Health over her professional responsibilities violated her public duty.

Responsibility Towards Society:
**"The Member shall accept their responsibility towards society in relation to matters of public health, public safety, medical science, research, education and legislation affecting the health and well-being of the local community (and humanity – nationwide/international)."**

Obstructing the investigation compromised public health and safety, thus failing her responsibility towards society.

Assisting Law Enforcement:

**"The Member shall assist law enforcement agencies, and all officials involved in the administration of justice (including both prosecution and defense) in the discharge of their duties within the bounds set by the laws affecting the discharge of their duties."**

By not cooperating with the investigation, she failed to assist law enforcement agencies as required.

Conflict of Interest:

**"The Member shall disqualify themselves from acting at an investigation or inquest where any actual conflict of interest appears to exist."**

Dr. Kelly did not formally disqualify herself from the investigation due to a conflict of interest. Instead, she continued to be involved in the case without following proper procedures to address any conflict, undermining the credibility of any defense based on this clause.

Conclusion:

Dr. Kelly's conduct, as outlined above, exemplifies multiple breaches of the ethical guidelines established by the IACME. Her actions not only violated professional standards but also contributed to the obstruction of justice in the investigation of White's death.

XIII.    COMMON LAW CONSPIRACY TO OBSTRUCT JUSTICE, OBSTRUCTION OF JUSTICE, AND NEGLIGENCE PER SE

The Defendant argues that Plaintiff's amended complaint failed to allege plausible facts to support claims against Kelly for common law conspiracy to obstruct justice, obstruction of justice, or negligence per se under North Carolina law. The Plaintiff disagrees with this statement. Facts alleged about this Defendant falls squarely in line with the common law definitions and requirements for these offenses.

Common Law Conspiracy to Obstruct Justice:

While the Defendant argues that North Carolina does not recognize an independent civil action of conspiracy, North Carolina does recognize a cause of action for damages caused by acts in furtherance of the conspiracy itself.

A cause of action for a civil conspiracy under North Carolina law is really an action for damages caused by acts in furtherance of the conspiracy and not for the conspiracy itself. *Johnson v. Beverly-Hanks & Assoc., Inc.*, 97 N.C.App. 335, 343, 388 S.E.2d 584, 588-89 (1990) (noting that there is no cause of action for civil conspiracy unless the conspiracy results in damage to plaintiff); see also, *Dalton v. Camp*, 135 N.C.App. 32, 42, 519 S.E.2d 82, 89 (1999) (noting that there is no civil conspiracy cause of action per se). A claim for civil conspiracy requires showing "an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant." *Id.*, at 42, 519 S.E.2d at 89 (citations omitted). The claimant must also prove that an "overt act" was committed by at least one conspirator in furtherance of the conspiracy. *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325,

337 (1981). Once the elements of a civil conspiracy are established, all conspirators are jointly and severally liable for damages resulting from an act performed by any one of them in furtherance of the conspiracy. *Fox v. Wilson*, 85 N.C.App. 292, 301, 354 S.E.2d 737, 743 (1987). *Jackson v. Blue Dolphin Communications of N.C.*, 226 F.Supp.2d 785 (W.D. N.C. 2002)

The two-pronged test the Plaintiff must show are (1) an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damages to the claimant; and (2) an overt act committed by at least one conspirator in furtherance of the conspiracy.

AGREEMENT:

- Testimony by Kelly's office manager, Lowery, is admissible as evidence according to Federal Rule of Evidence 801(d)(2)(D), being an employee of the ME's office, and Federal Rule of Evidence 803(1), being statements made in the present tense during an event.

- Lowery made the following assertions:
    - The Plaintiff was supposed to be talking to risk management instead of to her.
    - The ME's office had no information in their system regarding White.
    - The ME's office had not received any information from DA Faris Dixon (Dixon), though Dixon claimed to have sent evidence directly to Kelly's email in August 2022. (See Exhibit 9.)

21

- o She (Lowery) is the contact person and submissions of evidence would come to her.

- o The ME's office was not working on White's case.

- o Kelly would need to talk to risk management and attorneys to see what she would be allowed to do with White's case.

- Kelly did not review the evidence in White's case. Even on October 5, 2023, Lowery stated that Kelly had forgotten to review the evidence. During and after October 2023, Kelly still failed to review the evidence. Therefore, the excuse that Kelly provided to Lowery, that she "forgot," lost any viability due to Kelly's continued failure which indicates her willingness to agree with ECU Health's directive of not working on the investigation into White's death. This conclusion is based on two simple facts: (1) ECU Health instructed Kelly to not work on the case; and (2) Kelly did not work on the case. That is an agreement.

- Lowery was left out of the loop between ECU Health, Dixon, and Kelly. She believed she was the contact person and that at some point, she would be aware of any evidence submitted to the ME's office. Yet, between August 2022 and April 2023, she had no knowledge that evidence had been sent directly to Kelly's email by Dixon. Additionally, Kelly did not enter any information regarding White into their system. Even including Kelly's FMLA leave that began in November 2022, three months had passed since Dixon directly emailed evidence to Kelly by secure email. During this time, information was not entered into the ME's system, and Lowery was never informed that Kelly had received any evidence from Dixon regarding White's death. Res ipsa loquitur, there was an agreement between ECU Health, Dixon, and Kelly to

22

obstruct justice by preventing the discovery of White's true manner of death. The obstruction was aimed at concealing evidence from the Plaintiff, as well as from the public, should criminal charges be filed based on the evidence.

OVERT ACT:

Kelly's failure to review evidence of a decedent and compile a report contradicts her purpose and function as a medical examiner, especially as a board-certified forensic pathologist. Evidence was purportedly provided to her on two occasions, in August 2022 and April 2023. As of the filing of this case in 2024, Kelly still has not reviewed the evidence or compiled a report. This clearly establishes Kelly's intent to violate medical, ethical, and legal standards by obstructing justice.

Obstruction of Justice:

North Carolina recognizes the common law offense of obstruction of justice. *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014). A person commits the offense by "'acts which obstruct, impede or hinder public or legal justice…'" *Id.* (quoting *Blackburn v. Carbone*, 208 N.C. App. 519, 526, 703 S.E.2d 788, 795 (2010)). "The offense requires proof that the defendant acted 'willfully and with an intent to defraud.'" *Id.* (quoting *State v. Eastman*, 113 N.C. App. 347, 353. 438 S.E.2d 460, 464 (1994)). The law "requires that the defendant acted with the specific intent to obstruct justice, not just the general intent to do the act which resulted in the obstruction. *Id.* (referencing *Blackburn*, 208 N.C. App. at 527, 703 S.E.2d at 795 & n.6 ("'[A]ny action intentionally undertaken by the defendant for the purpose of obstructing, impeding, or hindering the plaintiff's ability to

23

seek and obtain a legal remedy will suffice to support a claim for common law obstruction of justice...."")).

The requisite elements of fraud include "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him." *Van Deusen v. Snead*, 247 Va. 324, 327 (Va. 1994) (quoting *Thompson v. Bacon*, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993)). *Mullen v. Cornerstone Inv. Funding, LLC*, Civil Docket No. CL09-4805 (Va. Cir. May 20, 2010).

Based in the above-referenced court cases, the Plaintiff did allege facts, that if proven to be true, supports accusations that Kelly obstructed of justice.

WILLFULLY: Kelly's decision to refrain from cooperating with the investigation was a willful act. When instructed to obtain permission from ECU Health's risk management and attorneys before proceeding, she had the authority to address and correct the situation. Instead of demonstrating allegiance to her profession and the public, she chose to align with ECU Health.

INTENT TO DEFRAUD:

- False representation: Kelly lied to Lowery.
- Material fact: Kelly lied to Lowery about having forgotten to review evidence in White's case.

24

- <u>Intentionally and knowingly</u>: If Kelly had genuinely forgotten to review the evidence, she would have prioritized completing the review to provide a report based on expert medical opinion.

- <u>Intent to mislead</u>: As stated earlier, Lowery was left out of the conspiracy loop between Dixon, ECU Health, and Kelly. When Lowery communicated with Kelly about the Plaintiff's phone call the day before (on October 4, 2023), Kelly chose to lie to Lowery rather than expose her role in covering up the circumstances of White's death.

- <u>Reliance by the party</u>: Lowery relied on the false information and relayed it to the Plaintiff. The Plaintiff relied on the false information as it indicated Dixon's failure to control his purported investigation by insisting on Kelly's cooperation.

- <u>Resulting damage</u>: The damage manifested in multiple ways. The Plaintiff's First and Fourteenth Amendment civil rights were further violated. The Plaintiff resorted to retaining an independent medical examiner. The continued pursuit of justice, compounded by the increasing insults of perpetual injustice, having to repeatedly relive the tragic events of her daughter's untimely death as the Plaintiff contacted numerous attorneys and independent medical examiners before retaining Dr. Donald Jason, has resulted in excessive emotional distress heavier than one should have to bear.

Common law obstruction of justice requires proof that the defendant acted "willfully and with an intent to defraud." The Plaintiff reaffirms her accusation that Kelly committed common law obstruction of justice.

Negligence Per Se:

In order to prevail on a claim of negligence per se, plaintiff must show:

(1) a duty created by a statute or ordinance;

(2) that the statute or ordinance was enacted to protect a class of persons which includes the plaintiff;

(3) a breach of the statutory duty;

(4) that the injury sustained was suffered by an interest which the statute protected;

(5) that the injury was of the nature contemplated in the statute; and,

(6) that the violation of the statute proximately caused the injury.

*Rudd v. Electrolux Corp.*, 982 F.Supp. 355, 365 (1997) (citing *Baldwin v. GTE South, Inc.*, 335 N.C. 544, 439 S.E.2d 108 (1994)). *Hardin v. York Mem'l Park*, 730 S.E.2d 768 (N.C. App. 2012).

The elements of negligence per se were established in two ways: first, through Kelly's ethical violations of the IACME guidelines, and second, when the Plaintiff demonstrated Kelly's obstruction of justice.

The Court has upheld that violations of administrative guidelines constitutes negligence per se. "Under traditional principles of tort law, '[t]he unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself,' or in more common

usage, negligence per se." *Ries v. National R.R. Passenger Corp.*, 960 F.2d 1156 (3rd Cir. 1992).

Additionally, Counsel for the Defendant asserts that a claim of negligence per se fails because negligence claims against the State must be brought under the North Carolina Tort Claims Act and heard by the North Carolina Industrial Commission. However, this argument overlooks the principle of supplemental jurisdiction.

FEDERAL CLAIMS PROVIDE JURISDICTION: This case includes federal claims, specifically civil rights violations under 42 U.S.C. § 1983. The presence of these federal claims provides the federal court with original jurisdiction over the case.

SUPPLEMENTAL JURISDICTION: Pursuant to 28 U.S.C. § 1367, the federal court has supplemental jurisdiction over state law claims that are related to the federal claims and form part of the same case or controversy. The negligence per se claim is directly related to the federal claims and arises from the same facts and circumstances.

JUDICIAL EFFICIENCY: Hearing all claims in one forum serves the interests of efficiency and judicial economy, allowing for a comprehensive resolution of the issues without the need for separate proceedings in different courts.

Therefore, the claim of negligence per se can be properly brought before this federal court alongside the federal civil rights claims.

To be clear, the Plaintiff is invoking the negligence per se doctrine, which holds that the violation of a statute or ordinance constitutes negligence in itself, shifting the burden of proof onto the Defendant to disprove negligence.

XIV.    CONCLUSION

For these reasons argued above, the claims alleged by the Plaintiff should not be dismissed.  Respectfully submitted,

August 5, 2024
/s/ Cynthia B. Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
avens1@charter.net
252-203-7107
*Pro Se Litigant*

CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2024, the Plaintiff's Amended Pleading was delivered in person to the Clerk of the U.S. District Court. Upon docketing, the CM/ECF system will send electronic notification of such filing to the defendants' counsel.

Respectfully submitted,

/s/ Cynthia B. Avens

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ccarreiro@ncdoj.gov
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
State Bar No. 45356
*Counsel for DA Faris Dixon*

Jeremy D. Lindsley
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.gov
Tel: 919-716-6920
Fax: 919-716-6764
NC State Bar No. 26235
*Counsel for Dr. Karen Kelly*

Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
*Counsel for Pitt County Memorial Hospital, Inc.*

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
*Counsel for Pitt County Memorial Hospital, Inc.*