**FILED**

AUG 22 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK


# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION
Civil Action Number 4:24-CV-00051-M-RN

| | |
|---|---|
| Cynthia B. Avens ) | |
| ) | |
| (Plaintiff) ) | MOTION TO STRIKE PITT COUNTY |
| ) | MEMORIAL HOSPITAL INC.'S |
| ) | LATE FILING OF DE 60 AND |
| Faris C. Dixon, Jr., District Attorney ) | FOR FAILING TO INDICATE NEW |
| Pitt County Memorial Hospital, Inc. ) | ALLEGATIONS |
| Dr. Karen Kelly, Medical Examiner ) | |
| John/Jane Doe ) | |
| John/Jane Doe ) | |
| John/Jane Doe ) | |
| (Defendants) ) | |

## MOTION TO STRIKE PITT COUNTY MEMORIAL HOSPITAL INC.'S LATE FILING OF DE 60 AND FOR FAILING TO ADDRESS NEW ALLEGATIONS

Plaintiff Cynthia B. Avens, proceeding pro se, respectfully moves this Court to strike the Defendant's Reply to Plaintiff's Response to Defendants' Motion to Dismiss, filed by ECU Health on August 20, 2024, as untimely and prejudicial to Plaintiff. The filing is not only untimely but also improperly attempts to reargue points already addressed without presenting new allegations as required. In support of this motion, Plaintiff states the following:

1

**LATE FILING:**

According to the Federal Rules of Civil Procedure, a party has 14 days to file a response to a motion unless the Court orders otherwise. In this case, Plaintiff filed her response (DE 57) to Defendant's motion to dismiss the amended complaint on August 5, 2024. Under the applicable rules, any reply by the Defendant was required to be filed by August 19, 2024.

A response to Plaintiff's response is only permitted under specific circumstances, such as when new allegations are introduced by the Plaintiff. Despite these limitations, the Defendant filed their response on August 20, 2024, as indicated by the date on their document (DE 60) and the court docket. The Defendant neither sought an extension from the Court nor requested Plaintiff's consent to file a late response. Consequently, the Defendant's response was filed outside the permissible timeframe, violating the procedural rules.

**CLAIMS OF RIDDLED FACTUAL NEW ALLEGATIONS:**

Counsel for the Defendant, K&L Gates attorneys Terrence McKelvey and Daniel McClurg (collectively, Gates), assert that "Avens' Response in Opposition to ECU Health's Motion to Dismiss is riddled with factual allegations that notably are absent from her Amended Complaint. (See D.E. 57 pp. 11-13, 15-16, 18-19, 21-25, 29-31, 34-38, 40-44, 48-49, 51-52, 54-59.)"

Gates asserts that "Avens' Response in Opposition to ECU Health's Motion to Dismiss is riddled with factual allegations that notably are absent from her Amended Complaint. (See D.E. 57 pp. 11-13, 15-16, 18-19, 21-25, 29-31, 34-38, 40-44, 48-49, 51-52, 54-59.)".

**Page 11-13**: Plaintiff addressed the coercion involved in the signing of the 2016 Wrongful Death Settlement Agreement on pages 11-12, an issue already discussed in Plaintiff's Amended Complaint (DE 33, p. 49). On pages 12-13 of Plaintiff's response, Plaintiff addressed Gates' reference to the consideration given in the Agreement, which they raised as part of their defense (DE 50, p. 5, Footnote 5). Plaintiff had a right to address this issue in her response.

**Page 15-16**: Plaintiff clearly acknowledged that she was not introducing new allegations regarding the care that her daughter, Keisha Marie White (White), received while under the care of Linda Brixon (Brixon). Rather, Plaintiff drew a logical conclusion based on the egregious and incomprehensible actions inflicted by Brixon on White. The only reasonable conclusion, given the circumstances, is that Brixon's actions were racially motivated. There is no other plausible explanation for a nurse to repeatedly disregard physician's orders, patient complaints, and proper protocols for 11 hours of a 12-hour shift, with neglect continuing into the 12th hour due to White being medically dead, prompting a code blue to be called.

**Page 18-19**: The Plaintiff did not use the phrase "Fraudulent Concealment" as a singular phrase in her Amended Complaint. However, she did address the fraud and the concealment involved in the 2016 mediation process. Again, the Plaintiff has not introduced a new claim by elaborating on claims already addressed in her Amended Complaint (DE 37, pp. 48-49).

**Page 21-25**: This is not new information. These pages clarify the purported SBI investigations that Gates claimed ECU Health cooperated with, as well as elaborating on ECU Health's interference with the medical examiner's office and Dr. Karen Kelly's (Kelly) review of evidence submitted to her by District Attorney Faris C. Dixon (Dixon). These issues are clearly discussed in the Plaintiff's Amended Complaint.

For the SBI investigations, see DE 37, ¶¶ 77, 78, 83-86, 89, 96, 102, 109, 110, and pp. 45 ¶ 1; 50 ¶ 2; 53 ¶ 1; bottom of p. 54; 55 ¶ 4; 56 ¶¶ 1-2; 58 ¶¶ 1 and 4; 60 ¶ 2.

For ECU Health's interference with the Dixon and Kelly investigation, see DE 37 ¶ 136, 140; pp 45 ¶ 3; 51 ¶ 3; 54 section 3; 55 ¶ 2; bottom of p. 59; and 60 ¶ 2.

**Pages 29-31**: Pages 29-31: These pages address ECU Health's actions that can be considered as state action. Again, these issues were indeed addressed in Plaintiff's Amended Complaint. See DE 37, pp. 49-50.

4

Case 4:24-cv-00051-M-RN    Document 61    Filed 08/22/24    Page 4 of 12

**Pages 34-38**: Gates claims that these pages contain new factual information. However, Plaintiff is reinforcing previously addressed issues concerning ECU Health's policy and custom of obstructing justice, which were already outlined in the Amended Complaint. See DE 37, pp. 48, 51, and 60.

**Page 40-44**: These pages reference the Plaintiff's detailed response regarding ECU Health's interactions with the SBI and their failure to participate in any purported investigation as claimed by Gates. Additionally, these pages articulate an invidious discriminatory animus, which was previously explained in Plaintiff's amended complaint. This section also provides court citations supporting the "meeting of the minds" and the animus. Gates's claim that this constitutes new information is unfounded. (See DE 37, pp. 52 ¶ 3; 54 ¶ 2; 57 ¶ 3).

**Page 48-49**: These pages address Gates's assertions regarding the inclusion of non-parties to the case. Gates introduced this point in their motion, and the Plaintiff had every right to respond accordingly. This is not new factual information but a direct response to arguments raised by the Defendant.

**Page 51-52**: The Plaintiff responded to Gates's argument that she failed to plausibly allege intentional racial discrimination under Title VI. This response did not introduce new information but clarified the acts of discrimination committed by ECU Health and was supported by relevant case law demonstrating how an institution can be held accountable for failing to address discriminatory conduct.

5

**Page 54-59**: These pages outline the elements of Negligence Per Se and apply them to the case at hand. This was done in direct response to Gates's argument that the Plaintiff failed to plausibly allege the essential elements for a negligence per se claim under North Carolina law. The information provided is not new but rather an elaboration and application of legal principles relevant to the Plaintiff's claims.

Given the number of pages misrepresented by Gates, it appears that they referenced a random set of numbers in an attempt to lend false credibility to their claims. This further demonstrates the baseless nature of their response and supports the Plaintiff's motion to strike it.

In addition to the initial pages discussed, Gates also claims that Plaintiff failed to adequately address discriminatory actions in her amended complaint, referencing additional pages in DE 60 ¶ 1:

**Page 24-25:** There are no new allegations in these pages. They are direct responses to Gates's claims regarding ECU Health's actions in 2014. The Plaintiff referenced DE 33, pp. 44-45, indicating that the subject discussed was already mentioned in her amended complaint.

**Page 35:** There are no new allegations on this page. It references the "[o]ngoing protection of white staff members despite illegal implications of their actions," which is consistent with claims already made. The rest of the page references and applies

6

Monell's explanation for an unwritten policy, further supporting the arguments in the amended complaint.

**Page 36**: This page discusses White's care and does not introduce any new allegations. The content is consistent with the issues already addressed in the amended complaint.

**Page 39**: This page addresses the Plaintiff's inability to seek civil redress in 2017 after ECU Health failed to make personnel available for interview in 2014. Although the information was revealed on May 30, 2024, by former SBI Agent Matherly, it is not a new allegation. The Plaintiff had already addressed ECU Health's conduct in preventing her from entering into contracts (DE 33, pp. 48-49) and had disclosed the new information received from Matherly in her amended complaint (DE 33, ¶ 97).

**Page 43 and 44**: There are no new allegations on these pages. The Plaintiff addressed the invidious discriminatory animus using allegations already present in the amended complaint. The only difference is that the Plaintiff cited a case to support the argument that animus can be demonstrated when an entity fails to address discriminatory conduct, thereby condoning or accepting such behavior. This does not introduce new facts but rather strengthens the existing claims.

**Page 49**: The Plaintiff once again references ECU Health's discriminatory animus, specifically demonstrated by their protection of white workers. There is nothing new in this section. The precedent in Jiminez v. Mary Washington College, 57 F.3d 369 (4th Cir.

7

1995), already supports that this type of conduct can indicate racial animus. It appears that Gates is revisiting allegations already addressed in the Plaintiff's amended complaint simply because she found precedents to bolster her claims. However, the rules of the Federal Rules of Civil Procedure dictate the proper process, and rearguing these points is not permissible.

**Page 51-52**: Once again, the Plaintiff applied established legal principles from Bryant v. School District No. I 38 of Garvin County, Ok., 334 F.3d 928 (10th Cir. 2003), and Davis v. Monroe County Board of Education, 526 U.S. 629 (1999). Gates's claim that these pages contain new allegations is simply false; the Plaintiff is merely using existing legal frameworks to support her arguments, not introducing any new facts or claims.

**Page 59**: While this page does not introduce new precedent, it also does not contain any new information. The content on this page is simply a reiteration of the information and arguments already addressed in the Plaintiff's amended complaint.

Everything after the first paragraph of Gates's response is an attempt to relitigate facts that were already addressed in their motion to dismiss. Given the extensive resources available to K&L Gates, including their provision of staff and financial backing, there is no valid excuse for their failure to address relevant points of argument when they initially had the opportunity to do so. They chose to rely heavily on affirmative defenses, introduce arguments that were irrelevant to the case at hand, and engage in maneuvers that prevented them from acknowledging many of the facts stated in the amended

8

complaint—such as their failure to acknowledge ECU Health's interference with multiple investigating entities, their insistence that the 2016 wrongful death settlement agreement somehow bars the claims in this case, their focus on the Plaintiff's failure to name law enforcement as defendants, and their misrepresentations regarding the so-called "unnamed" SBI agents.

Now, they are attempting to exploit a non-existent loophole by claiming that the Plaintiff introduced new allegations, which would allow them to respond once again under unscrupulous motives. This approach underscores their improper use of procedural tactics to gain an unfair advantage. As such, the Plaintiff will not address the specifics mentioned in the remainder of Gates's response, as they do not pertain to any newly introduced allegations and are therefore irrelevant to the current motion.

Conclusion

The Defendant's response, filed on August 20, 2024, should be stricken for several reasons. First, the response was filed a day late without seeking the Court's permission or the Plaintiff's consent, constituting a clear procedural violation. More critically, the Defendant's claim that Plaintiff's response introduced new factual allegations is demonstrably false. The issues raised by the Plaintiff in her response were either thoroughly addressed in her Amended Complaint or were in direct response to the Defendant's assertions in their motion to dismiss. No new factual allegations were introduced.

9

Moreover, if Gates genuinely believed that new allegations were presented, the appropriate procedure would have been to request the Court to strike those specific allegations from the response, as is standard practice in such situations, as demonstrated in *Bell v. TransUnion LLC*, 6:22-cv-00336-ACA (N.D. Ala. Aug 30, 2022). Instead, Gates filed a new response under the guise of addressing "new allegations," when in reality, they sought to reargue points that were already addressed.

Gates's attribution of a single paragraph to claim that the Plaintiff introduced new allegations is nothing more than a tactic to reargue points already addressed in their original motion to dismiss. This is a clear misuse of procedural rules. The one paragraph in the seven-page document falsely claims that 35 pages, spread across 10 separate sections, amount to new allegations. Moreover, Gates only referred to a single example, asserting that Plaintiff failed to allege ECU Health protected Linda Brixon in her Amended Complaint, which is a blatant misrepresentation. This tactic is an attempt to gain an unfair advantage by re-litigating issues after seeing the strength of the Plaintiff's arguments. Such conduct is not only improper but also serves to confuse the Court and unnecessarily prolong the litigation, causing undue burden, expense, and harassment to the Plaintiff.

For these reasons, Plaintiff respectfully requests that the Court strike the Defendant's response (DE 60) from the record. The Court should not allow the Defendant to manipulate the procedural process to their advantage and should instead ensure that the litigation proceeds fairly and efficiently.

Respectfully submitted,

8/21/2014

/s/ Cynthia B. Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

11

CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, the Plaintiff's Motion to Strike Defendant, Pitt County Memorial Hospital Inc.'s Response was shipped by UPS to the Clerk of the U.S. District Court. Upon docketing, the CM/ECF system will send electronic notification of such filing to the defendants' counsel.

Respectfully submitted,

/s/ Cynthia B. Avens

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ccarreiro@ncdoj.gov
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
State Bar No. 45356
*Counsel for DA Faris Dixon*

Jeremy D. Lindsley
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.gov
Tel: 919-716-6920
Fax: 919-716-6764
NC State Bar No. 26235
*Counsel for Dr. Karen Kelly*

Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
*Counsel for Pitt County Memorial Hospital, Inc.*

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
*Counsel for Pitt County Memorial Hospital, Inc.*