RECEIVED SEP 12 2024 PETER A. MOORE, JR., CLERK US DISTRICT COURT, EDNC

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EASTERN DIVISION

Civil Action Number 4:24-CV-00051-M-RN

| | |
|---|---|
| Cynthia B. Avens ) | |
| ) | |
| (Plaintiff) ) | PLAINTIFF'S RESPONSE TO |
| ) | DEFENDANT'S DE 67 OPPOSING |
| ) | PLAINTIFF'S MOTION TO |
| Faris C. Dixon, Jr., District Attorney ) | DETERMINE VALDITY AND |
| Pitt County Memorial Hospital, Inc. ) | APPLICABILITY OF 2016 |
| Dr. Karen Kelly, Medical Examiner ) | SETTLEMENT AGREEMENT |
| John/Jane Doe ) | |
| John/Jane Doe ) | |
| John/Jane Doe ) | |
| (Defendants) ) | |

Plaintiff, Cynthia B. Avens ("Avens" or "Plaintiff"), proceeding pro se, respectfully submits this Response to ECU Health Medical Center's ("ECU Health" or "Defendant") DE 67 Opposing Plaintiff's Motion to Determine Validity and Applicability of 2016 Settlement Agreement. The Plaintiff's motion (DE 62) is allowed under Federal Rules of Civil Procedure (FRCP), Rule 7(b).

## BACKGROUND AND TIMELINE

**March 22, 2024**: Avens filed her original complaint (DE 1), mentioning that ECU Health obstructed both criminal and civil justice. However, she did not elaborate on the specifics of the civil justice obstruction, leaving the issue open for future clarification.

1

**May 29, 2024**: ECU Health filed a motion to dismiss (DE 22) with a supporting memorandum (DE 23). In the memorandum, Counsel for the Defendant, K&L Gates ("Gates") asserted that Avens' claims were not only barred by the statutes of limitations but also by the 2016 Settlement Agreement, which released all claims related to the medical services White received. They argued that the Settlement Agreement invalidated Avens's current civil rights claims (DE 23, pp. 11, 16, Footnotes 5 and 7). It is these claims that first introduced the 2016 Agreement into the public record, thereby waiving the confidentiality of the Agreement.

**June 18, 2024**: Avens filed an amended complaint (DE 33), in which she elaborated on her claims that ECU Health obstructed civil justice via the 2016 Settlement Agreement, which she claimed was signed under coercive and fraudulent circumstances. This elaboration was in response to Gates's use of the Agreement as a defense.

**July 16, 2024**: ECU Health filed a motion to dismiss Avens's amended complaint with a supporting memorandum (DE 49 & 50). In this filing, they repeated the argument that the 2016 Settlement Agreement barred Avens' claims, while simultaneously implying that Avens sought to disavow only unfavorable parts of the Agreement while ignoring the consideration she received (DE 50, pp. 2, 5, 11, Footnotes 5 and 10). These assertions further waived the confidentiality of the Agreement by specifically introducing the consideration into the public record.

**August 5, 2024**: Avens responded to DE 49 and submitted Exhibit 12, an unredacted copy of the Agreement, to demonstrate that Gates was weaponizing a document that was inapplicable to the current civil rights claims.

**August 9, 2024**: Gates sent Avens a letter requesting that she strike the Agreement from the docket under threat of $50,000 in liquidated damages for violating the confidentiality clause by failing to redact the settlement amount. They provided a three-business-day window for compliance.

**August 12, 2024**: Gates acknowledged Avens' constraints as a pro se litigant and requested her intentions regarding the removal of the Agreement due to the purported confidentiality violation.

**August 20, 2024**: Gates supplemented their motion to dismiss (DE 49) by filing DE 60, falsely claiming that Avens's response was "riddled with factual allegations that were absent from her Amended Complaint."

**August 20, 2024**: Gates reiterated their request for Avens to confirm her intentions regarding the removal of the Agreement from the docket.

**August 22, 2024**: Avens filed a motion (DE 61) to strike DE 60, citing Gates's failure to identify any new allegations in her response.

**August 22, 2024**: Avens filed a motion (DE 62) to determine the validity and applicability of the Settlement Agreement, and whether it should remain on the docket in its current unredacted form. She also addressed the ethics and tactics employed by Gates.

**August 28, 2024**: Gates filed a motion (DE 63) and memorandum (DE 64) to seal the Agreement, falsely claiming that Avens had not complied with their request to seal the document. They initially asked her to strike the document from the public, followed by requests to remove the document from the public record.

**August 30, 2024**: Avens responded to DE 63 and 64, informing the Court that Gates had never requested her to seal the Agreement.

**September 3, 2024**: Gates filed DE 66 in response to Avens' motion to strike DE 60.

**September 3, 2024**: Gates filed DE 67 in response to Avens' motion to determine the validity of the Agreement, asserting that their motion to dismiss (DE 49 and 50) did not rely on the Agreement as a basis for dismissal.

## LEGAL STANDARDS: LOCAL RULES OF CIVIL PROCEDURE

**Rule 83.7d Standards for Professional Conduct: (b) Grounds for Discipline.**

Attorneys practicing before this court are held to strict standards of professional conduct under Local Rule 83.7d, which mandates honesty and fairness in all dealings with the court and opposing parties. This rule incorporates the standards set forth by the NC State Bar, ensuring that attorneys adhere to the highest ethical guidelines in their professional conduct.

## ARGUMENT

**Premature Summary Judgement:**

Avens's DE 62 Motion to Determine Validity and Applicability of the 2016 Settlement Agreement and Address Ethics and Tactics of Opposing Counsel is not a motion for summary judgment. Rather, it is based on FRCP 7(b), which allows for the filing of a motion seeking a specific court order to address particular issues relevant to the case.

4

Gates mischaracterizes this motion as a summary judgment related to the 2016 Settlement Agreement. Contrary to Gates's assertion, Avens's Motion does not seek to resolve the entire case or any part of it without a trial, as a summary judgment would. Instead, it seeks the court's determination on the specific matters of the Agreement's validity, applicability, and whether it should remain on the public record unredacted.

**The Agreement as an Affirmative Defense:**

In reviewing both the original and amended motions to dismiss filed by Gates, it becomes evident that their arguments rely on the 2016 Settlement Agreement as a key element of their defense, even if they now claim otherwise. In the original motion to dismiss, Gates argued that "Avens' claims against ECU Health not only are barred by the applicable statutes of limitations, they also are barred because Avens reached a settlement with ECU Health in 2016 where she released all claims against ECU Health as to the medical services White received." (DE 21 p. 11 Footnote 5). This assertion clearly positions the Settlement Agreement as a barrier to Avens' claims, particularly due to Gates's mischaracterization, claiming that "Despite entering into a settlement with ECU Health in 2016 whereby she released all claims related to the medical services that White received, Avens still seeks to hold ECU Health liable for [Keisa Marie] White's death." (DE 21 pp. 1-2).

Similarly, in their motion to dismiss the amended complaint, Gates reiterated this point by stating, "Despite entering into a settlement with ECU Health in 2016 whereby she released all claims related to the medical services that White received, Avens still seeks

5

to hold ECU Health liable for White's death." (DE 50 p. 2). Furthermore, they added in a footnote, "All of Avens' claims against ECU Health not only are barred by the applicable statutes of limitations, they also are barred by the terms of the 2016 Settlement Agreement and Release." (DE 50 p. 11 Footnote 10).

The repeated references to the Settlement Agreement in both motions, coupled with the assertion that it bars Avens' claims as Gates continued to maintain that the case at hand is a liability claim regarding White's medical care, strongly indicate that Gates was, in fact, relying on it as an affirmative defense.

**Out-of-Court Communications:**

Regarding the written communications in which Gates instructed Avens to Strike the Agreement, these factors deemed the letter coercive, threatening, and intimidating:

1. <u>Three-business day window</u>: Gates's demand that Avens comply with his instructions within a mere three-business day window imposed an undue burden that far exceeded the norms of reasonable legal expectations. This requirement was not something simple, like the removal of a social media post, but rather a complex legal action requiring substantial effort, including researching, preparing, and driving nearly 80 miles to file a document in person at the nearest U.S. Court in order to meet such a deadline, assuming that meeting such a deadline was attainable under the circumstances. Notably, such a stringent deadline is not mandated by any court rule and is highly irregular in legal contexts, where more reasonable timeframes are typically allowed for such actions. The pressure was

6

further amplified by the fact that Gates could have easily filed the motion to strike the Agreement themselves yet chose not to. Instead, Gates later opted for a motion to seal the Agreement, implicitly acknowledging that striking it was not legally appropriate under the circumstances. This strategic choice suggests that Gates was aware that his initial demand was unreasonable and primarily intended to inflict unnecessary stress and pressure on Avens, serving no legitimate legal purpose.

2. <u>Language</u>: By instructing Avens to "strike" the Agreement, Gates assumed that Avens understood the meaning and implications of the term "strike," the impact that striking the document would have on the case, and the process required to accomplish this task. However, Avens did not fully comprehend these legal nuances. The unreasonably short time frame compounded the pressure on Avens, as she was forced to research and understand complex legal actions that are typically within the purview of legal professionals. Moreover, opposing counsel is prohibited from providing legal advice, leaving Avens without any guidance on how to proceed. This lack of clarity and the time constraints placed Avens in an untenable position, further highlighting the coercive nature of Gates's demands. Moreover, as Avens failed to respond to Gates's requests for confirmation of her intentions, Avens was still researching how to initiate a strike, how courts may perceive a strike, as well as other possible alternatives to striking the document.

3. <u>Liquidated Damages</u>: The confidentiality of the Agreement, assuming the Agreement is valid, was waived when Gates used it against Avens in their

7

Case 4:24-cv-00051-M-RN   Document 69   Filed 09/12/24   Page 7 of 15

motions to dismiss her original and her amended complaints. They brought it into public discussion when they attempted to mislead the court with claims that the case at hand is a healthcare-related liability case despite Avens's consistent complaints of civil rights violations. Therefore, any liquidated damages were waved.

4. Selective Enforcement: Gates chose to focus their attention on just one aspect of the Agreement's confidentiality clause. While Gates identified the unredacted dollar amount in the Agreement as the cause of their instruction to strike the Agreement, they selectively failed to include the remaining information that was meant to remain confidential according to the Agreement's terms; the name, location, and any other identifiable information of the facility involved, which includes Pitt County Memorial Hospital, d/b/a Vidant Medical Center, and University Health Systems of Eastern Carolina Inc., d/b/a Vidant Health, as well as any associated entities or individuals. By failing to address these other confidentiality requirements, Gates's actions were selective and inconsistent with the broader obligations imposed by the Agreement, thereby raising questions about their true intent and whether their primary aim was to leverage the dollar amount alone to intimidate and coerce compliance from Avens.[1]

**Sealed or Removed? And Why Not Redacted?:**

In their response to Avens's Motion, Gates asserted that they had asked Avens on several occasions to take appropriate corrective action and have the Agreement

---

[1] These statements depend on the validity of the Agreement.

removed from the public record. While Avens does not agree with the terms "appropriate" and "corrective," she does agree to the extent that Gates required her to remove the document, and the evidence supports this. However, in their motion to seal the Agreement (DE 63 p. 1), Gates claimed, "Despite several requests by ECU Health, Avens has taken no corrective action to have the Draft Settlement Agreement sealed." This statement is misleading, as the option to "seal" the document was never presented to Avens. Striking the Agreement entirely from the record is a much more extreme measure compared to sealing.

Moreover, if Gates's true concern was the protection of the settlement amount, a simple request for Avens to submit a redacted copy would have sufficed. Gates also had the option of requesting the Court to replace the current unredacted copy with a redacted version in the public record. The fact that neither of these corrective actions were pursued by Gates strongly suggests that their real intention was to remove the entire document from public access to avoid scrutiny of the full scope of the Agreement—an Agreement they insist has the power to bar Avens's current claims. This inconsistency further supports the argument that Gates's actions were coercive, threatening, and served no legitimate legal purpose other than to unduly pressure Avens into compliance.

**No Agreement – Settlement, Confidentiality, or Otherwise Permits Criminal Activity:**

Gates's plan to use the Agreement as an affirmative defense in the future (see DE 67 p. 4 Footnote 3) will not succeed. The Agreement cannot bar the case at hand for three reasons:

1. As Gates has already stated in their motions to dismiss, the Agreement **"released all claims related to the medical services that White received."** By their own words, the Agreement does not have the authority to bar Avens's current civil rights claims, which are separate from any issues related to medical services.

2. ECU Health's conduct obstructed justice and illegally prevented a proper investigation into White's death, despite overwhelming evidence suggesting that her death resulted from criminal negligence potentially constituting first-degree murder. Relying on an agreement to dismiss the current action, which would effectively conceal criminal activity that forms the basis of the current civil rights claims, is a violation of public policy. As established in cases such as *Fomby-Denson v. Dept. of the Army* and *Berman v. Coakley*, agreements that seek to suppress criminal prosecution or to protect criminal actions are void and unenforceable.

3. Public policy prohibits any agreement that attempts to bar the exposure of criminal conduct. This principle is well-supported by legal precedent, which holds that contracts made to shield criminal activity from public scrutiny cannot be

upheld. The court should, therefore, reject any future attempts by Gates to use the Settlement Agreement as a defense in this case.

**Settlement Agreement Timeline:**

In footnote 3, page 4 of DE 67, Gates asserts that Avens's timeline regarding the signing of the 2016 settlement agreement is faulty. They argue that because the Board of Nursing's ("BON") final report was released in March 2016 and the Agreement was signed on April 25, 2016, Avens had possession of certain details for weeks prior to signing, thereby undermining her argument about withheld information at the time of signing. However, it is Gates's explanation that actually fails.

Two agreements were signed following the March 1, 2016, wrongful death mediation:

1. Mediation Settlement Agreement ("MSA"): This agreement was signed on March 1, 2016. (See Exhibit 17). It is simple and to the point, while also indicating that it will be subject to a confidentiality provision. This agreement was signed immediately following mediation. Though it was signed under illegal conditions that Avens has repeatedly argued, it prompted the end of negotiations and finalized the decisions made as a result.

2. Settlement Agreement and Release ("SAR"): This agreement was signed on April 25, 2016. (See Exhibit 12). It is an extended version of the previous agreement as it entails the scope of the agreement's coverage and the terms of the confidentiality clause. This is the version of the settlement agreement entered

11

into the public record to support Avens's argument that despite Gates's insistence of its power, does not bar the current civil rights action.

Gates's challenge to Avens's timeline, suggesting a discrepancy between the signing of the settlement agreement and the release of the BON report, raises serious concerns. It suggests either: (1) ECU Health deliberately withheld critical information by failing to provide a copy of the March 1, 2016, MSA to their representing counsel; or (2) Gates has access to the MSA but has maliciously chosen to misrepresent the actual timeline to the Court.

**Submitting The MSA into the Public Record Unredacted:**

Avens has chosen to submit the MSA to the public record in its unredacted form for the following reasons:

- Gates entered discussion of the wrongful death settlement into the public record, effectively waiving its confidentiality when they used it as an affirmative defense.
- Though irrelevant, Gates entered discussion of the agreement's consideration into the public record, effectively waving the confidentiality of the consideration by "opening the door." See *Grier v. State*, 351 Md. 241, 260 (1998).
- Gates attempted to use the agreement as both, a sword and as a shield, which is frowned upon by the courts as demonstrated in cases like *Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 667 (M.D. Fla. 2010) and *Strong v. Geico Gen. Ins. Co.*, Case No: 8:16-cv-1757-T-36JSS (M.D. Fla. Mar 15, 2017).
- The unredacted SAR has already been entered into the public record.

12

- The court's preference for transparency, as supported by cases like *Hanna v. Sunrise Senior Living Mgmt.*, 4:21-cv-01093-SEP (E.D. Mo. Jul 21, 2022) emphasizes the importance of keeping judicial records accessible to the public unless there are compelling reasons to seal them, which Gates has not provided in their motion to seal. Because Gates addressed the Agreement's consideration into public discussion, it is necessary now at this point to be transparent with the monetary details of the agreement.

**ECU Health, Directly or Through Counsel Continues to Obstruct Justice by Withholding Information:**

ECU Health has consistently engaged in the deliberate withholding of critical information throughout the events leading up to this case. This pattern began in June 2014 during the initial disclosure meeting, where crucial details surrounding White's death were not fully disclosed. However, if one considers White's body to have been a source of information for the medical examiner, the withholding information could be deemed to have started on May 10, 2014. The pattern of withholding information continued with ECU Health's report to the Board of Nursing (BON) where key information about Linda Brixon's conduct was either omitted or downplayed. Further obstruction occurred during the November 2014 investigation by the SBI/GPD, where ECU Health withheld personnel from the interview process, resulting in a withholding of information from the DA's office.

This pattern of withholding extended to influencing the Medical Examiner's Office, resulting in restricted communication with Avens and ultimately preventing Dr. Kelly from performing a proper review of White's case. Now, through Gates, ECU Health continues this pattern by attempting to discredit Avens's timeline, thereby continuing to obstruct justice. The court should consider this ongoing pattern of information withholding and the misrepresentation to the court as part of ECU Health's broader strategy to obstruct justice and avoid accountability.

## CONCLUSION

While recognizing the court's ultimate authority to determine the applicable rules and standards in this case, it is vital to underscore the importance of addressing any conduct by opposing counsel that may violate professional norms or procedural rules. The integrity of these proceedings relies on the court's oversight, ensuring that all parties adhere to the highest standards of legal and ethical practice. Therefore, Avens requests that the Court consider any appropriate remedies under Rule 83.7d of the Local Rules of Civil Procedure, which governs Standards for Professional Conduct and Grounds for Discipline.

Respectfully submitted, September 09, 2024

/s/ Cynthia B Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
Pro Se Litigant

CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2024, I shipped by UPS, this Response to ECU Health Medical Center's DE 67 Opposing Plaintiff's Motion to Determine Validity and Applicability of 2016 Settlement Agreement to the Clerk of the U.S. District Court. Upon docketing, the CM/ECF system will send electronic notification of such filing to the defendants' counsel. Respectfully submitted,

September 9, 2024

/s/ Cynthia B. Avens

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ccarreiro@ncdoj.gov
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
State Bar No. 45356
*Counsel for DA Faris Dixon*

Jeremy D. Lindsley
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.gov
Tel: 919-716-6920
Fax: 919-716-6764
NC State Bar No. 26235
*Counsel for Dr. Karen Kelly*

Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
*Counsel for Pitt County Memorial Hospital, Inc.*

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
*Counsel for Pitt County Memorial Hospital, Inc.*