UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action Number 4:24-CV-00051-M-RN

| | |
|---|---|
| CYNTHIA B. AVENS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) SUPPLEMENTAL MEMORANDUM IN |
| | ) SUPPORT OF DEFENDANT PITT |
| FARIS C. DIXON, JR., DISTRICT | ) COUNTY MEMORIAL HOSPITAL, |
| ATTORNEY, PITT COUNTY | ) INC.'S MOTION TO SEAL DOCUMENT |
| MEMORIAL HOSPITAL, INC., DR. | ) FILED BY PLAINTIFF AT D.E. 57-1 |
| KAREN KELLY, MEDICAL EXAMINER, | ) |
| JOHN/JANE DOE, and JOHN/JANE DOE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Defendant Pitt County Memorial Hospital, Inc. d/b/a ECU Health Medical Center ("ECU Health") respectfully submits this Supplemental Memorandum of Law in Support of its Motion to Seal Document Filed by Plaintiff Cynthia B. Avens ("Avens") at Docket Entry 57-1.

## I. BACKGROUND

This case arises out of the unfortunate death of Avens' daughter, Keisha White ("White"), more than a decade ago. At the time of her death, White was a patient of ECU Health and was being treated for various medical conditions. White experienced a medical emergency at Vidant Medical Center on May 10, 2014, and died of an anoxic brain injury and cardiac arrest that same day.[1] In 2016, Avens entered into a Settlement Agreement and Release in Full (the "Final Settlement Agreement") with ECU Health whereby she released all claims related to the medical services that White received.

---

[1] While Pitt County Memorial Hospital, Inc. currently does business as ECU Health Medical Center and is referred to herein as ECU Health, during the period relevant to Avens' claims (from 2014 through 2016), the entity did business as Vidant Medical Center.

Avens filed her original Complaint in this action on March 22, 2024, nearly ten years after White's death. Through her Amended Complaint, filed on June 18, 2024, Avens purports to assert claims against ECU Health under (1) 42 U.S.C. § 1983; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1985; (4) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and (5) North Carolina law for negligence *per se*. (*See* Docket Entry 33). According to Avens, the Final Settlement Agreement has no relevance to any of her claims in this dispute, which Avens argues "is not a continuation of the former wrongful death case" through which she entered into the Final Settlement Agreement. (*See* Docket Entry 33 pp. 48-49).

On July 16, 2024, ECU Health filed a Motion to Dismiss the Amended Complaint (the "Motion"). (Docket Entry 49). Although in its Motion ECU Health mentioned the Final Settlement Agreement, it did not move for dismissal based on any provisions of that agreement.[2] Rather, ECU Health moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds:

> **(1)** all of Avens' claims are time-barred by the applicable statutes of limitations;
>
> **(2)** any Section 1983 claim fails because ECU Health is not a state actor and because Avens fails to allege that any policy or custom of ECU Health caused a deprivation of her rights;
>
> **(3)** any Section 1981 claim fails because Avens does not allege that ECU Health intentionally discriminated against her on the basis of race, because Avens does not allege that ECU Health interfered with a cognizable contractual relationship, and because ECU Health is not a state actor;
>
> **(4)** any Section 1985 claim fails because Avens does not allege specific facts necessary to establish a conspiracy or that any actions taken were motivated by a specific class-based, invidiously discriminatory animus;

---

[2] Nor did ECU Health move to dismiss the original Complaint based upon the Final Settlement Agreement, as Avens contends. (*See* Docket Entry 62 p. 6). On the contrary, in its Motion to Dismiss the original Complaint, ECU Health specifically noted that it was *not* at this time moving to dismiss Avens' original Complaint on such grounds. (Docket Entry 23 n.5).

> **(5)** any Title VI claim fails because Avens does not allege that ECU Health engaged in intentional racial discrimination; and
>
> **(6)** any claim for negligence *per se* fails because Avens fails to allege *any* of the elements required to support such a claim.

(Docket Entry 49 p. 2). Further, although it treated the Amended Complaint's factual allegations as true for purposes of its Motion, ECU Health reserved its right to contest such allegations and did not waive any other affirmative defenses it may later assert.[3] (Docket Entry 50 n.3).

On August 5, 2024, Avens submitted a Response in Opposition to ECU Health's Motion, to which she attached as Exhibit 12 an unsigned draft version of the Final Settlement Agreement (the "Draft Settlement Agreement"). (Docket Entries 57, 57-1). However, despite attaching the Draft Settlement Agreement, Avens nonetheless conceded in her Response that ECU Health had not based its Motion on any provision of the Agreement, but instead "on the basis of the statute of limitations or other affirmative defenses . . . ." (Docket Entry 57 p. 27). Avens further did not attempt to explain in her Response how the Draft Settlement Agreement impacted any of the bases on which ECU Health had moved for dismissal.

On August 28, 2024, ECU Health filed a Motion to Seal, through which it asked the Court to seal the Draft Settlement Agreement attached to Avens' Response. ECU Health explained that the terms of the Draft Settlement Agreement are confidential and that confidentiality is a material term which served as a primary and critical inducement for the parties to enter into the Final Settlement Agreement. ECU Health also explained that, despite several requests, Avens had taken no corrective action to have the Draft Settlement Agreement sealed. (Docket Entry 63). ECU

---

[3] As a result, Avens' statement in a subsequently filed motion that "the Agreement was again used against [her]" in ECU Health's Motion to Dismiss the Amended Complaint also is inaccurate. (*See* Docket Entry 62 p. 6).

3

Health submitted a Memorandum of Law to support its position in this regard (Docket Entry 64), and Avens filed a Response in Opposition on August 29, 2024. (Docket Entry 65).

On October 23, 2024, the Court entered an Order in which it instructed ECU Health first to submit an executed copy of the Final Settlement Agreement between Avens and ECU Health under seal by October 28, 2024[4], and second to file a supplemental memorandum explaining: "(a) whether the public's right of access to the settlement agreement and, to the extent it differs from the signed document, the unexecuted settlement agreement Avens filed stems from the common law or the First Amendment and (b) how ECU's interest in keeping some or all the documents from the public outweighs that interest." (Docket Entry 74).

## II. LAW AND ARGUMENT

### A. There Is No Right of Public Access to the Settlement Agreement.

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'" *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (citing *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989)). The "mere filing of a document with a court does not render the document judicial." *In re Pol'y Mgmt. Sys. Corp.*, 1995 WL 541623 at *4 (4th Cir. Sept. 13, 1995) (citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.1995)). Rather, a document is a "judicial record" only if it "play[s] a role in the adjudicative process, or adjudicate[s] substantive rights." *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290; *compare Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir.1988) (holding that documents filed as exhibits to a motion for summary judgment were "judicial documents" because "summary

---

[4] ECU Health complied with this directive and filed a copy of the fully executed settlement agreement under seal on October 28, 2024. (*See* Docket Entry 78).

judgment adjudicates substantive rights and serves as a substitute for a trial") *with In re Pol'y Mgmt. Sys. Corp.*, 1995 WL 541623 at *4 (holding that documents filed with a motion to dismiss were not "judicial documents" subject to a right of access under either the First Amendment or the common law "where the documents . . . did not play *any* role in the district court's adjudication of the motion to dismiss").

Accordingly, although "documents filed as part of a dispositive motion" may be subject to a presumption of access – whether under the First Amendment or the common law – such is not the case where the relevant documents do not "play a relevant and useful role in the adjudication process." *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290-91; *In re Pol'y Mgmt. Sys. Corp.*, 1995 WL 541623 at *4; *Vanholten v. Sunrise Senior Living*, 2021 WL 2446180, at *4 (E.D.N.C. June 15, 2021) (holding that "the documents at issue are not 'judicial records' because they played no role in the court's decision on [the] motion to dismiss"); *McDowall v. U.S.*, 2017 WL 4400466, at *3 (E.D.N.C. Oct. 3, 2017) (holding that "there is no right of public access to plaintiff's medical records" where the "medical records are not relevant to the issues underlying the motion for summary judgment"); *In re NC Swine Farm Nuisance Litig.*, 2017 WL 2312883, at *3 (E.D.N.C. May 25, 2017) (granting motion to seal where "the documents . . . are not necessary to the court's analysis of the motion for judgment on the pleadings" and, therefore, "are not subject to a right of public access").

This Court is not a "sounding board where any document, no matter how irrelevant to the adjudicative process, may be broadcast to the public at large." *See Washington v. Bruraker*, 2005 WL 8174664, at *5 (W.D. Va. Mar. 29, 2005). There is no presumption of access to the Draft Settlement Agreement because the Agreement is not a "judicial record" with any role to play in adjudicating ECU Health's Motion. *See In re U.S. for an Ord. Pursuant to 18 U.S.C. Section*

5

*2703(D)*, 707 F.3d at 290; *In re Pol'y Mgmt. Sys. Corp.*, 1995 WL 541623 at *4. ECU Health did not move to dismiss the original Complaint based on the Final Settlement Agreement. It did not move to dismiss the Amended Complaint based on the Final Settlement Agreement. And, Avens did not base any arguments in her Response to ECU Health's Motion on any of the Agreement's terms. In other words, the Settlement Agreement – whether in draft or final form – is "not relevant the issues underlying the motion [to dismiss]" and, therefore, is not a "judicial record" subject to a presumption of access under either the common law or the First Amendment. *See McDowall*, 2017 WL 4400466, at *3. Accordingly, the Court should grant ECU Health's Motion to Seal.

**B.** **Any Common Law Right is Outweighed by ECU Health's Confidentiality Interests.**

Alternatively, to the extent the Court considers the Draft Settlement Agreement to be a "judicial record," any right of access stems from the common law, not the First Amendment. "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988). To determine whether a right of access is based in the First Amendment, courts "employ the 'experience and logic' test, asking: '(1) whether the place and process have historically been open to the press and general public,' and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 291 (citing *Goetz*, 886 F.2d at 64).

Relevant here, a motion to dismiss "is not the type of proceeding that traditionally is open to the public, unlike a proceeding which serves as a substitute for trial, such as a motion for summary judgment." *Nallapati v. Justh Holdings LLC*, 2020 WL 2616063, at *1 (E.D.N.C. May 22, 2020). Therefore, to the extent documents filed in connection with a motion to dismiss have

6

been found to constitute judicial records, courts largely have declined to extend to such documents the additional protections of the First Amendment. *See, e.g., id.* at *2 (weighing factors to be considered under the "common law balancing test" and holding that "the presumption of access has been overcome"); *Trustees of Purdue Univ. v. Wolfspeed, Inc.*, 620 F. Supp. 3d 393, 401-02 (M.D.N.C. 2022) (holding that a brief filed in connection with a motion to dismiss was subject to the common law presumption of access, but that no such presumption applied to an accompanying exhibit that played "no role" in adjudicating the motion); *HSG, LLC v. Edge-Works Mfg. Co.*, 2019 WL 8348802, at *1 (E.D.N.C. June 21, 2019) (granting motion to seal response in opposition to motion to dismiss containing excerpt of settlement agreement after finding "that the confidential nature of the Settlement Agreement . . . outweighs the public's right to access this document").

The common law right to inspect documents filed with the court is not absolute. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). "The trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *Id.*; *accord In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290. In determining whether to exercise its power to seal documents, the Court should consider (1) "whether the records [would be used] for improper purposes, such as promoting public scandals," (2) "whether release [of the documents] would enhance the public's understanding of an important historical event," and (3) "whether the public already ha[s] access to the information contained in the [documents]." *In re Knight Publishing Co.*, 743 F.2d at 235. In addition, the Court must consider whether alternative means of protecting the information exist that are less restrictive than sealing the document. *Id.* One such alternative means of protection is redaction. *May v. Medtronic*, 2006 WL 1328765, at *1 (D.S.C. May 15, 2006). If, however, redacting a document renders it meaningless, redaction is not a proper alternative. *Id.*

7

Case 4:24-cv-00051-M-RN    Document 81    Filed 11/12/24    Page 7 of 10

Courts also have held that a party's interest in maintaining an agreement's confidentiality can outweigh the common law presumption of access.[5] *See, e.g.*, *HSG, LLC*, 2019 WL 8348802, at *1 (stating that a settlement agreement's confidentiality provision was "consideration for entering into the Settlement Agreement" and that the terms thereof "discern no significant public interest and are of the nature of material that courts routinely allow to be filed under seal"); *Universal Underwriters Ins. Co. v. Lallier*, 2019 WL 1085180, at *2 (E.D.N.C. Mar. 6, 2019) (granting motion to seal exhibit containing confidential information relating to a non-party minor); *TMM Data, LLC v. Braganza*, 2016 WL 1228595, at *6 (E.D.N.C. Mar. 28, 2016) (citing *Stone*, 855 F.2d at 180) (granting motion to seal a draft settlement agreement and portions of deposition testimony attached to a defendant's reply to a motion for sanctions because "the interest in protecting confidentiality in these documents outweighs the public interest in access").

Here, confidentiality is a key and fundamental term of the Final Settlement Agreement, and was a critical inducement for the parties in agreeing to settle their dispute in 2016. The Draft Settlement Agreement (and the Final Settlement Agreement) by its terms does not allow Avens or ECU Health to reveal its contents in a public forum. Indeed, the parties expressly agreed that neither would disclose its terms and conditions without the written consent of the other. There are logical and sound business and personal reasons for this type of confidentiality where financial and non-public terms of a transaction are contained in the agreement between private parties. If the Draft Settlement Agreement remains public, the potential legal harm to Avens, in particular, is

---

[5] Crucially, this is not a case where ECU Health has yet attempted to enforce the Final Settlement Agreement's terms against Avens. *See Bank of Am. Nat. Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 345 (3d Cir. 1987) ("Having undertaken to utilize the judicial process to interpret the settlement and to enforce it, the parties are no longer entitled to invoke the confidentiality ordinarily accorded settlement agreements.").

significant in light of the enforcement mechanism and the legal consequences of breaching the Agreement's confidentiality provision.

No important public interests counterbalance these substantial potential harms. Redaction is not a viable remedy to non-disclosure. There is no way to meaningfully redact the Draft Settlement Agreement, as it contains lengthy descriptions of the terms and discussions of the claims and defenses at issue, the removal of which would be impractical and would render a public version of the document meaningless. Avens is a party to the Final Settlement Agreement and agreed to be bound by its terms. Thus, Avens should be deemed to have consented to the Final Settlement Agreement's confidentiality provisions because such a presumption simply reinforces the intent Avens expressed when the Final Settlement Agreement was signed. Given ECU Health's interest in maintaining the Agreement's confidentiality, the potential harms to Avens, and the absence of any countervailing public interests, the Court should grant ECU Health's Motion to Seal.

### III. CONCLUSION

For these reasons, ECU Health respectfully requests that the Court grant its Motion and seal the Draft Settlement Agreement. (Docket Entry 57-1).

Respectfully submitted,

/s/ Terrence M. McKelvey
Daniel D. McClurg (NC Bar #53768)
daniel.mcclurg@klgates.com
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
(704) 331-7444
(704) 353-3114

Terrence M. McKelvey
(NC Bar #47940, admitted in EDNC)
terrence.mckelvey@klgates.com
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
(615) 780-6700
(615) 780-6799

*Counsel for Defendant Pitt County Memorial Hospital, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served upon all counsel of record via the Clerk of Court's ECF system and upon Plaintiff Cynthia B. Avens via U.S. Mail, postage prepaid, at the address listed below, this November 12, 2024:

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, North Carolina 27870

Chris D. Agosto Carreiro
Special Deputy Attorney General
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602

*Counsel for Defendant Faris C. Dixon, Jr.*

Jeremy D. Linsley
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602

*Counsel for Defendant Karen Kelly, MD*

/s/ Terrence M. McKelvey