| | |
|---|---|
| **Cynthia B. Avens**, <br><br> Plaintiff, <br><br> v. <br><br> **Faris C. Dixon, Jr.**, et al., <br><br> Defendants. | **Order &** <br> **Memorandum & Recommendation** |

As part of its motion to dismiss, Defendant Pitt County Memorial Hospital, doing business as ECU Health Medical Center ("ECU Health"), mentioned a settlement agreement it entered in to in 2016 with Plaintiff Cynthia B. Avens. That settlement agreement resolved claims related to the death of Avens's daughter, who, at the time of her death, was a patient at ECU Health.

In response, Avens has asked the court to determine whether the settlement agreement is valid. But Avens's request to evaluate the settlement agreements' validity is procedurally improper at this point. Avens's pleadings do not seek a declaratory judgment regarding the settlement agreement's validity and ECU Health has not yet relied on the agreement as an affirmative defense to Avens's claims. Nor has Avens identified a rule of civil procedure that entitles her to a ruling on the agreement's validity at this point. So the undersigned recommends[1] that the court deny that portion of her motion without prejudice.

Avens also wants the court to address what she believes to be unethical conduct by ECU Health's attorneys. She takes issue with their threat to sue her for violating the settlement

---

[1] Although, as discussed, the procedural basis for Avens's request is unclear, her request seeks an adjudication of substantive rights between the parties. Thus this portion of the opinion is issued as a recommendation under 28 U.S.C. § 636(b)(1)(B).

agreement's confidentiality provision by filing the agreement on the public docket. But given the settlement agreement's language, there is nothing inappropriate about the actions of ECU Health's attorneys. Thus, the court will deny this part of the motion.

I.  Background

Avens brings a litany of claims against Defendants stemming from the death of her daughter, Keisha, in 2014. Am. Compl. at 44–74, D.E. 33. Two years later, Avens and ECU Health entered into a settlement agreement to resolve claims arising out of the care provided to Keisha. D.E. 57–1. In that document, the parties agreed that "[t]he terms of the settlement . . . shall remain confidential as to settlement amount and shall not be disclosed by any party or any party's counsel to anyone except as required by law[.]" Letter from Terrence M. McKelvey to Cynthia B. Avens (Aug. 9, 2024), D.E. 62–1. The settlement agreement also included a liquidated damages clause that would require Avens to pay ECU Health $50,000 in the event she violated the confidentiality provision. *Id*.

Avens sued against ECU Health and two other Defendants in March 2024 for alleged violations of her civil rights related to the investigation into Keisha's death. D.E. 1. ECU Health eventually moved to dismiss Avens's claims. D.E. 49. In a footnote in its brief in support of that motion, ECU Health mentioned that, in addition to other arguments, Avens's claims "are barred by the terms of the 2016 Settlement Agreement and Release." Mem. in Supp. of Mot. to Dismiss at 11 n.10, D.E. 50. But ECU Health also said that given "the numerous bases for dismissal" outlined in its brief, "at this juncture, the Court need not reach that issue[.]" *Id.* And in another footnote, it also pointed out that Avens's "Amended Complaint is silent regarding the status of the consideration Avens received" for entering into the settlement agreement. *Id.* at 5 n.5.

In response, Avens argued that ECU Health fraudulently induced her to enter into the settlement agreement, rendering it void. Resp. in Opp. to ECU Health Mot. to Dismiss at 5, D.E. 57. She also attached an unsigned, draft version of the settlement agreement to her filing. D.E. 57–1.

Less than a week later, Avens received a letter from ECU Health's attorneys. That letter accused her of violating the settlement agreement by filing it on "the public record without any redaction of the settlement amount[.]" McKelvey Letter at 1. According to ECU Health's attorneys, as a result of that breach, their client was "entitled to $50,000 in liquidated damages" from Avens. *Id.* The letter gave Avens five days to "take immediate action to strike the Settlement Agreement from the docket[.]" *Id.* If she did not do so, ECU Health would "take necessary action." *Id.*

A day after receiving the letter, Avens responded that given her pro se status, only giving her a few days to address prepare and file the necessary documents was "an unfair expectation." Email from Avens to McKelvey (Aug. 10, 2024 9:11 p.m.), D.E. 62–1 at 2. The deadline in ECU Health's letter passed without Avens taking any action to restrict public access to the settlement agreement.

Avens did, however, prepare and file a motion asking the court to make several decisions about the settlement agreement. D.E. 62. To begin with, she wants the court to determine whether the settlement agreement is valid. *Id.* at 10. She also seeks a ruling on whether the settlement agreement is relevant to this action. *Id.* at 11. Then she asks the court to decide if the settlement agreement requires the court to dismiss her claims. *Id.* Next, she wants the court to assess whether ECU Health has waived the agreement's confidentiality provision. *Id.* And finally, she asks for a ruling on whether the agreement should remain on the docket in its unredacted form. *Id.*

In addition, her motion also contends that ECU Health's attorneys' acted unethically when they sent the letter about the settlement agreement. She contends that their actions were "designed to suppress evidence and intimidate a witness[.]" *Id.* at 20.

In response, ECU Health contends that Avens's motion should be denied for two reasons. First, it argues that Avens's motion is really a motion for summary judgment on an anticipated affirmative defense. Resp. in Opp. at 1, D.E. 67. Second, ECU Health argues that its pending Motion to Dismiss does not rely on the Settlement Agreement as a basis for dismissal, so substantive arguments and issues related to it are not properly before the court. *Id.* at 1–2.

Avens, in her reply, says that she is not pursuing a motion for summary judgment. Reply Mem. at 4, D.E. 69. Instead, she is proceeding under Federal Rule of Civil Procedure 7, which governs the filing of motions. *Id.*

## II. Discussion

Avens's requests related to the settlement agreement are, with one exception, premature. Although ECU Health mentioned the settlement agreement in passing, it has not relied on the settlement agreement to support its motion to dismiss. Nor has Avens included a claim in her Amended Complaint seeking a determination of the agreement's validity. So, at this point, the settlement agreement is not at issue in this case, and the court declines to issue advisory opinions related to that document.

There is, however, a live issue over whether the settlement agreement should remain on the docket in an unredacted form. That issue is the subject of a separate motion by ECU Health. The court will address that issue when it resolves ECU Health's motion.

Additionally, there is no basis to conclude that ECU Health's attorneys violated their ethical obligations. To the contrary, given that the settlement agreement contained a confidentiality

4

Case 4:24-cv-00051-M-RN    Document 84    Filed 01/09/25    Page 4 of 11

provision, they appropriately sought to protect their client's rights when they concluded that Avens had violated that provision.

### A. Relation of the Settlement Agreement to this Litigation

Article III of the Constitution limits the power of the federal courts to a limited set of cases and controversies. U.S. Const. art. III § 1. And before a federal court may act, it must ensure that it is addressing "a genuine, live dispute between adverse parties[.]" *Carney* v. *Adams*, 592 U.S. 53, 58 (2020). That obligation exists to "prevent[] the federal courts from issuing advisory opinions." *Id.*

When a party wishes to have a court adjudicate its rights and obligations to another party, it typically does so in one of two ways. First, a party may bring a claim for that relief in a pleading, typically a complaint. *See* Fed. R. Civ. P. 8(a). And second, a party can raise an affirmative defense to a claim for relief in a motion to dismiss or a responsive pleading. *See, e.g.*, *id.* 8(c), 12(b) & 12(c).

But at this point, neither party has properly placed the settlement agreement's validity before the court. Avens's Amended Complaint contains several claims, but a request for a declaratory judgment is not among them. To date, she has not sought leave of court to add such a claim. And she cannot amend her amended complaint through her briefing. So Avens has not properly put the settlement agreement before the court.

Nor has ECU Health asked the court to decide the validity of the settlement agreement or its impact on this case. It has not yet brought a counterclaim against Avens for violating the settlement agreement's terms. And since it has not filed a responsive pleading, it has not asserted the agreement as an affirmative defense to Avens's claims. And while it referenced the settlement agreement in two footnotes in its supporting memorandum, a passing reference in a footnote is not

5

Case 4:24-cv-00051-M-RN    Document 84    Filed 01/09/25    Page 5 of 11

sufficient to place an issue before the court. *See Harmon* v. *Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) (finding that a party waived an argument by "presenting it only in an undeveloped footnote"); *Hutchins* v. *District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc) (declining to "consider cursory arguments made only in a footnote"); *John Wyeth & Bro. Ltd.* v. *CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (explaining that "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *United States* v. *Restrepo*, 986 F.2d 1462, 1463 (2d Cir.1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."). Plus, both in its written submission and at oral argument, ECU Health said that it is not relying on the settlement agreement (for now) as a reason why the court should dismiss Avens's claims. Resp. to Mot. to Determine Validity at 2, D.E 67; Oct. 8, 2024 Hr. Tr. at 6:6–9.

So since none of the parties have relied on the settlement agreement as part of their claims or defenses, questions related to its validity, relevance, and effect are not properly before the court. Issuing an opinion on those matters at this time would constitute an impermissible advisory opinion. The district court should decline to do so.

What's more, even if settlement-agreement-related issues were properly before the court, Avens has not identified a proper vehicle for the court to grant her the relief she seeks. Avens claims to be proceeding under Federal Rule of Civil Procedure 7(b). Reply Br. at 4. But that rule merely requires that a party seeking an order from the court do so through a motion. Fed. R. Civ. P. 7(b). It does not provide an independent basis for the court to issue relief to a party.

Typically, the type of questions Avens wants the court to decide would be addressed through a motion for summary judgment under Rule 56 or a motion for judgment on the pleadings under Rule 12(c). But Avens has said that she is not pursuing a motion for summary judgment.

Reply Br. at 4–5. And she cannot rely on Rule 12(c) to support her motion because ECU has not filed its answer to her complaint. *See* Fed. R. Civ. P. 12(c) (stating that a motion for judgment on the pleadings may only be brought "[a]fter the pleadings are closed"); *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002) (explaining that the pleadings are closed when a defendant files an answer to a complaint). So since there does not appear to be a vehicle available to Avens to address issues of the agreement's validity, relevance, and effect at this point, the district court should deny her request to do so. *See Cozzarelli* v. *Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (holding that the lower court did not abuse its discretion by declining to grant a motion that was never properly made); *Wilder* v. *Wilmington NC Police*, No. 7:09-CV-36-BO, 2024 WL 645321, at *1 (E.D.N.C. Feb. 14, 2024).

The only issue appropriately before the court related to the settlement agreement is whether the document should be publicly available without redactions. Avens's request on this issue is duplicative of the relief ECU Health seeks in its motion to seal that document. So the court denies this portion of Avens's motion.

### B. Potential Ethical Violations by ECU Health's Attorneys

Avens also asks the court to determine whether the correspondence ECU Health's attorneys sent her regarding the settlement agreement violated their ethical obligations. She believes that by threatening her with a lawsuit for violating the settlement agreement and giving her only a brief window to remove it from the docket, they have improperly attempted to intimidate and coerce her and tried to get her to destroy evidence.

The North Carolina Rules of Professional Conduct provide the ethical rules for attorneys who practice in this court. Local Civil Rule 83.1(i). Although Avens did not cite a specific rule that she believes ECU Health's attorneys violated, her objection to counsel's conduct implicates

7

Case 4:24-cv-00051-M-RN    Document 84    Filed 01/09/25    Page 7 of 11

North Carolina Rule of Professional Conduct 4.4. That rule provides that "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." The Rule's commentary explains that "[t]hreats [and] bullying . . . generally serve no substantial purpose other than to embarrass, delay, or burden others and violate this rule." N.C. R. Prof. Conduct 4.4 cmt. 2. So too does "[c]onduct that serves no substantial purpose other than to intimidate, humiliate, or embarrass lawyers, litigants, witnesses, or other persons with whom a lawyer interacts while representing a client also violates this rule." *Id*.

There is no basis for the court to conclude that ECU Health's attorneys violated Rule 4.4. The settlement agreement provided that the "settlement amount" would remain confidential and that the amount "shall not be disclosed by any party or any party's counsel to anyone else except as required by law[.]" Settlement Agreement § 5. It went on to say that the parties agreed that "neither Cynthia Avens . . . or any attorneys will disclose any information whatsoever concerning this settlement amount." *Id.* And the agreement explicitly stated that if a party breached the confidentiality agreement, that party would be responsible for "liquidated damages in the amount of . . . $50,000 . . . to the person, firms and/or entities that are released" in the agreement. *Id.*

By filing an unredacted copy of the settlement agreement on the docket, Avens disclosed the settlement amount contained in it.[2] In response, ECU Health's attorneys notified her that she violated the terms of the settlement agreement and that, as a result, ECU Health was entitled to $50,000 in liquidated damages from her.

---

[2] While ECU Health's filings mention the settlement agreement and mention that Avens received compensation as part of the agreement, those filings do not disclose the settlement amount. Thus, any argument that ECU Health also violated the settlement agreement's terms is unpersuasive.

These statements accurately reflect Avens's actions and the settlement agreement's terms. So there is nothing improper about ECU Health's attorneys' conduct. And while the correspondence from ECU Health's attorneys was pointed, it was not disrespectful. Nothing in the letter rises to the level of intimidation or bullying that could violate Rule 4.4.

Plus, the correspondence from ECU Health's attorneys served a substantial legitimate purpose: protecting their client's rights under the settlement agreement. Avens may believe that she was fraudulently induced to enter into the settlement agreement, but that belief does not give her the unilateral ability to disregard the agreement's terms. Until the parties to the settlement agreement or a court decide that the confidentiality provision is invalid, ECU Health is entitled to rely on that provisions and enforce its rights under the settlement agreement. Its attorneys' efforts to do so did not violate the North Carolina Rules of Professional Conduct.

Avens also takes issue with the brief period—five calendar days that included a weekend—that ECU Health's attorneys gave her to remove the settlement agreement from the docket before taking legal action against her. But it is difficult to understand how this could constitute an ethical violation since ECU Health was under no obligation to give her any time to cure her alleged breach of the confidentiality provision. Instead of giving her an opportunity to remove the document from the docket, it could have sued her for breach of contract as soon as she disclosed the settlement amount. Since ECU Health and its attorneys afforded her an opportunity (albeit a brief one) to cure her breach that she was not entitled to, no ethical violation occurred.

Another issue raised in Avens's motion is that there were no representatives from ECU Health copied on the email communications with her. Avens suggests this "indicat[es] a possible conflict of interest" on the part of ECU Health's attorneys. Avens does not explain why this would

9

create a conflict of interest or why, if it did, she has standing to assert it. The court's independent research has not turned up any reason to believe that an ethical violation occurred.

Finally, Avens alleges that ECU Health's attorneys engaged in unethical conduct because, by asking her to have the settlement agreement stricken from the docket, they were attempting to suppress evidence relevant to the issues before the court. Setting aside the fact that none of the claims and defenses currently part of this case involves the settlement agreement, this argument is unpersuasive. There is nothing improper about ECU Health's attorneys insisting that Avens remove a document from the docket when the filing of an unredacted copy of that document arguably violated its confidentiality provision.

And the confidentiality provision does not prevent Avens from using the settlement agreement as evidence. If she felt the need to place that document before the court, she could have filed a copy with the settlement amount redacted. Or, if she believes the settlement amount to be relevant, sought leave to file an unredacted copy under seal.

In sum, there is no basis to find that ECU Health's attorneys violated the North Carolina Rules of Professional Conduct in their interactions with Avens. This portion of Avens's motion is denied.

### III. Conclusion

For all these reasons, the undersigned recommends that the District Court deny Avens's request to determine the validity, relevance, and effect of the settlement agreement. Her request to determine whether the settlement agreement should remain on the docket in an unredacted form is denied as duplicative of ECU Health's motion to seal. And her request to find that ECU Health's attorneys committed ethical violations is denied.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: January 9, 2025

_____
Robert T. Numbers, II
United States Magistrate Judge