**FILED**

MAR 12 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
_____ DEP CLK



# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

### EASTERN DIVISION

Civil Action Number 4:24-CV-00051-M-RN

| | | |
|---|---|---|
| Cynthia B. Avens | ) | |
| | ) | |
| (Plaintiff) | ) | PLAINTIFF'S REPLY TO |
| | ) | DE 91 & 92 |
| Faris C. Dixon, Jr., District Attorney | ) | |
| Pitt County Memorial Hospital, Inc. | ) | |
| Dr. Karen Kelly, Medical Examiner | ) | |
| John/Jane Doe, John/Jane Doe, John/Jane Doe | ) | |
| (Defendants) | ) | |

## PLAINTIFF'S REPLY TO DE 91 & 92

### INTRODUCTION

Cynthia B. Avens ("Avens"), proceeding pro se, submits this reply to correct the distortions and omissions in the responses of Defendants ECU Health ("ECUH") and Dr. Karen Kelly ("Kelly"). Both parties attempt to obscure the legal and factual deficiencies in the Memorandum & Recommendation ("M&R") while mischaracterizing Avens's objections as insufficient. In doing so, Defendants ignore the fundamental failures of the M&R itself (DE 87).

Defendants now seek to rewrite the record, attempting to shift focus away from the M&R's legal errors by distorting Avens's objections. However, objections are not required to be structured as a point-by-point refutation of the M&R's reasoning. Rather,

they serve to highlight where the M&R misapplied the law, disregarded key allegations, or failed to adhere to the correct legal standard at the motion-to-dismiss stage.

## LEGAL ERRORS

### Applying a Prima Facie Standard Instead of the Pleading-Stage Standard

Among the most significant errors is the misapplication of the proper legal standard at this stage of litigation. Avens's claims have consistently been viewed improperly evaluated under a prima facie standard, rather than applying the correct pleading-stage standard required under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). At the motion-to-dismiss stage, the court is required to accept all well-pleaded allegations as true and determine only whether they state a plausible claim for relief.

Like Judge Numbers in his M&R, the Defendants assert that Avens failed to provide factual evidence, despite the fact that she is not required to prove her claims at this stage. Their arguments attempt to impose a burden of proof that does not yet apply. (DE 91 pp 9-10 & DE 92 pp 3-11).

## I.     ECU HEALTH

### IGNORING KEY ALLEGATIONS THAT ESTABLISH DEFENDANTS' LIABILITY

**Statute of Limitations** – The M&R failed to rule on whether the statute of limitations bars Avens's civil rights claims against ECUH. Avens provided substantial evidence that

ECUH engaged in ongoing illegal conduct, including interference with the medical examiner's office in 2022 and 2023. This allegation is not conclusory and evidence thereof was provided by an employee of the Brody School of Medicine, co-owned by ECUH. Additionally, Avens demonstrated that ECUH obstructed the official GPD-SBI investigation in November 2014, and this critical information was deliberately concealed from her until 2024. Under the discovery rule, this concealment restarts the statute of limitations clock—a factor the M&R entirely failed to address.

Furthermore, ECUH has chosen to pretend this evidence does not exist as they continue to assert Avens's claims fall outside of the statute of limitations.

**State Actor Status of ECUH** – The M&R also failed to address whether ECUH acted under color of state law. Avens applied the Fourth Circuit's analysis in *Philips v. Pitt County Memorial Hospital*, demonstrating that ECUH qualifies as a state actor based on its extensive involvement with the SBI, GPD, the medical examiner's office, and Dr. Karen Kelly. This deep entanglement with state investigative processes satisfies the legal standard for state action, yet the M&R ignored this well-supported argument.

Despite the significance of these issues, Judge Numbers failed to rule on them, and Defendants' counsel has entirely ignored their relevance. This omission is not mere oversight—it is a deliberate evasion of facts that fundamentally undermine Defendants' motion to dismiss.

**ECUH'S DEFENDANTS' MISCHARACTERIZATION OF AVENS'S OBJECTIONS**

ECU Health falsely claims that Avens erroneously argued the M&R failed to address her Section 1983 claims against ECUH. In doing so, ECUH mischaracterizes Avens's statement by stripping it from its full context. Avens explicitly stated:

> "The Court did not address Avens's Section 1983 claims against ECU Health. Avens can only assume this means she has sufficiently met the burden of demonstrating that ECU Health acted as a state actor."

This statement was made directly in response to the Magistrate Judge's own footnote in the M&R (p. 18), which states:

> "ECU Health argues that it cannot be held liable under § 1983 because it is not a state actor. In light of the court's resolution of the merits of Avens's constitutional claims, it need not address that argument. The same goes for ECU Health's statute of limitations argument."

Contrary to ECU Health's assertion, Avens never argued that the court ignored her Section 1983 claim entirely. Rather, she pointed out that the court explicitly declined to rule on two critical threshold questions: (1) Whether ECU Health acted under color of state law (state actor analysis); and (2) Whether Avens's claim was time-barred (statute of limitations).

These unresolved legal issues determine whether a Section 1983 claim can even be dismissed on constitutional grounds. Without deciding these foundational questions, any ruling on the merits of the constitutional violations is inherently incomplete. Thus, ECU Health's claim that Avens "failed to meaningfully object" is patently false. Avens specifically pointed out the court's failure to address these essential legal issues—which

is distinct from failing to object to a ruling. A party cannot be expected to object to a ruling that does not exist.

Furthermore, a Section 1983 claim cannot be properly dismissed without first determining whether the defendant is a state actor. Judge Numbers failed to address this issue. A party cannot be expected to object to a ruling that was never made, and ECU Health's argument to the contrary is both misleading and legally incorrect.

Because the Magistrate Judge failed to resolve the threshold issue of state actor status, ECUH's arguments against Avens's First and Fourteenth Amendment violations under § 1983 are legally baseless. Furthermore, ECUH improperly applies a prima facie standard instead of the required pleading-stage standard, demanding evidentiary proof before discovery has occurred. Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), Avens is only required to allege facts that make her claims plausible—not prove them at this stage.

**AVENS DID ADDRESS THE ELEMENTS OF HER SECTION 1983 CLAIM**

Contrary to Defendants' assertions, Avens did, in fact, address the elements of her Section 1983 claim against ECU Health within the body of her Objection:

**First Amendment Retaliation** – In DE 89, p. 18, Avens discussed ECU Health's role in silencing Dr. Karen Kelly, the medical examiner ("ME"), in addition to ECUH's direct interference with the ME's office. ECU Health issued a directive singling out Avens,

prohibiting staff from communicating with her and redirecting all her inquiries to ECU

Health's risk management team. This directive, explained in Avens's "Amended

Complain" applied only to Avens—not to others seeking ME records or information.

This targeted restriction was retaliatory in nature. Avens had utilized the ME's office to

expose DA Dixon's lie about possessing a report from Dr. Kelly. Because ECU Health

receives federal funding, its retaliatory conduct may also constitute a violation of Title VI

(42 U.S.C. § 2000d).

**Equal Protection Clause & (Class of One)** – In DE 89, p. 26-31, Avens detailed how

ECU Health treated her differently than others similarly situated by blocking her access

to information and interfering with her ability to seek justice. ECUH's conduct departed

from standard practices regarding information-sharing with the public and involvement

in investigative procedures.

If ECUH contends that its actions were part of a standard policy, this raises serious

concerns about systemic constitutional violations. However, if ECUH asserts that its

level of obstruction was unique to Avens, then ECUH has confirmed that it singled out

Avens for different treatment—which directly supports a class-of-one Equal Protection

claim under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

The Defendants' assertion that Avens failed to allege unequal treatment resulting from

purposeful discrimination is incorrect. Purposeful discrimination does not require animus

based on a protected class—it only requires that Avens was treated differently from others for no rational reason. That is precisely what occurred.

## POLICY OR CUSTOM

Magistrate Judge Numbers outlined the various methods by which a plaintiff may establish an official capacity claim under Section 1983 (DE 87, p. 18). However, ECUH misrepresents Avens's argument, falsely asserting that she failed to allege an "official policy or custom" sufficient to state a claim.

Contrary to ECUH's assertion, Monell and subsequent case law establish that official policies can be formulated through various channels, including:

- Affirmative decisions by policymakers (*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)).

- Deliberate indifference to constitutional violations (*City of Canton v. Harris*, 489 U.S. 378 (1989)).

- Entrenched practices with the force of law (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

Avens has demonstrated ECUH's ongoing interference with the investigation into Keisha's death—an entrenched, persistent practice that reflects both affirmative decision-making and deliberate indifference. This directly satisfies the required standard under *Monell*.

**WHERE IS ECUH'S RIGHT TO OBSTRUCT JUSTICE?**

ECUH's reliance on *Smith v. McCarthy* and *Linda R.S. v. Richard D.* is misplaced. These cases establish only that individuals do not have a constitutional right to compel the prosecution of a crime. However, they do not grant private entities like ECUH the authority to interfere with or obstruct an ongoing investigation.

Despite its influence over law enforcement agencies, ECUH is not a law enforcement agency and has no legal right to impede an investigation by state authorities. **Such actions constitute obstruction—not lawful discretion.** The question is not whether Avens had a constitutional right to an investigation, but rather that ECUH unlawfully interfered with one. **That's obstruction, plain and simple.**

**MISAPPLICATION OF SECTION 1981 AND SECTION 1983**

In their Section 1983 argument (DE 92, p. 7), ECUH states: "While Avens now apparently takes issue with the recommendations of her own counsel back in 2016, (Objection pp. 3-4, D.E. 89), she still does not identify any civil claim that ECU Health prevented her from pursuing."

If ECUH intended this argument under Section 1981, their reasoning is fundamentally flawed. Section 1981 pertains to the right to fairly enter, enforce, and benefit from contracts—it has nothing to do with preventing someone from filing a civil claim. By conflating Section 1981 with Section 1983, ECUH misrepresents the legal standard and

argues in bad faith. This mischaracterization distorts the nature of Avens's claims and reflects a deliberate effort to obscure the relevant legal framework.

## ECUH'S MISREPRESENTATION OF SECTION 1981

ECUH repeatedly and selectively references only Avens's Amended Complaint, misrepresenting her discrimination claim. ECUH incorrectly asserts that Avens's claim is based solely on her race as a Black individual and ECUH's status as a predominantly White establishment. However, Avens's claim has never been solely about these factors. It has always centered on ECUH's protection of its White employees, failing to hold them accountable while simultaneously holding Keisha White responsible for her own death and retaliating against Avens for seeking justice. This has been detailed in multiple filings, including Avens's Objection to the Court's M&R (DE 89, pp. 37-38).

Furthermore, Avens has consistently argued that ECU Health interfered with her ability to enter a fair and legal contract by withholding critical information and coercing her into signing a wrongful death settlement in 2016. This interference was explicitly raised during the October 8, 2016, Motions Hearing and further emphasized in her Objection to the M&R. Rather than addressing these facts, ECUH chooses to ignore them, opting instead to mischaracterize the basis of Avens's Section 1981 claims.

## ECUH'S ARGUMENT FOR DISMISSING THE SECTION 1985 CLAIM

ECUH incorrectly asserts that Avens's § 1985 claim fails due to a lack of race-based animus, arguing that her allegations primarily point to ECUH's financial motives rather

than discriminatory intent. However, this argument misinterprets both the statutory scope of § 1985 and the nature of the alleged conspiracy.

**Section 1985(2) Covers Obstruction of Justice, Not Just Racial Animus**

While § 1985(3) requires class-based discriminatory animus, § 1985(2) explicitly prohibits conspiracies aimed at obstructing justice. Courts have held that a valid § 1985(2) claim does not require racial animus when the conspiracy is directed at interfering with judicial proceedings. See *Kush v. Rutledge*, 460 U.S. 719, 726 (1983): "The first clause of § 1985(2) contains no requirement of racial or otherwise class-based, invidiously discriminatory animus."

ECUH's reliance on *United Bhd. of Carpenters, Loc. 610 v. Scott*, 463 U.S. 825 (1983), is misplaced because that case specifically addressed § 1985(3) claims, which require discriminatory intent. In contrast, Avens's claim is based on § 1985(2), which covers conspiracies to obstruct justice regardless of racial motivation.

**The Court Ignored the "Meeting of the Minds" Between State Actors and ECUH**

The Motions Hearing transcript confirms that ECUH, in coordination with GPD, SBI, and the Medical Examiner's Office, actively participated in obstructing the investigation into Keisha White's death. A "meeting of the minds" was established when these entities collaborated to withhold evidence and sabotage the homicide investigation, thereby violating Avens's due process rights, freedom of speech, access to the courts, and equal protection.

This directly satisfies the elements of a § 1985(2) conspiracy to obstruct justice as recognized in *Dennis v. Sparks*, 449 U.S. 24 (1980), where the Supreme Court held that private parties who conspire with state officials to deny a person's legal rights are acting under color of law and can be held liable under civil rights statutes.

**ECUH's Obstruction Was Not a Mere Failure to Act—It Was Active Misconduct**

Avens's claim is not about inaction—it is about ECUH and state actors actively interfering with an ongoing legal process. These affirmative acts go far beyond mere negligence or failure to investigate—they constitute intentional obstruction of justice, directly violating § 1985(2).

ECUH's argument for dismissal of Avens's § 1985 claim is legally flawed. Moreover, the fact that the Magistrate Judge failed to rule on Avens's conspiracy claim suggests a deliberate attempt to favor Defendants by avoiding an analysis that would undermine dismissal.

**ECUH'S MISREPRESENTATION OF AVENS'S TITLE VI CLAIM**

Just as in their other arguments regarding Sections 1981 and 1985, ECUH again minimizes the scope of Avens's racial discrimination claims – acknowledging only that she is Black and ECUH is a predominantly White establishment. Additionally, their repeated assertions that Avens has not shown intentional discrimination ignores established legal precedent that recognizes disparate treatment as evidence of racial discrimination under Title VI:

- *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977) →
  Discrimination claims can be proven through patterns of decision-making that
  reflect racial bias.

- *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) → Discrimination may
  be inferred when a plaintiff is treated differently from similarly situated individuals
  without a legitimate reason.

- *Alexander v. Sandoval*, 532 U.S. 275 (2001) → Title VI prohibits intentional
  discrimination and allows claims based on actions that result in racially
  discriminatory outcomes.

The Court's conclusion—echoed by ECUH—that Avens did not adequately allege racial
discrimination is fundamentally flawed. The record tells a different story.


**ECUH's Statute of Limitations Argument**

ECUH's assertion that all of Avens's claims are time-barred is demonstrably false and a
blatant misrepresentation of the record. The court did not rule on ECUH's statute of
limitations defense. In fact, the Magistrate Judge explicitly declined to address it, as
noted in Footnote 3 of the M&R.


Had the court found ECUH's statute of limitations argument valid, it would have adopted
it. Instead, its omission signals that the argument was either unpersuasive or
unnecessary to the court's reasoning. Now, ECUH is attempting to revive an argument
that the Magistrate Judge deemed unworthy of consideration—an argument that the
court itself declined to rule on.

## II.   DR. KAREN KELLY

**DR. KELLY'S ELEVENTH AMENDMENT IMMUNITY DEFENSE IS IMPROPERLY APPLIED AND MISREPRESENTS HER ROLE**

Dr. Karen Kelly's ("Kelly") assertion of Eleventh Amendment immunity is fundamentally flawed because it is based on the false premise that she is being sued in her capacity as an East Carolina University ("ECU") educator. However, Kelly is not being sued as an educator nor in connection with her role at ECU. Kelly is being sued in her official and personal capacity as a Medical Examiner—an independent entity appointed by the Office of the Chief Medical Examiner (OCME), not ECU. This distinction is critical because it exposes both a misrepresentation in her legal defense and a procedural failure in her claim of state immunity.

The Department of Justice (DOJ) represents state agencies and employees in court proceedings and lawsuits. The Education Section, where Kelly's counsel, Attorney Jeremy Lindsley, works represents the UNC System and its constituent institutions, including East Carolina University ("ECU") and its employees.

The North Carolina Medical Examiner system is governed by N.C. Gen. Stat. § 130A-379 et seq., and Medical Examiners operate under the authority of the North Carolina Department of Health and Human Services (DHHS)—not the university system. This exposes multiple flaws in Kelly's Eleventh Amendment defense:

- If Kelly was acting within her official capacity as a Medical Examiner, then her legal defense should be handled by attorneys that represent DHHS, not the Education Section of the DOJ.

- If Kelly was acting outside the scope of her ME duties—whether in her educational capacity or otherwise—then she is not entitled to Eleventh Amendment immunity at all.

The DOJ cannot argue state immunity for an ECU educator when the actions in question were those of a state-appointed Medical Examiner. This presents a significant procedural defect in Kelly's Eleventh Amendment claim. The DOJ's Education Section does not represent Medical Examiners, yet it is improperly defending Kelly in this case. Eleventh Amendment immunity cannot apply when the legal representation itself is based on a misclassification of Kelly's role.


**Eleventh Amendment Immunity Does Not Extend to Her Individual Capacity**

Dr. Kelly's assertion of Eleventh Amendment immunity is misapplied and fails to address her liability in her individual capacity. The Magistrate Judge's M&R explicitly ruled that Eleventh Amendment immunity applies only to Kelly's official capacity—yet it did not resolve the issue of her individual liability. As the Fourth Circuit has long held, Eleventh Amendment immunity does not protect state officials sued in their personal capacities for constitutional violations. See *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991): "State officials sued in their individual capacities are 'persons' under § 1983 and do not enjoy Eleventh Amendment protection."

Even if sovereign immunity applied to Kelly's official capacity, it would still not shield her from personal liability. Sovereign immunity does not extend to state officials when they are sued for their own unconstitutional conduct in an individual capacity. Kelly cannot expand sovereign immunity beyond its proper scope to escape personal liability for her actions. Her reliance on Eleventh Amendment immunity as a blanket defense is legally improper. The Court did not rule on her individual capacity liability, and she remains subject to § 1983 claims in her personal capacity.

**Sovereign Immunity Requires an Examination of Conduct, Not Just Status**

Assuming, arguendo, that Kelly's counsel can even assert sovereign immunity on her behalf, their argument fails because it focuses solely on her status as a state employee rather than her conduct. Sovereign immunity does not automatically shield a government official simply because of their title. Courts must examine whether the actions at issue were within the scope of the official's lawful authority.

The Magistrate Judge ruled that Eleventh Amendment immunity applies only to Kelly in her official capacity but ignored her individual liability. As *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991), makes clear, state officials sued in their individual capacities are "persons" under § 1983 and do not enjoy Eleventh Amendment protection.

Kelly's assertion of blanket immunity is legally flawed. Neither she nor her counsel has shown that her conduct—specifically, her failure to carry out statutory duties as a

Medical Examiner—was within the lawful scope of her role. Sovereign immunity does not extend to acts taken outside an official's legal authority.

The burden of establishing entitlement to sovereign immunity rests with the defendant—not the Plaintiff or the Court. Courts are not permitted to manufacture a justification that a defendant has failed to provide. See *Meyers v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005): "The burden of establishing Eleventh Amendment immunity lies with the party asserting it." The Court's role is to evaluate whether the defense has met its burden—not to construct a defense that the defendant has failed to assert.

## DR. KELLY'S "UNWILLING SPEAKER" ARGUMENT FAILS

Dr. Kelly's refusal to participate in DA Dixon's investigation, despite being presented with evidence, was not discretionary—it was a violation of her statutory duty under North Carolina law.

North Carolina law mandates medical examiner participation in investigations. Under N.C. Gen. Stat. § 130A-389, the Chief Medical Examiner or a designated competent pathologist **must** perform an autopsy or other investigative study if deemed advisable by the medical examiner or requested by the district attorney or a superior court judge. The statute does not grant medical examiners the discretion to arbitrarily refuse participation.

Additionally, N.C. Gen. Stat. § 130A-383 (Medical Examiner Jurisdiction) and N.C. Gen. Stat. § 130A-385 (Duties of the Medical Examiner Upon Receipt of Notice) require medical examiners to investigate deaths that fall within their jurisdiction, including those involving suspicious, unexpected, or unnatural circumstances.

**Dr. Kelly Was Not an Unwilling Speaker—She Was a State Actor With a Duty to Speak**

Unlike private individuals, who may invoke First Amendment protections against compelled speech, Dr. Kelly was a state-appointed medical examiner with a statutory obligation to engage in investigative processes. She was not exercising personal discretion—**she was bound by law**.

- Her failure to comply with these obligations constitutes a procedural due process violation under the Fourteenth Amendment, as it deprived Avens of access to a proper investigation into her daughter's death.
- Her refusal to provide findings also supports a First Amendment violation, as it effectively suppressed publicly relevant information that Avens had the right to obtain and use in seeking redress.

Dr. Kelly cannot claim discretion where the law mandates her participation in death investigations. The law does not grant her the option to "chill her own speech"—her refusal to act was not protected conduct, but an **abdication of duty** supporting Avens's constitutional claims.

**Why the *Martin* Case Does Not Apply**

The Court and Kelly's counsel misapply *Martin v. EPA*, 271 F. Supp. 2d 38, 48 (D.D.C. 2002), by treating Kelly as if she were a standard government agency withholding discretionary information. Medical examiners are not traditional government offices—they are forensic officials with mandatory statutory duties. Martin applies to discretionary government records—not legal duties imposed on forensic officials like medical examiners.

Dr. Kelly was not withholding general government information—she was refusing to perform a statutory duty under North Carolina law.

- The medical examiner system is not optional—it is a legal requirement under N.C. Gen. Stat. §§ 130A-383, 130A-385, and 130A-389.
- When a medical examiner is given evidence of a suspicious death, they must act.
- The law does not allow medical examiners to refuse an investigation when evidence is presented by law enforcement or the district attorney.

By misapplying *Martin,* the Court and Kelly's counsel incorrectly frame her refusal as discretionary, when in reality, it was a **dereliction of duty**.

**DEFENSE COUNSEL'S ARGUMENTS ARE LEGALLY BASELESS**

In DE 91 p. 7, defense counsel asserts: "Plaintiff also fails to cite any law establishing that a person can chill their own speech through participation in a conspiracy."

This statement is absurd and legally nonsensical. The defendants' misconduct in this case is so outrageous that there is no directly analogous case law—not because the claim is invalid, but because medical examiners do not typically conspire to violate constitutional rights.

Dr. Kelly's actions fall outside the scope of normal conduct. The absence of precedent does not mean the claim is meritless—it underscores how egregious her misconduct was. Courts routinely recognize that novel constitutional violations do not require exact case law matches to be actionable.

Furthermore, defense counsel's argument exposes its own flaw: If Plaintiff must cite case law proving this exact fact pattern, then Defendant must also cite case law permitting a medical examiner to engage in conspiratorial conduct without consequence. They cannot—because no such authority exists. Kelly actively participated in a scheme that suppressed Plaintiff's speech—she cannot now argue that her own participation negates liability. That is not how conspiracies work.

Defense counsel's claim in DE 91 p. 7 that:

> "Plaintiff fails to identify any precedent holding that, as she contends, 'The First Amendment does not shield government officials from accountability when they obstruct mandated processes.'"

is both incorrect and legally irrelevant. No legal doctrine permits government officials to escape liability for constitutional violations simply because the misconduct is uncommon.

**KELLY'S RELIANCE ON THE MAGISTRATE JUDGE'S RECOMMENDATION TO DISMISS AVENS'S EQUAL PROTECTION CLAIM IS LEGALLY UNSOUND**

The Magistrate Judge's reasoning—parroted by Kelly and ECUH—that Avens has failed to provide "concrete factual allegations" at the pleading stage is indefensible. Would a court require a victim of police brutality to prove how the officer treated other suspects before being allowed to proceed? No. The law does not require a victim to have inside knowledge of an officer's prior cases before alleging unconstitutional treatment.

Yet, Defendants demand that Avens provide this level of proof—before discovery—while they refuse to defend their own actions at all. This is the core of their strategy:

- Make Avens prove every single word.
- Block discovery then demand "concrete factual evidence."
- Hide behind blanket immunity claims without ever justifying them.
- Rely on the Court to protect them rather than meeting their own burden.

**And it's working—because this Court is allowing it.**

The court's silence on the DOJ's improper representation of Dr. Kelly adds to this pattern of selective enforcement. The Court has completely ignored the fact that the DOJ's Education Section is inappropriately representing Dr. Kelly. Why has the Court not addressed this blatant misrepresentation when the public record reveals the Education Section beneath Lindsley's name?

The way this case has been handled is not how the law works. A motion to dismiss is not a trial—it is meant to test whether a claim is legally viable. The burden is not on the Plaintiff to prove her entire case before discovery, yet this Court continues to apply that impossible standard to Avens while letting Defendants off the hook.

If Kelly wants to rely on immunity, she must prove she is entitled to it. If Kelly wants to argue that she treated all cases equally, she must present that evidence. If Kelly wants to claim her conduct was lawful, she must defend it. Until then, her arguments hold no weight, and neither should the Magistrate's flawed recommendation.

**The Magistrate and Defendants Misapply Due Process Law**

The Magistrate's conclusion and Defendants' arguments fundamentally misinterpret due process protections under the Fourteenth Amendment. Procedural due process protects against state-backed deception and obstruction.

- Avens has clearly alleged that state actors—including Dr. Kelly—intentionally obstructed investigative processes that were required under North Carolina law.
- This deprivation of procedural safeguards directly impacted Plaintiff's ability to obtain justice.
- Courts have long recognized that due process protects individuals from state-imposed barriers that obstruct legal recourse.

Deception and obstruction by state actors violate due process when they prevent a party from seeking meaningful redress.

Denial of access to the courts is a well-established due process violation. The right to access the courts is not "vague," as Defendants suggest—it is constitutionally protected. The Supreme Court has explicitly recognized that state officials cannot take actions that deprive individuals of their ability to seek legal remedies. *Christopher v. Harbury*, 536 U.S. 403 (2002), confirms that state interference with the ability to seek redress is a cognizable constitutional claim. Avens's right to access the courts was obstructed by Dr. Kelly's failure to fulfill her statutory duties and by the Defendants' collective efforts to conceal critical evidence.

## DR. KELLY'S DISAPPEARANCE FROM THE EAST CAROLINA UNIVERSITY ("ECU") FACULTY AND THEIR BRODY SCHOOL OF MEDICINE ("BSOM")

Dr. Kelly's conduct was not only improper—it was so egregious that ECU and BSOM have actively erased her from their institution. This is not speculation. It is fact.

- Her faculty profile is gone.
- Her name no longer appears among pathology faculty.
- She is not listed as an emeritus professor despite her tenure.
- Her medical examiner appointment has vanished without explanation.
- Her medical examiner profile page returns a 404 Error. Even the original BSOM landing page no longer exists.

This level of erasure does not happen when someone leaves on good terms. If she had retired honorably, her profile would still exist, and she would likely be listed as emeritus. Instead, ECU and BSOM have scrubbed her from their records like she never existed.

The reason is clear: her conduct is indefensible. If she had done nothing wrong, ECU and BSOM would have no reason to distance themselves. But they know what she did. They know she ignored statutory obligations, failed to act as an independent medical examiner, and allowed ECUH to dictate her decisions—actions that undermine the credibility of forensic medicine itself. This proves that ECU and BSOM recognize what this Court refuses to admit: Kelly's conduct was not grounded in any approved law or policy.

### III.  ECUH'S AND KELLY'S ARGUMENTS FAIL UNDER THE WEIGHT OF THEIR OWN POLICY

**BSOM Policy Confirms Plaintiff's Right to an Investigation and Autopsy Report**
ECUH became part owner of the BSOM when they integrated with ECU in January 2022. Once the integration was completed, BSOM policies were accepted practices of both entities. This is crucial because both Defendants have repeatedly argued that Avens had no right to an investigation or autopsy report. This argument is directly contradicted by the publicly stated policy of the Brody School of Medicine (BSOM).

BSOM's policy is explicitly stated below the question, "Does the family get the autopsy results?" Their answer to this question is as follows: "You may request the results and **they will be sent by mail within two months. If you need further explanation you may contact our office or schedule a consultation**. To check on the status of your

report you may call our office at 252-744-4655 or by fax at 252-744-3650."

(*Source: https://ecuphysicians.ecu.edu/pathology/autopsy/faq/*)

This policy directly undermines the defense's argument that Plaintiff had no right to an investigation or access to a report. It also confirms the customary and expected process that families are to be provided investigative reports **upon request**, and any further questions are to be **directed to the pathology office**—not to the hospital's Risk Management Department – as Avens was redirected to.

Dr. Kelly's failure to investigate or issue a report, as well as her office redirecting Plaintiff to ECU Health's Risk Management, represents a clear deviation from BSOM's own policies and procedures. This deviation further supports Plaintiff's allegations that Kelly acted outside her statutory and professional duties, nullifying any claim of sovereign immunity.

Additionally, the refusal to complete an investigation or provide a report denied Plaintiff her due process rights and equal protection under the law, as families similarly situated—whose loved ones died under circumstances requiring an investigation— receive investigations and reports consistent with the policy.

Furthermore, this policy directly undermines ECUH's arguments against Avens's First and Fourteenth Amendment claims. Despite Avens submitting substantial concrete factual evidence, the Magistrate Judge, Kelly, and ECUH have continued to argue that

her claims lack "concrete factual allegations." Yet this policy itself constitutes exactly that: indisputable, concrete factual evidence that contradicts their position and supports Plaintiff's claims.

## IV.  STATE-CREATED DANGER AND ONGOING HARM FURTHER JUSTIFY DENIAL OF DISMISSAL

The Court cannot dismiss this case while ongoing cyber intrusions, unauthorized access attempts, and suspicious activity continue to escalate against Avens. This is not a case of past harm alone—Avens remains a target of continued and deliberate actions that compromise her safety, privacy, and ability to seek justice. The State-Created Danger doctrine applies where the state's actions or inactions place an individual at increased risk of harm. The new evidence provided underscores that Avens is not only still at risk—but actively being harmed in real time. This is a fact that the Court must consider.

### 1. Cyber Intrusions and Unsolicited Contact

Since Avens's initial filing, new events have further demonstrated the persistent and targeted nature of the attacks against her:

- **Eight unauthorized accounts** were created on Plaintiff's website between February 3 and February 15, 2025. These accounts were not created through public means but through a non-public login page, which is typically only known to website administrators using the WordPress platform or individuals who have specifically

researched how to locate and access hidden login links. This method is not common knowledge to the general public.

- A **failed login attempt** on February 16, 2025, occurred after Plaintiff had begun implementing heightened security measures, indicating that unauthorized parties were actively attempting to regain access. Avens received notification of this event after she drafted her notice to the Court, DE 90.

- Avens's **Twitter (X) account was breached** on March 1, 2025, further demonstrating that multiple online platforms are being targeted.

- Avens received an **unsolicited email from ECUH** on March 3, 2025, despite not being a patient of theirs and never having been on their mailing list. To Avens's knowledge, the only individuals at ECUH who have her email address are members of their Legal Department and Risk Management. Given the risks associated with unsolicited emails—including spyware, malware, and unauthorized data tracking—the timing of this direct contact raises serious concerns.[1] This unsolicited contact potentially resets the statute of limitations clock—**again**.

**2. Suspicious Pattern and ECUH's Potential Role**

While Plaintiff does not presently have definitive proof that ECUH is behind these intrusions, certain facts warrant closer scrutiny:

- The known dates of the unauthorized accounts created on Avens's website (*Fight Until You Win* at fightuntilyouwin.com) were February 3, 4, 8, 9, 10, 14, and 15, 2025. The failed login attempt occurred on the 16th. The timing of the unauthorized accounts indicates a 3 days on – 3 days off pattern with the

---

[1] Plaintiff will present evidence of these cyber intrusions during discovery.

majority occurring between 7pm and 7am. Such timing mirrors a structured work schedule, potentially a rotation for 12-shift workers.

- ECUH does have personnel who work 12-hour shifts.
- ECUH openly touts a state-of-the-art IT department, meaning they have both the infrastructure and expertise necessary to conduct or facilitate cyber intrusions.

### 3. How This Supports the State-Created Danger Argument

These ongoing intrusions establish that Plaintiff is actively being harmed—not merely suffering from past injustices. The Court must consider the following:

- These breaches are not random cyberattacks but are targeted efforts to compromise Plaintiff's security and ability to advocate for herself.
- State-created danger does not require a prior physical injury; it applies when the government or its agents create or worsen the risk of harm to an individual. The ongoing intrusions, unauthorized access, and ECUH's unexplained direct contact during litigation all point to continued retaliation and obstruction.

### 4. The Court Cannot Ignore the Pattern of Conduct

Defendants have continuously attempted to argue that Plaintiff's claims are speculative or unsupported by evidence. However, the documented cyber intrusions, unauthorized access attempts, and improper direct contact provide tangible proof Avens remains under threat. The Court has an obligation to consider the totality of harm and danger Avens faces rather than dismiss this case under the pretense that past injustices are no longer relevant. The Court should recognize that Avens's state-created danger claim is not theoretical—it is unfolding in real time.

**CONCLUSION**

For all the reasons set forth, Plaintiff respectfully requests that the Court reject the

Magistrate Judge's Memorandum and Recommendation and deny Defendants' motions

to dismiss.


Respectfully submitted,

March 11, 2025

/s/ Cynthia B. Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
Pro Se Litigant


CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2025, the Plaintiff's Reply to DE 91 & 92 was shipped

by UPS to the U.S. District Court in Raleigh, NC. Signature Required.

Tracking # 1Z9H79KT4231438058. Upon docketing, the CM/ECF system will send

electronic notification of such filing to the defendants' counsel.


Respectfully submitted March 11, 2025.

/s/ Cynthia B. Avens
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ccarreiro@ncdoj.gov
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
State Bar No. 45356
*Counsel for DA Dixon*

Jeremy D. Lindsley
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.gov
Tel: 919-716-6920
Fax: 919-716-6764
NC State Bar No. 26235
*Counsel for Dr. Karen Kelly*

Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
*Counsel for Defendant Pitt County Memorial Hospital, Inc.*

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
*Counsel for Defendant Pitt County Memorial Hospital, Inc.*

Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
North Carolina Department of Justice
Telephone: (919) 716-6800
Facsimile: (919) 716-6755
Email: eobrien@ncdoj.gov
*Attorney for Defendant Dixon*