# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION
## Civil Action Number 4:24-CV-00051-M-RN



| | |
|---|---|
| Cynthia B. Avens | ) |
| | ) PLAINTIFF'S MOTION FOR |
| (Plaintiff) | ) SANCTIONS FOR SPOLIATION |
| | ) OF EVIDENCE |
| Faris C. Dixon, Jr., District Attorney | ) |
| Pitt County Memorial Hospital, Inc. | ) |
| Dr. Karen Kelly, Medical Examiner | ) |
| John/Jane Doe, John/Jane Doe, John/Jane Doe | ) |
| (Defendants) | ) |

# PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

## I. INTRODUCTION

Plaintiff, Cynthia B. Avens ("Plaintiff" or "Avens"), proceeding pro se, moves this Court pursuant to Federal Rule of Civil Procedure 37(e) for sanctions against Defendant ECU Health (Pitt County Memorial Hospital, Inc.) ("ECUH" or "Defendant"), Dr. Karen Kelly ("Kelly"), and counsel Daniel McClurg, Terrence McKelvey, and Jeremy Lindsley (all five named, collectively, "The Defendants") for spoliation of electronically stored information that should have been preserved during litigation.

The spoliated evidence is a publicly available policy describing how members of the public can obtain autopsy or death-investigation reports, formerly accessible at https://ecuphysicians.ecu.edu/pathology/autopsy/faq/. Plaintiff cited and quoted this policy in

her Objection to the Magistrate Judge's Memorandum and Recommendation (DE 95, pp. 23–24). After that filing, the URL was permanently redirected to a general ECUH information page that does not contain the cited policy, removing evidence that contradicted The Defendants' arguments and supported Plaintiff's claims.

## II. NATURE OF MOTION

This motion seeks sanctions under FRCP 37(e) for The Defendants' failure to preserve critical ESI after their duty to preserve arose.

The evidence at issue:

- Appeared at the specific URL above (ecuphysicians.ecu.edu);
- Was quoted in Plaintiff's filings; and
- Was directly relevant to disputed issues in this case.

The Defendants had actual notice of the litigation and of the policy's relevance once Plaintiff cited it, yet no steps were taken to preserve the content or to notify Plaintiff and the Court of its removal.

## III. STATEMENT OF FACTS

### A. Background of Underlying Litigation

Plaintiff filed this civil rights action against Defendants on March 22, 2024. Central to Plaintiff's claims are allegations that Defendants violated their own policies regarding how members of the public can receive autopsy or death investigation reports, constituting deprivations of Plaintiff's constitutional rights under the First and Fourteenth Amendments.

Plaintiff alleges that Defendants' actions denied her due process rights and equal protection under the law, as families similarly situated—whose loved ones died under circumstances requiring investigation—receive investigations and reports consistent with the policy. The policy instructed the public to contact the medical examiner's office, located at the Brody School of Medicine ("BSOM"), with questions or concerns regarding death investigations.

However, in September and October 2022, Avens was blocked from receiving information from that office after their office manager confirmed DA Faris Dixon lied about having a report from ME Dr. Karen Kelly. Instead, office workers asserted they were instructed to refer Avens to ECUH's risk manager—against their own policy.

**B. Timeline of Evidence Citation and Destruction**

In Plaintiff's Objection to the Magistrate's Memorandum and Recommendation (DE 95, pp. 23-24), Plaintiff specifically cited and quoted the East Carolina University ("ECU") and ECUH jointly owned Brody School of Medicine's publicly available policy regarding autopsy reports.

Throughout this litigation, The Defendants have repeatedly argued that Plaintiff had no right to an investigation or report. In direct contradiction to this argument, ECU and/or ECUH maintained a publicly accessible policy pertaining to BSOM's ME office, explicitly stating that family members could request and receive autopsy results. The policy became ECUH's once they integrated with ECU at the BSOM juncture in 2022.

Plaintiff's filing specifically quoted the following policy language: "You may request the results and they will be sent by mail within two months. If you need further explanation you may contact our office or schedule a consultation. To check on the status of your report you may call our office at 252-744-4655 or by fax at 252-744-3650."

The policy further confirmed that families are to be provided investigative reports upon request, and any further questions are to be directed to the pathology office—not to the hospital's Risk Management Department, as Plaintiff was redirected to.

### C. Discovery of Spoliation

On or about July 17, 2025, Plaintiff discovered that the URL containing the policy evidence had been permanently redirected from its original source (***https://ecuphysicians.ecu.edu/pathology/autopsy/faq/***) to a general information page (***https://www.ecuhealth.org/about-us/ecu-health-physicians/***).[1]

The redirect does not contain the specific policy information previously available and cited by Plaintiff. While ECU still owns the "*ecu.edu*" domain, the subdomain "*ecuphysicians.ecu.edu*" containing the evidence has been effectively and permanently removed through redirection to an ECUH-owned web domain. This redirection occurred after Plaintiff cited the evidence in court filings and while litigation was ongoing.

## IV. LEGAL STANDARD FOR SPOLIATION SANCTIONS

### A. Federal Rule of Civil Procedure 37(e) Framework

Federal Rule of Civil Procedure 37(e) governs sanctions for failure to preserve electronically stored information ("ESI") and provides:

---

[1] Evidence of the URL redirection described in this motion includes screenshots from third-party platforms confirming the redirect and screen recordings showing the redirect occurring in real-time when the original URL is entered. These materials can be provided should discovery be permitted. Additionally, the Court and Defendants can independently verify these claims by attempting to access the original URL (https://ecuphysicians.ecu.edu/pathology/autopsy/faq/), which will demonstrate the redirection to the general information page that lacks the cited policy information.

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment."

The Fourth Circuit has established that spoliation of evidence is the "destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).

**B. Fourth Circuit Standards**

In the Fourth Circuit, courts consider the following factors when determining whether sanctions for spoliation are appropriate: (1) whether the party had a duty to preserve the evidence; (2) whether the party breached that duty by failing to take reasonable steps to preserve the evidence; (3) whether the evidence cannot be restored or replaced through additional discovery; and (4) whether the other party is prejudiced by the loss of the evidence. See *Silvestri*, 271 F.3d at 590-91.

For the most severe sanctions under Rule 37(e)(2), the court must find that the spoliating party acted with the intent to deprive another party of the information's use in litigation.

### C. Requirements for Sanctions

The party seeking spoliation sanctions must establish that:

a. The evidence existed;

b. The spoliating party had a duty to preserve the evidence;

c. The evidence was destroyed or altered;

d. The destruction occurred after the duty to preserve arose;

e. The destroyed evidence was relevant to the claims or defenses; and

f. The moving party has suffered prejudice as a result.

The level of sanctions imposed depends on the culpability of the spoliating party and the degree of prejudice suffered by the moving party.

## V. ANALYSIS OF SPOLIATION ELEMENTS

### A. Duty to Preserve Evidence

A party has a duty to preserve evidence when litigation is pending or reasonably foreseeable. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Defendants and their counsel have had actual knowledge of this litigation since its inception. The specific evidence at issue was directly relevant to the claims and defenses. That duty to preserve was heightened when Plaintiff cited and quoted the policy in DE 95, explicitly placing Defendants on notice of its relevance. This duty extended to electronically stored information, including the policy content hosted on ECU's website.

## B. Failure to Take Reasonable Steps

Despite knowing the policy's direct relevance, Defendants failed to take reasonable steps to preserve it. Instead, ECUH and/or ECU redirected the URL to a general page that does not contain the cited language. Responsibility cannot be shifted to ECU alone because:

    a. ECUH and ECU jointly own and operate the Brody School of Medicine, where the Medical Examiner's Office is located and the policy applied;

    b. Defendants had actual knowledge of the litigation and the page's relevance;

    c. They failed to notify Plaintiff or the Court of its removal;

    d. They failed to preserve, archive, or provide an alternative source for the policy; and

    e. ECUH maintains Google AdSense analytics, which would have shown referral traffic from the court-cited URL to the redirect, indicating awareness of the change.

## C. Evidence Cannot Be Restored or Replaced

The specific URL and webpage Plaintiff cited in court filings has been permanently redirected and is no longer accessible in its original form.

While the Defendants could easily restore the page, or at least duplicate the policy on ECUH's landing page, they have not done so. Meanwhile, there is no lawful mechanism for Plaintiff to compel its restoration or duplication because discovery in this case has been blocked since August 19, 2024 – one week short of a full year. Rule 37(e)'s "restore or replace" requirement is therefore satisfied: the evidence is functionally irreplaceable unless this Court orders its restoration or replacement. Without such intervention, the loss is permanent, and the prejudice remains.

### D. Prejudice to Moving Party

The destroyed evidence directly contradicted Defendants' argument that Plaintiff had no right to an investigation or report. It also supported Plaintiff's constitutional claims, as noted in DE 95:

> "This policy directly undermines ECUH's arguments against Avens's First and Fourteenth Amendment claims... it constitutes indisputable, concrete factual evidence that contradicts their position and supports Plaintiff's claims."

Loss of this evidence impairs Plaintiff's ability to prove her claims and respond to Defendants' arguments. The Court can no longer independently verify the content from its original source, undermining the integrity of the proceedings and depriving the public of the ability to corroborate the record..

### E. Intent to Deprive

Plaintiff cited the evidence in her March 2025 filing and discovered the redirect approximately 3–4 weeks ago in July 2025. This means ECUH—or any combination of The Defendants—had the entire period from the redirection through the date of this filing to either restore the evidence or notify Avens and the Court of any changes to the cited policy and URL, and where the information could be found if the redirect was inadvertent. They have done neither.

On March 3, 2025, for example, ECUH sent Plaintiff an unsolicited email containing a tracking pixel that may have been used to impersonate her digital identity during the period her blog was infiltrated. Whether or not that was the case is irrelevant to this Motion. Plaintiff later discovered another unsolicited email from ECUH, dated December 2, 2024. These examples

show that ECUH will communicate with Plaintiff when it suits them, yet they failed to notify her of the removal of evidence used against them.

Therefore, the fact that neither of The Defendants contacted Avens or the Court, or restored availability of the cited link and policy, constitutes intent to deprive.

## VI. POTENTIAL ARGUMENTS FROM THE DEFENDANTS

### A. "Plaintiff Cannot Prove the Removed Content Ever Existed"

First, Plaintiff's argument in DE 95 was well-pled. She provided direct quotes, identified where on the page the policy appeared, and supplied the source URL. At the Rule 12(b)(6) stage, well-pleaded factual allegations are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Second, neither The Defendants nor the Court can demonstrate that the policy was absent from the webpage cited by Plaintiff; the record contains no counter-proof or evidentiary submission showing otherwise.

Third, after Avens filed her reply to the motions to dismiss, ECUH filed a sur-reply (DE 60) challenging her response. If Avens had fabricated ECUH's policy regarding how the public can obtain information from the ME's office, it is reasonable to expect they would have said so then, moved under FRCP 11, or filed a paper to correct the record. They did not—nor did Kelly. The failure to invoke FRCP 11 or otherwise correct the record is strong circumstantial evidence that the cited policy existed as described when Avens filed DE 95.

### B. "The Web Page Was Owned and Controlled By East Carolina University"

Once Plaintiff used the policy as evidence, it became the responsibility of The Defendants to inform ECU that the policy was being used as evidence. Counsel bore the responsibility of ensuring their respective clients understood the rules and requirements for preserving evidence and of taking other steps within reason and within their control to preserve the content. Their collective failure to take such steps—such as notifying ECU's legal department—constitutes a breach of their preservation duties and supports an inference of intentional spoliation.

Courts have held that parties with the "practical ability" to preserve evidence are responsible for doing so, even without direct ownership. See, e.g., *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (duty to preserve extends to evidence not in party's physical possession if within its control). Rule 37(e) applies regardless of formal ownership.

Therefore, whether by omission or commission, The Defendants allowed key evidence to disappear without any preservation attempt or notice to the Court or Plaintiff.

### C. "Plaintiff Should Have Preserved Her Own Copy of the Policy"

ECUH/ECU controlled the original ECU webpage, the policy content, and the new landing page on ECUH's website. Once litigation is pending—and especially once evidence is cited in a court filing—the party who controls the information, or has the ability to cause it to be preserved or reproduced in substantive form, has the legal obligation to do so. That obligation exists regardless of whether the party claims it did not own the platform where the content was hosted.

Rule 37(e) exists precisely to prevent a party from avoiding accountability by destroying, altering, or allowing the loss of evidence that is unfavorable to them while claiming lack of control. The preservation rule ensures a party cannot benefit from the disappearance of evidence harmful to its position.

Even if Avens had saved a screenshot or PDF of the policy, its authenticity could still be challenged unless it came from The Defendants' own preserved records. In short, Avens could have kept a copy for her own reference, but that does not substitute for The Defendants' legal duty to preserve. The failure to fulfill that duty is precisely the breach alleged in this spoliation motion.

### D. "Plaintiff Has Not Adequately Proven Her Claim"

Avens has proven her claim even with the limited evidence currently available to her. If The Defendants or the Court contend that more proof is required, then discovery must be granted. It is improper to block discovery while simultaneously asserting that Plaintiff has not provided adequate evidence. The Defendants and the Court cannot have it both ways—restricting Plaintiff's access to relevant evidence while insisting she has not met her burden.

## VIII. REQUEST FOR RELIEF AND SANCTIONS

Plaintiff respectfully requests that this Court:

1. Find that The Defendants spoliated electronic evidence that should have been preserved for this litigation;

2. Find that Plaintiff has been prejudiced by the destruction of this evidence;

3. Find that The Defendants acted with intent to deprive Plaintiff of the evidence's use in litigation;

4. Pursuant to Rule 37(e)(1), order measures necessary to cure the prejudice, including but not limited to restoring the policy such that the original *https://ecuphysicians.ecu.edu/pathology/autopsy/faq/* is restored with policy intact **or** ECUH add the full original policy to its landing page, *https://www.ecuhealth.org/about-us/ecu-health-physicians/* provides the same.

5. Pursuant to Rule 37(e)(2), and upon finding intent to deprive, order that:

    - The Court will presume the lost information was unfavorable to Defendant;
    - Adverse inferences be drawn against Defendant regarding the content and implications of the destroyed evidence;
    - Appropriate case-dispositive sanctions be imposed if the Court deems them warranted;

6. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted August 8, 2025

*(signature)*

Cynthia B. Avens, Pro Se Plaintiff
303 Riverside Trl.
Roanoke Rapids, NC 27870
avens1@charter.net
252-203-7107

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2025, the Plaintiff's MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE was delivered to the nearest UPS drop-off point for delivery to the U.S. District Court in Greenville, NC. Signature Required. Tracking # 1Z9H79KT4204572874. Upon docketing, the CM/ECF system will send electronic notification of such filing to the defendants' counsel.

Respectfully submitted August 8, 2025.

_____
Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
Pro Se Litigant

Jeremy D. Lindsley
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.gov
Tel: 919-716-6920
Fax: 919-716-6764
NC State Bar No. 26235
Counsel for Dr. Karen Kelly

Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
Counsel for Defendant PCMH, Inc.

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
Counsel for Defendant PCMH, Inc.

Kristin J. Uicker
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Phone: (919) 716-6500
Fax: (919) 716-0001
kuicker@ncdoj.gov
State Bar No. 41872
Attorney for Defendant Faris C. Dixon, Jr.