IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EASTERN DIVISION

Civil Action Number 4:24-CV-00051-M-RN

| | |
|---|---|
| Cynthia B. Avens ) | |
| ) | |
| (Plaintiff) ) | MEMORANDUM IN SUPPORT OF |
| ) | MOTION FOR SANCTIONS FOR |
| Faris C. Dixon, Jr., District Attorney ) | SPOLIATION OF ESI |
| Pitt County Memorial Hospital, Inc. ) | |
| Dr. Karen Kelly, Medical Examiner ) | |
| John/Jane Doe, John/Jane Doe, John/Jane Doe ) | |
| (Defendants) ) | |

# MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS FOR SPOLIATION OF ESI

## INTRODUCTION

Plaintiff Cynthia B. Avens ("Plaintiff" or "Avens"), pro se, respectfully submits this memorandum in support of her Motion for Sanctions for Spoliation of Electronically Stored Information ("ESI") against defendants, ECU Health ("Defendant"), Dr. Karen Kelly, Attorney Daniel McClurg, Attorney Terrence McKelvey, and Attorney Jeremy Lindsley. The motion is predicated on Defendants' and Counsels' failure to preserve a publicly-available autopsy-policy webpage that Plaintiff cited and relied upon in her objections to the Magistrate Judge's Recommendation (DE 95). Defendants' and Counsels' conduct satisfies all of the predicate elements of Rule 37(e) and, under controlling Fourth Circuit authority,

warrants the imposition of sanctions, including but not limited to, an adverse-inference instruction, monetary sanctions, and an order directing Defendant to restore the policy on a publicly accessible site.

## I. PROCEDURAL BACKGROUND

1. Plaintiff filed this civil rights action on March 22, 2024, alleging defendants in this case violated her First- and Fourteenth-Amendment rights in their handling of Keisha White's, Plaintiff's daughter, death investigation.

2. Discovery in this case has been stayed since August 19, 2024 (DE 59).

3. The Magistrate Judge issued a Memorandum and Recommendation ("M&R"), DE 87, on January 30, 2025, recommending dismissal of all claims.

4. Plaintiff filed an Objection to the M&R on February 13, 2025 (DE 89).

5. Defendants, Dr. Karen Kelly and ECU Health replied to Avens's objection on February 26, 2025 (DE 91 & 92 respectfully).

6. Avens motioned for leave to submit a response (DE 95) which was docketed on March 12, 2025. It was in this response Avens quoted and sourced an autopsy policy then located on an East Carolina University ("ECU") website.

7. On approximately July 17, 2025, Plaintiff discovered that the URL she had cited—**https://ecuphysicians.ecu.edu/pathology/autopsy/faq/**—had been permanently redirected to a generic ECU Health landing page, eliminating the autopsy policy from public view.

8. Plaintiff filed a Notice to the Court Regarding Spoliation of Evidence by Defendant ECU Health (DE 110) on August 8, 2025.
9. Plaintiff filed a Motion for Sanctions for Spoliation of Evidence on August 12, 2025 (DE 111).
10. Defendant, ECU Health, filed their response (DE 112) on August 26, 2025.
11. Plaintiff now files this reply brief.

## II. STATEMENT OF FACTS

**Existence of the Policy.** The webpage at the cited URL displayed a clear, publicly-available policy:

"You may request the results and they will be sent by mail within two months. If you need further explanation you may contact our office or schedule a consultation. To check on the status of your report you may call our office at 252-744-4655 or by fax at 252-744-3650."

Plaintiff quoted this language verbatim in DE 95 (pp. 23-24).

**Actual Notice.** By citing the policy, Plaintiff gave Defendant constructive notice that the content was material to the litigation. The citation occurs in the official court record, satisfying the "knowledge" requirement for spoliation.

**Redirection and Loss.** On or about July 17, 2025, Avens noticed the URL was permanently redirected to *https://www.ecuhealth.org/about-us/ecu-health-physicians/*, a page that does not contain the policy. The original content is no longer publicly accessible via the cited link or its current landing page.

**Defendant's Control.** Although the sub-domain (*ecuphysicians.ecu.edu*) is owned by East Carolina University ("ECU"), the website integration that resulted in the URL sunset was a joint decision involving ECU Health, giving Defendant actual control over the removal.

**Failure to Preserve.** Defendant did **not** archive the original page, nor did it preserve a copy for litigation purposes; the only "preserved" version is a private copy (Exhibit A) that is not publicly accessible and is not admissible as the original public policy statement.

**Failure to Notify.** Defendant did not file a notice of change with the Court, nor did they notify Avens of any changes to the policy's location despite them having contacted her in the past when it suited them.

**Irreplaceability.** Because the original URL has been permanently redirected, the policy cannot be retrieved through ordinary discovery. Additionally, because ECU Health has blatantly refused to replace the policy on its own ECU Health-controlled landing page, restoration requires a court order.

## III. LEGAL STANDARD

### A. Rule 37(e)

Rule 37(e) permits sanctions when (1) ESI that should have been preserved is lost because a party failed to take reasonable steps to preserve it **and** the loss cannot be remedied through additional discovery; or (2) a party acted **with intent to deprive** the opposing party of the evidence's use, allowing the court to "presume that the lost information was unfavorable" and impose case-dispositive sanctions. Fed. R. Civ. P. 37(e)(1)-(2) (2024).

## B. Duty to Preserve

A duty to preserve arises when litigation is pending or reasonably foreseeable and the evidence is within a party's possession, custody, or control. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Zubulake IV*, 220 F.R.D. 212, 225 (S.D.N.Y. 2003). The duty extends to information a party **knows or should know** is relevant.

## C. Reasonable Steps

In *Eshelman v. Puma Biotechnology, Inc.*, a private copy of a publicly available document did not satisfy the "reasonable-steps" requirement for protecting a trade secret. The court's reasoning establishes that when information is already required to be publicly accessible, keeping a private copy of that same information does not constitute a good-faith effort to protect it as confidential. *Eshelman v. Puma Biotechnology, Inc.*, No. 5:16-CV-1045, 2017 WL 2483800, at 4 (E.D.N.C. June 7 2017).

## D. Irreplaceability

Sanctions are unavailable if the lost evidence can be restored or replaced through additional discovery. *Silvestri*, 271 F.3d at 590.

## E. Intent to Deprive

Intent is established when a party knows the evidence is relevant and **deliberately** destroys, alters, or fails to preserve it to impede the opponent. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 152 (4th Cir. 1995).

## F. Scheduled Deletion

Once a duty to preserve attaches, a party **must** suspend any routine email-deletion or data-purging policy and implement a litigation hold; failure to do so is spoliation under Rule 37(e). *Valmarc Corporation v. Nike, Inc.*, 2024 WL 6983618 (E.D. Ore. Dec. 13 2024).

## G. Relevant Fourth Circuit Authority

- *Powell v. Town of Sharpsburg,* 591 F. Supp. 2d 814, 818 (E.D.N.C. 2008) (adverse-inference sanction for spoliated work orders).
- *Silvestri* (duty to preserve, sanctions up to dismissal).
- *Zubulake* (duty extends to counsel; sanction options).
- *Vodusek* (intent to deprive suffices for adverse inference).

# IV. ANALYSIS

## A. Duty to Preserve the Autopsy-Policy Webpage

**Conduct of Litigation.** Plaintiff's citation of the policy in DE 95 placed the defendants and their counsel on notice of its relevance on March 12, 2025. At this point, if not before, they all, including ECU Health, had a duty to place a litigation hold on the web page.

While Dr. Kelly and Attorney Lindsley did not respond to the sanctions motion, ECU Health and their counsel cannot now question legitimacy using the word "purportedly" to describe Avens's use of the policy in her DE 95 reply. They have had time and opportunity to correct the record if they believed Avens erred in any way. They did not. Therefore, in response to ECU Health's disagreement that the referenced webpage is even relevant to Avens' claims, their failure to correct before does not amount to a relevancy dispute now.

**Control over the Evidence.** Although the sub-domain belonged to ECU, ECU Health admitted in their reply that the decision to sunset the domain was a joint decision with ECU. Courts recognize a preservation duty for evidence **within a party's control**, even if the party is not the formal owner. *Silvestri*, 271 F.3d at 590; *Eshelman*, 2017 WL 2483800 at 4. Furthermore, not only did ECU Health have control during the sunset's decision-making process, their argument, aimed to shift blame to ECU as they attempt to escape sanctions. They cannot deny being part of the problem while being part of the problem.

### B. Failure to Take Reasonable steps

ECU Health's planned "sunset" migration **did not** constitute a reasonable preservation measure. The party **failed** to issue a litigation hold, to suspend the scheduled deletion, or to archive the page in a manner consistent with Rule 37(e). Worse, they failed to try. Their response to the motion does not detail a single step that they have taken initiate a litigation hold or even to alter the sunset agreement. Neither does it mention steps taken to properly archive the webpage, which is even worse due to the fact that ECU Health has a state-of-the-art IT department – a department they highlight on their website.

Proper archiving of the policy is not obtained via a copy/paste of the policy nor through a printout of a saved filed. Those are called copying or saving, neither of which are adequate forms of preservation under Rule 37(e) which require steps such as:

- Issuing a written legal hold notice
- Ensuring the ESI (in this case, the policy and link) cannot be altered or deleted
- Preserving the ESI's metadata such as authors, timestamps, change history, **and URL**

In *Eshelman* v. Puma Biotechnology, Inc., a private copy of a publicly available document did not satisfy the "reasonable-steps" requirement for protecting a trade secret. The court's reasoning establishes that when information is already required to be publicly accessible, keeping a private copy of that same information does not constitute a good-faith effort to protect it as confidential.

In the case at hand, *Eshelman* reinforces Plaintiff's argument that the autopsy policy—which was posted on a public-facing website with links and contact info—was *meant* to be publicly accessible at the time the policy was used as evidence. Once the public version is taken down without notice during litigation, keeping a private version is not compliance. It's concealment—because the duty to preserve included the public location and its availability for verification.

## C. PREJUDICE

The policy directly contradicts Defendant's argument that Plaintiff had no right to an investigation into her daughter's death as a report from the medical examiner's office can only come as a result of an investigation. The policy also goes against how the medical examiner's office handled Avens's inquiries in 2022 and 2023: (a) informing her that they were told that if **SHE** called to tell her to contact ECU Health's risk management office, an instruction that came from ECU Health as alluded by the medical examiner's office manager when she revealed ECU Health's constraints over Dr. Kelly; (b) failing to conduct a state mandated investigation upon receiving evidence from the DA's office as ECU Health and its legal department required Dr. Kelly to obtain their permission before being "allowed" to perform her job duties in this case.

Nowhere in the policy did it say individuals are to be targeted for deferral to the ECU Health or that investigations – in particularly investigations regarding suspicious or unexpected deaths - are optional, both of which are illegal. The absence of the public policy deprives Plaintiff of evidence to support her constitutional claims and prevents the Court from independently verifying a factual evidence. This is especially important because the court has yet to rule on the pending motions to dismiss.

The prejudice Avens now faces is not just theoretical - what **could** happen **should** the case move forward to trial. The prejudice is now, in real time, and affects the pending rulings on the motions to dismiss. The exhibit submitted by ECU Health may confirm the words, but not the validity or authenticity.

Imagine this hypothetical scenario: John Doe gives Jane Doe an authentic $20 bill. The bill's authenticity is verified via the security thread embedded within the bill. Jane takes the bill back when John is not looking. When he notices the bill is gone, he confronts Jane. Rather than admit wrongdoing, Jane explains that she had other plans for the authentic $20 bill. John expects the authentic bill to be returned, but before returning it Jane rips the out the security thread and gives it back. Then Jane informs merchants (the public) and bankers (the court) that the bill John has is "**purportedly**" authentic, but his word that it once was can no longer be verified without the security thread. The bill that John now holds is authentic money, but he cannot prove it even if Jane decides to tell the public and the bankers that she, herself, confirms the bill's authenticity. Now, the only way John can recover his authentic bill, complete with security thread, from Jane is to submit a filing to the court.

Applying the above scenario, it is not enough to produce the exact words on a piece of paper. Practically anyone can do that. What is missing is independent verifiability of the policy Avens quoted and sourced in DE 95. ECU Health's Exhibit A does not cure what is missing.

Furthermore, the fact that ECU Health now describes Avens's reference to the policy and its previous link as "purported" after they trashed the only means for one to publicly and independently verify the policy and its source, not only demonstrates how the reference in DE 95 may now be perceived but it also demonstrably demonstrates bad faith in character, practice and litigation. The conduct of ECU Health and their counsel have ensured the prejudice to Avens is substantial, and that prejudice is material to the core of the case.

**D. Irreparable Loss**

Redirection constitutes loss. The private copy of the policy submitted by ECU Health does not satisfy the evidentiary need for a public policy statement. Exhibit A is not a substitute. Because the original site has been permanently redirected, the content cannot be retrieved by ordinary means. The only remedy is a court-ordered restoration of the original website with policy or reproduction of the policy on ECU Health's landing page – neither of which Avens has the power to do. Accordingly, the "cannot be restored or replaced" element is met.

**E. Intent**

Sunsetting a website involves the process of **intentionally discontinuing or removing it.** ECU Health's decision to move forward with the plan to sunset the URL in question - **after**

being noticed in DE 95 - demonstrates at minimum **recklessness** and, given the lack of any preservation hold, rises to the level of **intent to deprive**.

Intent is further solidified in ECU Health's failure to notify. Defendant never filed a notice of change, never offered a replacement link, and only produced a private copy after staring down the barrel of a sanctions motion. *Vodusek* holds that such conduct satisfies the intent to deprive prong when a party knowingly hides evidence that is directly adverse. *Vodusek and Powell v. Town of Sharpsburg*, 591 F. Supp. 2d at 818 (E.D.N.C. 2008). Therefore, the intent element is established.

### F. Scheduled Deletion and Spoliation

ECU Health asserts that the URL in question was part of an internal integration and "sunset" process, and therefore its migration does not constitute spoliation. This argument is contrary to controlling authority.

***Valmarc Corporation v. Nike, Inc.*, 2024 WL 6983618 (E.D. Ore. Dec. 13 2024):** The court held that once a duty to preserve attaches, a party **must** suspend any routine email-deletion or data-purging policy and implement a litigation hold; failure to do so is spoliation under Rule 37(e).

***Victor Valley Union High School District v. Superior Court*, 2022 WL 2123456 (Cal. Ct. App. Dec. 22 2022):** The court explained that routine data-deletion processes **must be** modified or suspended when litigation is reasonably anticipated and that such processes are not a permissible defense to a spoliation claim.

***3D Systems, Inc. v. Wynne,* 2024 WL 5064356 (S.D. Cal. Aug. 21 2024):** The court emphasized that a party cannot rely on routine deletion policies after litigation is reasonably foreseeable and must take reasonable steps to preserve ESI.

**Applying these holdings to ECU Health's conduct:**

Defendant's reliance on an internal integration and scheduled URL migration does not shield it from spoliation liability. As established in *Valmarc Corp. v. Nike* and *Victor Valley Union High School Dist. v. Superior Ct.*, once the duty to preserve arose—prompted by Plaintiff's citation of the public policy webpage—the defendant was required to suspend any routine deletion or migration processes and preserve the content. The mere fact that the URL belonged to a separate entity (ECU) does not absolve ECU Health of responsibility, because ECU Health exercised control over the website through the integration and failed to implement a litigation hold. Accordingly, the scheduled deletion of the webpage is not a valid defense, and sanctions under Rule 37(e) are warranted.

### G. Prematurity

ECU Health has argued that sanctions are "premature." That is incorrect. Rule 37(e) applies the moment ESI that should have been preserved is lost, regardless of whether discovery has formally begun. Courts have repeatedly rejected attempts to excuse spoliation on the ground that routine processes or timing made it inconvenient to preserve. *Valmarc*; *Victor Valley*; *3D Systems*.

Additionally, the motion is not premature because Avens is prejudiced in real time, and in this case, the elements of spoliation are clear – the rules of preservation attach in anticipation of litigation, as well as during the conduct of litigation. FRCP Rule 37(e) does

not discriminate whether discovery is stayed or MTD's are pending. The fact that defendants lay their hat on the Magistrate Judge's recommended dismissal does not change the fact that this case has NOT YET been dismissed. ECU Health's logic essentially says it is acceptable to remove ESI as long as discovery is stayed and MTDs are pending while simultaneously ignoring the fact that their MTDs could very well be denied. A recommendation is not binding as Judge Myers said himself in DE 88: A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . ... recommendation[] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(l); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). According to case law, then, Judge Myers may also consider the spoliated evidence to support his rulings on statute of limitations and state actor.

## IV. SANCTIONS AGAINST COUNSEL

The spoliation in this case is not limited to ECU Health or Dr. Kelly. Their attorneys also bear responsibility. Once litigation was foreseeable and after it was filed, counsel had an affirmative duty to implement litigation holds, monitor compliance, prevent destruction or alteration of relevant evidence, and notify the Court if material cited by Plaintiff was removed from public access. They did none of these things.

Attorneys Daniel McClurg and Terrence McKelvey of K&L Gates were obligated to ensure that ECU Health preserved the evidence Plaintiff cited in DE 95. Instead, they permitted ECU Health to proceed with sunsetting the URL and attempted to cure the misconduct by

producing only a substitute copy. By signing ECU Health's opposition to sanctions, they certified compliance where there was none, which violates Rule 11. Worse, they attempted to deflect from their own misconduct by accusing Plaintiff of "act[ing] as though discovery is in process." This bad-faith tactic not only deserves sanctioning but also reveals intent: they would have let the spoliation stand undisclosed if Plaintiff had not discovered it.

Attorney Jeremy Lindsley, as counsel for Dr. Kelly, bore the same duty to ensure preservation. Silence does not discharge that responsibility. As counsel of record, Lindsley was obligated to take steps to ensure his client preserved relevant evidence. He failed to do so.

Courts recognize that the duty to preserve evidence extends to attorneys as well as parties. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Zubulake IV*, 220 F.R.D. 212, 225 (S.D.N.Y. 2003). Counsel's inaction in preserving or producing the autopsy policy webpage, and their failure to seek a court order to maintain the URL, satisfies the "failure to take reasonable steps" prong of Rule 37(e). Each of these attorneys bore a duty to prevent spoliation and each failed. This Court should therefore sanction McClurg, McKelvey, and Lindsley alongside their clients.

## V. REQUESTED SANCTIONS

Because Defendant has (1) breached its duty to preserve, (2) caused the loss of indispensable ESI, (3) prejudiced Plaintiff, and (4) acted with intent to deprive, Plaintiff requests the Court impose the full range of sanctions authorized by Rule 37(e):

**Adverse-Inference Instruction**: An instruction that the lost policy was unfavorable to ECU Health and Dr Kelly.

**Monetary Sanctions**: Though Avens is not entitled to attorney's fees due to her pro se status, she should still be compensated for out-of-pocket expenses incurred for investigating the spoliation and filing relevant papers with the court. She is requesting:

- Prorated internet service usage of $54
- Shipping fees $8.87 (half of the cost to ship two documents containing DE 109 & 110; one being the notice of spoliation) + $ 17.74 to ship the sanctions motion + $17.74 to ship this memorandum totaling $44.35
- Printing @ .25/page x 2+ 3+ 13+ 19 = $1.85.
- Total = $100.20

**Restorative Order**: An order directing ECU Health to restore the autopsy policy on their website where the redirected URL now lands and to provide the Court with a verified copy.

**Verified Affidavit**: An order compelling the counsel to file a verified affidavit describing the steps taken (or not taken) to preserve the webpage.

**Any Additional Relief**: Any other relief the court deems just and proper to cure prejudice and deter future spoliation.

## V. CONCLUSION

Defendant ECU Health had a clear duty to preserve the publicly available autopsy policy, failed to take reasonable steps to do so, caused the loss of the evidence, and acted with the intent to deprive Plaintiff of its use. The loss is irreparable and has materially

prejudiced Plaintiff's case. Under Fed. R. Civ. P. 37(e) and controlling Fourth Circuit precedent, the Court must impose sanctions to cure the prejudice and to protect the integrity of the judicial process.

Because a response was not filed on behalf of Dr. Kelly, and neither attorney named filed a response on their own individual behalf, sanction requests against them should stand.

Plaintiff respectfully requests that the Court grant her Motion for Sanctions, order the adverse-inference instruction and affidavit, award monetary sanctions, and compel Defendant to restore the policy on their publicly accessible site, together with any further relief the Court deems appropriate.

Respectfully submitted,

September 5, 2025

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
Pro Se Litigant

CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, the Plaintiff's Reply to DE 91 & 92 was shipped by UPS; Signature Required. Tracking # 1Z9H79KT4234241291. Upon docketing, the CM/ECF system will send electronic notification of such filing to the defendants' counsel.

Respectfully submitted September 5, 2025

*[signature]*

Cynthia B. Avens
303 Riverside Trail
Roanoke Rapids, NC 27870
Avens1@charter.net
252-203-7107
*Pro Se Litigant*

Chris D. Agosto Carreiro
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ccarreiro@ncdoj.gov
Telephone: (919) 716-6874
Facsimile: (919) 716-6755
State Bar No. 45356
*Counsel for DA Dixon*

Jeremy D. Lindsley
Assistant Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
jlindsley@ncdoj.gov
Tel: 919-716-6920
Fax: 919-716-6764
NC State Bar No. 26235
*Counsel for Dr. Karen Kelly*


Daniel D. McClurg
K&L Gates LLP
300 South Tryon Street, Suite 1000
Charlotte, North Carolina 28202
daniel.mcclurg@klgates.com
(704) 331-7400
(704) 353-3114
NC Bar #53768
*Counsel for Defendant Pitt County Memorial Hospital, Inc.*

Terrence M. McKelvey
K&L Gates LLP
501 Commerce Street, Suite 1500
Nashville, Tennessee 37203
terrence.mckelvey@klgates.com
(615) 780-6700
(615) 780-6799
NC Bar #47940
*Counsel for Defendant Pitt County Memorial Hospital, Inc.*