IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:24-CV-00051-M

CYNTHIA B. AVENS,                          )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )          ORDER
                                           )
FARIS C. DIXON, JR., District Attorney,    )
PITT COUNTY MEMORIAL                       )
HOSPITAL, INC.,                            )
DR. KAREN KELLY, Medical Examiner,         )
JOHN/JANE DOE, and                         )
JOHN/JANE DOE,                             )
                                           )
        Defendants.                        )
_____        )

These matters come before the court on a Motion to Dismiss Plaintiff's Amended

Complaint filed by Defendant Faris C. Dixon, Jr. [DE 43], a Motion to Dismiss the Amended

Complaint filed by Defendant Dr. Karen Kelly [DE 47], and a Motion to Dismiss Plaintiff's

Amended Complaint filed by Pitt County Memorial Hospital [DE 49]. Pursuant to 28 U.S.C.

§ 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T.

Numbers, II heard these matters on October 8, 2024, and issued a 28-page Memorandum and

Recommendation ("M&R"), recommending that the court grant the Defendants' motions. DE 87.

Plaintiff filed timely objections to the M&R in a 42-page document,[1] Defendants Kelly and Pitt

County filed written responses, and Plaintiff was permitted to file a reply brief.[2] DE 89, 91, 92,

_____

[1] Pursuant to Local Civil Rule 72.4(b)(2), an objection must be no longer than ten pages in length.
*See id.* (citing Local Civil Rule 7.2(f)(2)(B)). Given the age of the case and in the interest of
judicial efficiency, the court will accept the objection as filed.
[2] In contravention of Local Civil Rules 7.2 (f)(2)(C) and 72.4(b)(2), Plaintiff's reply brief is 27
pages in length. After reviewing both the Defendants' response briefs and Plaintiff's reply brief,

and 95. For the reasons that follow, the court adopts the M&R, dismisses Plaintiff's federal claims, and declines to exercise supplemental jurisdiction to adjudicate Plaintiff's state law claims.

## I.    Legal Standards

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[ ] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Here, Plaintiff appears to object to nearly all findings made by Judge Numbers that are unfavorable to her and, oftentimes, she repeats arguments already made in response to the motions to dismiss. *See United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specific proposed findings or recommendations to which objection is made.'"). "De novo review is not required or necessary when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." *Camper v. Comm'r of Soc. Sec.*, No. 4:08CV69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), *aff'd*, 373 F. App'x 346 (4th Cir. 2010) (citing *Orpiano v. Johnson*, 687

_____

the court finds that the content of the briefs does not assist the court in its evaluation of the M&R.

F.2d 44, 47 (4th Cir. 1982)). "Additionally, when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." *Id.* The court will review de novo only those portions of Plaintiff's filing constituting proper "objections" under 28 U.S.C. § 636(b)(1). *See id.*

## II. Analysis

At the outset, the court addresses Plaintiff's four "Corrections and Clarifications." DE 89 at 2-4. First, Plaintiff quotes a "fact" found by Judge Numbers on page 3 of the M&R: "When Dixon sought a copy of the medical examiner's evaluation, Dixon would not give it to her, tell her who signed it, or tell her the date it was signed." Plaintiff argues the statement is "not correct" because "Dixon had not sought a copy" of the report and "lied" about possessing the report. However, read in context, Judge Numbers' statement clearly contains a mere typographical error; that is, his first reference to "Dixon" in the statement should have been to "Plaintiff": "When [Plaintiff] sought a copy of the medical examiner's evaluation, Dixon would not give it to her, . . . ." The court finds this error immaterial to the disposition of the matters raised.

Second, Plaintiff fails to explain how the question whether it was the District Attorney (Defendant Dixon) or the Medical Examiner (Defendant Kelly) who "needed to 'find' the report" is material to the disposition of the matters raised here. Third, Plaintiff's attempt (at this stage and in this manner) to raise new factual issues concerning whether she was had "access to the court" in 2016 is improper and immaterial to whether she has standing to bring claims against Dixon. Fourth, Judge Numbers' recitation of Plaintiff's requested remedies in her Amended Complaint is not "a clear attempt to mischaracterize Plaintiff's claims"; Judge Numbers merely quoted Plaintiff's requested relief after summarizing her factual allegations and claims for relief, as most judicial officers would do in setting forth the contents of a pleading in the "Background" section

3

of a memorandum evaluating motions to dismiss.

**A. Federal Claims**

The court will now proceed to evaluate Plaintiff's objections to the M&R regarding her federal claims for relief.

1. Whether Judge Numbers erroneously found the official-capacity Defendants immune from liability for her federal claims under the Eleventh Amendment.

Plaintiff contends that Judge Numbers "erroneously conflates Eleventh Amendment immunity with personal capacity liability, improperly shielding Dixon and Kelly from accountability." DE 89 at 8. However, Judge Numbers properly found that, since Plaintiff admittedly does not seek declaratory or prospective injunctive relief in this case, *Ex parte Young* does not serve to overcome the immunity, and it is properly applied to shield Dixon and Kelly from liability in their official capacities. Accordingly, the court OVERRULES Plaintiff's objection, ADOPTS the M&R with respect to Dixon's and Kelly's motions to dismiss based on Eleventh Amended immunity, and DISMISSES Plaintiff's official-capacity claims.

2. Whether Judge Numbers "mischaracterized" Plaintiff's claims when evaluating Dixon's "standing" defense.

Plaintiff contends that Judge Numbers "*erroneously* frames the central controversy in this case as whether [Dixon] properly conducted an investigation." DE 89 at 4 (emphasis added). The court finds no error. At the hearing in this case, when discussing the standing question, Judge Numbers asked Plaintiff pointedly, "why does anyone have the authority to seek to try to have the DA do an investigation, which obviously precedes any sort of criminal charges?" Tr. 15: 10-12, DE 75. Plaintiff responded that Dixon "took it upon himself" to initiate an investigation and "with that decision comes the expectation of a fair investigation. And that is not what he did." *Id.* 15: 13-16; *see also id.* 16: 11-16 ("So it goes beyond trying to force or have a right to an investigation

4

or to prosecution. Once he decides to move forward in that direction, then there -- you expect it to be done correctly. You expect it to be done appropriately. You expect it to be done fairly. And that was not done in this case."). Thus, Plaintiff herself framed her investigation-based claims against Dixon as whether he "properly conducted an investigation." *See* Am. Compl. at 65 (titling her claim against Dixon, "Failing to Conduct a Thorough and Impartial Investigation"). Her subsequent attempt to define her claims in such vague terms as "whether [Dixon] engaged in a pattern of obstruction and constitutional violations that deprived Avens of due process and equal protection," "whether Avens was unlawfully denied access to legal remedies due to state interference, deception, and procedural manipulation," and "whether these actions created a state-sanctioned deprivation of justice that harmed Avens as she sought redress for her daughter's death" is not persuasive.

Given that Judge Numbers properly characterized Plaintiff's investigation-based claims against Dixon, the court also finds that Judge Numbers properly applied binding and persuasive law and distinguished Plaintiff's non-binding law to find that Plaintiff lacks standing to bring her investigation-based claims against Dixon. DE 87 at 6-8 ("federal courts regularly reject attempts to establish standing based on a district attorney's investigation of a third party") (citing cases). As such, the court OVERRULES Plaintiff's objection and ADOPTS the M&R with respect to Dixon's motion to dismiss based on a lack of standing. The court lacks jurisdiction to hear Plaintiff's Fourteenth Amendment due process claim alleging that Dixon conducted an improper investigation and it is DISMISSED WITHOUT PREJUDICE.

3. Whether Judge Numbers erroneously shifted the burden to Plaintiff to show that absolute prosecutorial immunity does not apply.

Plaintiff brings her remaining federal claims against Dixon under the First Amendment (duty to be truthful) and Fourteenth Amendment (access to courts). Plaintiff asserts that "[w]hile

5

the Supreme Court in *Burns* made clear that Dixon bears the burden of proving that absolute immunity applies, [this] Court has not required him to do so." DE 89 at 11. However, while Judge Numbers determined that Dixon enjoys prosecutorial immunity with respect to Plaintiff's investigation-related claim—likely in an attempt to conduct a thorough analysis and provide an alternative basis for dismissal—he concluded that prosecutorial immunity does not apply to Plaintiff's remaining claims. DE 87 at 14, 23. This court has determined that Plaintiff lacks standing to bring her investigation-related claim against Dixon; accordingly, the present objection is OVERRULED as moot.

4. Whether Judge Numbers erroneously concluded that Dixon and Kelly are entitled to qualified immunity from Plaintiff's First Amendment claims.

Plaintiff asserts that Judge Numbers imposed a flawed circular argument in dismissing her First Amendment claim against Dixon for her failure to allege the violation of a "clearly established" right under the law. However, Plaintiff does not recognize that Dixon is entitled to qualified immunity if Plaintiff, in fact, fails to do so.

An official sued in his individual capacity is entitled to qualified immunity from civil liability unless he or she (1) violated a federal statutory or constitutional right, and (2) the unlawfulness of his or her conduct was clearly established at the time. *District of Columbia v. Wesby*, 583 U.S. 48, 63-63 (2018) (cleaned up). Because qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," lawsuits against these officials are typically dismissed against "all but the plainly incompetent or those who knowingly violate the law." *Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir.), *cert. denied*, 144 S. Ct. 494, 217 L. Ed. 2d 259 (2023) (citing *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020) and *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

6

A "clearly established" right must be defined with specificity. *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019). "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 42-43 (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). Courts "must examine the specifics of the existing precedents, determining whether the particulars of those cases would place a reasonable [government official] on notice that particular conduct is unlawful." *Dean for & on behalf of Harkness v. McKinney*, 976 F.3d 407, 423 (4th Cir. 2020) (Richardson, J., dissenting) (citing *Kisela*, 584 U.S. at 104). Thus, in analyzing whether a right is sufficiently definite, "courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose." *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999)).

In her objection, rather than identify a Supreme Court or Fourth Circuit opinion expressing her right under the First Amendment to receive "truthful, factual information" from a government official, Plaintiff contends that this case should "be the one to establish" such right. DE 89 at 16. However, the court cannot say, on the facts alleged, that Plaintiff's claim states a violation "beyond debate." *See Wells v. Fuentes*, 126 F.4th 882, 889 (4th Cir. 2025). "[T]o find a violation of clearly established law, [courts] must be able to identify a case or a body of relevant case law where an officer acting under similar circumstances was held to have violated the Constitution." *Id.* (citing *Rambert v. City of Greenville*, 107 F.4th 388, 402 (4th Cir. 2024)) (cleaned up). The Fourth Circuit instructs that "the factual details of past cases matter a great deal" and the "'crucial question' is whether every reasonable officer would know this action in this situation was unlawful. *Id.* at 890. This court has found no case or body of case law demonstrating that "any reasonable official in

7

[Dixon's] shoes would have understood that he was violating" Plaintiff's First Amendment right. Moreover, it is not so obvious or egregious a violation as to justify setting any precedent. The court adopts the M&R and OVERRULES Plaintiff's objection; her First Amendment claim against Dixon is DISMISSED.

In her First Amendment claim against Kelly, Plaintiff alleges a right to receive information withheld by government conduct, in the form of an expert opinion, from Kelly, a "willing speaker." Am. Compl. at 73. No one disputes that Plaintiff has a "clearly established" right under the First Amendment to receive information from a willing speaker. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("[i]t is now well established that the Constitution protects the right to receive information and ideas" from a willing speaker). Here, Plaintiff's allegations do not appear to show that Kelly was, in fact, a willing speaker. "[T]o have standing to assert a right to receive speech, a plaintiff must show that there exists a speaker willing to convey the information to her." *Stephens v. Cnty. of Albemarle, VA*, 524 F.3d 485, 492 (4th Cir. 2008).

Nevertheless, the problem with Plaintiff's claim against Kelly is that she brings it against the speaker, rather than the government, which must be shown to have chilled the speaker's speech. For example, in *Stephens*, the plaintiff sued a *county* claiming that its settlement agreements with two individuals unlawfully constrained their abilities to provide information concerning safety and environmental hazards posed by the landfill, in which her husband was killed and, thus, violated her First Amendment right to receive information from the individuals. 524 F.3d at 489. The court concluded that, while the plaintiff was able to demonstrate that the speakers were "willing" to speak, she did not show that they were willing to convey the information she wanted. *Id.* at 492.

Here, Plaintiff brings her claim against Kelly, the speaker, alleging that *Kelly* chilled her own speech by "allowing the facility to dictate which case(s) she was to work on without first

8

requiring their approval." Am. Compl. at 73. Assuming this allegation is logically sound, Plaintiff cites no case law nor other support establishing such claim. Accordingly, Kelly is entitled to qualified immunity for Plaintiff's failure to state a claim. The court adopts the M&R and OVERRULES Plaintiff's objection; her First Amendment claim against Kelly is DISMISSED.

  5.  Whether Judge Numbers erroneously recommended dismissal of Plaintiff's First Amendment claim against ECU Health.

To recover for a constitutional violation under 42 U.S.C. § 1983, the plaintiff must "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Cox v. Duke Energy Inc.*, 876 F.3d 625, 632 (4th Cir. 2017) ("[T]o be sued under § 1983, a defendant must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that [it] is engaged in the state's actions."). Plaintiff alleges that ECU Health is a state actor (which purportedly receives federal funds) or has acted under color of state law with the co-Defendants in this case, as necessary to assert her constitutional claims under 28 U.S.C. § 1983. Am. Compl. at 4. ECU Health argues that it is not, in fact, a state actor. DE 50 at 12-16. Judge Numbers declined to address this issue and, instead, examined whether Plaintiff alleges a plausible First Amendment claim. DE 87 at 18.

ECU Health cites a 2009 Fourth Circuit decision, affirming the dismissal of a Fourteenth Amendment due process claim, in which the court determined that ECU Health, known at the time as "Pitt County Memorial Hospital," was not a state actor. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 186 (4th Cir. 2009). Notably, the court acknowledged "there is 'no specific formula' for determining whether state action is present . . . . 'What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity.'" *Id.* at 182. The court listed three "categor[ies] . . . that justify the state-action label": (1) close nexus, (2) symbiotic relationship, and (3) public function. *Id.* at 181-82. Under the close nexus theory, the *Phillips*

9

court reviewed the plaintiff's factual allegations and found they failed to support a finding of state action. *See id.*

Here, construing the pleading and Plaintiff's arguments liberally, the court finds Plaintiff may rely on one or all three theories, some of which appear to require resolution of factual issues. However, in a Rule 12(b)(6) analysis, the court must accept the Plaintiff's allegations as true; thus, for this analysis, the court will assume without deciding that ECU Health acted under color of state law for Plaintiff's First and Fourteenth Amendment claims.

To the extent that Plaintiff brings her First Amendment claim against ECU Health as the entity that allegedly chilled Kelly's speech—that is, prevented Kelly from issuing an expert opinion[3]—the court finds Plaintiff's allegations fail to demonstrate that Kelly was an otherwise willing speaker. Instead, Plaintiff alleges that Kelly "fail[ed] to perform her duties as a Medical Examiner and collaborat[ed] with ECU Health in obstructing the investigation into Keisha White's death." Am. Compl. at 72.

Plaintiff argues that the fact Kelly was the county's Medical Examiner means she would have been a willing speaker had she not been "blocked by external forces, namely ECU Health." DE 89 at 18-19. This argument contradicts Plaintiff's allegation concerning Kelly's "collaboration" with ECU Health. Also, Plaintiff's allegations reflect no instance in which Kelly could be considered "willing" to disclose to Plaintiff the information Plaintiff requested. *See Stephens*, 524 F.3d at 492-93 (finding that, although plaintiff showed the speaker was "willing," plaintiff failed to show the speaker was willing to speak to plaintiff about the desired information). Moreover, nothing in the pleading shows that the requested information was already in existence

---

[3] The Amended Complaint does not make this specific allegation; rather, Plaintiff alleges generally that "ECU Health withheld crucial information from and provided deceptive information to the Plaintiff and regulatory boards." Am. Compl. at 52-53.

at the time Plaintiff sought it. *See Martin v. U.S. E.P.A.*, 271 F. Supp. 2d 38, 48 (D.D.C. 2002) ("the First Amendment does not require the government to provide access to information it possesses on demand, and it certainly does not require the government to gather information.") (citing *Gregg v. Barrett*, 771 F.2d 539, 547 (D.C. Cir. 1985)).

The court concludes that Plaintiff fails to state a plausible First Amendment claim against ECU Health. Therefore, the court adopts the M&R and OVERRULES Plaintiff's objection; her First Amendment claim against ECU Health is DISMISSED.

6. Whether Judge Numbers erroneously recommended dismissal of Plaintiff's Fourteenth Amendment equal protection claims against Defendants.

Judge Numbers concluded that Plaintiff's allegations that she suffered discrimination by the Defendants are merely conclusory and, thus, fail to state plausible equal protection claims. DE 87 at 20-21. Plaintiff objects that she does, actually, support her claims with facts demonstrating that Dixon, Kelly, and ECU Health "clear[ly] depart[ed] from standard practices in homicide investigations," which suffices to establish that they engaged in unlawful discrimination.

Plaintiff is incorrect. She cites *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998) for the proposition that "a case may be built entirely out of circumstantial evidence."[4] While this may be true, Plaintiff still must allege facts supporting a claim that, but for her race (or other protected category), Defendants would not have engaged in the alleged unconstitutional conduct. *See United States v. Skrmetti*, 605 U.S. --, 145 S. Ct. 1816, 1834, 222 L. Ed. 2d 136 (2025) (addressing an equal protection claim, "Under the reasoning of *Bostock* [*v. Clayton Cnty.*, 590 U.S. 644 (2020)],

---

[4] *Norton* does not necessarily support the Plaintiff's arguments; the Second Circuit reversed a jury finding that the plaintiff suffered age discrimination where the only evidence presented was that the plaintiff was over forty years old, his supervisor was under forty years old, and another person over forty was fired around the same time plaintiff was fired, concluding this evidence was insufficient to support an ADEA claim. *See id.*

11

neither [a boy's] sex nor his transgender status is the but-for cause of his inability to obtain testosterone."). Plaintiff's alleged facts demonstrating that Dixon, Kelly, and ECU Health deviated from standard practices, even if true, do not themselves show (or even raise an inference) that Defendants deviated because of Plaintiff's protected status.

Plaintiff asserts that her claims arise under a "class-of-one" theory and, thus, should not be dismissed. "An equal protection violation can be stated under this theory if it can be shown that the government's action constituted 'irrational and wholly arbitrary' discrimination of that individual. In other words, there must be 'no rational basis for the difference in treatment.'" *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 82 (4th Cir. 2016) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) and *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005)). Again, Plaintiff's allegations fail to show that Defendants targeted Plaintiff based on a protected characteristic. Moreover, since it is plausible that Defendants' challenged actions might have been taken for a rational reason (e.g., refraining from full disclosure of prosecutorial strategies and/or decisions to a third party), Plaintiff's allegations, even taken as true, fail to show "no rational basis" for Defendants' conduct.

Accordingly, the court adopts the M&R and OVERRULES Plaintiff's objection; her Fourteenth Amendment equal protection claims against Defendants are DISMISSED for failure to state a plausible claim for relief.

7. Whether Judge Numbers erroneously recommended dismissal of Plaintiff's Section 1981 claims against Defendants.

For the same reason, the court finds Plaintiff fails to state a claim of interference with contract based on a protected category – here, race – in violation of 42 U.S.C. § 1981. "To succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'"

12

*Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). The plaintiff must also show that the interference "*would not have happened but for the plaintiff's race.*" *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020)) (emphasis added). "Thus, to survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, allow the court to draw a reasonable inference as to those legal requirements." *Id.*

In *Nadendla*, the Fourth Circuit noted that the operative pleading "contained extensive and specific allegations regarding [defendant's] failure[s] . . . [b]ut factual details regarding race [were] conspicuously absent." *Id.* at 305. Likewise, here, Plaintiff's allegations that she and her daughter are Black and that her daughter ""died in [a] predominantly white facility under the care of a white nurse" are insufficient to raise an inference that the Defendants acted based on Plaintiff's race. *See* DE 33 at 44.[5] Accordingly, the court adopts the M&R and OVERRULES Plaintiff's objection; her Section 1981 claims against Defendants are DISMISSED for failure to state a plausible claim for relief.

   8.  Whether Judge Numbers erroneously recommended dismissal of Plaintiff's Fourteenth Amendment due process claims against Defendants.

Again, with respect to Dixon and Kelly in their individual capacities, Plaintiff must allege they violated a "clearly established" right, and the right must be defined with specificity. *Emmons*, 586 U.S. at 42. Judge Numbers, construing the pleading liberally, defined Plaintiff's (remaining) due process claim as alleging that Dixon's and Kelly's failures to undertake a complete and

_____

[5] Plaintiff alleges elsewhere in the pleading that she and her daughter are Black, but only in the context of conclusory allegations; for example, "The conspiracy was motivated by discriminatory animus against Plaintiff, a Black woman, and her daughter. . . ." (DE 33 at 54) and "The Plaintiff was denied equal protection as ECH Health's discriminatory policies and practices were motivated by racial animus . . . ." (*id.* at 52). Under Rule 12(b)(6), the court need not take these allegations as true.

13

accurate investigation into Plaintiff's daughter's death interfered with Plaintiff's ability to access the courts. Plaintiff appears to agree with this definition; she asserts that "Avens was directly deprived of access to justice through a series of intentional acts by the DA's Office, ECUH, and Dr. Kelly that prevented her from obtaining critical information necessary for legal redress." DE 89 at 30. Plaintiff cites the Supreme Court's opinion in *Christopher v. Harbury*, 536 U.S. 403 (2002), for the proposition that "due process is violated when government actors affirmatively block access to justice." *Id.*

In *Harbury*, the Supreme Court was asked to determine whether a plaintiff stated a plausible access-to-courts claim under the Fourteenth Amendment where she alleged that government officials promised to assist her in learning information about her husband, a Guatemalan rebel captured by the Guatemalan army, but affirmatively misled her into believing that concrete information about her husband's death did not exist and, thus, she was prevented from taking appropriate actions to save his life and "foreclosed from effectively seeking adequate legal redress." 536 U.S. at 410-12. The Court asserted that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong" and, thus, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Id.* at 414-15. Further, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416; *see also id.* ("the remedy sought must itself be identified to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim.").

14

Applying these principles to the plaintiff's complaint, the *Harbury* Court concluded that the pleading "did not come even close to stating constitutional claim for denial of access upon which relief could be granted." *Id.* at 418. The most the courts could glean was an allegation that the defendants' "false and deceptive information and concealment foreclosed Plaintiff from effectively seeking adequate legal redress," which is conclusory and insufficient. *Id.* Even accepting plaintiff's counsel's later claim that plaintiff was denied the ability to bring a claim for intentional infliction of emotional distress, plaintiff "could not satisfy the requirement that a backward-looking denial-of-access claim provide a remedy that could not be obtained on an existing claim." *Id.* at 419-21.

Relying on *Harbury*, Judge Numbers notes that Plaintiff "previously pursued and settled a wrongful death case against ECU Health related to Keisha's death in 2016" and concludes that the operative "pleading does not identify any other civil claim that Defendants have prevented her from pursuing." DE 87 at 23-24. Rather than identifying any such claim, Plaintiff argues that ECU Health "withheld material information . . . which prevented Avens from making an informed decision regarding the settlement agreement." DE 89 at 30. However, she does not explain how she has been denied the ability to bring a breach of contract or possible other tort claim on these allegations. Plaintiff also contends that Dixon "sabotage[d] [his] own case to prevent prosecution despite clear evidence," but does not identify a cause of action nor explain how this conduct prevented her from seeking recovery for such cause of action. *Id.* at 31. In fact, Plaintiff repeatedly argues that she "was denied access to key information that would have allowed her to pursue legal remedies" (*id.* at 32), but fails to identify any claims for which she has been denied the ability to seek recovery for purported damages. *See also id.* ("Avens was deprived of a fair opportunity to seek redress because of state deception and obstruction."); *id.* at 33 ("ECUH and the DA's Office

15

created barriers that prevented Avens from pursuing legal recourse in both civil and criminal contexts.").

This court adopts the M&R and OVERRULES Plaintiff's objection; her claims against Defendants alleging denial of access to courts under the Fourteenth Amendment are DISMISSED for failure to state a plausible claim for relief.

9. Whether Judge Numbers erroneously recommended dismissal of Plaintiff's § 1985 claim against ECU Health.

To state a claim for conspiracy to deny equal protection of the laws under 42 U.S.C. § 1985, a plaintiff must plausibly allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Strickland v. United States*, 32 F.4th 311, 360 (4th Cir. 2022) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Judge Numbers determined that the Amended Complaint factually alleges only that ECU Health was "motivated by [its] financial interests by seeking to protect [its] reputation from a potentially high-profile homicide case" (DE 87 at 26),[6] which does not support a § 1985 clam. The pleading does allege, in a conclusory manner, that "[t]he conspiracy was motivated by discriminatory animus against Plaintiff, a Black woman, and her daughter." DE 33 at 54. However, even if the court were to accept this allegation as true and find that it suffices under Rule 12(b)(6), the court concludes that Plaintiff fails to allege a plausible "conspiracy" under § 1985.

In *Strickland*, the Fourth Circuit came to the same conclusion when it found that the

---

[6] Plaintiff also construed the M&R as finding that the Amended Complaint fails to state a § 1985 "conspiracy." DE 89 at 35-36.

16

plaintiff's complaint failed to allege facts demonstrating the defendants' "affirmative adherence to a single plan of discriminatory animus based on [the plaintiff's] protected-class status." 32 F.4th at 361-62. Here, the Plaintiff alleges in the Amended Complaint a number of "acts in furtherance of the conspiracy" and "specific acts and omissions" taken by ECU Health, Kelly, and "law enforcement," which is identified specifically as the "SBI." DE 33 at 54-56. However, in none of these allegations, nor in the allegations listed in Plaintiff's objection (DE 89 at 35-38), are facts supporting a claim that ECU Health and its co-conspirators "had any sort of 'single plan [to discriminate], the essential nature and scope of which was known to each person who is to be held responsible for its consequences.'" *Strickland*, 32 F.4th at 361-62. The court finds Plaintiff fails to allege facts supporting the existence of a "conspiracy" under § 1985. *See id.* at 361 ("we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts.").

Accordingly, this court adopts the M&R and OVERRULES Plaintiff's objection; her claim against ECU Health alleging a violation of 42 U.S.C. § 1985 is DISMISSED for failure to state a plausible claim for relief.

10. Whether Judge Numbers erroneously recommended dismissal of Plaintiff's Title VI claim against ECU Health.

Title VI of the Civil Rights Act of 1964 prohibits intentional discrimination based on protected categories in programs and activities receiving federal financial assistance. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (affirming a private right of action to seek damages and injunctive relief under Title VI). Relevant here, the Supreme Court has "explained that discrimination that violates the Equal Protection Clause of the Fourteenth Amendment committed by an institution that accepts federal funds also constitutes a violation of Title VI." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 198 n.2

17

(2023) (citing *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003)).

In support of her Title VI claim, Plaintiff alleges in the Amended Complaint that "ECU Health obstructed the investigation into White's death by providing false and misleading information and/or withheld information (including access to personnel) during their communications with law enforcement and regulatory bodies. ECU Health also obstructed justice by preventing the medical examiner from performing a thorough and unbiased investigation." DE 33 at 59. Plaintiff supports these statements with allegations of failures to provide complete reports, failures to disclose truthfully, withholding material information, and falsifying records. *Id.* at 57-59. These allegations are not materially different from those alleged in support of Plaintiff's equal protection claim. *See id.* at 49-53. Like the equal protection claim, Plaintiff's allegation concerning any link between ECU Health's actions and her race is merely conclusory: "[ECU Health's] practices were motivated by racial animus to protect its reputational and financial interests, while aimed at denying Plaintiff equal access to the benefits and services provided by ECU Health." *Id.* at 57. This allegation is insufficient to state a plausible Title VI claim.

Therefore, this court adopts the M&R and OVERRULES Plaintiff's objection; her claim against ECU Health alleging a violation of Title VI of the Civil Rights Act of 1964 is DISMISSED for failure to state a plausible claim for relief.

### B.    State Law Claims

Plaintiff's remaining claims allege obstruction of justice and negligence per se under North Carolina law against each Defendant. DE 33 at 62, 70, 73-74. Judge Numbers recommends that this court decline to exercise supplemental jurisdiction to hear these claims. None of the parties object.

Pursuant to 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental

jurisdiction over a claim under subsection (a) if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction." While Plaintiff has objected to Judge Numbers' analysis of her claims, she does not object to his identification of each of her federal claims and mentions nothing about whether she alleges claims in addition to those analyzed. Construing the Amended Complaint liberally, the court finds no additional federal claims alleged by the Plaintiff. Thus, the court finds no clear error in Judge Numbers' conclusion that the district court may decline to exercise supplement jurisdiction to hear Plaintiff's state law claims, given that the court has "dismissed all claims over which it has original jurisdiction."

The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Ketema v. Midwest Stamping, Inc.*, 180 F. App'x 427, 428 (4th Cir. 2006) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995)). "In exercising that discretion, the district court should consider 'convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy.'" *Id.* (quoting *Semple v. City of Moundsville*, 195 F.3d 708, 714 (4th Cir. 1999)).

This court recognizes that in *Ketema*, an unpublished decision, the Fourth Circuit found that a § 1367(c) "dismissal may be an abuse of discretion where the state statute of limitations expired prior to dismissal of the anchor federal claim." *Id.* (citing out-of-circuit opinions). In North Carolina, the statute of limitations for both obstruction of justice and negligence per se claims is three years. *Self v. Yelton*, 201 N.C. App. 653, 660, 688 S.E.2d 34, 39 (2010) (citing N.C. Gen. Stat. § 1--52(9)); *Driggers v. Sofamor, S.N.C.*, 44 F. Supp. 2d 760, 766 (M.D.N.C. 1998) (citing N.C. Gen. Stat. § 1–52(5)(16)). Apparently in recognition of the possibility of a statute of limitations defense, Plaintiff alleges that the Defendants' actions constitute "continued wrongs"

19

"through at least 2023" and "through 2024." DE 33 at 63, 69. Taking these allegations as true (and to the extent they may be proven), and recognizing that the remaining claims involve interpretation of state laws against at least two state government actors, the court finds it within its broad discretion to decline to exercise supplemental jurisdiction and dismiss Plaintiff's state law claims without prejudice.

### III. Conclusion

Upon careful de novo review of the M&R and the record presented, the court ADOPTS the recommendation of the magistrate judge as its own. For the reasons stated therein, the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant Faris C. Dixon, Jr. [DE 43], Motion to Dismiss the Amended Complaint filed by Defendant Dr. Karen Kelly [DE 47], and Motion to Dismiss Plaintiff's Amended Complaint filed by Pitt County Memorial Hospital [DE 49] are GRANTED IN PART and DENIED IN PART, Plaintiff's federal claims against these Defendants are DISMISSED WITH PREJUDICE, and Plaintiff's state law claims against the Defendants are DISMISSED WITHOUT PREJUDICE.

In light of this order, Plaintiff's Motion for Expedited Ruling [DE 109] is DENIED as moot. Further, given the early posture of this case, including the stay of all discovery currently in place, Plaintiff's Motion for Sanctions for Spoliation of Evidence [DE 111] is DENIED WITHOUT PREJUDICE.

20

Finally, as Plaintiff has failed to identify and/or serve Defendants "Jane/John Doe," the court DISMISSES WITHOUT PREJUDICE Plaintiff's claims against them. The Clerk of the Court shall close this case.

SO ORDERED this _25th_ day of September, 2025.

_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

21